1   Mark D. Petersen (State Bar No. 111956)
    Frank J. Riebli (State Bar No. 221152)
2   Farella Braun & Martel LLP
    235 Montgomery Street, 17th Floor
3   San Francisco, CA  94104
    Telephone:  (415) 954-4400
4   Facsimile:  (415) 954-4480
    mpetersen@fbm.com
5   friebli@fbm.com

6   Attorneys for Defendants
    VCH Salinas I LLC, Norm Yop Inc. and Monica
7   Faranda

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                       SAN JOSE DIVISION

11   BEATRICE GONZALEZ AND JOSE          Case No. C07 05698 JW
     URTIZ, JORGE AGUIRRE, ELEAZAR
12   BECERRA AND ROCIO BECERRA, J.       NOTICE OF MOTIONS, MOTIONS AND
     GUADALUPE CONTRERAS AND             BRIEF IN SUPPORT OF MOTIONS TO
13   TERESA CONTRERAS, all individually  STAY AND COMPEL ARBITRATION, OR
     and on behalf of the general public, IN THE ALTERNATIVE, TO DISMISS
14                                        AND STRIKE
                 Plaintiffs,
15                                        Date:      Monday, March 24, 2008
         vs.                              Time:      9:00 a.m.
16                                        Judge:     Hon. James Ware
     VCH SALINAS I LLC dba VALLEY         Dept.:     Courtroom 8, Fourth Floor
17   COMMUNITY HOMES and as MONTE
     BELLA REALTY, NORM YOP INC.
18   REALTORS dba MONTE BELLA
     REALTY, MONICA FARANDA dba as
19   MONTE BELLA REALTY,
     UNIVERSAL MORTGAGE & SALES
20   INC., IRA MORTGAGE & HOME
     SALES, INC., AMERICAN PACIFIC
21   MORTGAGE CORP. dba as
     CREATIVE MORTGAGE, OLD
22   REPUBLIC TITLE CO.,
     COUNTRYWIDE FINANCIAL CORP.
23   dba AMERICA'S WHOLESALE
     LENDER, NEW CENTURY
24   MORTGAGE CORP., CAMERON
     FINANCIAL GROUP INC., WELLS
25   FARGO BANK, and DOES 1 TO 100,
     inclusive,
26
                 Defendants.
27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOTION TO STAY AND COMPEL ARBITRATION OR
IN THE ALTERNATIVE TO DISMISS AND STRIKE

22757\1404844.2

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2           PLEASE TAKE NOTICE that on Monday, March 24, 2008 at 9:00 a.m., or as soon there-

3    after as may be heard, at the United States Courthouse at 280 South First Street in San Jose, Cali-

4    fornia, in Courtroom 8, before the Honorable James Ware, defendants VCH Salinas I LLC, Norm

5    Yop Inc. and Monica Faranda will move to stay the litigation and compel Plaintiffs to submit to

6    arbitration or, in the alternative, to dismiss Claims Two, Three, Four, Six, Thirteen and Fourteen

7    of the First Amended Complaint, and to strike Claim Twelve, paragraph 141 and the jury trial

8    demand from the First Amended Complaint.  The motions will be based upon this Notice, the at-

9    tached Motions and Brief (including supporting papers) in support of the Motions, as well as any

10   other matters the Court may consider.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO STAY AND COMPEL ARBITRATION OR
IN THE ALTERNATIVE TO DISMISS AND STRIKE                    - 2 -                                    22757\1404844.2

1

**MOTIONS**

2        Pursuant to Civil Local Rule 7-2 and Federal Rule of Civil Procedure 12(b)(3), defendants

3    VCH Salinas I LLC, Norm Yop Inc. and Monica Faranda (the "Developer Defendants") hereby

4    move for an order staying the litigation and compelling Plaintiffs to submit their claims against

5    the Developer Defendants to alternative dispute resolution according to the procedures set forth in

6    the contracts between Plaintiffs the Developer Defendants.

7        In the alternative, pursuant to Federal Rule of Civil Procedure 12(b)(6), the Developer De-

8    fendants hereby move for an order dismissing Plaintiffs' Claims Two, Three, Four, Six, Thirteen

9    and Fourteen on the following grounds:

10        1.    Claim Two:  Plaintiffs fail to state a claim against the Developer Defendants under

11    the Equal Credit Opportunity Act because the Developer Defendants are not "creditors," and the

12    Agreements were not "credit transactions" as the statute defines those terms;

13        2.    Claim Three:  Plaintiffs fail to state a claim against the Developer Defendants un-

14    der the Racketeering Influenced and Corrupt Organizations Act because the Agreements have

15    only an incidental impact on interstate commerce, Plaintiffs fail to plead mail or wire fraud with

16    particularity, and Plaintiffs fail to plead a "pattern of racketeering activity";

17        3.    Claim Four:  Plaintiffs fail to state a claim against the Developer Defendants under

18    the Real Estate and Settlement Procedures Act because they allege no facts as to the Developer

19    Defendants' conduct;

20        4.    Claim Six:  Plaintiffs fail to state a claim against the Developer Defendants under

21    California Civil Code section 1632 because that provision, by its own terms, does not apply to the

22    contracts between Plaintiffs and the Developer Defendants;

23        5.    Claim Thirteen:  Plaintiffs fail to state a claim that the Developer Defendants

24    breached any fiduciary duties because Plaintiffs expressly concede that the Developer Defendants

25    owed them no such duties;

26        6.    Claim Fourteen:  Plaintiffs fail to state a claim for negligence against the Devel-

27    oper Defendants because they allege no facts showing that the Developer Defendants owed Plain-

28    tiffs a duty of reasonable care, or that the Developer Defendants breached any such duty.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOTION TO STAY AND COMPEL ARBITRATION OR
IN THE ALTERNATIVE TO DISMISS AND STRIKE

- 3 -

22757\1404844.2

1    Finally, pursuant to Federal Rule of Civil Procedure 12(f), the Developer Defendants

2    hereby move to strike Claim Twelve on the ground that it is a re-statement of Claim Ten and is

3    therefore redundant.  The Developer Defendants also move to strike paragraph 141 on the ground

4    that it contains immaterial and impertinent matter.  Specifically, it seeks punitive damages for

5    negligence, which is not permissible here.  The Developer Defendants also move to strike Plain-

6    tiffs' demand for a jury trial because Plaintiffs waived their rights to a jury trial when they signed

7    their purchase agreements.

8    These Motions are based on the attached Notice of Motion, Brief (and supporting papers)

9    in support of the Motions, and such other matters as the Court may consider at the hearing of

10   these Motions.

11

12   Dated: January 2, 2008                    FARELLA BRAUN & MARTEL LLP

13

14                                             By:      /s/  Mark D. Petersen
                                                        Mark D. Petersen
15
                                               Attorneys for Defendants
16                                             VCH Salinas I LLC, Norm Yop Inc. and
                                               Monica Faranda
17

18

19

20

21

22

23

24

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOTION TO STAY AND COMPEL ARBITRATION OR
IN THE ALTERNATIVE TO DISMISS AND STRIKE            - 4 -                    22757\1404844.2

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................................ 1

II.   FACTUAL BACKGROUND ...................................................................................... 1

      A.    Plaintiffs Bought High-End Homes In Salinas ......................................... 1

      B.    Plaintiffs' Agreements Each Contain An Alternative Dispute Resolution
            Provision ...................................................................................................... 2

      C.    Plaintiffs Sue In Federal Court And Refuse To Arbitrate ........................ 3

III.  ARGUMENTS IN SUPPORT OF MOTIONS TO STAY LITIGATION AND
      COMPEL ARBITRATION ........................................................................................ 4

      A.    The Court Should Stay The Litigation And Compel Arbitration As Re-
            quired In The Plaintiffs' Agreements With The Developer Defendants ... 4

            1.    Plaintiffs Agreed To Arbitrate Any Disputes Arising Under Their
                  Agreements ....................................................................................... 5

            2.    Plaintiffs Have Refused To Submit To Arbitration ........................ 5

            3.    This Dispute Arises Under The Agreement ..................................... 5

            4.    The Court Must Stay This Litigation And Compel Plaintiffs To Ar-
                  bitrate ................................................................................................ 6

IV.   ARGUMENTS IN SUPPORT OF MOTIONS TO DISMISS AND STRIKE .......... 7

      A.    The Court Should Dismiss The Equal Credit Opportunity Act Claim Be-
            cause The Developer Defendants Did Not Extend Credit To Plaintiffs. .. 7

      B.    Plaintiffs Fail To State A RICO Claim Because They Do Not Allege A
            Connection With Interstate Commerce, Predicate Acts, Or A Pattern Of
            Racketeering Activity ................................................................................. 9

            1.    Plaintiffs' Home Purchases Are Not Connected With Interstate
                  Commerce ....................................................................................... 10

            2.    Plaintiffs Do Not Allege Mail Or Wire Fraud With Particularity ... 11

            3.    Plaintiffs Fail To Plead A "Pattern" Of Racketeering Activity ..... 13

                  a.    Plaintiffs Do Not Allege A Sufficient Number Of Predicate
                        Crimes ................................................................................. 13

                  b.    Plaintiffs Do Not Allege Closed-Ended Continuity ........... 14

                  c.    Plaintiffs Do Not Allege Open-Ended Continuity Either ... 15

            4.    Plaintiffs' Conspiracy Claim Fails Because Their RICO Claim Fails ... 15

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MOTION TO STAY AND COMPEL ARBITRATION OR
IN THE ALTERNATIVE TO DISMISS AND STRIKE

- i -

22757\1404844.2

C.    Plaintiffs' Claims Four, Thirteen And Fourteen Fail To Allege Any Facts Against The Developer Defendants. .................................................................... 15

D.    The Developer Defendants Were Not Required To Provide Spanish Language Translations Of The Agreements................................................................ 17

E.    The Court Must Strike The Complaint's Redundant And Impertinent Matters ...................................................................................................................... 18

1.    Claim Twelve Is A Restatement Of Claim Ten, And Is Thus Redundant.................................................................................................... 18

2.    Paragraph 141 Improperly Seeks Punitive Damages For Negligence ...... 19

3.    Plaintiffs Agreed To Waive Their Right To A Jury Trial........................ 19

V.    CONCLUSION ........................................................................................................... 20

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOTION TO STAY AND COMPEL ARBITRATION OR
IN THE ALTERNATIVE TO DISMISS AND STRIKE

- ii -

22757\1404844.2

1

## <u>TABLE OF AUTHORITIES</u>

2

Page

3

### FEDERAL CASES

4

Airola v. King,
    505 F. Supp. 30 (D. Ariz. 1980)........................................................... 5

5

Allwaste, Inc. v. Hecht,
    65 F.3d 1523 (9th Cir. 1995)............................................................. 14

6

Argueta v. Banco Mexicano, S.A.,
    87 F.3d 320 (9th Cir. 1996)................................................................ 4

7

8

Auto. Mech. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.,
    502 F.3d 740 (7th Cir. 2007).............................................................. 4

9

Bajorat v. Columbia-Breckenridge Dev. Corp.,
    944 F. Supp. 1371 (N.D. Ill. 1996) ........................................... passim

10

Barnette v. Brook Road, Inc.,
    457 F. Supp. 2d 647 (E.D. Va. 2006) ................................................ 8

11

12

Best Deals on TV, Inc. v. Naveed,
    2007 WL. 2825652 (N.D. Cal. Sept. 26, 2007) .............................. 12

13

Boeing Co. v. Agric. Ins. Co.,
    2005 WL. 2276770 (W.D. Wash. Sept. 19, 2005) ............................ 7

14

Branch v. Tunnel,
    14 F.3d 449 (9th Cir. 1994)................................................................ 2

15

16

In re Brazil,
    21 B.R. 333 (N.D. Ohio 1982) .......................................................... 8

17

Brooke v. Schlesinger,
    898 F. Supp. 1076 (S.D.N.Y. 1995)........................................... 12, 14

18

Brown v. Cassens Transp. Co.,
    492 F.3d 640 (6th Cir. 2007)............................................................ 11

19

20

Buckeye Check Cashing, Inc. v. Cardegna,
    546 U.S. 440 (2006).......................................................................... 7

21

Crab House of Douglaston, Inc. v. Newsday, Inc.,
    418 F. Supp. 2d 193 (E.D.N.Y. 2006) ............................................ 11

22

In re Delorean Motor Co.,
    991 F.2d 1236 (6th Cir. 1993)............................................................ 7

23

24

Edwards v. Marin Park, Inc.,
    356 F.3d 1058 (9th Cir. 2004).......................................................... 11

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MOTION TO STAY AND COMPEL ARBITRATION OR
IN THE ALTERNATIVE TO DISMISS AND STRIKE

- iii -

22757\1404844.2

H.J. Inc. v. Northwestern Bell Tel. Co.,
    492 U.S. 229 (1989) .................................................................................... 11, 13, 14

Hernandez v. Ballesteros,
    333 F. Supp. 2d 6 (D.P.R. 2004) ......................................................................... 11

Hope v. Otis Elevator Co.,
    389 F. Supp. 2d 1235 (E.D. Cal. 2005) ................................................................. 5

Horn v. Ray E. Friedman & Co.,
    776 F.2d 777 (8th Cir. 1985) ............................................................................. 12

Lim v. Offshore Specialty Fabricators, Inc.,
    404 F.3d 898 (5th Cir. 2005) ............................................................................... 4

Mediterranean Enter., Inc. v. Ssangyong Corp.,
    708 F.2d 1458 (9th Cir. 1983) ............................................................................. 5

Micks at Pennsylvania Avenue, Inc. v. BOD, Inc.,
    389 F.3d 1284 (D.C. Cir. 2004) .......................................................................... 8

Midwest Grinding Co., Inc. v. Spitz,
    976 F.2d 1016 (7th Cir. 1992) ................................................................. 11, 12, 13

Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,
    460 U.S. 1 (1983) ................................................................................................ 6

Musick v. Burke,
    913 F.2d 1390 (9th Cir. 1990) ........................................................................... 10

Pareto v. F.D.I.C.,
    139 F.3d 696 (9th Cir. 1998) ............................................................................... 7

Roberts v. Walmart Stores, Inc.,
    736 F. Supp. 1527 (E.D. Mo. 1990) ..................................................................... 8

Rosales v. Citibank, Fed. Sav. Bank,
    133 F. Supp. 2d 1177 (N.D. Cal. 2001) .............................................................. 19

Sedima, S.P.R.L. v. Imrex Co., Inc.,
    473 U.S. 479 (1985) .............................................................................. 9, 12, 13

Simula, Inc. v. Autoliv, Inc.,
    175 F.3d 716 (9th Cir. 1999) ............................................................................... 6

United States v. Cady,
    567 F.2d 771 (8th Cir. 1977) ............................................................................. 11

United States v. Juvenile Male,
    118 F.3d 1344 (9th Cir. 1997) ........................................................................... 10

Wilkerson v. Butler,
    229 F.R.D. 166 (E.D. Cal. 2005) ................................................................. 18, 19

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MOTION TO STAY AND COMPEL ARBITRATION OR
IN THE ALTERNATIVE TO DISMISS AND STRIKE

- iv -

22757\1404844.2

1

**STATE CASES**

2

3  Charnay v. Cobert,
       145 Cal. App. 4th 170 (2d Dist. 2006) ............................................................... 16
4
   Everest Investors 8 v. Whitehall Real Estate Ltd P'ship XI,
5      100 Cal. App. 4th 1102 (2d Dist. 2002) ............................................................. 17

6  Lovejoy v. AT&T Corp.,
       92 Cal. App. 4th 85 (3d Dist. 2001) ............................................................ 18, 19
7
   Reid v. Moskovitz,
8      208 Cal. App. 3d 29 (1989) ................................................................................ 19

9  Wolf v. Superior Court,
       107 Cal. App. 4th 25 (2d Dist. 2003) ................................................................. 16
10

11

**FEDERAL STATUTES**

12  9 U.S.C. § 1 ............................................................................................................... 6
       § 3 ............................................................................................................ 7
13     § 4 ............................................................................................................ 7

14  15 U.S.C. § 1691(a) .............................................................................................. 7, 8

15  18 U.S.C. § 1343 ..................................................................................................... 12
       § 1961 .......................................................................................... 11, 13
16     § 1962(c) ................................................................................ 9, 10, 11

17  Fed. R. Civ. P. 12 ............................................................................................ 4, 7, 18

18  Fed. R. Civ. P. 53 ...................................................................................................... 5

19

**STATE STATUTES**

20  Cal. Civ. Code § 1572 ............................................................................................. 18
       § 1632 .................................................................................. 17, 18
21     § 1710 ........................................................................................ 18

22  Cal. Code Civ. P. §§ 638-645.1 ............................................................................... 3

23

24

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MOTION TO STAY AND COMPEL ARBITRATION OR
IN THE ALTERNATIVE TO DISMISS AND STRIKE

- v -

22757\1404844.2

# I.
# INTRODUCTION

Plaintiffs are seven individuals who bought homes in Salinas that each cost more than $700,000.  Now, more than two years later, Plaintiffs claim they were duped into making these purchases by everyone from the company that built the homes to the lenders who underwrote their purchase loans.  According to Plaintiffs' First Amended Complaint, the builder and the builder's real estate agents represented that Plaintiffs' homes could never go down in value (because the builder apparently controlled market prices for homes), and guaranteed Plaintiffs' investments by promising to buy back Plaintiffs' homes at any time within the first two years – no questions asked – for 105% of the original purchase price.  It all sounded too good to be true.  Only now, Plaintiffs claim, do they realize that they purchased "overpriced" homes that they allegedly cannot afford.  And without any irony – or apparent recognition that they are employing the same stereotypes they decry – they blame the builder and the builder's real estate agents for their predicament:  they could not understand what they were getting into, they allege, because they are Spanish speakers.

Plaintiffs therefore filed a fourteen count complaint, alleging everything from negligence to RICO claims.  None of these claims have merit.  Several fail to state a claim.  But all of them are subject to the alternative dispute resolution clause in the contracts Plaintiffs signed.

# II.
# FACTUAL BACKGROUND

## A.    Plaintiffs Bought High-End Homes In Salinas.

Plaintiffs bought expensive homes in a master-planned community called Tuscany at Monte Bella in Salinas in late 2005 and early 2006.  Defendant VCH Salinas I, LLC ("VCH") built the homes and defendants Norm Yop, Inc. ("Yop") and Monica Faranda ("Faranda") acted as real estate agents, facilitating the homes' sales.[1]  As Plaintiffs allege, the homes in the development ranged in price from $660,000 to $809,000.  See First Am. Compl. ("FAC") ¶ 33.  Plain-

---

[1] For convenience, VCH, Yop and Faranda together will be called the "Developer Defendants."

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MOTION TO STAY AND COMPEL ARBITRATION OR
IN THE ALTERNATIVE TO DISMISS AND STRIKE                - 1 -                22757\1404844.2

1  tiffs did not buy the least expensive of these expensive homes; the homes they bought ranged in

2  price from $713,815 to $786,498.  See id. ¶ 55.  And Plaintiffs did not buy the base models of

3  their respective homes either: each paid extra for upgraded features, sometimes at substantial ad-

4  ditional cost.  Thus, the Agreements indicate that Eleazar and Rocio Becerra spent an additional

5  $22,565 on extras like cherry wood cabinets, stainless steel appliances, and an upgraded tile floor

6  and countertops.[2]  See Decl. of Frank J. Riebli submitted herewith ("Riebli Decl.") Ex. C (Be-

7  cerra Purchase Agmt, Addendum & Ex. 1).  This was over and above their home's base price of

8  $763,933.  Id.  Jose Urtiz and Berenice Gonzalez spent an additional $11,083 on extras such as a

9  jetted tub in the master bathroom and upgraded tile floors and countertops.  See Riebli Decl. Ex.

10  D (Urtiz Purchase Agmt, Addendum & Ex. 1).  This was in addition to their home's base price of

11  $746,282.  Id.

12      Plaintiffs did not obtain any financing through the Developer Defendants.  They bought

13  their homes with money from third-party lenders whom they have also named as defendants.  Id.

14  ¶¶ 48-51.

15  **B.    Plaintiffs' Agreements Each Contain An Alternative Dispute Resolution Provision.**

16      When Plaintiffs bought their homes, they signed purchase agreements ("Agreements"),

17  each of which includes an identical alternative dispute resolution provision.  Entitled "Judicial

18  Reference," that provision states in relevant part:

19          If either party to this Purchase Agreement commences a legal pro-
            ceeding for a dispute arising under this Purchase Agreement . . . all
20          the issues in such action, whether of fact or law, shall be resolved
            by judicial reference pursuant to the provisions of California Code
21          of Civil Procedure Sections 638 through 645.1.

---

[2] Plaintiffs incorporated their Agreements into the FAC by reference when they based claims on
the contracts and pleaded specific provisions (e.g., the "105% guarantee").  See Branch v. Tunnel,
14 F.3d 449, 454 (9th Cir. 1994).  Accordingly, the Court may consider these documents without
converting this motion into a motion for summary adjudication.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOTION TO STAY AND COMPEL ARBITRATION OR
IN THE ALTERNATIVE TO DISMISS AND STRIKE

- 2 -

22757\1404844.2

1    See, e.g., Becerra Agmt ¶ 14.3A.[3]  The California Civil Procedure code sections to which para-

2    graph 14.3A refers provide for a judge to appoint a referee – whom the parties select and pay as

3    provided in their agreement – to try the case when the parties have agreed to that type of dispute

4    resolution.  See Cal. Code Civ. P. §§ 638-645.1.  Paragraph 14.3A thus sets forth procedures for

5    selection of a neutral referee, id. ¶ 14.3A(ii), authorizes that person "to try any and all of the is-

6    sues raised," id. ¶ 14.3A(iv), to "provide all remedies available in law or equity," id. ¶ 14.3A(v),

7    and to issue a binding decision, id. ¶ 14.3A(xiii).

8         The Agreements repeatedly refer to paragraph 14.3A as an "arbitration provision," and

9    describe the alternative dispute resolution procedures set forth as "binding arbitration proce-

10   dures."  Id. ¶¶ 14.2 (Notice), 14.3B.  Paragraph 14.3A's "binding arbitration procedures" are to be

11   "implemented in accordance with the philosophy and intent of the Federal Arbitration Act (9

12   U.S.C. Section 1 et seq.)."  Id. (providing further that "[t]he Arbitration shall be conducted pur-

13   suant to the FAA").  Each of the Plaintiffs separately initialed paragraph 14.3A, as well as each of

14   the three pages that paragraph spans.  See id. at 10-12.  Their initials sit directly beneath a bolded

15   sentence:  "**The parties acknowledge and accept that they are waiving their right to a jury**

16   **trial**."  Id. ¶ 14.3A (emphasis in original).

17   C.   **Plaintiffs Sue In Federal Court And Refuse To Arbitrate.**

18        Plaintiffs filed this lawsuit on November 8, 2007, and filed their First Amended Com-

19   plaint on November 21, 2007.  The crux of Plaintiffs' Complaint is that they were sold homes on

20   unfair terms because they were Spanish-speaking, and that other purchasers got better terms.

21   FAC ¶¶ 63-65.  Plaintiffs do not allege that the Developer Defendants used different contracts

22   with them than with any other buyer.  To the contrary, the Agreement is a form contract.  See Be-

23   cerra Agmt.  And Plaintiffs do not allege that non-Spanish speaking buyers got better prices on

24   the homes or upgrades.

25

26   [3] For simplicity, this brief will refer to the procedures set forth in paragraph 14.3A as "arbitra-
     tion."  As described more fully below, the Agreement itself uses that term repeatedly.  See, e.g.,
27   Becerra Agmt ¶¶ 14.2 Notice, 14.3B.  In addition, since the Agreements are all identical, save for
     home prices and upgrades, this brief will refer throughout to the Becerra Agreement ("Becerra
28   Agmt") when analyzing specific provisions.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOTION TO STAY AND COMPEL ARBITRATION OR
IN THE ALTERNATIVE TO DISMISS AND STRIKE         - 3 -                    22757\1404844.2

1    Plaintiffs do not claim, therefore, that other purchasers actually got more favorable terms

2    (at least from the Developer Defendants). Rather, they claim that other purchasers understood the

3    same terms more fully than did Plaintiffs. Thus, they allege that they carried out their negotia-

4    tions with Yop and Faranda in Spanish but that the Agreements they signed were in English. <u>Id.</u>

5    ¶¶ 34, 36. Yet only Berenice Gonzalez and Jose Urtiz allege that they do not read or understand

6    English fluently. <u>Id.</u> ¶ 48. Indeed, it appears from the FAC that all of the entities Plaintiffs dealt

7    with gave Plaintiffs contracts in English. <u>See</u>, <u>e.g.</u>, FAC ¶¶ 38, 48, 52.

8    Nonetheless, Plaintiffs claim that they were induced to buy $750,000 homes by – among

9    other things – the Developer Defendants' alleged representations that this was a no-risk invest-

10    ment with a guaranteed profit. FAC ¶¶ 35, 38, 40, 42, 44. At some point thereafter, Plaintiffs

11    allege they became unable to make their mortgage payments, and asked the Developer Defen-

12    dants to buy back their homes at 105% of the purchase price. <u>Id.</u> ¶ 54. The Developer Defen-

13    dants allegedly refused. <u>Id.</u>

14    On December 12, 2007, the Developer Defendants formally requested that Plaintiffs sub-

15    mit their dispute to arbitration under the alternative dispute resolution provision in their Agree-

16    ments. <u>See</u> Riebli Decl. ¶ 2 & Ex. A. Plaintiffs refused. <u>See id.</u> Ex. B.

### III.
### ARGUMENTS IN SUPPORT OF MOTIONS TO
### STAY LITIGATION AND COMPEL ARBITRATION

**A.    The Court Should Stay The Litigation And Compel Arbitration As Required In The Plaintiffs' Agreements With The Developer Defendants.**

21    The Developer Defendants move, pursuant to Civil Local Rule 7-2 and Federal Rule of

22    Civil Procedure 12(b)(3), for an order staying this litigation and directing Plaintiffs to use the al-

23    ternative dispute resolution procedures set forth in their Agreements. <u>See</u> <u>Auto. Mech. Local 701</u>

24    <u>Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.</u>, 502 F.3d 740, 746 (7th Cir. 2007)

25    (stating that the "majority rule" allows a motion to enforce an ADR provision to be brought under

26    Rule 12(b)(3)); <u>Lim v. Offshore Specialty Fabricators, Inc.</u>, 404 F.3d 898, 902 (5th Cir. 2005)

27    (noting that arbitration provisions are treated like forum selection clauses and thus that motions to

28    dismiss to enforce them are appropriately brought under 12(b)(3)); <u>Argueta v. Banco Mexicano,</u>

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MOTION TO STAY AND COMPEL ARBITRATION OR
IN THE ALTERNATIVE TO DISMISS AND STRIKE

- 4 -

22757\1404844.2

1    S.A., 87 F.3d 320, 324 (9th Cir. 1996) (Rule 12(b)(3) is proper vehicle to invoke a forum selec-

2    tion clause).  It is Plaintiffs' burden to show that they have chosen the proper forum and venue.

3    Hope v. Otis Elevator Co., 389 F. Supp. 2d 1235, 1243 (E.D. Cal. 2005); Airola v. King, 505 F.

4    Supp. 30, 31 (D. Ariz. 1980).  Thus, Plaintiffs must show the arbitration provision does not apply.

> ### 1.    Plaintiffs Agreed To Arbitrate Any Disputes Arising Under Their Agreements.

5 
6         Plaintiffs agreed to "arbitrate" all disputes arising under their Agreements.  Each Plaintiff

7    signed an Agreement, and each of those Agreements contains an arbitration provision.  See FAC

8    ¶¶ 38, 40, 42, 44; Becerra Agmt ¶ 14.3A.  And each Plaintiff separately initialed paragraph

9    14.3A's ADR provision, as well as the three pages that paragraph 14.3A spans.  Id.

10

> ### 2.    Plaintiffs Have Refused To Submit To Arbitration.

11         On December 12, 2007, the Developer Defendants formally requested that Plaintiffs sub-

12    mit their claims to arbitration according to the procedure set forth in the Agreement.  See Riebli

13    Decl. ¶ 2 & Ex. A.  Plaintiffs' counsel finally responded on December 20, 2007, refusing to sub-

14    mit to the ADR procedures in Plaintiffs' Agreements.  Id. ¶ 3 and Ex. B.

15

> ### 3.    This Dispute Arises Under The Agreement.

16         The arbitration provision in Plaintiffs' Agreements covers this dispute.  Paragraph 14.3A

17    provides that "[i]f either party to this Purchase Agreement commences a legal proceeding for a

18    dispute arising under this Purchase Agreement . . . all the issues in such action, whether of fact or

19    law, shall be resolved by judicial reference pursuant to the provisions of California Code of Civil

20    Procedure Sections 638 through 645.1."  See, e.g., Becerra Agreement ¶ 14.3A.[4]  The phrase

21    "arising under" captures all disputes relating to the Agreement's interpretation and enforcement.

22    See Mediterranean Enter., Inc. v. Ssangyong Corp., 708 F.2d 1458, 1463-64 (9th Cir. 1983)

23    ("arising hereunder" includes "disputes and controversies relating to the interpretation of the con-

24    tract and matters of performance").  "The standard for demonstrating arbitrability is not high,"

25

26    _____

[4] The procedures Plaintiffs agreed to are analogous to those set forth in Federal Rule of Civil Pro-
cedure 53, which authorizes the Court to appoint a special master to "perform duties consented to
27    by the parties," id. 53(a)(1)(A), to "regulate all proceedings," id. 53(c)(1)(A), and to "take all ap-
propriate measures to perform the assigned duties fairly and efficiently," id. 53(c)(1)(B).

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MOTION TO STAY AND COMPEL ARBITRATION OR
IN THE ALTERNATIVE TO DISMISS AND STRIKE          - 5 -          22757\1404844.2

1   Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 719 (9th Cir. 1999), because "any doubts concerning

2   the scope of arbitrable issues should be resolved in favor of arbitration," Moses H. Cone Mem'l

3   Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983).  Moreover, it is apparent that the par-

4   ties intended the arbitration provision to have a broad scope because they expressly agreed to

5   "cooperate in good faith to ensure that all necessary and appropriate parties are included" in the

6   arbitration.  Becerra Agmt ¶ 14.3A.  This indicates their intent that the arbitration provision even

7   cover disputes not directly arising under the contract (for then there would be no need to cooper-

8   ate to include other "appropriate" parties).[5]

9           Plaintiffs' claims against the Developer Defendants arise under the Agreement.  The crux

10  of Plaintiffs' Complaint is that the Developer Defendants misrepresented one of the Agreement's

11  terms (paragraph 17.1) to induce Plaintiffs to sign.  They also allege that the Developer Defen-

12  dants claimed to have the ability to control market prices, something the Developer Defendants

13  expressly disclaimed in the Agreement.  Compare FAC ¶ 35 with Becerra Agmt Ex. B ¶ 18.  All

14  of Plaintiffs' claims against the Developer Defendants are based on these basic allegations, and

15  on the allegation that the Developer Defendants did not represent these contract provisions to

16  other home buyers in the same way.  Indeed, Plaintiffs have no relationship to the Developer De-

17  fendants other than that formed by their contracts.  While Plaintiffs have managed to describe

18  these basic alleged wrongs in fourteen claims, each claim is rooted in their Agreements and the

19  circumstances surrounding their execution.  Thus, the arbitration provision applies to Plaintiffs'

20  claims against the Developer Defendants.

21          **4.      The Court Must Stay This Litigation And Compel Plaintiffs To Arbitrate.**

22          The parties affirmed that the Agreement should be interpreted and enforced according to

23  principles set forth in the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq, and the cases in-

24  terpreting it.  See Becerra Agmt ¶ 14.3B.  Under the FAA, once a court has satisfied itself that an

25  _____

26  [5] Paragraph 14.3A also covers any disputes that arise prior to close of escrow, and which are not
    covered by the Agreement's other arbitration provision, paragraph 14.2.  Thus, the first sentence
27  of paragraph 14.3A captures pre-close of escrow claims, while (bolded) paragraph 14.3 and the
    second sentence of 14.3A ensure arbitration of claims that arise post-close of escrow.  Since the
28  claims at issue in this case arose after escrow closed, the second sentence of paragraph 14.3A is
    the relevant provision for this analysis.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOTION TO STAY AND COMPEL ARBITRATION OR
IN THE ALTERNATIVE TO DISMISS AND STRIKE                - 6 -                          22757\1404844.2

1  agreement to arbitrate exists and that it covers the disputes before the court, the court must "stay

2  the trial of the action until such arbitration has been had in accordance with the terms of the

3  agreement." 9 U.S.C. § 3. Further, the court must compel the recalcitrant party to submit its

4  claims to arbitration. 9 U.S.C. § 4; <u>Buckeye Check Cashing, Inc. v. Cardegna</u>, 546 U.S. 440, 449

5  (2006). The Developer Defendants therefore request that this Court stay the present action and

6  compel Plaintiffs to submit their claims to arbitration. The Court has the inherent authority to do

7  both. <u>See</u> <u>Boeing Co. v. Agric. Ins. Co.</u>, 2005 WL 2276770 at *6 (W.D. Wash. Sept. 19, 2005).

8
**IV.**
9  **ARGUMENTS IN SUPPORT OF MOTIONS TO DISMISS AND STRIKE**

10       In the alternative, the Developer Defendants move pursuant to Federal Rule of Civil Pro-

11  cedure 12(b)(6) for an order dismissing Plaintiffs' second, third, fourth, sixth, thirteenth and four-

12  teen claims for failure to state a claim, and pursuant to Rule 12(f) for an order striking the twelfth

13  claim, paragraph 141, and the demand for jury trial.

14       On a motion to dismiss, the Court assumes the complaint's factual allegations are true and

15  draws reasonable inferences in Plaintiffs' favor. <u>See</u> <u>Pareto v. F.D.I.C.</u>, 139 F.3d 696, 699 (9th

16  Cir. 1998). But while it construes the complaint in the light most favorable to Plaintiffs, it need

17  not accept as true conclusory allegations or legal conclusions. <u>See</u> <u>In re Delorean Motor Co.</u>, 991

18  F.2d 1236, 1240 (6th Cir. 1993).

19
**A.    The Court Should Dismiss The Equal Credit Opportunity Act Claim Because The**
20       **Developer Defendants Did Not Extend Credit To Plaintiffs.**

21       Plaintiffs' Second Claim alleges that the Developer Defendants extended Plaintiffs credit

22  on less favorable terms than other home buyers received, and thereby violated the Equal Credit

23  Opportunity Act ("ECOA"). FAC ¶¶ 70-71. The ECOA, 15 U.S.C. sec. 1691(a), prohibits

24  "creditors" from discriminating "with respect of any aspect of a credit transaction" on the basis of

25  national origin. The ECOA defines "credit" as "the right granted by a creditor to a debtor to defer

26  payment of debt or to incur debts and defer its payment or to purchase property or services and

27  defer payment therefor." <u>Id.</u> § 1691a(d). It further defines a "creditor" as "any person who regu-

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MOTION TO STAY AND COMPEL ARBITRATION OR
IN THE ALTERNATIVE TO DISMISS AND STRIKE                - 7 -                22757\1404844.2

1  larly extends . . . credit," and "any person who regularly arranges for the extension . . . of credit."

2  Id. § 1691(a)(3).

3  Thus, a car dealership was considered to be a creditor – because it arranged for the exten-

4  sion of credit – where it determined the buyer's creditworthiness, set the terms of the loan (using

5  lenders' guidelines) and then shopped the buyer's loan application to different lenders.  See

6  Barnette v. Brook Road, Inc., 457 F. Supp. 2d 647, 654 (E.D. Va. 2006).  And a gas utility was

7  considered a creditor because it regularly provided gas to its customers and allowed them to pay

8  in arrears.  In re Brazil, 21 B.R. 333, 334 (N.D. Ohio 1982).  On the other hand, a court found that

9  Walmart was not a "creditor" just because it allowed its customers to pay with personal checks.

10  Roberts v. Walmart Stores, Inc., 736 F. Supp. 1527, 1529-30 (E.D. Mo. 1990).  And another court

11  found that a restaurant sublease was not a "credit instrument," as the ECOA uses that term, be-

12  cause it merely entitled the sublessor to rent payments for the term of the lease.  Micks at Penn-

13  sylvania Ave., Inc. v. BOD, Inc., 389 F.3d 1284, 1289 (D.C. Cir. 2004).

14  Plaintiffs allege that the Developer Defendants "extended credit to Plaintiffs in the form of

15  a prepayment plan and in the provision of its homes."  FAC ¶ 70.  But Plaintiffs' home purchase

16  transactions have none of the hallmarks of a credit transaction.  First, the FAC does not allege that

17  the Developer Defendants ran credit checks, obtained Plaintiffs' FICO scores, or charged or made

18  any interest off of these purported "credit transactions."  Plaintiffs thus would have the Court be-

19  lieve that the Developer Defendants were in the business of providing free loans to people with

20  unknown credit histories.  This is not credible on its face.  The FAC alleges that, Plaintiffs got

21  their purchase loans from third parties without the Developer Defendants' assistance or involve-

22  ment.  FAC ¶¶ 48 ("Plaintiffs Gonzalez and Urtiz contacted Defendant Universal Mortgage"); 49

23  ("Plaintiffs Rocio and Eleazar Becerra first contacted Defendant IRA Mortgage"); 50 ("Plaintiffs

24  Teresa and J. Guadalupe Contreras sought to get a loan directly with Wells Fargo"); 51 ("Plaintiff

25  Jorge Aguirre pursued a loan with Creative Mortgage").

26  Second, Plaintiffs here did not obtain property in exchange for an agreement to pay later.

27  In Barnette, for example, the debtor received the car in exchange for a promise to pay for it over

28  time.  And In re Brazil, the utility's customers received (and used) natural gas and then paid for it

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOTION TO STAY AND COMPEL ARBITRATION OR
IN THE ALTERNATIVE TO DISMISS AND STRIKE                - 8 -                22757\1404844.2

later.  Here however, the FAC acknowledges that the homes at Monte Bella were built to order: the Developer Defendants "did not have the advertised homes built yet and were only arranging advanced payments that would allow buyers to be first in line as the homes became built."  FAC ¶ 34.  While Plaintiffs made three successive 1% "deposits" prior to the close of escrow, they only received their respective houses once escrow closed and the balance of the purchase price was paid.  The Developer Defendants were thus paid in full before they gave possession of the homes to Plaintiffs.

Additionally, Plaintiffs Eleazar and Rocio Becerra, Jorge Aguirre and J. Guadalupe and Teresa Contreras did not incur any debts prior to the close of escrow (when the transaction consummated) because those plaintiffs' Agreements were contingent upon their obtaining financing.  See, e.g., Becerra Agmt ¶ 2 ("Financing").  In other words, if they incurred a debt at all, it was only a contingent debt.  The ECOA's definition of credit does not include contingent debts.

For all of these reasons, the Court should find that the Agreements were not credit transactions and that the ECOA therefore does not apply.  Accordingly, the Court should dismiss this claim as to the Developer Defendants.

**B.**     **Plaintiffs Fail To State A RICO Claim Because They Do Not Allege A Connection With Interstate Commerce, Predicate Acts, Or A Pattern Of Racketeering Activity.**

Plaintiffs' Claim Three alleges that the Developer Defendants' business of building and selling new homes to willing buyers was in reality a nefarious criminal enterprise and thus that these Defendants violated (see FAC ¶ 75) and conspired to violate (see id. ¶ 79) the Racketeering Influenced and Corrupt Organizations Act ("RICO Act").  To state a RICO claim, Plaintiffs must allege (1) the conduct of (2) an enterprise's affairs (3) through a pattern (4) of racketeering activity (5) that caused injury to Plaintiffs' property.  See 18 U.S.C. § 1962(c) ("It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt"); Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985).  Plaintiffs fail to articulate facts showing that their home purchases were connected with interstate commerce, or

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOTION TO STAY AND COMPEL ARBITRATION OR
IN THE ALTERNATIVE TO DISMISS AND STRIKE                - 9 -                                    22757\1404844.2

1    that the Developer Defendants engaged in a pattern of racketeering activity, or even that the De-

2    veloper Defendants committed any of the required predicate federal crimes.  And since they can-

3    not make out a RICO claim, they also cannot plead a conspiracy to violate RICO.  Accordingly,

4    their claim should be dismissed.

5        **1.    Plaintiffs' Home Purchases Are Not Connected With Interstate Commerce.**

6        The RICO Act only applies to activities which affect interstate commerce.  See 18 U.S.C.

7    § 1962(c).  While the impact on interstate commerce need only be minimal, see United States v.

8    Juvenile Male, 118 F.3d 1344, 1347 (9th Cir. 1997), it is not enough that local activities have

9    merely an incidental effect on interstate commerce, see Musick v. Burke, 913 F.2d 1390, 1398

10   (9th Cir. 1990).  Thus, in Musick, the court refused to find RICO jurisdiction where one mobile

11   catering operation allegedly used violence and price discrimination to prevent a competitor from

12   moving into the same area in the Santa Clarita Valley.  913 F.2d at 1398.  The plaintiff there al-

13   leged that each catering operation – both the predator and prey – sold goods that were obtained

14   from out of state and used trucks made out of state to deliver the food.  Id. at 1393.  This was in-

15   sufficient for purposes of a RICO claim: "As a matter of practical economics," the court held, "it

16   is difficult to perceive . . . any substantial impact on interstate commerce."  Id. at 1397.

17       Similarly, Plaintiffs' home purchases here had little if any impact on interstate commerce.

18   The FAC alleges that a California corporation (VCH) located in Salinas developed homes in

19   Salinas, advertised those homes in Salinas (in a "massive local area marketing campaign," FAC

20   ¶ 32), and then sold those homes to seven Salinas residents, using a Salinas-based realty company

21   (Monte Bella).  Plaintiffs fail to allege any activity outside the community of Salinas.  Nor do

22   they allege any impact on interstate commerce as a result of their home purchases.

23       Indeed, Plaintiffs' only allegation of a connection to interstate commerce is the conclusory

24   assertion that "Defendants" (without indicating which defendants) "utilized U.S. mail and inter-

25   state carriers along with interstate telephone lines to discuss and transfer fraudulent documents

26   and marketing materials."  FAC ¶ 76.  For the reasons stated below, this boilerplate allegation is

27   not sufficient and lacks any factual support in the FAC.  At best, the FAC describes only an inci-

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOTION TO STAY AND COMPEL ARBITRATION OR
IN THE ALTERNATIVE TO DISMISS AND STRIKE          - 10 -                    22757\1404844.2

1   dental impact on interstate commerce.  This is not sufficient for a RICO claim.  The Court there-

2   fore should dismiss Plaintiffs' section 1962(c) claim.

3       **2.      Plaintiffs Do Not Allege Mail Or Wire Fraud With Particularity.**

4       The RICO claim also fails because Plaintiffs have not adequately alleged predicate crimi-

5   nal acts.  A RICO claim requires a pattern of racketeering activity.  See 18 U.S.C. § 1962(c); H.J.

6   Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 236 (1989).  To meet that element, Plaintiffs

7   must plead that the Developer Defendants committed any of several statutorily enumerated

8   crimes.  See 18 U.S.C. § 1961(1)(B).  Plaintiffs allege mail and wire fraud.  FAC ¶ 76 (alleging

9   violations of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud)).  Pleadings alleg-

10  ing mail and wire fraud are subject to Federal Rule 9(b)'s heightened pleading requirements.  See

11  Edwards v. Marin Park, Inc., 356 F.3d 1058, 1065-66 (9th Cir. 2004).  Thus, Plaintiffs were re-

12  quired to plead the time, place and content of the alleged communications perpetrating the fraud.

13  See Midwest Grinding Co., Inc. v. Spitz, 976 F.2d 1016, 1020 (7th Cir. 1992); Bajorat v. Colum-

14  bia-Breckenridge Dev. Corp., 944 F. Supp. 1371, 1380 (N.D. Ill. 1996 ("Without knowing the

15  dates and specific number of these mailings, the court cannot consider these activities as predicate

16  acts.").  Indeed, "[t]o plead with specificity in RICO, the plaintiff must go beyond a showing of

17  fraud and state the time, place and content of the alleged mail and wire communication perpetrat-

18  ing that fraud."  Hernandez v. Ballesteros, 333 F. Supp. 2d 6, 11 (D.P.R. 2004).  See also Crab

19  House of Douglaston, Inc. v. Newsday, Inc., 418 F. Supp. 2d 193, 211 (E.D.N.Y. 2006) (finding,

20  that even though plaintiffs there pleaded "a general scheme to defraud," their mail fraud allega-

21  tions were insufficient because they "fail[ed] to articulate the contents of the letters, where they

22  were mailed, and to whom").

23      Plaintiffs were also required to plead how the use of the mail or wires was in furtherance

24  of the alleged fraud scheme.  See United States v. Cady, 567 F.2d 771, 775-76 (8th Cir. 1977)

25  ("Nonetheless, there must be evidence that the mailings were sufficiently closely related to the

26  scheme to bring the defendant's conduct within the statute.") (internal quotation and punctuation

27  marks omitted).  Finally, several circuits have required plaintiffs in civil RICO cases to plead reli-

28  ance upon the allegedly fraudulent mailing or interstate communication.  See, e.g., Brown v. Cas-

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOTION TO STAY AND COMPEL ARBITRATION OR
IN THE ALTERNATIVE TO DISMISS AND STRIKE                - 11 -                22757\1404844.2

1  sens Transp. Co., 492 F.3d 640, 643 (6th Cir. 2007); Horn v. Ray E. Friedman & Co., 776 F.2d

2  777, 782 (8th Cir. 1985).  Plaintiffs' mail and wire fraud allegations fail to meet these require-

3  ments.

4       First, wire fraud extends only to interstate communications.  18 U.S.C. § 1343 ("Whoever,

5  having devised . . . any scheme or artifice to defraud . . . transmits or causes to be transmitted by

6  means of wire, radio, or television communication in interstate or foreign commerce . . . .");

7  Midwest Grinding, 976 F.2d at 1024 n.7; Brooke v. Schlesinger, 898 F. Supp. 1076, 1082-83

8  (S.D.N.Y. 1995).  Plaintiffs allege conclusorily that "Defendants" – again, without indicating

9  whom – used "interstate telephone lines to discuss and transfer fraudulent documents and market-

10  ing materials."  FAC ¶ 76.  They do not allege who used the telephone, when, where, what was

11  said, or how that statement furthered the alleged fraud scheme.  Indeed, since the only members

12  of the alleged RICO enterprise and the alleged victims are all in Salinas, see FAC ¶¶ 18-21, there

13  are no factual allegations in the FAC to support an inference that any such telephone calls crossed

14  state lines.[6]  Indeed, Plaintiffs' only factual allegations are that the Developer Defendants "em-

15  barked on a massive local area marketing campaign."  FAC ¶ 32 (emphasis added).  This factual

16  allegation undermines the conclusory assertion that the Developer Defendants used interstate

17  wires.  Plaintiffs do not state a wire fraud claim.

18       Plaintiffs' mail fraud claims are similarly lacking.  To begin, courts are particularly skep-

19  tical of RICO claims built solely on mail and wire fraud predicates.  "The widespread abuse of

20  civil RICO stems from the fact that all modern business transactions entail use of the mails or

21  wires – giving plaintiffs a jurisdictional hook – and the fact that RICO offers a far more generous

22  compensation scheme than typically available in state court."  Midwest Grinding, 976 F.2d at

23  1025.  Indeed, RICO claims founded on mail and wire fraud have come to symbolize exactly the

24  abuse Congress feared when it enacted RICO.  See Sedima, 473 U.S. 498 ("Instead of being used

25  against mobsters and organized criminals, it has become a tool for everyday fraud cases brought

26  against respected and legitimate enterprises.") (internal quotation marks omitted).  See also Bajo-

27

28  ---
[6] The Court need not assume the truth of legal conclusions, even when they are cast as factual al-legations.  Best Deals on TV, Inc. v. Naveed, 2007 WL 2825652 at *4 (N.D. Cal. Sept. 26, 2007).

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MOTION TO STAY AND COMPEL ARBITRATION OR
IN THE ALTERNATIVE TO DISMISS AND STRIKE          - 12 -          22757\1404844.2

1    rat, 944 F. Supp. at 1379 (saying that the 7th Circuit "does not look favorably" on complaints re-

2    lying on mail and wire fraud as RICO predicates).

3    Here, Plaintiffs allege only that "Defendants utilized U.S. mail . . . to . . . transfer fraudu-

4    lent documents and marketing materials."  FAC ¶ 76.  As with the wire fraud allegation, Plaintiffs

5    allege no facts showing who used the mail, when, or what the person sent, and how that was in

6    furtherance of the alleged RICO scheme.  Indeed, the only facts Plaintiffs allege undercut their

7    mail fraud assertion: the "massive local area marketing campaign" allegedly included "television,

8    print advertising, Internet, signage, 'word of mouth' marketing to local real estate professionals

9    and other advertising."  FAC ¶ 32.  Plaintiffs nowhere allege that any of the Developer Defen-

10   dants deposited a document into the U.S. mail in furtherance of the alleged fraud scheme.  Nor do

11   Plaintiffs allege that any of them relied on anything they received by mail.  These allegations do

12   not support a mail fraud claim.

13   For these reasons, the FAC fails to allege the required predicate crimes and Plaintiffs'

14   RICO claim fails.

### 3.    Plaintiffs Fail To Plead A "Pattern" Of Racketeering Activity.

16   The RICO claim also fails because Plaintiffs failed to allege a "pattern" of racketeering

17   activity.  Showing a "pattern" requires two things: a sufficient number of events, and continuity

18   of related criminal conduct.  See H.J., Inc., 492 U.S. at 236-239; Bajorat, 944 F. Supp. at 1378.

19   Plaintiffs allege neither.

#### a.    Plaintiffs Do Not Allege A Sufficient Number Of Predicate Crimes.

21   The RICO Act defines a "pattern of racketeering activity" as "at least two acts of racket-

22   eering activity" within 10 years.  18 U.S.C. § 1961(5).  "Congress enacted RICO in an attempt to

23   eradicate organized, long-term criminal activity," namely, the mob.  Midwest Grinding, 976 F.2d

24   at 1019.  Thus, while the statute requires only two predicate acts within 10 years, its use of the

25   phrase "at least" implies "that while two acts are necessary, they may not be sufficient."  Sedima,

26   473 U.S. at 496 n.14.  Here, Plaintiffs allege no specific predicate acts.  And the FAC only sup-

27   ports an inference that there were four acts over a four-month period.  This is not sufficient.

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOTION TO STAY AND COMPEL ARBITRATION OR
IN THE ALTERNATIVE TO DISMISS AND STRIKE          - 13 -                    22757\1404844.2

b.    **Plaintiffs Do Not Allege Closed-Ended Continuity.**

Further, the concept of "pattern" requires continuity of and relatedness between criminal activities.  H.J. Inc., 492 U.S. at 239.  Continuity is both a "closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."  H.J. Inc., 492 U.S. at 241.  "A closed-ended pattern consists of a series of related predicates extending over a substantial period of time."  Brooke, 898 F. Supp. at 1084.  Open-ended continuity requires (1) a specific threat of repetition, (2) the predicate acts are a regular way of doing business, or (3) the predicate acts can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes.  Bajorat, 944 F. Supp. at 1380-81.  Plaintiffs do not allege facts showing either closed- or open-ended continuity.

First, in a closed-ended case, plaintiffs must allege a substantial number of predicate acts extending over a long period.  Brooke, 898 F. Supp. At 1084.  While there is no requirement that a defendant participate in more than one scheme, short-lived schemes with single purposes usually fail to meet the continuity requirement.  Id.; H.J. Inc., 492 U.S. at 240 ("involve[ment] in multiple criminal schemes would certainly be highly relevant to the inquiry into the continuity of the defendant's racketeering activity").  While schemes spanning 10, 17, 18, 19 and 20 months have been found sufficient, see Brooke, 898 F. Supp. at 1084 (collecting cases), the Developer Defendants have not located any cases where a scheme that spanned only 4 to 6 months was sufficient for a RICO claim.  See, e.g., Allwaste, Inc. v. Hecht, 65 F.3d 1523, 1528 (9th Cir. 1995) (refusing to adopt a strict one-year rule, but observing that six months was insufficient).

Here, Plaintiffs allege a single-purpose scheme of short duration.  The only purpose of the alleged scheme is to sell houses.  And while Plaintiffs fail to allege any specific predicate acts on any dates, it is apparent from the FAC that these acts could span at most six months.  The FAC alleges that the Developer Defendants embarked on their "massive local area marketing campaign" in October 2005, FAC ¶ 32, and that all Plaintiffs had closed escrow by April 2006, FAC ¶ 45, just six months later.  Indeed, the four groups of plaintiffs who filed this suit all signed their Agreements between October 21, 2005 and February 11, 2006, see FAC ¶¶ 38-44, a period of just

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOTION TO STAY AND COMPEL ARBITRATION OR
IN THE ALTERNATIVE TO DISMISS AND STRIKE

- 14 -

22757\1404844.2

1    four months.  These allegations fail as a matter of law to establish closed-ended pattern of racket-

2    eering activity.

3    **c.    Plaintiffs Do Not Allege Open-Ended Continuity Either.**

4    Nor do Plaintiffs adequately allege open-ended continuity.  "The Seventh Circuit has re-

5    peatedly stated that schemes which have a clear and terminable goal and which have a natural

6    ending point cannot support a finding of any specific threat of repetition that would constitute

7    open-ended continuity."  Bajorat, 944 F. Supp. at 1381.  Here, the FAC alleges that the Developer

8    Defendants are a home builder and real estate agents who developed and are selling homes in a

9    specific housing community in Salinas.  While Plaintiffs assert conclusorily that "Defendants

10   continue to engage in the same racketeering business practices and make the same alleged mis-

11   representations to unsuspecting Spanish speaking individuals in order to operate their ongoing

12   business," FAC ¶ 78, this alleged scheme has a "natural ending point:"  once all the homes in the

13   development are sold, the alleged scheme will come to an end.  Nor are there any factual allega-

14   tions supporting the inference that the Developer Defendants formed a long-term association for

15   any other criminal purposes.

16   Plaintiffs thus fail to allege a pattern of racketeering activity.  Accordingly, the Court

17   should dismiss their RICO claim.

18   **4.    Plaintiffs' Conspiracy Claim Fails Because Their RICO Claim Fails.**

19   Plaintiffs also allege a conspiracy to commit all of the acts underlying their RICO claim.

20   Since they fail adequately to allege a RICO claim or any predicate crimes, so too must their con-

21   spiracy claim fail.

22
23   **C.    Plaintiffs' Claims Four, Thirteen And Fourteen Fail To Allege Any Facts Against The Developer Defendants.**

24   Plaintiffs claim that the Developer Defendants violated the Real Estate And Settlement

25   Procedures Act (Claim Four), breached a fiduciary trust (Claim Thirteen) and were negligent

26   (Claim Fourteen).  See FAC at 20 (declaring that "Claim Four" is "Against Each Respective De-

27   fendant, except Wells"); id. at 33 (declaring that "Claim Thirteen" is "Plaintiffs against each Re-

28   spective Defendant except HomeQ"); id. at 34-35 ("Claim Fourteen" is "Plaintiffs against each

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOTION TO STAY AND COMPEL ARBITRATION OR
IN THE ALTERNATIVE TO DISMISS AND STRIKE

- 15 -

22757\1404844.2

1   Respective Defendant"). None of these claims alleges any facts against the Developer Defen-

2   dants – certainly not sufficient facts to state a claim.

3       Thus, Plaintiffs assert "[o]n information and belief," in Claim Four that "Old Republic

4   also failed to disclose any things of value and/or kickbacks received from other civil conspirators

5   such as [the Developer Defendants] in violation of this Act." FAC ¶ 91. Other than this vague

6   accusation that the Developer Defendants are "civil conspirators" with Old Republic, Plaintiffs do

7   not allege any facts about this purported "conspiracy," its purpose, what parties committed overt

8   acts in support of the conspiracy or what those acts were. See id. ¶¶ 81-92. Indeed, Plaintiffs al-

9   lege no facts about the Developer Defendants at all. See id. The FAC alleges only that the De-

10  veloper Defendants and Old Republic "never adequately explained the financial relationships be-

11  tween the various parties," and "failed to disclose the things of value exchanged with [the Devel-

12  oper Defendants] for its repeat business." FAC ¶ 46. Plaintiffs do not explain what "financial

13  relationships" allegedly exist between any of the Developer Defendants and Old Republic, or

14  what (or even if there were) "things of value exchanged" between them. This claim must be dis-

15  missed as to the Developer Defendants.

16      Claim Thirteen – for breach of fiduciary duty – is equally lacking in factual allegations

17  against the Developer Defendants. The sine qua non of a claim for breach of fiduciary duty is the

18  existence of a fiduciary duty. See Charnay v. Cobert, 145 Cal. App. 4th170, 182 (2d Dist. 2006).

19  Plaintiffs do not allege that the Developer Defendants owed them any fiduciary responsibilities.

20  To the contrary, whereas Plaintiffs specifically allege that nine other defendants owed them fidu-

21  ciary duties, see FAC ¶ 152, Plaintiffs expressly concede that "[a]ll Defendants, except [the De-

22  veloper Defendants], breached its [sic] fiduciary duties of good faith, loyalty and diligence," id.

23  ¶ 153. Indeed, the relationship between Plaintiffs and the Developer Defendants as described in

24  the FAC – that of buyer and seller – does not create a fiduciary relationship. See Wolf v. Supe-

25  rior Court, 107 Cal. App. 4th 25, 31 (2d Dist. 2003). The only basis for the Developer Defen-

26  dants' liability is their alleged "acts in furtherance of these other fiduciaries' fraudulent conduct

27  towards Plaintiffs." FAC ¶ 154. Not only is this allegation fatally vague, it stops short of alleg-

28  ing that the Developer Defendants owed Plaintiffs any fiduciary duties. And the Developer De-

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MOTION TO STAY AND COMPEL ARBITRATION OR
IN THE ALTERNATIVE TO DISMISS AND STRIKE                - 16 -                     22757\1404844.2

1   fendants cannot be liable for someone else's breach of fiduciary duty if they themselves had no

2   such duty.  See Everest Investors 8 v. Whitehall Real Estate Ltd P'ship XI, 100 Cal. App. 4th

3   1102, 1107-08 (2d Dist. 2002).  Since Plaintiffs concede that the Developer Defendants did not

4   owe them fiduciary duties, the Developer Defendants could not have breached any such duty.

5   This claim must be dismissed.

6        Claim Fourteen similarly lacks any factual allegations to support Plaintiffs' claim for neg-

7   ligence against the Developer Defendants.  Plaintiffs allege generically that "[e]ach Defendant

8   owed each respective Plaintiff the duty to act as a reasonably prudent person or entity in the same

9   profession or industry," FAC ¶ 158, and that "[e]ach Defendant breached the duty owed to each

10  respective Plaintiff by placing and advising each of the respective Plaintiffs to enter into real es-

11  tate transactions with detrimental and harmful terms," id. ¶ 159.[7]  Factually, these two allegations

12  assert only that the Developer Defendants – among others – entered into a transaction with Plain-

13  tiffs on terms Plaintiffs now claim were bad deals.  That does not constitute negligence.  Plaintiffs

14  fail otherwise to allege what duty the Developer Defendants owed Plaintiffs or what conduct con-

15  stituted a breach of that duty.  This claim must be dismissed.

16
17  **D.    The Developer Defendants Were Not Required To Provide Spanish Language
        Translations Of The Agreements.**

18       Plaintiffs' Claim Six alleges that the Developer Defendants violated California Civil Code

19  section 1632 because they allegedly negotiated with Plaintiffs primarily in Spanish, but did not

20  provide Plaintiffs Spanish-language translations of the Agreements.  Civil Code section 1632(b)

21  provides that a "person engaged in a trade or business who negotiates primarily in Spanish . . .

22  shall deliver to the other party to the contract . . . a [Spanish] translation of the contract" prior to

23  executing the contract.  That code section does not apply to every contract, however.  By its own

24  terms, section 1632 applies to:  installment sales contracts for cars, see id. § 1632(b)(1); loans for

25

26  [7] Plaintiffs also charge that the Developer Defendants "violated statutes and/or regulations regu-
    lating their conduct such as Cal. Bus. And Prof. Code § 10176 et seq. in addition to the other laws
27  mentioned herein."  FAC ¶ 160.  That section of the Business and Professions Code authorizes
    California's real estate commissioner to investigate and censure real estate agents.  It is unclear
28  from anything in the FAC how the Developer Defendants violated that statute.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOTION TO STAY AND COMPEL ARBITRATION OR
IN THE ALTERNATIVE TO DISMISS AND STRIKE          - 17 -          22757\1404844.2

1   personal, family or household purposes, <u>see</u> <u>id.</u> §§ 1632(b)(2), (b)(4); residential leases, <u>see</u> <u>id.</u>

2   § 1632(b)(3); reverse mortgages, <u>see</u> <u>id.</u> § 1632(b)(5); and, legal services contracts, <u>see</u> <u>id.</u>

3   § 1632(b)(6).

4         Section 1632 does not apply to Agreements between a home builder/developer and the

5   home purchaser.  The contracts at issue in this case, on their face, are not installment contracts for

6   cars, loans for personal, family or household purposes, leases, reverse mortgages or legal services

7   contracts.  Plaintiffs do not allege that there are any other contracts between themselves and the

8   Developer Defendants.  Accordingly, the Court should dismiss Claim Six for failure to state a

9   claim.  Moreover, the Court should dismiss this claim without leave to amend, since Plaintiffs

10  cannot plead facts sufficient to state a claim under this statute.

11  **E.     <u>The Court Must Strike The Complaint's Redundant And Impertinent Matters.</u>**

12        In their zeal to stop further home sales to other willing buyers, Plaintiffs have alleged the

13  same cause of action twice, sought punitive damages where they are not permitted, and asked for

14  a jury trial after agreeing to waive that right.  These matters must be stricken.

15        **1.     Claim Twelve Is A Restatement Of Claim Ten, And Is Thus Redundant.**

16        Rule 12(f) authorizes the Court to strike from the FAC "any redundant, impertinent, or

17  scandalous matter."  Fed. R. Civ. P. 12(f).  This includes needlessly repetitive allegations.  <u>See</u>

18  <u>Wilkerson v. Butler</u>, 229 F.R.D. 166, 170 (E.D. Cal. 2005) (striking a claim for negligent inflic-

19  tion of emotional distress because it "offers nothing new and is redundant to" a separate negli-

20  gence claim).

21        Plaintiffs allege both intentional misrepresentation (Claim Ten) and concealment (Claim

22  Twelve).  In California, fraud can be either " [t]he suggestion, as a fact, of that which is not true,"

23  or "[t]he suppression of a fact, by one having knowledge or belief of the fact."  Cal. Civ. Code

24  § 1572.  <u>See also</u> Cal. Civ. Code § 1710 (defining "deceit" as either "[t]he assertion, as a fact, of

25  that which is not true," or "[t]he suppression of a fact, by one who is bound to disclose it").  Thus,

26  intentional misrepresentation and concealment are both species of fraud.  <u>See</u> <u>Lovejoy v. AT&T</u>

27  <u>Corp.</u>, 92 Cal. App. 4th 85, 95 (3d Dist. 2001).

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOTION TO STAY AND COMPEL ARBITRATION OR
IN THE ALTERNATIVE TO DISMISS AND STRIKE                - 18 -                22757\1404844.2

1    Here, Plaintiffs' intentional misrepresentation and concealment claims allege the same

2    wrongs. Thus, Plaintiffs allege in Claim Ten that the Developer Defendants "falsely repre-

3    sent[ed] . . . [t]he true meaning of its [sic] 105% guarantee term." FAC ¶ 127. And they allege in

4    Claim Twelve that the Developer Defendants concealed "[t]he true meaning of its [sic] 105%

5    guarantee term." Id. ¶ 144. Likewise, Plaintiffs allege in Claim Ten that the Developer Defen-

6    dants falsely represented that they "would and/or could control future home pricing," id. ¶ 127,

7    and they allege in Claim Twelve that the Developer Defendants concealed that they "did not con-

8    trol home prices," id. ¶ 144. The same is true of the remaining allegations in paragraphs 127 and

9    144. Claim Twelve is just a restatement of Claim Ten. Indeed, in light of the FAC's other allega-

10   tions – e.g., that the Developer Defendants "expressed the notion that . . . the general market did

11   not set their prices," id. ¶ 35 – it is plain that the "concealment" alleged in Claim Twelve is, circu-

12   larly, concealment by misrepresentation.

13   Claim Twelve adds nothing to the complaint and should be stricken.

14   **2.    Paragraph 141 Improperly Seeks Punitive Damages For Negligence.**

15   The Court must strike paragraph 141 of the FAC because it seeks punitive damages as a

16   remedy for negligent misrepresentation. Prayers for punitive damages in actions where they are

17   not available are appropriately stricken under Rule 12(f). See Rosales v. Citibank, Fed. Sav.

18   Bank, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001). Punitive damages are not available in ac-

19   tions for negligent misrepresentation. See Reid v. Moskovitz, 208 Cal. App. 3d 29, 32 (1989).

20   Accordingly, paragraph 141's request is impertinent and should be stricken.

21   **3.    Plaintiffs Agreed To Waive Their Right To A Jury Trial.**

22   Finally, Plaintiffs improperly demand a jury trial. FAC at 37. Plaintiffs waived that right

23   when they signed their Agreements. See Becerra Agmt ¶ 14.3A (providing, in bolded text, that

24   **"[t]he parties acknowledge and accept that they are waiving their right to a jury trial"**). The

25   demand for a jury trial should be stricken. See Wilkerson, 229 F.R.D. at 172 (striking a request

26   for punitive damages as improper).

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MOTION TO STAY AND COMPEL ARBITRATION OR
IN THE ALTERNATIVE TO DISMISS AND STRIKE

- 19 -

22757\1404844.2

1

2

**V.**
**CONCLUSION**

3        For the foregoing reasons, the Court should stay the litigation and refer the entire matter to

4    private alternative dispute resolution, as provided in the Agreements.

5        In the alternative, the Court should dismiss Claims Two, Three, Four, Six, Thirteen and

6    Fourteen for failure to state a claim, and should strike Claim Fourteen, the jury demand, para-

7    graph 141 because it contains impertinent matter, namely a request for punitive damages where

8    none are permitted.

9

10    Dated:  January 2, 2008                    FARELLA BRAUN & MARTEL LLP

11

12                                                By: /s/ Mark D. Petersen
                                                        Mark D. Petersen
13
                                                 Attorneys for Defendants
14                                               VCH Salinas I LLC, Norm Yop Inc. and
                                                 Monica Faranda
15

16

17

18

19

20

21

22

23

24

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOTION TO STAY AND COMPEL ARBITRATION OR
IN THE ALTERNATIVE TO DISMISS AND STRIKE                    - 20 -                    22757\1404844.2