**EXHIBIT A**


**DECLARATION OF FRANK J. RIEBLI IN SUPPORT OF
DEFENDANTS' NOTICE OF MOTIONS, MOTIONS AND BRIEF
IN SUPPORT OF MOTIONS TO STAY, DISMISS AND STRIKE**


*BEATRICE GONZALEZ, ET AL.*
*v.*
*VCH SALINAS I LLC, ET AL.*


**U.S. DISTRICT COURT, NORTHERN DISTRICT OF
CALIFORNIA
CASE NO. C 07-05698 JW**

# FARELLA BRAUN + MARTEL LLP

Attorneys At Law

Russ Building / 235 Montgomery Street
San Francisco / CA 94104

T 415.954.4400 / F 415.954.4480
www.fbm.com

**FRANK J. RIEBLI**
friebli@fbm.com
D 415.954.4946

December 12, 2007

*Via Email and U.S. Mail*

Sergio H. Parra
Patane Gumberg, LLP
4 Rossi Circle, Suite 231
Salinas, California 93907

> Re: *Gonzalez, et al v. VCH Salinas I LLC, et al.*
> N.D. Cal. No. C07 05698 PVT

Dear Mr. Parra:

This letter confirms my formal request to you by telephone today that the plaintiffs dismiss the above-titled federal court action against VCH Salinas I LLC, Norm Yop Inc. and Monica Faranda, and instead follow the dispute resolution procedures set forth in plaintiffs' respective home purchase agreements, including the private arbitration called for in paragraph 14.3 of those agreements.

If the plaintiffs refuse this request, please explain to me what basis the plaintiffs have for refusing to follow the procedures set forth in their contracts.

Thank you for your prompt response to this request.

Sincerely,

Frank J. Riebli

FJR

22757\1404558.1

**EXHIBIT B**

**DECLARATION OF FRANK J. RIEBLI IN SUPPORT OF DEFENDANTS' NOTICE OF MOTIONS, MOTIONS AND BRIEF IN SUPPORT OF MOTIONS TO STAY, DISMISS AND STRIKE**

*BEATRICE GONZALEZ, ET AL.*
*v.*
*VCH SALINAS I LLC, ET AL.*

**U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA**
**CASE NO. C 07-05698 JW**



PATANE • GUMBERG
ATTORNEYS AT LAW

SERGIO H. PARRA

TELEPHONE
(831) 755-1461

E-MAIL
sparra@pglawfirm.com

December 20, 2007

**VIA E-MAIL AND U.S. MAIL**

Farella Braun Martell
Frank J. Riebli
Mark D. Petersen
235 Montgomery Street
San Francisco, CA 94104

RE:    **Plaintiffs' Response to Demand for Judicial Reference/Arbitration**
       *Gonzalez v. VCH Salinas I, LLC et al. U.S Dist Ct. San Jose, CA*

Dear Mr. Riebli:

    This letter is in response to your letter dated December 12, 2007 requesting "private arbitration" under paragraph 14.3 of the VCH Standard Purchase Agreement. Since you indicate in your email that you do not want to exchange legal briefs on the issue, I have attempted to summarize our position in a succinct manner.

    As we discussed, our position is that paragraph 14.3 is invalid for the following reasons.

    First, paragraph 14.3 (titled "Alternative Dispute Resolution" and hereafter referred to as "ADR" clause) is both procedurally and substantively unconscionable. <u>Trend Homes Inc. v. Super. Court</u> (2005), 131 Cal.App.4th 950 [also see <u>Pardee Const. v. San Diego Superior Court</u> (2002), 100 Cal.App.4th 1081]. As you are well aware, Plaintiffs are hardworking Spanish speaking persons whom were solicited through deceptive Spanish advertising and whose business was entirely conducted in Spanish with your clients. Conveniently for Defendants, the ADR provision was written in English and provided to Plaintiffs with no meaningful assent. If soliciting Spanish-speaking persons; deceptively selling them homes in Spanish; and then,

*Plaintiffs' Response to Demand for Private Arbitration*
December 20, 2007
Page 2

requiring them to enter into contracts in English, which they could not read or understand is not unconscionable, then nothing will ever be.

Second, the very words of the ADR clause itself make it inapplicable to the allegations contained in Plaintiffs' lawsuit. The clause reads, in relevant part,:

> "If, before close of Escrow, or if Escrow fails to close, any claims, disputes or controversies (other than those claims and issues covered by Paragraphs 14.1 or 14.2) arise between the parties with respect to the Purchase Agreement or the Property, and any party commences a legal proceeding based upon such claims, all matters shall be determined by judicial reference as provided in this Paragraph 14.3A."

As you can see, the clause itself only applies to claims "before close of Escrow or if Escrow fails to close." In our clients' case, the specific allegations contained in the Complaint cover a whole range of illegal conduct including conduct arising after the close of Escrow. In other words, it will be difficult to argue that the definition of the term "arises" itself only includes those acts taking place before escrow closed. Regardless of the various interpretations that can be made of the entire provision, a fundamental tenet of contract law is that any ambiguity created by the language is held against the drafter.

Lastly, the ADR clause itself is unconstitutional and in violation of the plaintiffs' civil rights. Not only does the ADR clause require a waiver of jury trial, it acts as a private binding arbitration that cuts off those due process rights afforded by federal procedure and law. Grafton Partners v. Superior Court (2005), 36 Cal.4th 944. To the extent that placing an arbitration clause into agreements is part of a scheme to defraud and discriminate against any ethnic group, this would also constitute an independent violation of federal civil rights law.

For these reasons, your request is respectfully denied.

While I understand that you may wish to take your chances on filing a motion to compel arbitration, I hope that we can avoid unnecessary motion work and proceed with litigating the merits of this matter. If you truly wish to resolve this dispute or to discuss this matter further, please feel free to call me.

Very truly yours,

SERGIO H. PARRA

**EXHIBIT C**


**DECLARATION OF FRANK J. RIEBLI IN SUPPORT OF DEFENDANTS' NOTICE OF MOTIONS, MOTIONS AND BRIEF IN SUPPORT OF MOTIONS TO STAY, DISMISS AND STRIKE**

*BEATRICE GONZALEZ, ET AL.*
*v.*
*VCH SALINAS I LLC, ET AL.*


**U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA**
**CASE NO. C 07-05698 JW**

Community: Tuscany at Monte Bella          Lot: 16          Block: 15

## PURCHASE AGREEMENT AND DEPOSIT RECEIPT
## AND ESCROW INSTRUCTIONS
("Purchase Agreement")

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES AND SHOULD BE READ THOROUGHLY PRIOR TO SIGNING. IF YOU HAVE ANY QUESTIONS ABOUT YOUR RIGHTS OR OBLIGATIONS UNDER THIS DOCUMENT, YOU MAY WISH TO CONSULT AN ATTORNEY.

ELEAZAR & ROCIO BECERRA ("BUYER") agrees to purchase, and VCH-SALINAS I, LLC, a California limited liability company ("SELLER"), agrees to sell, the following described real property in the Monte Bella residential subdivision in Salinas, California (the "Community"), for the purchase price and upon the terms stated below.

1.  **BASIC TERMS:**

    A.  "Property" – The "Property" is Lot 16, Block 15, Tract 1441, Address 1552 SPOLETO St. situated in the City of Salinas, County of Monterey, State of California, together with the Residence located or to be located thereon.

    B.  "Residence" – The "Residence" is the residence constructed or to be constructed on the Property substantially in accordance with Plan & Elevation 52 - 2A PORTOFINO, and Color Scheme 3 which plans and specifications are on file with the appropriate governmental agencies. **SELLER retains the right to make non-material modifications to the plans and specifications from time to time in SELLER'S sole discretion and without compensation to BUYER.**

    C.  "Purchase Price" – The "Purchase Price" for the Property, exclusive of closing costs and BUYER options (other than those identified on Exhibit "A"), shall be as follows:

    | | | |
    |---|---|---|
    | (i) | Base Purchase Price | $ 763,933 ✓ |
    | (ii) | Options and Upgrades Identified on Exhibit "A" | $ 0 |
    | (iii) | TOTAL "PURCHASE PRICE" | $ 763,933 |

    D.  Payment of Purchase Price – The Purchase Price shall be paid as follows:

    | | | Date | | |
    |---|---|---|---|---|
    | (i) | "Deposits" (each a "Deposit") | | | |
    | (1) | Upon BUYER'S Execution of this Purchase Agreement (the "First Deposit") | 11/20/05 | 1% | $ 7,639 |
    | (2) | Upon Loan Approval or thirty (30) days from the date of BUYER'S execution of this Purchase Agreement, whichever occurs first | 12/20/05 | 1% | $ 7,639 |
    | (3) | Sixty (60) days from BUYER'S execution of this Purchase Agreement | 1/20/06 | 1% | $ 7,639 |
    | (ii) | First trust deed loan proceeds | | | $ 687,540 |
    | (iii) | Balance of the down payment to be deposited in Escrow within three (3) days after Escrow's request for funds | | | $ 53,476 |
    | (iv) | TOTAL PURCHASE PRICE PAYMENTS | | | $ 76,393 |

All payments shall be made by cashiers check or federal wire transfer of funds.

1

NBy

BUYER'S Initials
SELLER'S Initials

180651713705.7  04/06/05

Community: Tuscany at ..nte Bella          Lot: 16          Block: 15

E.   "Title Company" and "Escrow Holder" – Old Republic Title Company, located at 20 E. Alisal Street, Salinas, CA 93901, Stella Esparza and Marbella Oliveira, escrow officers, telephone number: (831) 757-8051, and facsimile number: (831) 757-8566.

F.   "Estimated Closing Date" – The "Estimated Closing Date" is 11 29 06

2.   **FINANCING.** BUYER and SELLER agree this purchase [ X ] is contingent [  ] is not contingent upon BUYER obtaining financing secured by the Property. Should this purchase be contingent upon such financing, BUYER immediately, but no later than five (5) days after SELLER'S acceptance, shall make full and complete application to obtain financing of the amount specified in Paragraph 1.C(ii) above. If the purchase is not contingent upon financing, BUYER shall deliver to SELLER together with BUYER'S executed counterpart of this Purchase Agreement written evidence, satisfactory to SELLER in its sole discretion that: (a) Buyer has obtained a written loan commitment, conditioned only upon appraisal of the Property, for BUYER'S loan in the amount of the loan proceeds specified above in 1.C(ii); or (b) BUYER has sufficient funds to close Escrow without any loan proceeds. BUYER may apply for such financing through SELLER'S preferred lender (the "Preferred Lender") by submitting all information necessary for approval by the Preferred Lender within five (5) days after SELLER'S acceptance. If BUYER chooses to obtain financing though a lender other than the Preferred Lender, BUYER agrees to provide SELLER with name, address, and phone number of such lender, the loan officer, and the loan processor, within five (5) days of SELLER'S acceptance. BUYER hereby authorizes such other lender to provide SELLER with a copy of BUYER'S loan application documents and with all information regarding the status of the loan upon SELLER'S request. BUYER agrees in good faith to take all steps required for the processing of the loan application and to promptly sign all documents and do all acts required by the lender. BUYER agrees that after submitting its loan application, BUYER will not take any action to impair BUYER'S credit. The terms and conditions of the loan are a matter of concern solely between BUYER and BUYER'S lender and shall not in any way affect the rights or obligations of BUYER or SELLER hereunder. If BUYER has not yet deposited the Deposit required pursuant to Paragraph 1.D(i)(2), upon approval of the loan, BUYER shall notify SELLER of the loan approval and make such Deposit. Should BUYER receive a loan approval, but thereafter, through no fault of SELLER, but through BUYER'S voluntary or willful actions, fail to timely close this Escrow, BUYER shall be in default of this Purchase Agreement as set forth in Paragraph 13 below. BUYER understands the interest rate for the loan will be at the prevailing rate of the lender when the loan is funded or such other rate as BUYER and lender may jointly determine. BUYER and SELLER understand and acknowledge that if for any reason, other than BUYER'S failure to perform as required under this Paragraph, BUYER'S loan application is rejected, or BUYER has not obtained and delivered to SELLER a loan commitment from a lender and in a form acceptable to SELLER by 9 10 05 then, upon BUYER'S execution of Escrow Holder's instructions to cancel Escrow and this Purchase Agreement, all sums deposited by BUYER shall be promptly refunded to BUYER less a Five-Hundred Dollar ($500) SELLER processing fee. **If BUYER fails to obtain and deliver to SELLER the loan commitment by the date set forth above, SELLER may, at its option, unilaterally cancel this Purchase Agreement.**

2.1  **Contingencies and Cancellation.** BUYER and SELLER agree this Purchase Agreement [X] is contingent [X] is not contingent upon the sale of BUYER'S property. If this Purchase Agreement is contingent upon the sale of Buyer's property, SELLER shall have the right to continue to offer the Property for sale. If SELLER receives another bona fide offer to purchase the Property before BUYER'S sale contingency has been satisfied, which offer SELLER wishes to accept, SELLER shall give written notice of such other offer to BUYER, and BUYER shall have ten (10) days from the delivery of such notice to either (a) satisfy the contingency by presenting SELLER with written evidence acceptable to SELLER of a binding, unconditional sales transaction with a qualified buyer of BUYER'S property; or (b) waive the contingency and deposit in Escrow written evidence satisfactory to SELLER of the availability to BUYER of sufficient funds to close Escrow.

2

N P 4

BUYER'S Initials
SELLER'S Initials

Community: Tuscany at Monte Bella    Lot: *16*    Block: *15*

3. <u>DEPOSIT</u>. BUYER has delivered to SELLER with this Purchase Agreement the First Deposit. In the event SELLER does not accept this offer, SELLER shall immediately return the First Deposit. Escrow Holder is not to be concerned with or responsible for any of the Deposits other than to acknowledge and to credit each sum as paid. With the exception of the Deposits (and any Option Deposit as defined in Paragraph 22) required, if applicable), the balance of all funds in this transaction shall be held by Escrow Holder. Escrow Holder shall release the Deposits and the Option Deposit, if any, to Seller, as each sum is paid, once SELLER has delivered a surety bond to the California Department of Real Estate pursuant to the provisions of Section 11013.2 of the California Business & Professions Code, in an amount equal to the aggregate of all funds deposited and to be deposited by BUYER. At Close of Escrow, the Deposits shall be credited to BUYER'S account. In the event Escrow fails to close, SELLER shall, within five (5) days after notice by Escrow Holder, transmit to Escrow Holder funds equal to all of the Deposits and any Option Deposits paid by BUYER and released to SELLER.

4. <u>ESCROW</u>. By execution of this Purchase Agreement, BUYER authorizes SELLER to open an escrow (the "Escrow") with Escrow Holder immediately upon SELLER'S acceptance, and both parties agree to the general provisions of the Escrow that are not inconsistent with the terms and conditions of this Purchase Agreement. In the event of any inconsistency, the terms of this Purchase Agreement shall control. This Purchase Agreement and the general provisions shall be deemed "Escrow Instructions." The close of Escrow (the "Close of Escrow") shall be within ten (10) days following SELLER'S oral or written notification to BUYER and Escrow Holder that the Residence will be certified for occupancy by the City of Salinas or the County of Monterey, or both, if required, currently estimated to be on or about the Estimated Closing Date. BUYER acknowledges that said date is an estimate only and that the actual date for Close of Escrow may vary from the date stated. SELLER makes no warranty, promise or agreement, express or implied, that the Escrow will close on the Estimated Closing Date. SELLER shall have no liability or obligation to BUYER should there be a delay in completion of the Residence beyond the Estimated Closing Date. Should Escrow fail to close in a timely manner through no fault of BUYER, SELLER shall promptly remit to Escrow all funds received by SELLER and shall order all Deposits remitted by BUYER to SELLER or Escrow, to be refunded to BUYER within fifteen (15) days after the Estimated Closing Date specified in this Purchase Agreement, or any mutually agreed upon extended closing date. Upon request by BUYER, SELLER may in SELLER'S sole discretion, grant BUYER an extension of the Close of Escrow; provided, however, in consideration for such extension, BUYER shall pay SELLER, One Thousand Dollars ($1,000) plus One Hundred Fifty Dollars ($150) per day for each day past the original date for the Close of Escrow until the actual Close of Escrow (the "Late Fees"). The Late Fees shall be deposited with Escrow Holder <u>PRIOR</u> to the original date for the Close of Escrow and shall not be credited to the Purchase Price. If, due to no fault of BUYER, Escrow does not close within one (1) year from the date Escrow opens, BUYER, at BUYER'S sole option, may terminate this Purchase Agreement and demand the refund of all funds deposited by BUYER pursuant to this Purchase Agreement. Within fifteen (15) days after such demand, SELLER shall order all of the money remitted by BUYER under the terms of this Purchase Agreement or the Escrow Instructions for the purchase of the Property to be refunded to BUYER.

5. <u>CONDITIONS TO CLOSE ESCROW</u>. This Escrow shall not close, funds shall not be released, and title shall not be conveyed to BUYER until each of the following conditions have been met:

A. A notice of completion as defined in Civil Code Section 3093 (a "Notice of Completion") with respect to the Residence has been recorded and a Certificate of Occupancy (or its equivalent) issued with respect to the Residence by the City of Salinas or the County of Monterey and that all of the terms and conditions to this Purchase Agreement have been satisfied by BUYER and SELLER; and

B. Any and all blanket encumbrances, as defined in California Business and Professions Code Section 11013, affecting the Property have been released and the statutory period for recordation of all mechanic's lien claims has expired, or the Title Policy (as defined in Paragraph 6 below) shall

BUYER'S Initials
SELLER'S Initials

Community: Tuscany at Monte Bella          Lot: 16          Block: 15

include an endorsement or other coverage at SELLER'S expense insuring BUYER against unrecorded mechanic's liens; and

C.  Any or all monetary encumbrances of record prior to the recording of the covenants, conditions and restrictions (the "Covenants, Conditions and Restrictions") have been subordinated thereto.

6.  **TITLE INSURANCE**.  Title to the Property shall be insured by a CLTA policy of title insurance (the "Title Policy") issued by the Title Company upon Close of Escrow.  The Title Policy shall insure fee title to the Property vested in BUYER, with a liability limit equal to the Purchase Price, subject only to such matters of title as are described in this Paragraph.  SELLER shall not be responsible for the cost of the Title Policy or any additional title policy or endorsements required by the lender.  The Property shall be conveyed free of any blanket encumbrances subject only to the lien for current taxes, assessments, covenants, conditions, restrictions, reservations, easements, rights of way and other matters of record.  Property vesting shall be as BUYER instructs Escrow Holder.

7.  **DELIVERY TO ESCROW**.  Not later than three (3) business days prior to Close of Escrow, BUYER shall deliver to Escrow Holder all documents and funds necessary from BUYER and BUYER'S lender (if any) to close Escrow, and SELLER shall deliver to Escrow Holder all documents and funds necessary from SELLER to close Escrow, including a fully executed and acknowledged grant deed for the Property ("Grant Deed").  On the date for Close of Escrow, Escrow Holder shall cause the Grant Deed to be recorded in the Monterey County's Official Records and shall then deliver to SELLER the proceeds of this Escrow to which SELLER is entitled.

8.  **PRORATIONS**.  Prorations and adjustments shall be made by Escrow Holder as of Close of Escrow on the basis of a 30-day month for the Property's taxes, based on the latest figures available to Escrow Holder, including all items appearing on real property tax bills, except taxes on property not subject to this Escrow.

BUYER understands and hereby acknowledges that the Monterey County Assessor has the right to reassess the Property after Close of Escrow and issue a supplemental real property tax bill to BUYER.  In the event SELLER receives a supplemental tax bill applicable only for tax year(s) prior to the tax year in which Close of Escrow occurs, such supplemental tax bill shall be the sole responsibility of SELLER.  If any such supplemental tax bill has been issued for the current tax year, said supplemental tax bill will be added to the current tax bill and prorated accordingly at Close of Escrow.  ANY TAX BILLS ISSUED AFTER CLOSE OF ESCROW THAT RELATE TO PERIODS BOTH BEFORE AND AFTER CLOSE OF ESCROW SHALL BE PRORATED BETWEEN BUYER AND SELLER.  All bonds and assessments that are part of or paid with the property tax bill will be assumed by BUYER. In the event there are other bonds or assessments that have an outstanding principal balance and are a lien upon the Property, the current installment will be prorated between BUYER and SELLER as of the date of Close of Escrow. Future installments will be assumed by BUYER without credit.

9.  **COSTS/FEES**.  Unless otherwise agreed in writing by BUYER and SELLER, BUYER agrees to pay, in cash, through Escrow, in addition to the Purchase Price of the Property, the following, as applicable:

A.  Lender Fees/Costs.  The cost of credit report(s), loan fees, monthly impound payments (if required or negotiated with BUYER'S lender), owner's and lender's policies of title insurance; and

B.  Title and Escrow Fees/Costs.  All escrow fees; recording fees; inspection fees; and all other closing costs; and

C.  Late Fees.  See Paragraph 4.

4

N P Q

BUYER'S Initials (        )
SELLER'S Initials (        )

Community: Tuscany at Monte Bella          Lot: *16*          Block: *15*

All funds to be deposited into Escrow by BUYER, for Close of Escrow, (including those required for prorations) must be in the form of a cashier's check, certified check, wire transfer or similar instrument. Personal checks are not acceptable. SELLER shall pay all county transfer taxes associated with the conveyance of the Property to BUYER.

10. <u>INSPECTION OF PROPERTY</u>. BUYER and SELLER shall make a joint walk-through inspection of the Property before Close of Escrow for the purpose of noting any cosmetic issues and to prepare a list of corrective work, if any, which may be necessary ("Walk-Through Inspection Report"). Only SELLER'S representatives and BUYER (those persons actually to be named on the Grant Deed as owners) may attend this walk-through inspection. The only other person or persons permitted to attend are: (a) an interpreter in the event BUYER does not speak English; or (2) an assistant to BUYER required due to any mental or physical disability. At this walk-through inspection BUYER must carefully inspect the Property and note on the Walk-Through Inspection Report any cosmetic or aesthetic concerns or questions (including blemishes, texture/color/finish inconsistencies, scratches, stains, etc.); missing or incorrect items; and anything else needing corrective action ("collectively, "Punch List Items"). All patent (observable) Punch List Items that BUYER desires to be corrected must be listed by BUYER on the Walk-Through Inspection Report. If there are any Punch List Items, SELLER shall schedule a subsequent walk-through inspection at which BUYER shall inspect the corrective work performed on the Punch List Items and on the Walk-Through Inspection Report and BUYER shall sign an acceptance of the completed work. Any corrective work agreed to be performed by SELLER as a result of the inspection and as set forth on the Walk-Through Inspection Report shall not cause a delay of Close of Escrow. SELLER will complete all corrective work as set forth on the Walk-Through Inspection Report in a prompt and workmanlike manner, and BUYER shall cooperate fully with SELLER to enable SELLER and its agents, employees and contractors to complete such corrective work. Neither BUYER'S walk-through nor attendance by BUYER at a scheduled walk-through shall be a condition of Close of Escrow.

11. <u>ENTRY UPON PROPERTY</u>. Without the prior written approval of SELLER, BUYER shall not enter, occupy or take possession of the Property, or make any alterations of, or additions to, any interior or exterior improvements thereon, until after Close of Escrow. Any alterations, additions or improvements after Close of Escrow shall be subject to the Covenants, Conditions and Restrictions. BUYER shall not enter the Community or the Property during the construction period unless accompanied by a representative of SELLER. BUYER'S entry onto the Property prior to Close of Escrow to perform any work on or to the Property without SELLER'S express prior written consent shall constitute a default under this Purchase Agreement. BUYER understands and acknowledges that entry upon the Property during construction can be dangerous and that hazards may exist which are not observable. BUYER'S authorized or unauthorized entry shall be solely at BUYER'S own risk. BUYER hereby waives any and all claims against SELLER for injury or loss to person or property arising out of or in connection with, such entry by BUYER or any other person accompanying BUYER or entering at BUYER'S direction, and BUYER hereby indemnifies, and promises to defend and hold SELLER harmless from and against any injury, loss, damage, or expense, (including, without limitation, attorneys' fees) to persons or property arising out of or in connection with, any such entry. BUYER or BUYER'S agents shall not be permitted to show or advertise the Property to prospective purchasers or tenants or place any signs at or near the Property.

12. <u>DELIVERY OF POSSESSION</u>. Possession of the Property shall be delivered to BUYER upon Close of Escrow. In the event SELLER fails to complete the Residence and to deliver possession to BUYER within one (1) year from the date of SELLER'S execution of this Purchase Agreement, or for such additional period as the parties may mutually agree, either party shall have the right to terminate this Purchase Agreement. Upon termination for such reason, SELLER shall promptly return BUYER'S Deposits and Option Deposit, if any.

13. <u>BUYER'S DEFAULT</u>. BUYER SHALL BE IN DEFAULT OF THIS PURCHASE AGREEMENT IF, THROUGH NO FAULT OF SELLER, BUYER FAILS TO PERFORM BUYER'S OBLIGATION TO

5

BUYER'S Initials (    )
SELLER'S Initials (    )

Community: Tuscany at Monte Bella          Lot: 16          Block: 15

DEPOSIT THE FUNDS IN THE AMOUNTS AND AT THE TIMES REQUIRED IN PARAGRAPHS 1.D(i) AND 3 ABOVE; BUYER FAILS TO PROMPTLY COMPLETE, EXECUTE AND DELIVER THE FINANCING AND ESCROW DOCUMENTS REFERRED TO HEREIN; OR, BUYER, THROUGH ITS OWN FAULT, FAILS TO CLOSE ESCROW WITHIN THE TIME PROVIDED IN PARAGRAPH 4. THREE (3) DAYS AFTER WRITTEN NOTICE OF BUYER'S DEFAULT WITHOUT BUYER'S CURE OF SUCH DEFAULT, SELLER MAY UNILATERALLY CANCEL THIS PURCHASE AGREEMENT AND THE ESCROW, AND SHALL GIVE BUYER AND ESCROW WRITTEN NOTICE OF SUCH CANCELLATION.

14.   LIQUIDATED DAMAGES AND DISPUTE RESOLUTION

14.1   LIQUIDATED DAMAGES FOR BUYER'S DEFAULT.  IF BUYER FAILS TO COMPLETE THE PURCHASE OF THE PROPERTY BECAUSE OF A DEFAULT BY BUYER, SELLER MAY PURSUE ANY REMEDY IN LAW OR EQUITY THAT IT MAY HAVE AGAINST BUYER ON ACCOUNT OF THE DEFAULT; PROVIDED HOWEVER, THAT BY PLACING THEIR INITIALS HERE,

BUYER __EB / UD__ AND SELLER __/__
        Initials                Initials

AGREE TO ALL OF THE TERMS SET FORTH BELOW IN THIS SECTION 14.1:

A.   IN THE EVENT OF SUCH DEFAULT, IT WOULD BE EXTREMELY DIFFICULT AND IMPRACTICAL TO ASCERTAIN THE ACTUAL DAMAGES SUFFERED BY SELLER.

B.   THE AMOUNT EQUAL TO THE SUM OF BUYER'S DEPOSITS ACTUALLY DEPOSITED (THE "PURCHASE MONEY DEPOSIT") SHALL CONSTITUTE LIQUIDATED DAMAGES PAYABLE TO SELLER IF BUYER FAILS TO COMPLETE THE PURCHASE OF THE PROPERTY BECAUSE OF A DEFAULT BY BUYER.  THE "PURCHASE MONEY DEPOSIT" SHALL INCLUDE ANY AMOUNT SEPARATELY DEPOSITED BY BUYER AS AN OPTION DEPOSIT (AS DEFINED IN PARAGRAPH 22) IN CONNECTION WITH UPGRADES AND OPTIONAL ITEMS, IF ANY ARE ORDERED BY BUYER.  THE VALIDITY AND REASONABLENESS OF THE AMOUNT OF LIQUIDATED DAMAGES SHALL BE DETERMINED IN ACCORDANCE WITH CALIFORNIA CIVIL CODE SECTIONS 1675-1678.

C.   THE PAYMENT OF SUCH LIQUIDATED DAMAGES TO SELLER SHALL CONSTITUTE THE EXCLUSIVE REMEDY OF SELLER ON ACCOUNT OF ANY DEFAULT BY BUYER.

D.   LIQUIDATED DAMAGES SHALL BE PAYABLE TO SELLER OUT OF BUYER'S PURCHASE MONEY DEPOSIT ACCORDING TO THE FOLLOWING PROCEDURES:

(i)      SELLER SHALL GIVE WRITTEN NOTICE ("SELLER'S NOTICE AND DEMAND"), IN THE MANNER PRESCRIBED BY SECTION 116.340 OF THE CODE OF CIVIL PROCEDURE FOR SERVICE IN A SMALL CLAIMS ACTION, TO ESCROW HOLDER AND TO BUYER THAT BUYER IS IN DEFAULT UNDER THIS PURCHASE AGREEMENT AND THAT SELLER IS DEMANDING THAT ESCROW HOLDER REMIT THE PURCHASE MONEY DEPOSIT TO SELLER AS LIQUIDATED DAMAGES UNLESS, WITHIN TWENTY (20) DAYS BUYER GIVES ESCROW HOLDER BUYER'S WRITTEN OBJECTION TO DISBURSEMENT OF THE PURCHASE MONEY DEPOSIT AS LIQUIDATED DAMAGES ("BUYER'S OBJECTION").  BUYER'S OBJECTION MUST ALSO AFFIRMATIVELY STATE THAT BUYER IS READY, WILLING AND ABLE TO CLOSE ESCROW AS PROVIDED FOR IN THIS PURCHASE AGREEMENT.  BUYER'S FAILURE TO SO SPECIFICALLY STATE THAT BUYER IS PREPARED TO PROCEED WITH CLOSE

6

BUYER'S Initials ( )
SELLER'S Initials ( )

Community: Tuscany at Mo...e Bella          Lot: 16          Block: 15

OF ESCROW FOR THE PURCHASE OF THE PROPERTY WILL IMMEDIATELY TERMINATE BUYER'S RIGHT TO PURCHASE THE PROPERTY AND ANY SUCH RIGHTS SHALL THEREUPON TERMINATE. SELLER SHALL, IMMEDIATELY UPON GIVING SELLER'S NOTICE AND DEMAND, DELIVER TO ESCROW HOLDER ALL PURCHASE MONEY DEPOSIT OF BUYER HELD BY SELLER OUTSIDE OF ESCROW.

(ii)     BUYER SHALL HAVE A PERIOD OF TWENTY (20) DAYS FROM THE DATE OF RECEIPT OF SELLER'S NOTICE AND DEMAND IN WHICH TO GIVE ESCROW HOLDER BUYER'S OBJECTION.

(iii)    IF BUYER FAILS TO GIVE ESCROW HOLDER BUYER'S OBJECTION WITHIN TWENTY (20) DAYS FROM THE DATE OF RECEIPT OF SELLER'S NOTICE AND DEMAND:  (a) ESCROW HOLDER SHALL PROMPTLY REMIT THE AMOUNT DEMANDED TO SELLER; AND (b) SELLER SHALL BE RELEASED FROM ANY OBLIGATION TO SELL THE PROPERTY TO BUYER.

(iv)     IF BUYER GIVES ESCROW HOLDER BUYER'S OBJECTION WITHIN TWENTY (20) DAYS FROM THE DATE OF RECEIPT OF SELLER'S NOTICE AND DEMAND, THEN THE CONTROVERSY SHALL BE DETERMINED BY SUBMISSION TO BINDING ARBITRATION AS PROVIDED IN PARAGRAPH 14.2 BELOW.

(v)      IF BUYER FAILS TO STATE IN BUYER'S OBJECTION THAT BUYER INTENDS TO PERFORM ITS OBLIGATIONS UNDER THIS PURCHASE AGREEMENT AND PURCHASE THE PROPERTY, SUCH FAILURE SHALL CONSTITUTE: (a) BUYER'S WAIVER OF ANY RIGHT TO MAINTAIN A LEGAL ACTION TO OBTAIN SPECIFIC PERFORMANCE OF SELLER'S OBLIGATION TO COMPEL SELLER TO CONVEY THE PROPERTY TO BUYER, AND (b) BUYER'S WAIVER OF ANY RIGHT TO RECORD A NOTICE OF LIS PENDENS OR ANY OTHER INSTRUMENT AFFECTING SELLER'S TITLE TO THE PROPERTY.

SHOULD BUYER NOT AGREE TO THE FOREGOING LIQUIDATED DAMAGES PROVISION, THEN THE AMOUNT SPECIFIED ABOVE SHALL NOT BE CONSIDERED A LIMITATION ON THE AMOUNT OF DAMAGES SELLER MIGHT RECOVER AS A RESULT OF BUYER'S DEFAULT. SELLER AGREES TO INDEMNIFY AND HOLD ESCROW HOLDER HARMLESS FROM ANY CLAIM ARISING OUT OF ANY DISTRIBUTIONS MADE BY ESCROW HOLDER IN ACCORDANCE WITH AND PURSUANT TO THE PROVISIONS OF THIS PARAGRAPH 14.

14.2  ARBITRATION OF DISPUTES.  ALL DISPUTES BETWEEN BUYER AND SELLER THAT ARISE PRIOR TO THE CLOSE OF ESCROW, OR WITH RESPECT TO A DEFAULT BY BUYER OR SELLER THAT RESULTS IN THE TRANSACTION FAILING TO CLOSE, INCLUDING, WITHOUT LIMITATION, ANY DISPUTE PURSUANT TO THE FOREGOING PARAGRAPH 14.1 ABOVE, SHALL BE RESOLVED PURSUANT TO BINDING ARBITRATION AS SET FORTH BELOW ("ARBITRATION"). ANY DISPUTE RELATING TO PARAGRAPH 14.1 ABOVE MAY INCLUDE A DETERMINATION OF THE REASONABLENESS OF THE AMOUNT TO BE PAID AS LIQUIDATED DAMAGES, THE VALIDITY OF THE FOREGOING LIQUIDATED DAMAGES PROVISION, CLAIMS THAT A PARTY IS IN DEFAULT UNDER THIS PURCHASE AGREEMENT, AND THE DISPOSITION OF THE FUNDS DEPOSITED INTO ESCROW BY BUYER, AND SHALL BE CONDUCTED AS PROVIDED HEREIN. THE PARTIES HERETO SHALL INCLUDE ALL CAUSES OF ACTION THAT HAVE ARISEN BETWEEN BUYER AND SELLER PRIOR TO THE CLOSE OF ESCROW OR RELATE TO THE TRANSACTION FAILING TO CLOSE.

BUYER'S Initials _____
SELLER'S Initials (     )

1806S\713705.7  04/06/05

Community: Tuscany at M̲ ̲ ̲ ̲ Bella                Lot: 16                Block: 15

A.  PARTIES:  EACH PARTY SHALL HAVE THE RIGHT, IN THEIR RESPECTIVE DISCRETION, TO JOIN ANY PERSON OR ENTITY WHO IS NOT A PARTY TO THE ARBITRATION IF THE PRESENCE OF SUCH PERSON OR ENTITY IS REQUIRED OR IS NECESSARY FOR COMPLETE RELIEF TO BE ACCORDED IN THE ARBITRATION OR IF THE INTEREST OR RESPONSIBILITY OF SUCH PERSON OR ENTITY IN THE DISPUTE IS NOT INSUBSTANTIAL.  HOWEVER, IN NO EVENT SHALL DISPUTES INVOLVING THE BUYERS OF MORE THAN ONE PROPERTY BE JOINED IN ANY ARBITRATION.  THE PARTIES SHALL COOPERATE IN GOOD FAITH AND SHALL DILIGENTLY PERFORM SUCH ACTS AS MAY BE NECESSARY TO ENSURE THAT ALL NECESSARY AND APPROPRIATE PARTIES ARE INCLUDED IN THE ARBITRATION. NOTWITHSTANDING THE FOREGOING, NEITHER PARTY SHALL BE REQUIRED TO PARTICIPATE IN THE ARBITRATION IF ALL PARTIES AGAINST WHOM SUCH PARTY, RESPECTIVELY, WOULD HAVE NECESSARY OR PERMISSIVE CROSS-CLAIMS ARE NOT OR CANNOT BE JOINED IN THE ARBITRATION.  IN SUCH LATTER CASE, THE DISPUTE SHALL BE DECIDED PURSUANT TO PARAGRAPH 14.3 BELOW.

B.  RULES:  THE ARBITRATION SHALL BE CONDUCTED BY AND IN ACCORDANCE WITH THE STREAMLINED ARBITRATION RULES AND PROCEDURES OF THE AMERICAN ARBITRATION ASSOCIATION (OR ANY SUCCESSOR THERETO) THEN CURRENTLY IN EFFECT, AS MODIFIED BY THIS PURCHASE AGREEMENT.  SHOULD THE AAA CEASE TO EXIST AS SUCH, THEN ALL REFERENCES TO AAA SHALL BE DEEMED TO REFER TO ITS SUCCESSOR OR, IF THERE IS NO SUCCESSOR, TO SUCH OTHER ALTERNATIVE DISPUTE RESOLUTION FORUM MUTUALLY SELECTED BY THE PARTIES, OR ABSENT SUCH MUTUAL SELECTION, SELECTED BY THE PRESIDING JUDGE OF THE SUPERIOR COURT OF THE COUNTY WHEREIN THE PROPERTY IS LOCATED.

C.  COMMENCEMENT:  THE ARBITRATION SHALL BE COMMENCED UPON DELIVERY BY EITHER PARTY TO THE OTHER AND TO THE ARBITRATION SERVICE (AND, IF ESCROW IS STILL OPEN, TO ESCROW HOLDER) OF A WRITTEN DEMAND FOR ARBITRATION, WHICH SHALL SET FORTH WITH SPECIFICITY THE PARTICULARS OF SUCH PARTY'S CLAIM(S), THE ISSUES TO BE SUBMITTED TO ARBITRATION AND THE RELIEF SOUGHT.

D.  STATUTES OF LIMITATION:  EXCEPT FOR PROCEDURAL ISSUES, AND TO THE EXTENT NOT INCONSISTENT WITH THE FEDERAL ARBITRATION ACT, THE ARBITRATION, THE ULTIMATE DECISIONS OF THE ARBITRATOR, AND THE ARBITRATOR SHALL BE SUBJECT TO AND BOUND BY EXISTING CALIFORNIA CASE AND STATUTORY LAW INCLUDING, BUT NOT LIMITED TO, APPLICABLE STATUTES OF LIMITATION ESTABLISHED BY CALIFORNIA LAW.

E.  SELECTION AND TIMING:  THE ARBITRATION SHALL BE CONDUCTED BY ONE (1) QUALIFIED ARBITRATOR SELECTED IN ACCORDANCE WITH THE RULES OF AAA.  THE TERM "QUALIFIED" SHALL MEAN A RETIRED JUDGE WHO HAS EXPERIENCE WITH THE LAWS GOVERNING RESIDENTIAL REAL ESTATE SALES AND DEVELOPMENT OR AN ATTORNEY WHO HAS ACTIVELY PRACTICED LAW IN CALIFORNIA FOR AT LEAST FIFTEEN (15) YEARS AND WHO HAS EXPERIENCE WITH THE LAWS GOVERNING RESIDENTIAL REAL ESTATE SALES AND DEVELOPMENT.

F.  MOTIONS AND REMEDIES:  THE ARBITRATOR SHALL HAVE THE POWER TO HEAR AND DISPOSE OF MOTIONS, INCLUDING MOTIONS RELATING TO PROVISIONAL REMEDIES, DEMURRERS, MOTIONS TO DISMISS, MOTIONS FOR JUDGMENT ON THE PLEADINGS AND SUMMARY JUDGMENT AND/OR ADJUDICATION MOTIONS, IN THE SAME MANNER AS A TRIAL COURT JUDGE.  IN ADDITION, THE ARBITRATOR SHALL HAVE THE POWER TO SUMMARILY ADJUDICATE ISSUES OF FACT OR LAW, INCLUDING THE AVAILABILITY OF REMEDIES, EVEN IF THE ISSUE ADJUDICATED COULD DISPOSE OF AN ENTIRE CAUSE OF ACTION OR DEFENSE.  THE ARBITRATOR SHALL HAVE THE POWER TO GRANT PROVISIONAL REMEDIES INCLUDING PRELIMINARY INJUNCTIVE RELIEF.  PRIOR TO THE SELECTION OF

8

BUYER'S Initials _____
SELLER'S Initials _____

Community: Tuscany at Monte Bella          Lot: *18*          Block:

THE ARBITRATOR, ANY PARTY SHALL HAVE THE RIGHT TO PETITION THE SUPERIOR COURT OF THE COUNTY WHERE THE PROPERTY IS LOCATED FOR ANY NECESSARY PROVISIONAL REMEDIES. HOWEVER, AFTER OBTAINING ANY PROVISIONAL REMEDIES (PENDING SELECTION OF THE ARBITRATOR) THE ENTIRE MATTER SHALL BE REFERRED TO AAA FOR ALL PURPOSES AND THE SUPERIOR COURT SHALL HAVE NO FURTHER JURISDICTION TO MONITOR OR ENFORCE THE PROVISIONAL REMEDIES OR TO MAKE FURTHER DETERMINATIONS OR AWARDS OR TO ISSUE ADDITIONAL PROVISIONAL REMEDIES. AAA SHALL HAVE THE SOLE POWER TO ENFORCE, EXTEND, MODIFY OR VACATE ANY SUCH PROVISIONAL REMEDIES.

G.  DISCOVERY: THE PARTIES SHALL BE ENTITLED TO LIMITED DISCOVERY CONSISTING OF:  (I) WITNESS LISTS; (II) EXPERT WITNESS DESIGNATIONS; (III) EXPERT WITNESS REPORTS; (IV) EXHIBITS; (V) REPORTS OF TESTING OR INSPECTIONS, INCLUDING BUT NOT LIMITED TO, DESTRUCTIVE OR INVASIVE TESTING; (VI) ARBITRATION BRIEFS; AND (VII) THE DEPOSITION, UNDER OATH, OF ANY DESIGNATED EXPERTS AND TWO OTHER DEPOSITIONS OF THEIR CHOOSING WITHOUT OBTAINING THE CONSENT OF THE ARBITRATOR. ALL OTHER DISCOVERY SHALL BE PERMITTED BY THE ARBITRATOR AT HIS DISCRETION UPON A SHOWING OF GOOD CAUSE OR BASED ON THE AGREEMENT OF THE PARTIES. THE ARBITRATOR SHALL OVERSEE DISCOVERY AND MAY ENFORCE ALL DISCOVERY ORDERS IN THE SAME MANNER AS ANY TRIAL COURT JUDGE.

H.  FULL DISCLOSURE: EACH PARTY SHALL MAKE, IN GOOD FAITH, A FULL DISCLOSURE OF ALL ISSUES AND EVIDENCE TO EACH OTHER PARTY PRIOR TO THE HEARING. ANY EVIDENCE OR INFORMATION THAT THE ARBITRATOR DETERMINES WAS UNREASONABLY WITHHELD SHALL BE INADMISSIBLE BY THE PARTY WHO WITHHELD IT. THE INITIATING PARTY SHALL BE THE FIRST TO DISCLOSE ALL OF THE FOLLOWING, IN WRITING, TO EACH OTHER PARTY AND TO THE ARBITRATOR: (I) AN OUTLINE OF THE ISSUES AND ITS POSITION ON EACH SUCH ISSUE; (II) A LIST OF ALL WITNESSES THE PARTY INTENDS TO CALL; AND (III) COPIES OF ALL WRITTEN REPORTS AND OTHER DOCUMENTARY EVIDENCE, WHETHER WRITTEN OR NOT OR CONTRIBUTED TO BY ITS RETAINED EXPERTS (COLLECTIVELY "OUTLINE"). THE INITIATING PARTY SHALL SUBMIT ITS OUTLINE TO EACH OTHER PARTY AND THE ARBITRATOR WITHIN THIRTY (30) DAYS OF THE FINAL SELECTION OF THE ARBITRATOR. EACH RESPONDING PARTY SHALL SUBMIT ITS WRITTEN RESPONSE AS DIRECTED BY THE ARBITRATOR.

I.  HEARING: THE HEARING SHALL BE HELD IN THE COUNTY WHERE THE PROPERTY IS LOCATED. THE ARBITRATOR SHALL PROMPTLY COMMENCE THE HEARING GIVING DUE CONSIDERATION TO THE COMPLEXITY OF THE ISSUES, THE NUMBER OF PARTIES AND NECESSARY DISCOVERY AND OTHER RELEVANT MATTERS. THE ARBITRATION SHALL BE CONDUCTED AS INFORMALLY AS POSSIBLE. CALIFORNIA EVIDENCE CODE SECTION 1152 ET SEQ. SHALL APPLY FOR THE PURPOSE OF EXCLUDING OFFERS, COMPROMISES, AND SETTLEMENT PROPOSALS FROM EVIDENCE, UNLESS THERE IS AGREEMENT BY ALL PARTIES AS TO ADMISSIBILITY. THE ARBITRATOR SHALL BE THE SOLE JUDGE OF THE ADMISSIBILITY OF AND THE PROBATIVE VALUE OF ALL EVIDENCE OFFERED AND IS AUTHORIZED TO PROVIDE ALL LEGALLY RECOGNIZED REMEDIES WHETHER IN LAW OR EQUITY, EXCEPT AS OTHERWISE LIMITED IN THIS PARAGRAPH 14.2. ATTORNEYS ARE NOT REQUIRED AND EITHER PARTY MAY ELECT TO BE REPRESENTED BY SOMEONE OTHER THAN A LICENSED ATTORNEY. THE COST OF AN INTERPRETER SHALL BE BORNE BY THE PARTY REQUIRING THE SERVICES OF THE INTERPRETER IN ORDER TO BE UNDERSTOOD BY THE ARBITRATOR AND THE EXPENSES OF WITNESSES SHALL BE BORNE BY THE PARTY PRODUCING SUCH WITNESSES.

J.  DECISION: THE DECISION OF THE ARBITRATOR SHALL BE BINDING ON THE PARTIES AND MAY BE ENTERED AS A JUDGMENT IN ANY COURT OF THE STATE OF CALIFORNIA

9

BUYER'S Initials
SELLER'S Initials (        )

Community: Tuscany at Monte Bella          Lot: *16*          Block: *15*

THAT HAS JURISDICTION AND VENUE. THE ARBITRATOR SHALL (I) IF AGREED BY THE PARTIES, CAUSE A COMPLETE RECORD OF ALL PROCEEDINGS TO BE PREPARED SIMILAR TO THOSE KEPT IN THE SUPERIOR COURT, (II) TRY ALL ISSUES OF BOTH FACT AND LAW, AND (III) ISSUE A WRITTEN STATEMENT OF DECISION CONSISTENT WITH THAT DESCRIBED IN CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 643 WHICH SHALL SPECIFY THE FACTS AND LAW RELIED UPON IN REACHING THE ARBITRATOR'S DECISION WITHIN TWENTY (20) DAYS AFTER THE CLOSE OF TESTIMONY. A STENOGRAPHIC RECORD OF THE HEARING SHALL BE MADE WHICH SHALL REMAIN CONFIDENTIAL EXCEPT AS MAY BE NECESSARY FOR POST-HEARING MOTIONS AND APPEALS. THE COST OF THE RECORD SHALL BE BORNE ONE-HALF BY BUYER AND ONE-HALF BY SELLER, REGARDLESS OF THE OUTCOME. SHOULD ANY PARTY REFUSE OR FAIL TO PAY ITS PRO-RATA SHARE, THE REMAINING PARTIES MAY PAY SUCH SHARE, AND THE PARTY OR PARTIES WHICH PAY SUCH EXTRA SHARE SHALL BE AWARDED SUCH EXTRA COSTS BY THE ARBITRATOR IN THE ARBITRATOR'S DECISION.

K.  FEES AND COSTS: SELLER SHALL ADVANCE ANY FEE REQUIRED BY AAA TO INITIATE THE ARBITRATION. THE TOTAL COST OF THE ARBITRATION, INCLUDING THE ADVANCED INITIATION FEES AND OTHER FEES OF AAA AND ANY RELATED COSTS AND FEES INCURRED BY AAA (SUCH AS EXPERTS AND CONSULTANTS RETAINED BY IT) SHALL BE BORNE ONE-HALF BY BUYER AND ONE-HALF BY SELLER, REGARDLESS OF THE OUTCOME. THE ARBITRATOR SHALL NOT AWARD ATTORNEYS' FEES TO ANY PARTY. NOTHING HEREIN SHALL BE CONSTRUED TO MODIFY OR ABROGATE ANY DUTY TO DEFEND AND/OR INDEMNIFY A THIRD PARTY PURSUANT TO THE TERMS OF A CONTRACT BETWEEN ANY SUCH PARTIES.

> NOTICE: BY INITIALING IN THE SPACE BELOW, SELLER AND BUYER ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THIS ARBITRATION OF DISPUTES PROVISION OR THE ARBITRATION OF DISPUTES PROVISION IN PARAGRAPH 14.3 BE DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND ARE GIVING UP ANY RIGHTS EACH MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED BY A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW EACH ARE GIVING UP THEIR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS SUCH RIGHTS ARE SPECIFICALLY INCLUDED IN THIS ARBITRATION OF DISPUTES PROVISION. IF EACH REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, EACH MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY. WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE ARBITRATION OF DISPUTES PROVISION TO NEUTRAL ARBITRATION.
>
> *EB*  )     ( *WB* )                    (        )       (        )
> BUYER'S INITIALS                    SELLER'S INITIALS

**14.3  ALTERNATIVE DISPUTE RESOLUTION.** **The provisions in this Paragraph 14.3 shall survive Close of Escrow.**

A.  **JUDICIAL REFERENCE**. If, before Close of Escrow, or if Escrow fails to Close, any claims, disputes or controversies (other than those claims and issues covered by Paragraphs 14.1 or 14.2) arise between the parties with respect to this Purchase Agreement or the Property, and any party commences a legal proceeding based upon such claims, all such matters shall be determined by judicial reference as provided in this Paragraph 14.3A. If either party to this Purchase Agreement commences a legal proceeding for a dispute arising under this Purchase Agreement (other than those claims and issues covered by Paragraphs 14.1 or 14.2), all the issues in such action, whether

10

*N P Y*

BUYER'S Initials *EB WB*
SELLER'S Initials ( )

Community: Tuscany at Mon. sella          Lot:                          Block:

of fact or law, shall be resolved by judicial reference pursuant to the provisions of California Code of Civil Procedure Sections 638 through 645.1. BUYER and SELLER shall cooperate in good faith to ensure that all necessary and appropriate parties are included in the judicial reference proceeding, in the event a legal proceeding is initiated based on any such dispute, the following shall apply:

(i)     The proceeding shall be brought and held in Monterey County unless the parties agree to a different venue;

(ii)    The parties shall use the procedures adopted by JAMS for judicial reference and selection of a referee (or any other entity offering judicial reference dispute resolution procedures as may be mutually acceptable to the parties);

(iii)   The referee must be a retired judge or a licensed attorney with substantial experience in relevant real estate matters;

(iv)    The parties to the litigation shall agree upon a single referee who shall have the power to try any and all of the issues raised, whether of fact or of law, which may be pertinent to the matters in dispute, and to issue a statement of decision thereon. Any dispute regarding the selection of the referee shall be resolved by JAMS or the entity providing the reference services, or, if no entity is involved, by the court in accordance with California Code of Civil Procedure Sections 638 and 640;

(v)     The referee shall be authorized to provide all remedies available in law or equity appropriate under the circumstances of the controversy;

(vi)    The referee may require one or more pre-hearing conferences;

(vii)   The parties shall be entitled to discovery, and the referee shall oversee discovery and may enforce all discovery orders in the same manner as any trial court judge;

(viii)  A stenographic record of the trial shall be made;

(ix)    The referee's statement of decision shall contain findings of fact and conclusions of law to the extent applicable;

(x)     The referee shall have the authority to rule on all post-hearing motions in the same manner as a trial judge;

(xi)    The parties shall promptly and diligently cooperate with each other and the referee and perform such acts, as may be necessary for an expeditious resolution of the dispute;

(xii)   Except as otherwise agreed by the parties or as required by applicable law, BUYER shall not be required to pay any fee of the judicial reference proceeding except to the extent of the costs that would be imposed upon the BUYER if the dispute had been resolved as a dispute in court. The referee may not award against BUYER any expenses in excess of those that would be recoverable as costs if the dispute had been litigated to final judgment in court. Each party to the judicial reference proceeding shall bear its own attorneys' fees and costs in connection with such proceeding; and

(xiii)  The statement of decision of the referee upon all of the issues considered by the referee shall be binding upon the parties, and upon filing of the statement of decision with the clerk of the court, or with the judge where there is no clerk, judgment may be entered thereon. The decision of the referee shall be appealable as if rendered by the court. This provision shall in no way be construed to limit any valid cause of action, which may

11

BUYER'S Initials
SELLER'S Initials

Community: Tuscany at Mo.      3ella          Lot:  *16*                                   Block: *15*

be brought by any of the parties. **The parties acknowledge and accept that they are waiving their right to a jury trial.**

( *CB* )    ( *VB* )                        (      )    (      )
**BUYER'S INITIALS**                        **SELLER'S INITIALS**

B.   **FEDERAL ARBITRATION ACT**.  The binding arbitration procedures contained in Paragraphs 14.2 and 14.3 are implemented in accordance with the philosophy and intent of the Federal Arbitration Act (9 U.S.C. Section 1 et seq.) ("FAA"), which is designed to encourage the use of alternative methods of dispute resolution and avoid costly and potentially lengthy traditional court proceedings.  The binding arbitration procedures in said Paragraph are to be interpreted and enforced as authorized by the FAA.  Parties interpreting this Paragraph 14.3.B. shall follow the federal court rulings, which provide among other things that: (1) the FAA is a congressional declaration of liberal federal policy favoring alternate dispute resolution notwithstanding substantive or procedural state policies or laws to the contrary, (2) alternate dispute resolution agreements are to be rigorously enforced by state courts; and (3) the scope of issues subject to alternate dispute resolution are to be interpreted in favor of alternate dispute resolution.  Interpretation and application of the procedures set forth in Paragraphs 14.2 and 14.3 shall conform to any applicable federal court rules and decisions interpreting and applying the FAA.  The Arbitration shall be conducted pursuant to the FAA and, to the extent not inconsistent, the procedures set forth in Paragraphs 14.2 and 14.3.  In addition, except as set forth herein, and to the extent it is not inconsistent with the FAA, the Arbitration shall be conducted pursuant to Title 9 of the California Code of Civil Procedure (Section 1280 et seq.).  References to California procedural law are for guidance only and shall not be construed as a waiver of any rights or duties of the parties under the FAA or the right of the parties to have the procedures set forth in this Purchase Agreement interpreted and enforced under the FAA.  If any party seeks review by a court of the enforceability of any of the procedures set forth or referenced herein (notwithstanding the provisions herein making that issue one to be resolved by the arbitrator), the exclusive jurisdiction and venue for any such review shall be the Superior Court for the County in which the Property is located.

15.  **GENERAL**.

A.   This Purchase Agreement may not be assigned by BUYER.

B.   Time is of the essence in respect of all of BUYER'S obligations.

C.   Notices to BUYER and SELLER may be served personally, by facsimile, or by certified first-class mail, return receipt requested, at their respective addresses, or, if BUYER has occupied the Property, at the Property, and if service is made personally or by facsimile, notice shall be treated as served and effective on the date such notice is given, provided such service is made during normal business hours.  If such service is made by first-class mail, notice shall be treated as served and effective on the date when delivered as indicated on the return receipt.  Any notice that is refused by either party shall be deemed to have been served on the date service is first attempted. In the event BUYER or SELLER utilizes facsimile transmitted signed documents, BUYER and SELLER hereby agree to accept, and hereby agree to instruct Escrow Holder to rely upon such documents as if they bore original signatures.  BUYER and SELLER hereby acknowledge and agree to use their best efforts to provide the other party prior to Close of Escrow, with such documents bearing the original signatures. BUYER and SELLER further acknowledge and agree that documents with non-original signatures will not be accepted for recording by the Monterey County Recorder.

D.   Regardless of the physical characteristics of the Property, no guarantees are made regarding the permanence of all or any portion of the present view, land use or development of this or surrounding real property.

BUYER'S Initials
SELLER'S Initials  (          )

1806S\713705 7  04/06/05

E.   No modification or amendment shall be effective unless in writing and signed by BUYER and SELLER.

F.   BUYER is prohibited from recording this Purchase Agreement or any memorandum hereof, and upon attempted recordation shall be in default hereunder and this Purchase Agreement, at SELLER'S election, shall terminate and all rights of BUYER hereunder shall thereupon cease.

G.   Waiver of one provision hereof shall not be deemed continuing nor a waiver of any other provision.

H.   All references in this Purchase Agreement to "days" shall mean calendar days unless otherwise indicated.

16.  BUYER ACKNOWLEDGES.  (1) BUYER has read and understands all the terms of this Purchase Agreement, and by execution of this Purchase Agreement, has received, read and understands the General Disclosures and the Specific Disclosures, attached as Exhibit "B" and Exhibit "C" to this Purchase Agreement, respectively, which are incorporated into this Purchase Agreement by this reference; (2) No statements, representations, promises, or assurances have been made to BUYER by SELLER or SELLER'S sales associate(s) regarding this purchase not contained within this Purchase Agreement and other documents supplied by SELLER related directly to this sale, including, but not limited to those relating to the current or future value of the Property or the prices or terms of other sales made by SELLER at any time in this Community.  All prices, terms, specifications, product upgrades or any other form of concession or BUYER inducement, whether related to the phase of construction in which the Residence will be constructed (the "Phase"), or any proposed or existing phase(s) of the Community, are subject to change without notice at the sole discretion of SELLER; (3) BUYER understands no sales associate, employee or agent of SELLER has the authority to make any promise or agreement on behalf of SELLER not contained in this Purchase Agreement and other documents supplied by SELLER related directly to this sale, or to modify or alter any of the terms of this Purchase Agreement, and (4) this Purchase Agreement contains the entire agreement between the parties.

17.  INTENT TO OCCUPY.  BUYER WARRANTS AND REPRESENTS TO SELLER THAT:  (A) BUYER IS ACQUIRING THE PROPERTY SOLELY AS BUYER'S PERMANENT RESIDENCE; (B) BUYER DOES NOT INTEND TO RENT THE PROPERTY; (C) BUYER DOES NOT INTEND TO SELL THE PROPERTY AT ANYTIME WITHIN TWENTY FOUR (24) MONTHS AFTER CLOSE OF ESCROW; AND (D) BUYER WILL OCCUPY THE PROPERTY AS ITS PRIMARY RESIDENCE PROMPTLY AFTER CLOSE OF ESCROW.  BUYER ACKNOWLEDGES AND AGREES THAT THE SUCCESS OF THE COMMUNITY IS DEPENDENT ON HAVING THE HOMES THAT COMPRISE THE COMMUNITY OCCUPIED BY THE OWNERS OF SUCH HOMES.  ACCORDINGLY, BUYER SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS SELLER FROM ALL LOSSES, COSTS, CLAIMS, LIABILITIES, DAMAGES AND EXPENSES RESULTING FROM ANY BREACH OF THE FOREGOING REPRESENTATIONS AND WARRANTIES.

17.1  RIGHT OF NOTICE AND RIGHT TO REPURCHASE.  In further consideration of the covenants and conditions of SELLER, BUYER hereby grants to SELLER a right of notice and a right to repurchase the Property on the following terms and conditions:

A.   RIGHT OF NOTICE.  If within twenty four (24) months after Close of Escrow, BUYER desires to sell the Property, BUYER shall give notice to SELLER of BUYER'S desire to sell the Property ("BUYER'S Notice").  Before BUYER offers the Property to any third party purchaser or accepts any offer from any third party purchaser, BUYER shall deliver BUYER'S Notice to SELLER.

B.   RIGHT TO REPURCHASE.  Upon receipt of BUYER'S Notice, SELLER shall thereafter have the right to repurchase the Property (the "Right to Repurchase") for a price equal to one hundred and five

13

BUYER'S Initials (B I )
SELLER'S Initials (   )

percent (105%) of the Purchase Price (the "Repurchase Price"). To exercise the Right to Repurchase, SELLER shall give notice to BUYER of its intent to exercise the Right to Repurchase within fifteen (15) days of receipt of BUYER'S Notice ("SELLER'S Notice").

C.   SELLER shall have the right to inspect the Property for a period of fifteen (15) days following delivery of SELLER'S Notice. If the condition of the Property is acceptable to SELLER, in SELLER'S sole discretion, SELLER shall notify BUYER, and the sale of the Property shall close ten (10) days after SELLER'S delivery of said notice; provided, however, that if the date scheduled for closing is a Saturday, Sunday or holiday, closing shall be on the next business day.

D.   The closing of a sale to SELLER pursuant to this Paragraph 17.1, shall take place at the offices of an escrow holder selected by SELLER. At such closing, BUYER shall execute and deliver to SELLER a grant deed and such other instruments of conveyance (all in commercially reasonably form, subject to the terms hereof) for the conveyance to SELLER of all BUYER'S right, title and interest in and to the Property upon receipt by BUYER of a immediately available funds in an amount equal to the Repurchase Price. SELLER shall be responsible for all closing and escrow costs. BUYER shall be responsible for all lender fees, lender costs, and liens upon the Property filed after Close of Escrow, except liens for current taxes, assessments, covenants, conditions, restrictions, easements, rights of way, and other matters of record. Taxes shall be prorated at the repurchase on the basis of a 30-day month, based on the latest figures available. SELLER shall have no responsibility for payment of any brokerage commissions with respect to the Property, and BUYER shall indemnify SELLER against any claims (and any losses incurred by SELLER in connection therewith) made by any broker, agent, or finder claiming the right to a fee or compensation on account of dealings with BUYER in connection with the Property.

E.   The terms and conditions of this Paragraph 17.1 shall run with the land and buildings that now or hereinafter comprise any portion of the Property and shall bind BUYER and BUYER'S successors and assigns. This Right to Repurchase shall survive the Close of Escrow.

18.  **INSULATION DISCLOSURE**. Insulation will be installed in the Residence as follows:

A.   Fiberglass batt insulation to a thickness of 3.5 inches in exterior walls of living area, which, according to the manufacturer, will yield a value of 13 exterior foam sheathing.

B.   Fiberglass batt insulation to a thickness of 8 inches in ceiling, which, according to the manufacturer, will yield an R/value of R-13.

C.   Attic will be insulated with fiberglass blown insulation to a thickness of 8 inches, which will, according to the manufacturer, yield an R/value of R-30.

D.   Floor insulation above garage will be insulated with fiberglass batt insulation to a thickness of 5.5 inches, which will, according to the manufacturer, yield an R/value of R-19.

19.  **BINDING AGREEMENT**. Execution of this document by BUYER alone shall constitute an offer to purchase. Upon acceptance and execution by an authorized officer of SELLER, the Purchase Agreement shall become binding upon both BUYER and SELLER. BUYER acknowledges SELLER is a real estate broker licensed by the State of California and is entering into this Purchase Agreement on its own behalf as a principal.

20.  **DIFFERENCE IN CONDITIONS**. In the event of BUYER'S discovery of different facts during the pendency of this sales transaction than those which BUYER believed to be true at the time of entering into this Purchase Agreement, BUYER'S decision to close Escrow shall be deemed to be BUYER'S decision to accept such facts, and shall constitute a waiver of any claim, cost, demand, or action against SELLER with regard to such facts.

14

BUYER'S Initials
SELLER'S Initials

Community: Tuscany at M     Bella          Lot: *16*          Block: *K5*

21. <u>COMMUNITY DOCUMENTS</u>.  BUYER'S signature on this Purchase Agreement constitutes BUYER'S acknowledgment that BUYER has received, read, understood and approved the following documents, which are hereby incorporated by reference into this Purchase Agreement:

   A.  The Covenants, Conditions, and Restrictions for the Community;

   B.  The other instruments provided, if any, that define the rights and responsibilities of the owners of interests in the Community;

   C.  The Xeriscape guidelines, describing preferred low-water usage landscaping within the Community;

   D.  A copy of Notice of SELLER'S Election for Handling of Construction Claims Pursuant to California Civil Code Section 895 et seq.;

   E.  A copy of California Civil Code Sections 895 -945.5 (Attached as Exhibit "D") (to be initialed and acknowledged by BUYER and SELLER);

   F.  This Purchase Agreement; and

   G.  The Natural Hazard Disclosure Statement pursuant to California Civil Code Section 1103, et seq.

22. <u>UPGRADES AND OPTIONAL ITEMS</u>.  BUYER hereby acknowledges and agrees that options and changes that BUYER orders to be constructed or installed in the Property shall be subject to all of the terms and provisions of this Purchase Agreement.  SELLER may condition BUYER'S selection of options and changes, other than those identified on Exhibit "A," on BUYER making an additional deposit toward the Purchase Price of the increase in the Purchase Price due to such options and changes (the "Options and Changes Prepayment").  BUYER acknowledges BUYER'S selection of options and changes and payment of the Options and Changes Prepayment, if any, must be made within fifteen (15) days after the date of this Purchase Agreement unless otherwise agreed by Seller in writing.

23. <u>CONSTRUCTION DEFECT CLAIMS RESOLUTION PROCEDURE</u>.

   A.  <u>NOTICE OF TITLE 7 CONSTRUCTION CLAIMS STATUTE</u>.  California Civil Code Section 895 et seq., as hereafter amended ("Title 7"), delineates standards for how various components of the Property should be constructed and function, limits the time frames for bringing various claims against SELLER to anywhere from one year to ten years (as listed in Sections 896 and 897 of Title 7) from the recordation of the Notice of Completion, imposes an obligation on BUYER to follow the SELLER'S maintenance recommendations and schedules, or other applicable maintenance guidelines, and establishes a non-adversarial claims resolution procedure that must be followed by BUYER before BUYER can initiate an adversarial claim and proceed to court or other alternate dispute resolution process.  A copy of Title 7 is attached as Exhibit "D" to this Purchase Agreement.

   BY INITIALING BELOW, BUYER ACKNOWLEDGES THAT SELLER HAS PROVIDED BUYER WITH A COPY OF TITLE 7 AND THAT SELLER HAS ADVISED BUYER THAT TITLE 7 AFFECTS BUYER'S LEGAL RIGHTS.  BUYER IS ADVISED TO READ THE STATUTE CAREFULLY AND SEEK LEGAL ADVICE IF BUYER HAS ANY QUESTIONS REGARDING ITS EFFECT ON BUYER'S LEGAL RIGHTS.

   ( *CB* )     ( *UB* )                  ( *(signature)* )     (     )
   BUYER'S INITIALS                       SELLER'S INITIALS

15

*(handwritten) N P q*

BUYER'S Initials *CB/UB*
SELLER'S Initials *( )*

Community: Tuscany at M    Bella    Lot: 52-13                    Block: 13

B.  **TITLE 7 MASTER DECLARATION, INDIVIDUAL AGREEMENT AND RESOLUTION OF CONSTRUCTION CLAIMS**.  SELLER has recorded, or intends to record, as an encumbrance against the Property prior to Closing, a document entitled MASTER DECLARATION FOR TITLE 7 AND DISPUTE RESOLUTION  FOR THE MONTE BELLA COMMUNITY ("Title 7 Master Declaration"). The Title 7 Master Declaration, among other things, will set forth standards, notices, declarations, maintenance requirements and dispute resolution procedures that must be followed by the owners in the Community with respect to any matter pertaining to construction defects and warranty claims, as well as any other post-Closing claims.  In addition, a condition precedent to Closing shall be the execution and delivery by BUYER and SELLER and recording as part of the Closing of a document entitled INDIVIDUAL DECLARATION AND NOTICES FOR TITLE 7 AND DISPUTE RESOLUTION FOR THE MONTE BELLA COMMUNITY ("Title 7 Individual Agreement").  The Title 7 individual Agreement will be an agreement between SELLER and BUYER, which is intended to be binding upon all successor owners of the Property, providing for the implementation of the standards, notices, declarations, maintenance requirements and dispute resolution procedures set forth in the Title 7 Master Declaration which after the Close of Escrow will be binding upon BUYER and all successor owners of the Property with respect to any matter pertaining to construction defects and warranty claims, as well as any other post-Closing claim, between BUYER and SELLER relating to the Property.  By initialing below, BUYER acknowledges that BUYER is aware that (i) a copy of the Title 7 Master Declaration has been delivered to BUYER for review (ii) a copy of a blank Title 7 Individual Agreement has been delivered to BUYER for review, (iii) that upon or prior to the Close of Escrow, the Title 7 Master Declaration will be recorded on the title to the Property, and (iv) as part of the Closing, the Title 7 Individual Agreement, executed and acknowledged by BUYER and SELLER, will be recorded on the title to the Property, the latter two documents intended to impart notice to and bind BUYER and BUYER'S successors in interest to the matters set forth therein.

      ( _CB_ )    ( _MB_ )                    ( _____ )    ( _____ )
      **BUYER'S INITIALS**                    **SELLER'S INITIALS**

C.  **RECEIPT OF PURCHASE DOCUMENTS**.  BUYER will be provided with certain documents through Escrow in conjunction with the purchase of the Property, including maintenance recommendations from the SELLER, maintenance recommendations for manufactured products or appliances included with the Property, claim forms, and other documentation relating to Title 7. BUYER is required by Title 7 to retain these documents and provide copies of such documents to BUYER'S successor in interest upon the sale or transfer of the Property.

D.  **OBLIGATION TO FOLLOW MAINTENANCE RECOMMENDATIONS**.  All Owners are obligated by Section 907 of Title 7 to follow SELLER'S maintenance recommendations and schedules, including the maintenance recommendations and schedules for manufactured products and appliances provided with the Property, as well as all commonly accepted maintenance practices (collectively, "Maintenance Recommendations").  Per Section 945.5 of Title 7, failure to follow the Maintenance Recommendations may reduce or preclude BUYER'S right to recover damages relating to such BUYER'S Property, which could have been prevented or mitigated had the Maintenance Recommendations been followed.

                                             BUYER'S Initials _CB_ _MB_

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES AND SHOULD BE READ THOROUGHLY PRIOR TO SIGNING.  BUYER AFFIRMS NO SALES ASSOCIATE, EMPLOYEE OR AGENT OF SELLER HAS MADE ANY PROMISE OR REPRESENTATION OF WHATSOEVER NATURE NOT SET FORTH IN THIS PURCHASE AGREEMENT.  IF YOU HAVE ANY QUESTIONS ABOUT YOUR RIGHTS OR OBLIGATIONS UNDER THIS DOCUMENT YOU MAY WISH TO CONSULT AN ATTORNEY.  IF PRIOR TO CLOSE OF ESCROW, SELLER REASONABLY DETERMINES THAT

                                       BUYER'S Initials _CB_ _MB_
                                       SELLER'S Initials ( _____ )

1806517137057  04/06/05

CERTAIN CHANGES OR REVISIONS MUST BE MADE TO THE COMMUNITY DOCUMENTS OR TO THE SALE DOCUMENTS FOR THE COMMUNITY, OR THAT CHANGES ARE NECESSARY IN THE PLANS FOR DEVELOPMENT OF THE COMMUNITY, SELLER SHALL GIVE BUYER WRITTEN NOTICE OF SUCH CHANGES.  UPON RECEIPT OF SUCH NOTICE, BUYER SHALL HAVE TWO (2) CALENDAR DAYS WITHIN WHICH TO REVIEW SUCH CHANGES AND, IF BUYER DISAPPROVES OF SUCH CHANGES, TO GIVE BUYER'S WRITTEN NOTICE THEREOF TO SELLER AND ESCROW HOLDER.  BUYER HEREBY AGREES THAT, IN THE EVENT BUYER DISAPPROVES OF SUCH CHANGES, BUYER'S SOLE REMEDY SHALL BE TO TERMINATE THIS PURCHASE AGREEMENT AND TO REQUEST CANCELLATION OF ESCROW, IN WHICH CASE BUYER SHALL RECEIVE A FULL REFUND OF ALL AMOUNTS DEPOSITED BY BUYER FOR THE PURCHASE OF THE PROPERTY.  ANY ESCROW CANCELLATION FEES INCURRED PURSUANT TO THIS PARAGRAPH SHALL BE THE EXPENSE OF SELLER.

**[Remainder of page left intentionally blank.]**

BUYER'S Initials
SELLER'S Initials

18065\713705 7  04/06/05

Community: Tuscany at Ñ    Bella    Lot: 52-13    Block: 13

UNLESS A COOPERATING BROKER ADDENDUM IS ATTACHED HERETO AND SIGNED BY BOTH
SELLER AND BUYER, BUYER REPRESENTS TO SELLER THAT THE ONLY SALES AGENT(S) WITH
WHOM THE BUYER HAS DEALT IN CONNECTION HEREWITH ARE THE "ON PREMISES" SALES
AGENT(S) LOCATED AT THE SELLER'S SALES OFFICE, AND SELLER AGREES TO PAY THE
COMMISSION EARNED BY SUCH SALES AGENT(S), IF ANY, PURSUANT TO SEPARATE
AGREEMENT.  BUYER AGREES TO INDEMNIFY AND HOLD SELLER HARMLESS FROM AND
AGAINST ANY AND ALL LOSS AND LIABILITY RESULTING FROM ANY BREACH OF THE
FOREGOING.  THIS SECTION SHALL SURVIVE THE CLOSING AND THE DELIVERY OF THE DEED.

11/20/05 _____    _____    Eleazar Becerra · Rocio Becerra
DATE    BUYER    Print Names

11/20/05 _____    Rocio Becerra    788 Mimbrosa Way
DATE    BUYER    Address

Salinas CA 93905
City    State    Zip

_____
Telephone Number (work)

_____
Telephone Number (home)

831 · 422 61 85
Fax Number / Cell Number

831 578 2455
E-mail address    578 2462 Rocio

**Monte Bella Realty, Broker**

RECEIPT FOR DEPOSIT ONLY

Date: 11 / 20 / 05

Signature: _____
Sales Associate

ACCEPTANCE:

**SELLER/OWNER:**

VCH-SALINAS I, LLC
a California limited liability company

By: _____
Name:
Title:
(Signature is Acceptance of Purchase Agreement)

Date: 11-29-05 _____

18

BUYER'S INITIALS (      )
SELLER'S INITIALS (      )

18065\713705.7  04/06/05

Community  Tuscany at Moi    ella          Lot:  16                    Block  15

EXHIBIT A

DESCRIPTION OF OPTION OR CHANGE

| Line In A.2. Above | Option Code | Date Selected | Description | Qty | Cost | Prepayment |
|---|---|---|---|---|---|---|
| | | | N/A | | | |
| Total Optional Items | | | | | $ 0 | $ 0 |

1

BUYER'S Initials (ESMD)
SELLER'S Initials (        )

Community: Monte Bella                    Lot: _16_                    Block _15_

EXHIBIT "B"

GENERAL DISCLOSURES
TO
PURCHASE AGREEMENT AND DEPOSIT RECEIPT
AND ESCROW INSTRUCTIONS

1.    SELLER'S RIGHT TO CHANGE.  BUYER acknowledges the home being purchased is not built to the precise specifications or design of any model home displayed to or visited by BUYER or to the specifications or plans depicted in any sales materials, and floor plans may be opposite ("flipped") mirror images of the model home displayed and BUYER accepts the floor plan for the home purchased. SELLER is not acting as a contractor for BUYER and is not building the home to BUYER'S specifications. Any model home display does not constitute a covenant by SELLER to precisely duplicate such model with its production homes.  SELLER reserves the right from time to time, without notice to BUYER, to make changes, alterations or substitutions to the home plans, specifications, construction materials or other integrals of the home as SELLER deems reasonable, providing such changes or alterations are approved by appropriate public agencies.  Such right of change or alteration shall also apply to common areas should they be a part of the Community.  None of the furnishings, decorating, wall treatments, fixtures, floor coverings, appliances, landscaping, walk-ways, patio or driveway treatments within or without the model home or depicted in the sales materials are included with the home purchased unless identified in writing as standard items or included in the Purchase Agreement.  Model interior paint colors are chosen by the model decorators and are not necessarily what will be used in the Property.

2.    USE OF SUBCONTRACTORS.  SELLER performs its construction through subcontractors and does not employ construction trades or workers.  SELLER is not permitted to change its subcontracts without approval of the subcontractor, and therefore, BUYER may not make interior or exterior construction changes or alterations not otherwise offered BUYER at point of sale.

3.    INTERIOR AND EXTERIOR COLORS.  BUYER has confirmed the interior and exterior colors to be used in BUYER'S home.  Great care and consideration have gone into the selection of the exterior color of your Monte Bella home for purposes of neighborhood balance and integrity.  Pre-selected color themes may not, under any circumstances, be changed.  We will endeavor to match the color of your home to our color chart.  However, large variations may occur and SELLER reserves the right to revise all or part of the designated color schemes at its discretion without notice to BUYER.

4.    CHANGES IN PRICE, PRODUCT, DEVELOPMENT PLAN AND MARKETING METHODS. BUYER acknowledges that SELLER may, in its sole discretion, change its pricing, product, development plan and marketing methods.  Without limitation, SELLER may elect to sell other homes in this Phase, or in future phases, under terms and conditions which are more favorable than those stated in this Purchase Agreement, including, without limitation, more favorable terms and conditions resulting from the sale of homesites in bulk to another SELLER or by auction (with or without reserve) to members of the general public.  SELLER may elect not to build homes on each homesite of this Phase or future phases, or may elect to build a different type or size of home on a smaller or larger homesite, or may use different construction methods to build such homes.  SELLER may further elect to build homes of the same type as the Property in this or future phases, but to reduce the sales price for such homes, or to improve such homes with more or less expensive features and amenities.  If SELLER owns or later acquires land adjacent to the Community, SELLER may elect to develop such land with a product type which is different from and less expensive than the Property.  Any of the foregoing events may adversely affect the value of the Property.  Nothing in this Purchase Agreement shall be interpreted as an express or implied warranty or representation that SELLER will refrain from any pricing program, product design program, development strategy or marketing plan which in any manner adversely affects the value of the Property. BUYER acknowledges SELLER'S right to offer price reductions, financing incentives, reduced interest rates, decorator allowances, additional features and other similar incentives (collectively, "Incentives") to future buyers in the Community (or any other community developed by SELLER) without any obligation to offer any comparable Incentives to BUYER.  BUYER further acknowledges that BUYER has negotiated

1

*N Q 4*

BUYER'S Initials _____
SELLER'S Initials _____

Community: Monte Bella          Lot: __16__

Block __15__

its sales price for a particular Property within the Community and BUYER is fully satisfied with such price and the incentives received in connection with the negotiation of such price.

5. LAND USE. Each homesite within the Community has unique characteristics, one of which is location. Each homesite may currently enjoy a particular view, but that view is not guaranteed to be permanent. Future development of the Community or other real property within or adjacent to the Community and the growth of trees and other vegetation in the general area of the Property may change, obstruct, impair or otherwise affect the view from the Property at any time, or the use of the Property. BUYER acknowledges that as development continues within and without the Community, BUYER may be inconvenienced by road improvements, dust, noise and other development activities and that SELLER has no control or responsibility over the uses of adjacent real properties or road improvements or the construction timing or changes that may occur with respect thereto.

6. INFORMATIVE DOCUMENTS. Geology reports, soils reports, precise grading plans, irrigation plans, final maps, environmental documents and other information subject to review and approval by governmental agencies in connection with the Community are available for BUYER'S review at the office of the appropriate governmental agency. BUYER is encouraged to utilize such information and consult in connection with any improvements to the Property.

7. SQUARE FOOTAGES AND GARAGE SIZES. Square footages quoted in the brochures, price lists, and other informational material for the homes are approximate, and are not determinative of the sales price. BUYER understands the garage will be of standard size and may not accommodate certain utility vehicles.

8. AGE, BOUNDARY LINES, AND SQUARE FOOTAGE. The grading of the homesites in this Community may result in the Property boundary line not being located at either the top or the bottom of the slope. Any representations made by SELLER or brokers regarding the age of improvements, property size, building size, or location of property lines may not be accurate and should not be relied upon. Apparent boundary line indicators, such as grading, topography, fences, hedges, walls or other barriers may not represent the true boundary lines. Only a surveyor can determine the actual boundary lines. Figures on the MLS, property data sheets, brochures, flyers or Internet sites are not intended to be or to represent precise and accurate information. The decision to purchase should not be based upon any of these representations. If any of these issues are important to BUYER'S decision to purchase, then BUYER should consider further independent investigations of the Property.

9. SLOPES. Unless otherwise provided in the Covenants, Conditions and Restrictions or other disclosure documents, planting and maintenance of all slopes within the boundaries of BUYER'S Homesite will be BUYER'S responsibility.

10. DRAINAGE. Each homesite within the Community will be engineered and graded to local governmental standards to assure proper drainage of rain and irrigation water. BUYER understands that BUYER'S alteration of or failure to maintain the Property as delivered by SELLER may cause damage to the Property and any landscaping or hardscape, and cause damage to the interior or exterior of the Residence, and to neighboring properties. If BUYER'S alteration to the drainage of the Property causes damage to neighboring properties or common areas, BUYER will be liable for all such damage. BUYER accepts responsibility for maintaining the integrity of the grading and drainage of the Property and holds SELLER free and harmless from BUYER'S alteration or changes to the grading or drainage. SELLER recommends use of a state-licensed civil engineer or landscape architect for landscape plans and installation.

11. UTILITY EASEMENTS. Information concerning easements for utilities, drainage, rights of way and other purposes are shown on the title report and subdivision map recorded in the Monterey County Recorder's office. Utility companies typically locate electrical facilities, telephone, street lights and cable TV boxes in utility easement areas. These areas typically run parallel to streets and driveways, although individual conditions may necessitate their placement in other areas. The utility companies control the

2

BUYER'S Initials (__)(__)
SELLER'S Initials (__)(__)

Community: Monte Bella          Lot: _16_                          Block _15_

location of these facilities. BUYER should contact the utility companies for exact locations affecting the Property.

12.    MAILBOXES. Mailbox locations are controlled by the United States Postal Service and are subject to change.

13.    RADON. The aging process of the soil and other elements created by nature, as well as building materials developed by man, many times create unwanted and undesired gases and other contaminates in homes, both new and used. Also, since energy conservation has become a concern, the State of California Uniform Building Code, specifically the energy standards, has created tighter homes which trap these unwanted gases in different degrees depending on how each person lives within their home. To date, measurements of such unwanted gasses (such as radon) are reported as parts of the air they occupy. In most cases the measurements are translated to "parts per millionth" or "parts per billionth". Since the quality of air we breathe can affect our health, we recommend frequent airings of your home by simply opening your windows to introduce air uncontaminated with such gases. Other air transfer methods are also available and helpful such as circulating systems using outside air intake.

14.    SMOKE DETECTOR STATEMENT OF COMPLIANCE. Health and Safety Code Section 13113.8 requires that (1) every existing dwelling sold shall have a battery operated smoke detector in each hall leading to a bedroom, and that (2) every existing dwelling with additions, alterations, or repairs made on or after August 4, 1992, for which the cost exceeds $1,000.00 and for which a permit is required, have installed in each bedroom a battery operated smoke detector; and (3) every newly built dwelling have hard-wired smoke detectors with a battery back-up installed in each bedroom and at a point centrally located in a hall outside each bedroom. Local ordinances may necessitate additional requirements. Pursuant to California Health & Safety Code Section 13113.8, SELLER hereby certifies that the Residence has or shall have operable smoke detectors, as approved and listed by the State Fire Marshal and installed in accordance with the State Fire Marshal's regulations. BUYER is encouraged to inspect the Property to be satisfied as to such compliance.

15.    WATER HEATER STRAPPING. Pursuant to California Health & Safety Code Section 19211, SELLER hereby certifies that all water heaters are installed in accordance with the above-referenced Health & Safety Code, and are strapped to resist falling or horizontal displacement due to earthquake motion.

16.    FIRE SPRINKLERS. BUYER should satisfy itself that any fire sprinklers installed on the Property are in proper operating condition.

17.    LICENSE. Real Estate Brokers and their agents are licensed by the State of California Department of Real Estate only to sell real estate. They cannot advise clients on any legal, tax or insurance matter. A real estate agent is not obligated to investigate areas off the site of the subject property or public records or permits concerning the title or use of the Property. Norm Yop Inc., Realtors, and its agents advise BUYER to seek legal counsel on legal issues, if so desired, from a competent real estate attorney of their choice, a qualified accountant/CPA or financial advisor of their choice as to possible tax consequences related to the sale or purchase of real property, and an insurance agent for questions concerning types of insurance coverage. BUYER is aware that the agent is not a licensed property inspector and is not an expert in structural or mechanical construction, plumbing, electrical, geological, engineering, etc., conditions. Agents do not possess any expertise in these areas. No representations except those noted in the Specific Disclosures have been made by agent to BUYER or SELLER as to the condition of the Property. BUYER acknowledges that BUYER has been informed by the agent that BUYER should obtain any and all inspections concerning the condition of the Property from an appropriate licensed contractor or entity concerning any conditions that BUYER may have questions about.

18.    FAIR MARKET VALUE. BUYER is aware that agents and brokers are not licensed real estate appraisers and are not making any warranties, expressed or implied, as to appreciation values, depreciation values or the actual fair market value of the real property and the general area where the

3

BUYER'S Initials _____
SELLER'S Initials _____

Community: Monte Bella        Lot: *16*            Block: *15*

Property is located. IF BUYER has concerns about the value of the Property, BUYER should consult with, and obtain an appraisal from, a licensed real estate appraiser of BUYER'S choice. Agents and brokers in this transaction have made a good faith opinion as to the fair market value of the Property that is the subject of this purchase and sale.

19.    FEDERAL WITHHOLDING TAX. The Foreign Investment in Real Property Tax Act ("FIRPTA"), Internal Revenue Code Section 1445, requires every BUYER of U.S. real property to deduct and withhold from a SELLER'S proceeds ten percent (10%) of the sales price unless an exemption applies. One exemption, which excuses the requirement to withhold, is the providing by a SELLER to a BUYER of an affidavit under penalty of perjury stating that SELLER is not a "foreign person." In this regard, at Close of Escrow, SELLER agrees to furnish BUYER with such an affidavit. This affidavit will also serve as an exemption for purposes of California Revenue and Taxation Code Section 18805 which would otherwise also require BUYER to deduct and withhold an additional tax equal to one-third of the amount required to be withheld under Section 1445.

20.    CALIFORNIA WITHHOLDING TAX. California Revenue and Taxation Code Sections 18805 and 26131 require a BUYER of real property to withhold California income taxes from escrow funds under certain circumstances. SELLER hereby warrants and represents to BUYER and Escrow Holder that BUYER is NOT required to withhold taxes in connection with this transaction since all the conditions that are necessary for these Codes to be applicable have not been met. However, prior to Close of Escrow, SELLER shall deposit into Escrow, SELLER'S Affidavit of Non-Resident Status and Escrow Holder shall deliver a copy of same to BUYER prior to Close of Escrow.

21.    PRELIMINARY CHANGE OF OWNERSHIP STATEMENT. In accordance with California Revenue and Taxation Code Sections 480.3 and 480.4, effective July 1, 1985, all deeds and other documents, when presented for recordation, that reflect a change of ownership must include a Preliminary Change of Ownership Report ("Report"). Said Report is to be furnished to Escrow Holder by BUYER prior to Close of Escrow and attached to required documents for delivery to the Monterey County Recorder. Should said Report not be submitted to Escrow Holder for submission with the documents as called for or should said form be rejected by the Monterey County Recorder for any reason whatsoever (i.e., missing information), Escrow Holder shall charge BUYER and pay the Monterey County Recorder a service charge of Twenty Dollars ($20.00) as required by said governmental agency. Escrow Holder is not to be further concerned with said Report and/or the provisions of this Paragraph.

22.    JURISDICTION. BUYER understands that the Property may be subject to limitations and restrictions regarding use, house size, lot coverage, configuration, design, materials, environmental issues, future under-grounding of utilities, mandatory fire sprinklers and other matters affecting home construction and/or modification. BUYER is advised to confer with an architect, contractor, and city/county officials regarding such restrictions and the present and future use, availability of permits for new construction, contemplated additions or other remodeling projects.

4

BUYER'S Initials
SELLER'S Initials

EXHIBIT "C"

SPECIFIC DISCLOSURES

1.    PRIVATE WELLS. Depending on the Property's location, the Monterey County Water Resources Agency or Monterey Peninsula Water Management District has requirements for registering private wells. The MPWMD also requires that installation of water meters on most wells. BUYER is advised to determine from the appropriate agency that all requirements for private wells on the Property have been met. BUYER is also advised to obtain a report as the quantity of available water and its quality so as to determine the viability of the well for all planned uses.

2.    COVENANTS, CONDITIONS AND RESTRICTIONS. BUYER should carefully review any CC&R's which affect the Property to determine, to BUYER'S own satisfaction, the impact of the documents on their use and enjoyment of the Property and BUYER'S personal liability for any assessments.

3.    FORMER FEDERAL/STATE ORDINANCE LOCATIONS. Anyone purchasing property within one mile of a known former military training ground, such as Fort Ord, must be advised of the potential presence of live ammunition or explosives. Fort Ord also has been designated for federal funding as a "Superfund" site for removal of hazardous and toxic chemicals, etc. BUYER should satisfy itself as to any negative impact on the Property.

4.    FLOOD HAZARD ZONES. The National Flood Insurance Program (NFIP) was established to identify all flood plain areas within the United States and establish flood risk zones within those areas. The program mandates flood insurance for properties in the high-risk zones if loans are obtained from federally regulated financial institution or are guaranteed by any agency of the US Government. The extent of coverage and costs may vary. For further information, BUYER should consult BUYER'S lender and/or insurance agent.

5.    GEOLOGICAL HAZARDS. Earthquakes such as the major one that occurred in Santa Cruz and Monterey Counties on October 17, 1989, can cause damage to structures and transportation systems. BUYER is encouraged to secure professional inspections by licensed contractors and/or engineers to determine the condition of the Property. There is always a potential for future earthquakes. BUYER can obtain earthquake insurance to protect BUYER'S interests in the Property. BUYER is encouraged to obtain a pamphlet entitled "The Homeowners' Guide to Earthquake Safety". Many areas have a wide range of geological problems. Numerous studies have been made of the geology of these areas that have led to the creation of maps and written reports. Some of this work is available for public review at the City of Salinas and the Monterey County Planning Departments. BUYER is encouraged to satisfy any concerns regarding the geologic condition of the area by reviewing the public maps and reports and/or obtaining a geologist's inspection report. BUYER is advised to consult and obtain a geological report from an appropriate licensed agency to determine if the subject property is in a "geological hazard, earthquake, or flood" control area. In addition, basic homeowner's insurance does not normally include this type of hazard coverage. BUYER is advised to consult with a licensed insurance agent regarding coverage and costs of these items.

6.    EARTHQUAKE SAFETY. The California Seismic Safety commission has prepared a booklet entitled "Homeowners Guide to Earthquake Safety", providing information to home purchasers on how to make a home safer in earthquakes and spotting potential weaknesses. It is highly recommended that BUYER obtain a copy of this booklet from your real estate agent or BUYER may receive a complimentary copy from Norm Yop Inc., Realtors.

7.    INVOLUNTARY UNEMPLOYMENT INSURANCE. Some insurance carriers are offering insurance policies that will make a specific number of mortgage payments on institutional financing in the event a buyer becomes involuntarily unemployed. There are qualifying requirements and BUYER is encouraged to look into the possibility of securing such insurance.

1

BUYER'S Initials
SELLER'S Initials

Community: Monte Bella                Lot: _16_

Block: _15_

8.      ENVIRONMENTAL HAZARDS.  Buyers of residential property are required to receive special notice about the dangers of lead based paint on property built before 1978. The California Department of Real Estate and Health Services has prepared a booklet that is an overview of environmental hazards found on and affecting residential real estate. This booklet should be consulted for general information about lead and other environmental hazards. Other possible environmental hazards may exist that are beyond the knowledge and expertise of real estate licensees, such as electromagnetic fields. BUYER is encouraged to obtain any and all environmental hazard inspections that BUYER deems necessary to satisfy any concerns. The "Homeowners Guide to Earthquake Safety & Environmental Hazards," which also includes "Protect Your Family from Lead" booklet may be obtained from a real estate agent or Norm Yop Inc., Realtors.

9.      HOME PROTECTION PLANS.  BUYER can obtain a Home Protection Plan that provides limited insurance coverage for residential properties. In the event that such a plan is not requested in writing, the warranty is waived.

10.     NOISE/ODORS.  People differ on acceptable noise and odor levels. This is a highly subjective concept. BUYER should not rely on the personal opinions of SELLER or Realtors as to noise or odor levels but should determine to BUYER'S own satisfaction whether the Property meets BUYER'S standards.

11.     PRIVATE ROADS.  Some properties are accessed or affected by a private road, which is shared by two or more other property owners. If applicable, BUYER should determine the existence of a recorded private road maintenance agreement and compliance with that document. BUYER is also encouraged to investigate and access the potential financial liability concerning the maintenance, improvement, replacement, and other costs/liabilities associated with private roads. BUYER should contact city/county officials and/or an attorney to evaluate potential responsibilities.

12.     SCHOOLS.  Overcrowding and school closings have occurred within many districts and some school busing programs have been instituted. Neither the Sellers, Norm Yop, Inc., Realtors, nor their sales associates can specify which school any given child may attend at any time. BUYER should contact city/county officials and/or their attorney to evaluate BUYER'S potential responsibilities.

13.     SEPTIC/CESSPOOL SYSTEMS.  If the Property has or had a septic/cesspool then BUYER should obtain a professional evaluation of the system by a licensed contractor. The inspections involve locating,, uncovering, and possible pumping the system including the leach fields. Costs vary depending on labor needed or local requirements. Restrictions may exist on use of surface areas.

14.     SOILS.  Due to the inconsistent and unreliable nature of soils in Northern California, earth movement, drainage, structural, and foundation problems may exist or subsequently develop that are not visible upon an ordinary and reasonable inspection by a real estate licensee and that may require a licensed soils engineer to evaluate soil conditions. Even though there may have been a prior soil report in connection with construction, soil conditions may change. Buyers who choose to have a contractor's inspection should be aware that a contractor's license does not qualify one to evaluate soils, and they should seek an inspection from an appropriate licensed person who specializes in evaluating soil conditions, etc.

15.     SPECIAL STUDIES ZONES.  The Alquist-Priolo Special Studies Zone Act requires the delineation of "special studies zones" along known active faults in California. Cities and counties affected by the zones must regulate certain development "projects" within zones. The construction or development on affected properties may be subject to the findings of a geological report prepared by a registered California geologist. BUYER should make independent inquiries with appropriate governmental agencies concerning the use and improvement of the Property prior to the Close of Escrow.

16.     WATER ISSUES  Areas within Monterey County have experienced water shortages in recent years. Water utilities and mutual water companies may periodically impose mandatory or voluntary rationing/cutbacks, retrofit requirements, and/or increased fees, restrictions or moratoriums on building.

2

BUYER'S Initials (____)
SELLER'S Initials (____)

Community: Monte Bella          Lot: 16          Block 15

remodeling or intensifying water use. Water quality may also be affected. BUYER is advised to contact the water company which serves the Property, the appropriate governing water or planning agency, and/or the environmental Health Department for more information concerning the nature and extent of any current or anticipated water policies which may have an effect on the BUYER'S general use, development and enjoyment of the Property.  BUYER is also advised that measurable amounts of salt water intrusion have been found in some of the county's underground water supply.

17.    BUILDING CODE VIOLATIONS.  Remodeling, repairs or additions of any buildings without permits are zoning and use-code violations. Any violation of these codes can be "red-tagged" with a notice that the condition must be corrected or the use abated. The city/county can require illegal room additions or buildings be torn down, and/or converted back to their original use.

18.    AIRPORTS/LAGUNA SECA RACEWAY.  The Monterey Peninsula Airport is located off Highway 68, less than one mile from Highway 1. The Salinas Municipal Airport is located off Airport Boulevard in Southeast Salinas, and the Marina Airport is  located near Reservation Road and Imjin Road in Marina. BUYER should be aware of potential air traffic noise in these areas. Laguna Seca Raceway on Monterey Salinas Highway is the site of periodic major events, which may produce increased noise and/or traffic conditions.

19.    COASTAL COMMISSION.  Areas of Monterey County are under the jurisdiction of the California State Coastal Commission, which may have authority to approve or disapprove remodeling, building and development projects. BUYER is advised to seek advice from appropriate government authorities.

20.    PROPERTY RENTAL.  Several cities and the County of Monterey have ordinances concerning short-term rentals.  Generally these ordinances are strictly enforced and prohibit rentals of less than 20 days. BUYER should satisfy any concerns of BUYER regarding local ordinances.

21.    HATTON CANYON FREEWAY.  A State highway through Hatton Canyon in the Carmel area has been proposed. If constructed, it is anticipated to run from Highway 1 near Carpenter Street to a point just south of Rio Road.

22.    AGRICULTURAL USES.  Agriculture and related activities are a major industry in Monterey County. BUYER is advised that agricultural activities could affect the Property and the Community, in terms of air quality and other matters.

23.    NORTH MONTEREY COUNTY/HIGHWAY 101 BYPASS-CRAZY HORSE CANYON LANDFILL. Alternate routes for the Highway 101 Bypass in the North Salinas-Prunedale area are under consideration by state authorities. Selection of any one of these routes may impact quality of life and property values in these areas. The  proximity of any property near the Crazy Horse Canyon Landfill (located at 350 Crazy Horse Road) may have an adverse effect on property values, quality of life, water, etc. The landfill may continue to expand in the foreseeable future. BUYER should to satisfy any concerns BUYER may have regarding the purchase of properties in the above areas.

24.    FIRE HAZARDS.  BUYER should be aware that fire protection in parts of Monterey County might be located within a "State Fire Responsibility Area".  BUYER is encouraged to satisfy BUYER'S concerns regarding the risk of fire by contacting the local fire department and BUYER'S insurance agent.

25.    ZONING.  BUYER should check with the city or county planning department to determine if the zoning of the Property is compatible with BUYER'S intended use.

26.    NEIGHBORHOOD SAFETY.  If the issue of safety is of concern to BUYER in purchasing this Property, SELLER recommends that BUYER consult with local police authorities. BUYER should investigate criminal and/or any gang-related activities with the appropriate authorities prior to Close of Escrow.

3

BUYER'S Initials (_B_/_B_)
SELLER'S Initials (_____/_____)

Community: Monte Bella                     Lot: _16_                     Block: _15_

27.     FINE PITCH CANKER.  Monterey pine trees as well as other California pines are susceptible to the pitch canker fungal disease. If allowed to progress, pitch canker can eventually kill the pine tree. Pitch canker has been found in many coastal areas of California, including Monterey County. An informative consumer booklet, "Pine Pitch Canker" has been produced by the California Department of Forestry and is available from your local CDF Office, City Forester's Office and Monterey County Association of Realtors.

28.     TREE PROTECTION/PRESERVATION.  Most areas of Monterey County have tree protection/preservation regulations. BUYER should investigate said regulations in the event BUYER contemplates any tree removal for reasons of aesthetics, property remodel, new construction, etc.

29.     HISTORICAL PRESERVATION.  Most of the cities and the County of Monterey have regulations affecting the use, renovation, and/or demolition of properties over 50 years old. BUYER is advised to consult with planning officials regarding such regulations.

30.     CITY INSPECTIONS/COUNTY INSPECTIONS.  Prior to the change in ownership (1) some cities require a city inspection and/or issuance of a city building report (fees vary); and (2) county building reports are optional.  These reports contain vital information regarding building permits on the Property and occasionally zoning information.

31.     ENERGY AUDIT REQUIREMENTS.  Local ordinances may require the filing of a compliance report.

32.     MOLD.  Certain factors may create an environment in which mold is likely to occur. Infestations of mold, both toxic and non-toxic have been noted in properties in Monterey County, and BUYER should consult with home inspectors or other experts concerning the presence of this condition in the Property.

33.     DISCLOSURE: DATABASE - REGISTERED SEX OFFENDERS NOTICE.  The California Department of Justice, sheriffs departments, police departments serving jurisdictions of 200,000 or more and many other local law enforcement authorities maintain for public access a data base of the locations of persons required to register pursuant to paragraph (1) of subdivision (a) of Section 290.4 of the Penal Code. The database is updated on a quarterly basis and a source of information about the presence of these individuals in any neighborhood. The Department of Justice also maintains a Sex Offender Identification Line through which inquiries about individuals may be made. This is a "900" telephone service. Callers must have specific information about individuals they are checking. Information regarding neighborhoods is not available through the "900" telephone service (Civil Code 2079.10a).

34.     INCLUSIONARY HOUSING.  In accordance with the City of Salinas and/or Monterey County inclusionary housing ordinance(s), BUYER is aware that 103 out of 853 homes built in the Community are affordable to households with incomes less than or equal to the median income of the Salinas area, and these homes will be disbursed randomly throughout the project.

35.     SOILS.  The Community was formerly row cropland.  Environmental studies conducted in connection with the development of the Community have indicated the presence of residual levels of agricultural pesticides, which are consistent with the previous farming practices in the area.  A complete description of the environmental conditions and the results of the environmental studies can be found in the Phase II Environmental Site Assessment for The Monte Bella Subdivision Property Phases I and II prepared by _LANDSET_____, dated _JUN____ 200_5_ which are available for BUYER'S review at the sales center.  BUYER acknowledges the foregoing disclosure regarding residual pesticides in the soil and acknowledges further that BUYER has been informed and advised by SELLER of the availability of the environmental document for BUYER'S review.

36.     PROPOSITION 65.  Pursuant to State of California law (Proposition 65), SELLER hereby notifies BUYER that certain substances known to cause cancer, birth defects or reproductive harm may have been used in the construction of the home and improvements located in, on or about the Community of

4

BUYER'S Initials (     )
SELLER'S Initials (     )

Community: Monte Bella                    Lot: 16                    Block: 15

which the Property is a part. These substances include, but are not limited to, the following: paint, oil, gasoline, plywood and particle board, metals and organic toxins from piping systems, wood preservatives in decks and patios, and emissions from heavy duty construction equipment. Detectable amounts of some or all of such substances may be present in the home and surrounding real property.

37.    MAINTENANCE DISTRICT.    The City of Salinas has formed a Maintenance District within the public areas of the Community. The Maintenance District was formed pursuant to the provisions of the Landscaping and Lighting Act of 1972, which allows local legislative bodies to assess parcels within the Maintenance District in order to generate funds for the installation and maintenance of public lighting and landscaping. Assessments can vary from year to year, and are established annually by the City Council at a public hearing. Assessments are collected by the county along with and in the same manner as general property taxes. The Property is within the boundaries of the Maintenance District. The current annual assessment is approximately $__746.52__.

38.    RIGHT TO FARM.    BUYER is hereby notified that the Property is located within 1,000 feet of agricultural land, agricultural processing and/or agricultural farming operations. As a result of the proximity of the Property to these activities and uses, BUYER may experience inconveniences or discomfort associated with these activities. If these farming activities and uses are conducted in a manner consistent with applicable State and local laws, said inconveniences and discomforts shall not be considered a nuisance. Due to the proximity to agricultural areas or uses, BUYER should be prepared to accept such inconveniences and discomfort as a normal and necessary aspect of living in an area with agricultural operations and uses.

39.    AVIGATION EASEMENT.    BUYER is hereby notified that over the Property there is a perpetual avigation easement and right-of-way for the free and unobstructed aerial passage and flight of aircraft, which right-of-way includes the right to cause, make and emit noise and all other effects as may be inherent in the operation, use, flight, maintenance, taking off, land and navigation of aircraft in connection with the present or future operation of the airport.

40.    LIMITED WARRANTY.    Except as expressly provided in the Limited Warranty provided to BUYER at Close of Escrow, SELLER disclaims all other express or implied warranties, and SELLER makes no warranty or representation, express or implied, including but not limited to, implied warranties of merchantability and fitness for a particular purpose.

5

BUYER'S Initials
SELLER'S Initials

Community: Monte Bella                Lot: 16                    Block 15

EXHIBIT "D"

CALIFORNIA CONSTRUCTION CLAIMS STATUTE
(CALIFORNIA
CIVIL CODE SECTION 895 – 945.5)

## TITLE 7 - CHAPTER 1: DEFINITIONS

§895:

(a) "Structure" means any residential dwelling, other building, or improvement located upon a lot or within a common area.

(b) "Designed moisture barrier" means an installed moisture barrier specified in the plans and specifications, contract documents, or manufacturer's recommendations.

(c) "Actual moisture barrier" means any component or material, actually installed, that serves to any degree as a barrier against moisture, whether or not intended as such.

(d) "Unintended water" means water that passes beyond, around, or through a component or the material that is designed to prevent that passage.

(e) "Close of escrow" means the date of the close of escrow between the builder and the original homeowner. With respect to claims by an association, as defined in subdivision (a) of Section 1351, "close of escrow" means the date of substantial completion, as defined in Section 337.15 of the Code of Civil Procedure, or the date the builder relinquishes control over the association's ability to decide whether to initiate a claim under this title, whichever is later.

(f) "Claimant" or "homeowner" includes the individual owners of single-family homes, individual unit owners of attached dwellings and, in the case of a common interest development, any association as defined in subdivision (a) of Section 1351.

## TITLE 7 - CHAPTER 2: ACTIONABLE DEFECTS

§896:  In any action seeking recovery of damages arising out of, or related to deficiencies in, the residential construction, design, specifications, surveying, planning, supervision, testing, or observation of construction, a builder, and to the extent set forth in Chapter 4 (commencing with Section 910), a general contractor, subcontractor, material supplier, individual product manufacturer, or design professional, shall, except as specifically set forth in this title, be liable for, and the claimant's claims or causes of action shall be limited to violation of, the following standards, except as specifically set forth in this title. This title applies to original construction intended to be sold as an individual dwelling unit. As to condominium conversions, this title does not apply to or does not supersede any other statutory or common law.

(a) With respect to water issues:

(1) A door shall not allow unintended water to pass beyond, around, or through the door or its designed or actual moisture barriers, if any.

1

BUYER'S Initials _____
SELLER'S Initials _____

Community: Monte Bella                    Lot: *16*                          Block: *15*

(2) Windows, patio doors, deck doors, and their systems shall not allow water to pass beyond, around, or through the window, patio door, or deck door or its designed or actual moisture barriers, including, without limitation, internal barriers within the systems themselves. For purposes of this paragraph, "systems" include, without limitation, windows, window assemblies, framing, substrate, flashings, and trim, if any.

(3) Windows, patio doors, deck doors, and their systems shall not allow excessive condensation to enter the structure and cause damage to another component. For purposes of this paragraph, "systems" include, without limitation, windows, window assemblies, framing, substrate, flashings, and trim, if any.

(4) Roofs, roofing systems, chimney caps, and ventilation components shall not allow water to enter the structure or to pass beyond, around, or through the designed or actual moisture barriers, including, without limitation, internal barriers located within the systems themselves. For purposes of this paragraph, "systems" include, without limitation, framing, substrate, and sheathing, if any.

(5) Decks, deck systems, balconies, balcony systems, exterior stairs, and stair systems shall not allow water to pass into the adjacent structure. For purposes of this paragraph, "systems" include, without limitation, framing, substrate, flashing, and sheathing, if any.

(6) Decks, deck systems, balconies, balcony systems, exterior stairs, and stair systems shall not allow unintended water to pass within the systems themselves and cause damage to the systems. For

purposes of this paragraph, "systems" include, without limitation, framing, substrate, flashing, and sheathing, if any.

(7) Foundation systems and slabs shall not allow water or vapor to enter into the structure so as to cause damage to another building component.

(8) Foundation systems and slabs shall not allow water or vapor to enter into the structure so as to limit the installation of the type of flooring materials typically used for the particular application.

(9) Hardscape, including paths and patios, irrigation systems, landscaping systems, and drainage systems, that are installed as part of the original construction, shall not be installed in such a way as to cause water or soil erosion to enter into or come in contact with the structure so as to cause damage to another building component.

(10) Stucco, exterior siding, exterior walls, including, without limitation, exterior framing, and other exterior wall finishes and fixtures and the systems of those components and fixtures, including, but not limited to, pot shelves, horizontal surfaces, columns, and plant-ons, shall be installed in such a way so as not to allow unintended water to pass into the structure or to pass beyond, around, or through the designed or actual moisture barriers of the system, including any internal barriers located within the system itself. For purposes of this paragraph, "systems" include, without limitation, framing, substrate, flashings, trim, wall assemblies, and internal wall cavities, if any.

(11) Stucco, exterior siding, and exterior walls shall not allow excessive

2

BUYER'S Initials ___
SELLER'S Initials ( __ )

130659713705 7

Community:  Monte Bella          Lot: _16_          Block: _15_

condensation to enter the structure and cause damage to another component. For purposes of this paragraph, "systems" include, without limitation, framing, substrate, flashings, trim, wall assemblies, and internal wall cavities, if any.

(12) Retaining and site walls and their associated drainage systems shall not allow unintended water to pass beyond, around, or through its designed or actual moisture barriers including, without limitation, any internal barriers, so as to cause damage. This standard does not apply to those portions of any wall or drainage system that are designed to have water flow beyond, around, or through them.

(13) Retaining walls and site walls, and their associated drainage systems, shall only allow water to flow beyond, around, or through the areas designated by design.

(14) The lines and components of the plumbing system, sewer system, and utility systems shall not leak.

(15) Plumbing lines, sewer lines, and utility lines shall not corrode so as to impede the useful life of the systems.

(16) Sewer systems shall be installed in such a way as to allow the designated amount of sewage to flow through the system.

(17) Shower and bath enclosures shall not leak water into the interior of walls, flooring systems, or the interior of other components.

(18) Ceramic tile and tile countertops shall not allow water into the interior of walls, flooring systems, or other components so as to cause damage.

(b) With respect to structural issues:

(1) Foundations, load bearing components, and slabs, shall not contain significant cracks or significant vertical displacement.

(2) Foundations, load bearing components, and slabs shall not cause the structure, in whole or in part, to be structurally unsafe.

(3) Foundations, load bearing components, and slabs, and underlying soils shall be constructed so as to materially comply with the design criteria set by applicable government building codes, regulations, and ordinances for chemical deterioration or corrosion resistance in effect at the time of original construction.

(4) A structure shall be constructed so as to materially comply with the design criteria for earthquake and wind load resistance, as set forth in the applicable government building codes, regulations, and ordinances in effect at the time of original construction.

(c) With respect to soil issues:

(1) Soils and engineered retaining walls shall not cause, in whole or in part, damage to the structure built upon the soil or engineered retaining wall.

(2) Soils and engineered retaining walls shall not cause, in whole or in part, the structure to be structurally unsafe.

3

1806531713705 7

Community: Monte Bella                Lot: 16                Block: 15

(3) Soils shall not cause, in whole or in part, the land upon which no structure is built to become unusable for the purpose represented at the time of original sale by the builder or for the purpose for which that land is commonly used.

(d) With respect to fire protection issues:

(1) A structure shall be constructed so as to materially comply with the design criteria of the applicable government building codes, regulations, and ordinances for fire protection of the occupants in effect at the time of the original construction.

(2) Fireplaces, chimneys, chimney structures, and chimney termination caps shall be constructed and installed in such a way so as not to cause an unreasonable risk of fire outside the fireplace enclosure or chimney.

(3) Electrical and mechanical systems shall be constructed and installed in such a way so as not to cause an unreasonable risk of fire.

(e) With respect to plumbing and sewer issues:

Plumbing and sewer systems shall be installed to operate properly and shall not materially impair the use of the structure by its inhabitants. However, no action may be brought for a violation of this subdivision more than four years after close of escrow.

(f) With respect to electrical system issues:

Electrical systems shall operate properly and shall not materially impair the

use of the structure by its inhabitants. However, no action shall be brought pursuant to this subdivision more than four years from close of escrow.

(g) With respect to issues regarding other areas of construction:

(1) Exterior pathways, driveways, hardscape, sidewalls, sidewalks, and patios installed by the original builder shall not contain cracks that display significant vertical displacement or that are excessive. However, no action shall be brought upon a violation of this paragraph more than four years from close of escrow.

(2) Stucco, exterior siding, and other exterior wall finishes and fixtures, including, but not limited to, pot shelves, horizontal surfaces, columns, and plant-ons, shall not contain significant cracks or separations.

(3) (A) To the extent not otherwise covered by these standards, manufactured products, including, but not limited to, windows, doors, roofs, plumbing products and fixtures, fireplaces, electrical fixtures, HVAC units, countertops, cabinets, paint, and appliances shall be installed so as not to interfere with the products' useful life, if any.

(B) For purposes of this paragraph, "useful life" means a representation of how long a product is warranted or represented, through its limited warranty or any written representations, to last by its manufacturer, including recommended or required maintenance. If there is no representation by a manufacturer, a builder shall install manufactured products so as not to interfere with the product's utility.

4

BUYER'S INITIALS ( )
SELLER'S Initials ( )

130651713705.7

Community: Monte Bella                Lot: 16                        Block: 15

(C) For purposes of this paragraph, "manufactured product" means a product that is completely manufactured offsite.

(D) If no useful life representation is made, or if the representation is less than one year, the period shall be no less than one year. If a manufactured product is damaged as a result of a violation of these standards, damage to the product is a recoverable element of damages. This subparagraph does not limit recovery if there has been damage to another building component caused by a manufactured product during the manufactured product's useful life.

(E) This title does not apply in any action seeking recovery solely for a defect in a manufactured product located within or adjacent to a structure.

(4) Heating, if any, shall be installed so as to be capable of maintaining a room temperature of 70 degrees Fahrenheit at a point three feet above the floor in any living space.

(5) Living space air-conditioning, if any, shall be provided in a manner consistent with the size and efficiency design criteria specified in Title 24 of the California Code of Regulations or its successor.

(6) Attached structures shall be constructed to comply with interunit noise transmission standards set by the applicable government building codes, ordinances, or regulations in effect at the time of the original construction. If there is no applicable code, ordinance, or regulation, this paragraph does not apply. However, no action shall be brought pursuant to this paragraph more than one year from the original occupancy of the adjacent unit.

(7) Irrigation systems and drainage shall operate properly so as not to damage landscaping or other external improvements. However, no action shall be brought pursuant to this paragraph more than one year from close of escrow.

(8) Untreated wood posts shall not be installed in contact with soil so as to cause unreasonable decay to the wood based upon the finish grade at the time of original construction. However, no action shall be brought pursuant to this paragraph more than two years from close of escrow.

(9) Untreated steel fences and adjacent components shall be installed so as to prevent unreasonable corrosion. However, no action shall be brought pursuant to this paragraph more than four years from close of escrow.

(10) Paint and stains shall be applied in such a manner so as not to cause deterioration of the building surfaces for the length of time specified by the paint or stain manufacturers' representations, if any. However, no action shall be brought pursuant to this paragraph more than five years from close of escrow.

(11) Roofing materials shall be installed so as to avoid materials falling from the roof.

(12) The landscaping systems shall be installed in such a manner so as to survive for not less than one year. However, no action shall be brought pursuant to this paragraph more than two years from close of escrow.

5

BUYER'S Initials (        )
SELLER'S Initials (        )

180651713705.7

Community: Monte Bella    Lot: 16    Block: 15

(13) Ceramic tile and tile backing shall be installed in such a manner that the tile does not detach.

(14) Dryer ducts shall be installed and terminated pursuant to manufacturer installation requirements. However, no action shall be brought pursuant to this paragraph more than two years from close of escrow.

(15) Structures shall be constructed in such a manner so as not to impair the occupants' safety because they contain public health hazards as determined by a duly authorized public health official, health agency, or governmental entity having jurisdiction. This paragraph does not limit recovery for any damages caused by a violation of any other paragraph of this section on the grounds that the damages do not constitute a health hazard.

§897: The standards set forth in this chapter are intended to address every function or component of a structure. To the extent that a function or component of a structure is not addressed by these standards, it shall be actionable if it causes damage.

TITLE 7 – CHAPTER 3: OBLIGATIONS

§900: As to fit and finish items, a builder shall provide a homebuyer with a minimum one-year express written limited warranty covering the fit and finish of the following building components. Except as otherwise provided by the standards specified in Chapter 2 (commencing with Section 896), this warranty shall cover the fit and finish of cabinets, mirrors, flooring, interior and exterior walls, countertops, paint finishes, and trim, but shall not apply to damage to those components caused by defects in other components governed by the other provisions of this title. Any fit and finish matters covered by this warranty are not subject to the provisions of this title. If a builder fails to provide the express warranty required by this section, the warranty for these items shall be for a period of one year.

§901: A builder may, but is not required to, offer greater protection or protection for longer time periods in its express contract with the homeowner than that set forth in Chapter 2 (commencing with Section 896). A builder may not limit the application of Chapter 2 (commencing with Section 896) or lower its protection through the express contract with the homeowner. This type of express contract constitutes an "enhanced protection agreement."

§902: If a builder offers an enhanced protection agreement, the builder may choose to be subject to its own express contractual provisions in place of the provisions set forth in Chapter 2 (commencing with Section 896). If an enhanced protection agreement is in place, Chapter 2 (commencing with Section 896) no longer applies other than to set forth minimum provisions by which to judge the enforceability of the particular provisions of the enhanced protection agreement. Exhibit "B-3"

§903: If a builder offers an enhanced protection agreement in place of the provisions set forth in Chapter 2 (commencing with Section 896), the election to do so shall be made in writing with the homeowner no later than the close of escrow. The builder shall provide the homeowner with a complete copy of Chapter 2 (commencing with Section 896) and advise the homeowner that the builder has elected not to be subject to its

6

BUYER'S Initials
SELLER'S Initials

Community: Monte Bella                Lot: 16                Block: 15

provisions. If any provision of an enhanced protection agreement is later found to be unenforceable as not meeting the minimum standards of Chapter 2 (commencing with Section 896), a builder may use this chapter in lieu of those provisions found to be unenforceable.

§904: If a builder has elected to use an enhanced protection agreement, and a homeowner disputes that the particular provision or time periods of the enhanced protection agreement are not greater than, or equal to, the provisions of Chapter 2 (commencing with Section 896) as they apply to the particular deficiency alleged by the homeowner, the homeowner may seek to enforce the application of the standards set forth in this chapter as to those claimed deficiencies. If a homeowner seeks to enforce a particular standard in lieu of a provision of the enhanced protection agreement, the homeowner shall give the builder written notice of that intent at the time the homeowner files a notice of claim pursuant to chapter 4 (commencing with section 910).

§905: If a homeowner seeks to enforce Chapter 2 (commencing with Section 896), in lieu of the enhanced protection agreement in a subsequent litigation or other legal action, the builder shall have the right to have the matter bifurcated, and to have an immediately binding determination of his or her responsive pleading within 60 days after the filing of that pleading, but in no event after the commencement of discovery, as to the application of either Chapter 2 (commencing with Section 896) or the enhanced protection agreement as to the deficiencies claimed by the homeowner. If the builder fails to seek that determination in the timeframe specified, the builder waives

the right to do so and the standards set forth in this title shall apply. As to any nonoriginal homeowner, that homeowner shall be deemed in privity for purposes of an enhanced protection agreement only to the extent that the builder has recorded the enhanced protection agreement on title or provided actual notice to the nonoriginal homeowner of the enhanced protection agreement. If the enhanced protection agreement is not recorded on title or no actual notice has been provided, the standards set forth in this title apply to any nonoriginal homeowners' claims.

§906: A builder's election to use an enhanced protection agreement addresses only the issues set forth in Chapter 2 (commencing with Section 896) and does not constitute an election to use or not use the provisions of Chapter 4 (commencing with Section 910). The decision to use or not use Chapter 4 (commencing with Section 910) is governed by the provisions of that chapter.

§907: A homeowner is obligated to follow all reasonable maintenance obligations and schedules communicated in writing to the homeowner by the builder and product manufacturers, as well as commonly accepted maintenance practices. A failure by a homeowner to follow these obligations, schedules, and practices may subject the homeowner to the affirmative defenses contained in Section 944.

TITLE 7 - CHAPTER 4: PRE-LITIGATION PROCEDURES

§910: Prior to filing an action against any party alleged to have contributed to a violation of the standards set forth in Chapter 2 (commencing with Section 896),

7

BUYER'S Initials (_____)
SELLER'S Initials (_____)

180651713705.7

Community: Monte Bella                    Lot: 16                    Block 15

the claimant shall initiate the following prelitigation procedures:

(a) The claimant or his or her legal representative shall provide written notice via certified mail, overnight mail, or personal delivery to the builder, in the manner prescribed in this section, of the claimant's claim that the construction of his or her residence violates any of the standards set forth in Chapter 2 (commencing with Section 896). That notice shall provide the claimant's name, address, and preferred method of contact, and shall state that the claimant alleges a violation pursuant to this part against the builder, and shall describe the claim in reasonable detail sufficient to determine the nature and location, to the extent known, of the claimed violation. In the case of a group of homeowners or an association, the notice may identify the claimants solely by address or other description sufficient to apprise the builder of the locations of the subject residences. That document shall have the same force and effect as a notice of commencement of a legal proceeding.

(b) The notice requirements of this section do not preclude a homeowner from seeking redress through any applicable normal customer service procedure as set forth in any contractual, warranty, or other builder-generated document; and, if a homeowner seeks to do so, that request shall not satisfy the notice requirements of this section.

§911: (a) For purposes of this title, except as provided in subdivision (b), "builder" means any entity or individual, including, but not limited to a builder, developer, general contractor, contractor, or original seller, who, at the time of sale, was also in the business of selling residential units to the public for the property that is the subject of the homeowner's claim or was in the business of building, developing, or constructing residential units for public purchase for the property that is the subject of the homeowner's claim.

(b) For the purposes of this title, "builder" does not include any entity or individual whose involvement with a residential unit that is the subject of the homeowner's claim is limited to his or her capacity as general contractor or contractor and who is not a partner, member of, subsidiary of, or otherwise similarly affiliated with the builder. For purposes of this title, these nonaffiliated general contractors and nonaffiliated contractors shall be treated the same as subcontractors, material suppliers, individual product manufacturers, and design professionals.

§912: A builder shall do all of the following:

(a) Within 30 days of a written request by a homeowner or his or her legal representative, the builder shall provide copies of all relevant plans, specifications, mass or rough grading plans, final soils reports, Department of Real Estate public reports, and available engineering calculations, that pertain to a homeowner's residence specifically or as part of a larger development tract. The request shall be honored if it states that it is made relative to structural, fire safety, or soils provisions of this title. However, a builder is not obligated to provide a copying service, and reasonable copying costs shall be borne by the requesting party. A builder may require that the documents be copied onsite by the requesting party, except that the homeowner may, at his or her option, use his or her own

8

*v P 4*

BUYER'S Initials _____
SELLER'S Initials _____

Community: Monte Bella          Lot: 16          Block 15

copying service, which may include an offsite copy facility that is bonded and insured. If a builder can show that the builder maintained the documents, but that they later became unavailable due to loss or destruction that was not the fault of the builder, the builder may be excused from the requirements of this subdivision, in which case the builder shall act with reasonable diligence to assist the homeowner in obtaining those documents from any applicable government authority or from the source that generated the document. However, in that case, the time limits specified by this section do not apply.

(b) At the expense of the homeowner, who may opt to use an offsite copy facility that is bonded and insured, the builder shall provide to the homeowner or his or her legal representative copies of all maintenance and preventative maintenance recommendations that pertain to his or her residence within 30 days of service of a written request for those documents. Those documents shall also be provided to the homeowner in conjunction with the initial sale of the residence.

(c) At the expense of the homeowner, who may opt to use an offsite copy facility that is bonded and insured, a builder shall provide to the homeowner or his or her legal representative copies of all manufactured products maintenance, preventive maintenance, and limited warranty information within 30 days of a written request for those documents. These documents shall also be provided to the homeowner in conjunction with the initial sale of the residence.

(d) At the expense of the homeowner, who may opt to use an offsite

copy facility that is bonded and insured, a builder shall provide to the homeowner or his or her legal representative copies of all of the builder's limited contractual warranties in accordance with this part in effect at the time of the original sale of the residence within 30 days of a written request for those documents. Those documents shall also be provided to the homeowner in conjunction with the initial sale of the residence.

(e) A builder shall maintain the name and address of an agent for notice pursuant to this chapter with the Secretary of State or, alternatively, elect to use a third party for that notice if the builder has notified the homeowner in writing of the third party's name and address, to whom claims and requests for information under this section may be mailed. The name and address of the agent for notice or third party shall be included with the original sales documentation and shall be initialed and acknowledged by the purchaser and the builder's sales representative.

This subdivision applies to instances in which a builder contracts with a third party to accept claims and act on

the builder's behalf. A builder shall give actual notice to the homeowner that the builder has made such an election, and shall include the name and address of the third party.

(f) A builder shall record on title a notice of the existence of these procedures and a notice that these procedures impact the legal rights of the homeowner. This information shall also be included with the original sales documentation and shall be initialed and acknowledged by the purchaser and the builder's sales representative.

9

BUYER'S Initials
SELLER'S Initials

130689713705 7

Community. Monte Bella                    Lot: 16                    Block: 15

(g) A builder shall provide, with the original sales documentation, a written copy of this title, which shall be initialed and acknowledged by the purchaser and the builder's sales representative.

(h) As to any documents provided in conjunction with the original sale, the builder shall instruct the original purchaser to provide those documents to any subsequent purchaser.

(i) Any builder who fails to comply with any of these requirements within the time specified is not entitled to the protection of this chapter, and the homeowner is released from the requirements of this chapter and may proceed with the filing of an action, in which case the remaining chapters of this part shall continue to apply to the action.

§913: A builder or his or her representative shall acknowledge, in writing, receipt of the notice of the claim within 14 days after receipt of the notice of the claim. If the notice of the claim is served by the claimant's legal representative, or if the builder receives a written representation letter from a homeowner's attorney, the builder shall include the attorney in all subsequent substantive communications, including, without limitation, all written communications occurring pursuant to this chapter, and all substantive and procedural communications, including all written communications, following the commencement of any subsequent complaint or other legal action, except that if the builder has retained or involved legal counsel to assist the builder in this process, all communications by the builder's counsel shall only be with the claimant's legal representative, if any.

§914: (a) This chapter establishes a nonadversarial procedure, including the remedies available under this chapter which, if the procedure does not resolve the dispute between the parties, may result in a subsequent action to enforce the other chapters of this title. A builder may attempt to commence nonadversarial contractual provisions other than the nonadversarial procedures and remedies set forth in this chapter, but may not, in addition to its own nonadversarial contractual provisions, require adherence to the nonadversarial procedures and remedies set forth in this chapter, regardless of whether the builder's own alternative nonadversarial contractual provisions are successful in resolving the dispute or ultimately deemed enforceable. At the time the sales agreement is executed, the builder shall notify the homeowner whether the builder intends to engage in the nonadversarial procedure of this section or attempt to enforce alternative nonadversarial contractual provisions. If the builder elects to use alternative nonadversarial contractual provisions in lieu of this chapter, the election is binding,

regardless of whether the builder's alternative nonadversarial contractual provisions are successful in resolving the ultimate dispute or are ultimately deemed enforceable.

(b) Nothing in this title is intended to affect existing statutory or decisional law pertaining to the applicability, viability, or enforceability of alternative dispute resolution methods, alternative remedies, or contractual arbitration, judicial reference, or similar procedures requiring a binding resolution to enforce the other chapters of this title or any other disputes between homeowners and builders. Nothing in this

10

180653713705 7

BUYER'S Initials
SELLER'S Initials

Community: Monte Bella                    Lot: 16                    Block: 15

title is intended to affect the applicability, viability, or enforceability, if any, of contractual arbitration or judicial reference after a nonadversarial procedure or provision has been completed.

§915: If a builder fails to acknowledge receipt of the notice of a claim within the time specified, elects not to go through the process set forth in this chapter, or fails to request an inspection within the time specified, or at the conclusion or cessation of an alternative nonadversarial proceeding, this chapter does not apply and the homeowner is released from the requirements of this chapter and may proceed with the filing of an action. However, the standards set forth in the other chapters of this title shall continue to apply to the action.

§916: (a) If a builder elects to inspect the claimed unmet standards, the builder shall complete the initial inspection and testing within 14 days after acknowledgment of receipt of the notice of the claim, at a mutually convenient date and time. If the homeowner has retained legal representation, the inspection shall be scheduled with the legal representative's office at a mutually convenient date and time, unless the legal representative is unavailable during the relevant time periods. All costs of builder inspection and testing, including any damage caused by the builder inspection, shall be borne by the builder. The builder shall also provide written proof that the builder has liability insurance to cover any damages or injuries occurring during inspection and testing. The builder shall restore the property to its pretesting condition within 48 hours of the testing. The builder shall, upon request, allow the inspections to be observed and electronically

recorded, videotaped, or photographed by the claimant or his or her legal representative.

(b) Nothing that occurs during a builder's or claimant's inspection or testing may be used or introduced as evidence to support a spoliation defense by any potential party in any subsequent litigation.

(c) If a builder deems a second inspection or testing reasonably necessary, and specifies the reasons therefor in writing within three days following the initial inspection, the builder may conduct a second inspection or testing. A second inspection or testing shall be completed within 40 days of the initial inspection or testing. All requirements concerning the initial inspection or testing shall also apply to the second inspection or testing.

(d) If the builder fails to inspect or test the property within the time specified, the claimant is released from the requirements of this section and may proceed with the filing of an action. However, the standards set forth in the other chapters of this title shall continue to apply to the action.

(e) If a builder intends to hold a subcontractor, design professional, individual product manufacturer, or material supplier, including an insurance carrier, warranty company, or service company, responsible for its contribution to the unmet standard, the builder shall provide notice to that person or entity sufficiently in advance to allow them to attend the initial, or if requested, second inspection of any alleged unmet standard and to participate in the repair process. The claimant and his or her legal representative, if any, shall be advised in a reasonable time prior to the inspection

11

BUYER'S Initials (       )
SELLER'S Initials (       )

1806517137057

Community: Monte Bella                Lot: _16_                        Block: _15_

as to the identity of all persons or entities invited to attend. This subdivision does not apply to the builder's insurance company. Except with respect to any claims involving a repair actually conducted under this chapter, nothing in this subdivision shall be construed to relieve a subcontractor, design professional, individual product manufacturer, or material supplier of any liability under an action brought by a claimant.

§917: Within 30 days of the initial or, if requested, second inspection or testing, the builder may offer in writing to repair the violation. The offer to repair shall also compensate the homeowner for all applicable damages recoverable under Section 944, within the timeframe for the repair set forth in this chapter. Any such offer shall be accompanied by a detailed, specific, step-by-step statement identifying the particular violation that is being repaired, explaining the nature, scope, and location of the repair, and setting a reasonable completion date for the repair. The offer shall also include the names, addresses, telephone numbers, and license numbers of the contractors whom the builder intends to have perform the repair. Those contractors shall be fully insured for, and shall be responsible for, all damages or injuries that they may cause to occur during the repair, and evidence of that insurance shall be provided to the homeowner upon request. Upon written request by the homeowner or his or her legal representative, and within the timeframes set forth in this chapter, the builder shall also provide any available technical documentation, including, without limitation, plans and specifications, pertaining to the claimed violation within the particular home or development tract.

The offer shall also advise the homeowner in writing of his or her right to request up to three additional contractors from which to select to do the repair pursuant to this chapter.

§918: Upon receipt of the offer to repair, the homeowner shall have 30 days to authorize the builder to proceed with the repair. The homeowner may alternatively request, at the homeowner's sole option and discretion, that the builder provide the names, addresses, telephone numbers, and license numbers for up to three alternative contractors who are not owned or financially controlled by the builder and who regularly conduct business in the county where the structure is located. If the homeowner so elects, the builder is entitled to an additional noninvasive inspection, to occur at a mutually convenient date and time within 20 days of the election, so as to permit the other proposed contractors to review the proposed site of the repair. Within 35 days after the request of the homeowner for alternative contractors, the builder shall present the homeowner with a choice of contractors. Within 20 days after that presentation, the homeowner shall authorize the builder or one of the alternative contractors to perform the repair.

§919: The offer to repair shall also be accompanied by an offer to mediate the dispute if the homeowner so chooses. The mediation shall be limited to a four-hour mediation, except as otherwise mutually agreed before a nonaffiliated mediator selected and paid for by the builder. At the homeowner's sole option, the homeowner may agree to split the cost of the mediator, and if he or she does so, the mediator shall be selected jointly. The mediator shall have sufficient availability such that the

12

18065\713705.7

BUYER'S Initials (          )
SELLER'S Initials (          )

Community: Monte Bella                 Lot: _16_                                          Block: _15_

mediation occurs within 15 days after the request to mediate is received and occurs at a mutually convenient location within the county where the action is pending. If a builder has made an offer to repair a violation, and the mediation has failed to resolve the dispute, the homeowner shall allow the repair to be performed either by the builder, its contractor, or the selected contractor.

§920: If the builder fails to make an offer to repair or otherwise strictly comply with this chapter within the times specified, the claimant is released from the requirements of this chapter and may proceed with the filing of an action. If the contractor performing the repair does not complete the repair in the time or manner specified, the claimant may file an action. If this occurs, the standards set forth in the other chapters of this part shall continue to apply to the action.

§921: (a) In the event that a resolution under this chapter involves a repair by the builder, the builder shall make an appointment with the claimant, make all appropriate arrangements to effectuate a repair of the claimed unmet standards, and compensate the homeowner for all damages resulting therefrom free of charge to the claimant. The repair shall be scheduled through the claimant's legal representative, if any, unless he or she is unavailable during the relevant time periods. The repair shall be commenced on a mutually convenient date within 14 days of acceptance or, if an alternative contractor is selected by the homeowner, within 14 days of the selection, or, if a mediation occurs, within seven days of the mediation, or within five days after a permit is obtained if one is required. The

builder shall act with reasonable diligence in obtaining any such permit.

(b) The builder shall ensure that work done on the repairs is done with the utmost diligence, and that the repairs are completed as soon as reasonably possible, subject to the nature of the repair or some unforeseen event not caused by the builder or the contractor performing the repair. Every effort shall be made to complete the repair within 120 days.

§922: The builder shall, upon request, allow the repair to be observed and electronically recorded, videotaped, or photographed by the claimant or his or her legal representative. Nothing that occurs during the repair process may be used or introduced as evidence to support a spoliation defense by any potential party in any subsequent litigation.

§923: The builder shall provide the homeowner or his or her legal representative, upon request, with copies of all correspondence, photographs, and other materials pertaining or relating in any manner to the repairs.

§924: If the builder elects to repair some, but not all of, the claimed unmet standards, the builder shall, at the same time it makes its offer, set forth with particularity in writing the reasons, and the support for those reasons, for not repairing all claimed unmet standards.

§925: If the builder fails to complete the repair within the time specified in the repair plan, the claimant is released from the requirements of this chapter and may proceed with the filing of an action. If this occurs, the standards set forth in the other

13

BUYER'S Initials (____)
SELLER'S Initials (____)

130637137057

Community: Monte Bella                  Lot: _16_

Block: _15_

chapters of this title shall continue to apply to the action.

§926: The builder may not obtain a release or waiver of any kind in exchange for the repair work mandated by this chapter. At the conclusion of the repair, the claimant may proceed with filing an action for violation of the applicable standard or for a claim of inadequate repair, or both, including all applicable damages available under Section 944.

§927: If the applicable statute of limitations has otherwise run during this process, the time period for filing a complaint or other legal remedies for violation of any provision of this title, or for a claim of inadequate repair, is extended from the time of the original claim by the claimant to 100 days after the repair is completed, whether or not the particular violation is the one being repaired. If the builder fails to acknowledge the claim within the time specified, elects not to go through this statutory process, or fails to request an inspection within the time specified, the time period for filing a complaint or other legal remedies for violation of any provision of this title is extended from the time of the original claim by the claimant to 45 days after the time for responding to the notice of claim has expired. If the builder elects to attempt to enforce its own nonadversarial procedure in lieu of the procedure set forth in this chapter, the time period for filing a complaint or other legal remedies for violation of any provision of this part is extended from the time of the original claim by the claimant to 100 days after either the completion of the builder's alternative nonadversarial procedure, or 100 days after the builder's alternative nonadversarial

procedure is deemed unenforceable, whichever is later.

§928: If the builder has invoked this chapter and completed a repair, prior to filing an action, if there has been no previous mediation between the parties, the homeowner or his or her legal representative shall request mediation in writing. The mediation shall be limited to four hours, except as otherwise mutually agreed before a nonaffiliated mediator selected and paid for by the builder. At the homeowner's sole option, the homeowner may agree to split the cost of the mediator and if he or she does so, the mediator shall be selected jointly. The mediator shall have sufficient availability such that the mediation will occur within 15 days after the request for mediation is received and shall occur at a mutually convenient location within the county where the action is pending. In the event that a mediation is used at this point, any applicable statutes of limitations shall be tolled from the date of the request to mediate until the next court day after the mediation is completed, or the 100-day period, whichever is later.

§929:  (a) Nothing in this chapter prohibits the builder from making only a cash offer and no repair. In this situation, the homeowner is free to accept the offer, or he or she may reject the offer and proceed with the filing of an action. If the latter occurs, the standards of the other chapters of this title shall continue to apply to the action.

(b) The builder may obtain a reasonable release in exchange for the cash payment. The builder may negotiate the terms and conditions of any reasonable release in terms of scope and consideration

14

N Ð 9

BUYER'S Initials ⟨  ⟩
SELLER'S Initials (    )

Community: Monte Bella                Lot: _16_                              Block: _15_

in conjunction with a cash payment under this chapter.

§930:  (a) The time periods and all other requirements in this chapter are to be strictly construed, and, unless extended by the mutual agreement of the parties in accordance with this chapter, shall govern the rights and obligations under this title. If a builder fails to act in accordance with this section within the timeframes mandated, unless extended by the mutual agreement of the parties as evidenced by a postclaim written confirmation by the affected homeowner demonstrating that he or she has knowingly and voluntarily extended the statutory timeframe, the claimant may proceed with filing an action. If this occurs, the standards of the other chapters of this title shall continue to apply to the action.

(b) If the claimant does not conform with the requirements of this chapter, the builder may bring a motion to stay any subsequent court action or other proceeding until the requirements of this chapter have been satisfied. The court, in its discretion, may award the prevailing party on such a motion, his or her attorney's fees and costs in bringing or opposing the motion.

§931: If a claim combines causes of action or damages not covered by this part, including, without limitation, personal injuries, class actions, other statutory remedies, or fraud based claims, the claimed unmet standards shall be administered according to this part, although evidence of the property in its unrepaired condition may be introduced to support the respective elements of any such cause of action. As to any fraud-based claim, if the fact that the property has been repaired under this chapter is deemed admissible, the trier of

fact shall be informed that the repair was not voluntarily accepted by the homeowner. As to any class action claims that address solely the incorporation of a defective component into a residence, the named and unnamed class members need not comply with this chapter.

§932: Subsequently discovered claims of unmet standards shall be administered separately under this chapter, unless otherwise agreed to by the parties. However, in the case of a detached single family residence, in the same home, if the subsequently discovered claim is for a violation of the same standard as that which has already been initiated by the same claimant and the subject of a currently pending action, the claimant need not reinitiate the process as to the same standard. In the case of an attached project, if the subsequently discovered claim is for a violation of the same standard for a connected component system in the same building as has already been initiated by the same claimant, and the subject of a currently pending action, the claimant need not reinitiate this process as to that standard.

§933: If any enforcement of these standards is commenced, the fact that a repair effort was made may be introduced to the trier of fact. However, the claimant may use the condition of the property prior to the repair as the basis for contending that

the repair work was inappropriate, inadequate, or incomplete, or that the violation still exists. The claimant need not show that the repair work resulted in further damage nor that damage has continued to occur as a result of the violation.

§934: Evidence of both parties' conduct during this process may be introduced

15

_N꘡4_

BUYER'S Initials _CBJB_
SELLER'S Initials ( )

1806311713705 7

Community: Monte Bella          Lot: _16_          Block _15_

during a subsequent enforcement action, if any, with the exception of any mediation. Any repair efforts undertaken by the builder, shall not be considered settlement communications or offers of settlement and are not inadmissible in evidence on such a basis.

§935: To the extent that provisions of this chapter are enforced and those provisions are substantially similar to provisions in Section 1375 of the Civil Code, but an action is subsequently commenced under Section 1375 of the Civil Code, the parties are excused from performing the substantially similar requirements under Section 1375 of the Civil Code.

§936: Each and every provision of the other chapters of this title apply to general contractors, subcontractors, material suppliers, individual product manufacturers, and design professionals to the extent that the general contractors, subcontractors, material suppliers, individual product manufacturers, and design professionals caused, in whole or in part, a violation of a particular standard as the result of a negligent act or omission or a breach of contract. In addition to the affirmative defenses set forth in Section 945.5, a general contractor, subcontractor, material supplier, design professional, individual product manufacturer, or other entity may also offer common law and contractual defenses as applicable to any claimed violation of a standard. All actions by a claimant or builder to enforce an express contract, or any provision thereof, against a general contractor, subcontractor, material supplier, individual product manufacturer, or design professional is preserved. Nothing in this title modifies the law pertaining to joint and several liability for builders, general

contractors, subcontractors, material suppliers, individual product manufacturer, and design professionals that contribute to any specific violation of this title. However, the negligence standard in this section does not apply to any general contractor, subcontractor, material supplier, individual product manufacturer, or design professional with respect to claims for which strict liability would apply.

§937: Nothing in this title shall be interpreted to eliminate or abrogate the requirement to comply with Section 411.35 of the Code of Civil Procedure or to affect the liability of design professionals, including architects and architectural firms, for claims and damages not covered by this title.

§938: This title applies only to new residential units where the purchase agreement with the buyer was signed by the seller on or after January 1, 2003.

## TITLE 7 - CHAPTER 5: PROCEDURE

§941:  (a) Except as specifically set forth in this title, no action may be brought to recover under this title more than 10 years after substantial completion of the improvement but not later than the date of recordation of a valid notice of completion.

(b) As used in this section, "action" includes an action for indemnity brought against a person arising out of that person's performance or furnishing of services or materials referred to in this title, except that a cross-complaint for indemnity may be filed pursuant to subdivision (b) of Section 428.10 of the Code of Civil Procedure in an action which has been brought within the time period set forth in subdivision (a).

16

*N R Y*

BUYER'S Initials
SELLER'S Initials

1806531713705 7

Community: Monte Bella              Lot: 16              Block: 15

(c) The limitation prescribed by this section may not be asserted by way of defense by any person in actual possession or the control, as owner, tenant or otherwise, of such an improvement, at the time any deficiency in the improvement constitutes the proximate cause for which it is proposed to make a claim or bring an action.

(d) Sections 337.15 and 337.1 of the Code of Civil Procedure do not apply to actions under this title.

(e) Existing statutory and decisional law regarding tolling of the statute of limitations shall apply to the time periods for filing an action or making a claim under this title, except that repairs made pursuant to Chapter 4 (commencing with Section 910), with the exception of the tolling provision contained in Section 927, do not extend the period for filing an action, or restart the time limitations contained in subdivision (a) or (b) of Section 7091 of the Business and Professions Code. If a builder arranges for a contractor to perform a repair pursuant to Chapter 4 (commencing with Section 910), as to the builder the time period for calculating the statute of limitation in subdivision (a) or (b) of Section 7091 of the Business and Professions Code shall pertain to the substantial completion of the original construction and not to the date of repairs under this title. The time limitations established by this title do not apply to any action by a claimant for a contract or express contractual provision. Causes of action and damages to which this chapter does not apply are not limited by this section.

§942: In order to make a claim for violation of the standards set forth in Chapter 2 (commencing with Section 896), a

homeowner need only demonstrate, in accordance with the applicable evidentiary standard, that the home does not meet the applicable standard, subject to the affirmative defenses set forth in Section 945.5. No further showing of causation or damages is required to meet the burden of proof regarding a violation of a standard set forth in Chapter 2 (commencing with Section 896), provided that the violation arises out of, pertains to, or is related to the original construction.

§943: (a) Except as provided in this title, no other cause of action for a claim covered by this title or for damages recoverable under Section 944 is allowed. In addition to the rights under this title, this title does not apply to any action by a claimant to enforce a contract or express contractual provision, or any action for fraud, personal injury, or violation of a statute. Damages awarded for the items set forth in Section 944 in such other cause of action shall be reduced by the amounts recovered pursuant to Section 944 for violation of the standards set forth in this title.

(b) As to any claims involving a detached single-family home, the homeowner's right to the reasonable value of repairing any nonconformity is limited to the repair costs, or the diminution in current value of the home caused by the nonconformity, whichever is less, subject to the personal use exception as developed under common law.

§944: If a claim for damages is made under this title, the homeowner is only entitled to damages for the reasonable value of repairing any violation of the standards set forth in this title, the reasonable cost of repairing any damages caused by the repair

17

BUYER'S Initials
SELLER'S Initials

Community: Monte Bella          Lot: *16*          Block: *15*

efforts, the reasonable cost of repairing and rectifying any damages resulting from the failure of the home to meet the standards, the reasonable cost of removing and replacing any improper repair by the builder, reasonable relocation and storage expenses, lost business income if the home was used as a principal place of a business licensed to be operated from the home, reasonable investigative costs for each established violation, and all other costs or fees recoverable by contract or statute.

§945: The provisions, standards, rights, and obligations set forth in this title are binding upon all original purchasers and their successors-in-interest. For purposes of this title, associations and others having the rights set forth in Section 383 of the Code of Civil Procedure shall be considered to be original purchasers and shall have standing to enforce the provisions, standards, rights, and obligations set forth in this title.

§945.5: A builder, general contractor, subcontractor, material supplier, individual product manufacturer, or design professional, under the principles of comparative fault pertaining to affirmative defenses, may be excused, in whole or in part, from any obligation, damage, loss, or liability if the builder, general contractor, subcontractor, material supplier, individual product manufacturer, or design professional, can demonstrate any of the following affirmative defenses in response to a claimed violation:

(a) To the extent it is caused by an unforeseen act of nature which caused the structure not to meet the standard. For purposes of this section an "unforeseen act of nature" means a weather condition, earthquake, or manmade event such as war,

terrorism, or vandalism, in excess of the design criteria expressed by the applicable building codes, regulations, and ordinances in effect at the time of original construction.

(b) To the extent it is caused by a homeowner's unreasonable failure to minimize or prevent those damages in a timely manner, including the failure of the homeowner to allow reasonable and timely access for inspections and repairs under this title. This includes the failure to give timely notice to the builder after discovery of a violation, but does not include damages due to the untimely or inadequate response of a builder to the homeowner's claim.

(c) To the extent it is caused by the homeowner or his or her agent, employee, general contractor, subcontractor, independent contractor, or consultant by virtue of their failure to follow the builder's or manufacturer's recommendations, or commonly accepted homeowner maintenance obligations. In order to rely upon this defense as it relates to a builder's recommended maintenance schedule, the builder shall show that the homeowner had written notice of these schedules and recommendations and that the recommendations and schedules were reasonable at the time they were issued.

(d) To the extent it is caused by the homeowner or his or her agent's or an independent third party's alterations, ordinary wear and tear, misuse, abuse, or neglect, or by the structure's use for something other than its intended purpose.

(e) To the extent that the time period for filing actions bars the claimed violation.

18

BUYER'S Initials ( )
SELLER'S Initials ( )

1306A713705 7

Community: Monte Bella          Lot: _16_                    Block _15_

(f) As to a particular violation for which the builder has obtained a valid release

(g) To the extent that the builder's repair was successful in correcting the particular violation of the applicable standard.

(h) As to any causes of action to which this statute does not apply, all applicable affirmative defenses are preserved

19

BUYER'S Initials _____
SELLER'S Initials (_____)

Community: Monte Bella                                    Lot                    Block:

## ADDENDUM TO PURCHASE AGREEMENT

The UNDERSIGNED, identified as BUYER and SELLER, agree to supplement that Purchase Agreement dated _11/20/05_ between them for the purchase of Lot No. ___, Community Tract No _____, in the City of Salinas, County of Monterey, California, as follows:

1. Buyer understands that Residential Pacific Mortgage is SELLER'S preferred lender. If buyer agrees to obtain financing through Residential Pacific Mortgage, BUYERS may include framing and flooring options in the purchase price of the home and SELLER hereby waives the requirement that buyer pay a non-refundable deposit on such options. BUYER hereby specifies: ( )RESIDENTIAL PACIFIC MORTAGE  OR (X) _IPA_ as lender on this transaction.
_MORTGAGE_
_ANTHONY  OR  CESAR  IRACHETA_

2. In the event BUYER changes Lender within 30 days from their execution of this agreement, BUYER shall pay SELLER an amount of FIVE HUNDRED DOLLARS ($500) as a non-refundable lender transfer fee. In the event BUYER changes Lender after 30 days, BUYER agrees to pay to SELLER an amount of ONE THOUSAND DOLLARS ($1,000) as a non-refundable lender fee.

3. In the event BUYER initially chooses SELLER'S preferred Lender but subsequently changes Lender, Buyer shall, within three business days, pay to SELLER and/or Floor Center ALL required Option Payments and/or deposits for their chosen options.

4. BUYER understands and hereby acknowledges that front yard landscaping and side/rear fencing may not be in place by close of escrow and in no way shall be a condition of Close of Escrow.

All other items and conditions remain unchanged.

BUYER acknowledges that BUYER has read and understands this addendum and agrees to and accepts the terms and conditions contained herein. SELLER agrees to sell on the terms and conditions set forth above.

VCH-SALINAS I, LLC.
A California limited liability company

_____   _11/20/05_        _____   _11/20/05_
Sales Associate            Date              BUYER'S Signature   Date

                                            _Rosie Becerra_      _11/20/05_
                                            BUYER'S Signature    Date

VCH-SALINAS I, LLC.
A California limited liability company

_____   _11-20-05_
                           Date

1

BUYER'S Initials ( B )( )
SELLER'S Initials ( )( )

Community: Tuscany at M    Bella        Lot: 16-15                    Block: 15

FINAL

ADDENDUM TO PURCHASE AGREEMENT

REQUEST FOR BUILDER'S OPTIONS AND BUYER'S CHANGES

The UNDERSIGNED, identified as BUYER and SELLER, agree to supplement that Purchase Agreement and Deposit Receipt and Escrow Instructions, dated **11/21/05** (together with all exhibits, amendments and addenda thereto, the "Purchase Agreement") between them for the purchase of Lot **16-15**, Block **15**, Tract **1423**, Address **1552 Spoleto St.**, situated in the City of Salinas, County of Monterey, State of California, as follows:

By this Addendum to Purchase Agreement, dated **02/15/06**, between VCH-SALINAS I, LLC, a California limited liability company, as "Seller" and **Eleazar Becerra**, as "Buyer," Buyer hereby requests and authorizes Seller to cause the following options and/or changes to be incorporated into the residence constructed or to be constructed by Seller on the Property:

A.    <u>OPTIONS AND CHANGES</u>

1.    "TOTAL PURCHASE PRICE" (LINE 1.C(iii) OF PURCHASE AGREEMENT)        $ 763,933 ✓
2.    OPTIONS AND CHANGES (collectively, the "Options and Changes"):

|   |   |   |
|---|---|---|
| A. | $ | 0 |
| B. | $ | 0 |
| C. | $ | 0 |
| D. | $ | 0 |
| E. Cabinets | $ | 2,865 |
| F. Garage | $ | 75 |
| G. Appliance | $ | 1,000 |
| H. Flooring | $ | 18,625 |

(The Options and Changes are more particularly described in
Attachments        through        to this Addendum)

3.    TOTAL COST OF OPTIONS AND CHANGES        $ 22,565
4.    COST OF OPTIONS AND CHANGES PAID AND NOT        $ 0
ADDED TO PURCHASE PRICE (the "Options and Changes
Prepayment")
    A.    COST OF OPTIONS AND CHANGES PAID BY
    CHECK TODAY #        $_____
5.    COST OF OPTIONS ADDED TO PURCHASE PRICE (Line 3 less Line 4)        $ 22,565
6.    REVISED TOTAL PURCHASE PRICE (Line 1 plus Line 5)        $ 786,498 ✓

All references in the Purchase Agreement to the "Purchase Price" shall be deemed references to the Revised Total Purchase Price set forth on Line 6, above.

B.    <u>CONDITIONS AND TERMS</u>.  The foregoing request is subject to the following terms and conditions:

1.    Buyer acknowledges and agrees that the Options and Changes will modify the plans and specifications for the Residence referenced in the Purchase Agreement.

1

BUYER'S Initials ( ЄIB )
SELLER'S Initials ( )

2. Buyer understands that this request is subject to Seller's approval and will not be binding until signed by an authorized representative of Seller. If Seller approves this request, Seller will endeavor to complete all of the Options and Changes before Close of Escrow, but shall not be liable if Seller is unable to do so. In no event shall the Close of Escrow be extended by reason of any delay in Seller's performance of the Options and Changes. Seller makes no commitment that any Options and Changes made pursuant to this request will conform in appearance to any furnishings or appurtenances displayed in Seller's "model homes."

3. Buyer understands and agrees that the Options and Changes hereby requested represent goods, services and considerations that Seller is, upon signing this Addendum, obligated to provide and for which Buyer is obligated to pay, independent of Buyer's contingencies in the Purchase Agreement, and that such goods, services and considerations would not otherwise be provided by Seller.

4. Buyer acknowledges and agrees that (a) the Options and Changes Prepayment must be paid by Buyer in full at the time Buyer signs this Addendum, (b) the Options and Changes Prepayment, at the request of Seller, may be released to Seller in advance of the Close of Escrow, (c) the Options and Changes Prepayment is totally non-refundable in the event that the purchase of the Property is terminated or Buyer fails to close Escrow for any reason whatsoever, and (d) all of the Options and Changes Prepayment, if any, remaining in Escrow upon termination of the Purchase Agreement, will be paid to Seller in accordance with the terms of the Purchase Agreement.

BUYER HAS READ AND UNDERSTOOD EACH OF THE FOREGOING TERMS AND CONDITIONS.

C. LIQUIDATED DAMAGES FOR BUYER'S DEFAULT. IF BUYER FAILS TO COMPLETE THE PURCHASE OF THE PROPERTY BECAUSE OF A DEFAULT BY BUYER, SELLER MAY PURSUE ANY REMEDY IN LAW OR EQUITY THAT IT MAY HAVE AGAINST BUYER ON ACCOUNT OF THE DEFAULT; PROVIDED HOWEVER, THAT BY PLACING THEIR INITIALS HERE,

BUYER EB (Initials) AND SELLER ____ (Initials) AGREE THAT:

IT WOULD BE IMPRACTICAL OR EXTREMELY DIFFICULT TO FIX ACTUAL DAMAGES IF BUYER FAILS TO CLOSE ESCROW AS PROVIDED IN THE PURCHASE AGREEMENT. THEREFORE, BUYER AND SELLER AGREE THAT BECAUSE THE OPTIONS AND CHANGES WOULD NOT LIKELY BE DESIRED BY ANY OTHER PURCHASER AND WOULD HAVE LITTLE OR NO SALVAGE VALUE AND FOR OTHER REASONS WHICH HAVE BEEN DISCUSSED BY THE PARTIES, IF, AS A RESULT OF BUYER'S DEFAULT, BUYER FAILS TO CLOSE THE ESCROW, AND PROVIDED THAT THE SELLER HAS PERFORMED ALL OF SELLER'S OBLIGATIONS UNDER THE PURCHASE AGREEMENT AND THIS ADDENDUM, SELLER WILL BE RELEASED FROM SELLER'S OBLIGATION TO SELL THE PROPERTY TO BUYER AND, IN ADDITION TO THE LIQUIDATED DAMAGES TO WHICH SELLER IS ENTITLED UNDER THIS AGREEMENT, SELLER WILL BE ENTITLED TO THE SUM OF THE OPTIONS AND CHANGES PREPAYMENT AS LIQUIDATED DAMAGES FOR THAT FAILURE. THIS AMOUNT WAS DETERMINED BY NEGOTIATIONS BETWEEN THE PARTIES, AND IT IS AGREED THAT THIS AMOUNT IS A REASONABLE ESTIMATE OF DAMAGES BECAUSE THE OPTIONS AND CHANGES WOULD NOT LIKELY BE DESIRED BY ANY OTHER PURCHASER AND WOULD HAVE LITTLE OR NO SALVAGE VALUE AND FOR OTHER REASONS WHICH HAVE BEEN DISCUSSED BY THE PARTIES; AND THAT THE PARTIES AGREE THAT IN THE EVENT OF BUYER'S DEFAULT, SELLER WILL RETAIN THE OPTIONS AND CHANGES PREPAYMENT, TOGETHER WITH ANY OTHER LIQUIDATED



BUYER'S Initials ( E/B )
SELLER'S Initials ( )

Community: Tuscany at Mc      ella          Lot: 16-15                              Block: 15

DAMAGES DUE SELLER UNDER THE PURCHASE AGREEMENT, AS SELLER'S SOLE AND
EXCLUSIVE RIGHT TO DAMAGES.  THE VALIDITY AND REASONABLENESS OF THE
AMOUNT OF LIQUIDATED DAMAGES SHALL BE DETERMINED IN ACCORDANCE WITH
CALIFORNIA CIVIL CODE SECTIONS 1675-1678.  BUYER UNDERSTANDS, HOWEVER,
THAT BECAUSE OF THE CIRCUMSTANCES EXISTING AT THE TIME THIS ADDENDUM IS
MADE, THE OPTIONS AND CHANGES PREPAYMENT IS REASONABLE AS LIQUIDATED
DAMAGES AND THAT THE SELLER HAS MET ITS BURDEN OF SHOWING SUCH
REASONABLENESS PURSUANT TO THE PROVISIONS OF CIVIL CODE §1675(d), AND THAT
THE PROVISIONS OF SAID SECTION, WHICH ORDINARILY LIMIT LIQUIDATED DAMAGES
TO THREE PERCENT (3%) OF THE PURCHASE PRICE, DO NOT APPLY IN THE INSTANT
CASE.

LIQUIDATED DAMAGES SHALL BE PAYABLE TO SELLER IN ACCORDANCE WITH THE
PROCEDURES SET FORTH IN SECTION 14.1.D OF THE PURCHASE AGREEMENT.

This Addendum, upon its execution by both parties, is made a part of the Purchase Agreement and all
references in the Purchase Agreement to "Purchase Agreement" shall mean the Purchase Agreement as
modified by this Addendum.  All initially-capitalized terms used herein and not otherwise defined herein
shall have the meanings given them in the Purchase Agreement.

BUYER:


_____            _____
Eleazar Becerra

Date: _2 / 5 / 0 6_                          Date:_____


ACCEPTANCE:

SELLER:

VCH-SALINAS I, LLC,
a California limited liability company

By:_____
   Name:
   Title:

Date:_____


3

BUYER'S Initials ( )
SELLER'S Initials ( )

EXHIBIT 1

DESCRIPTION OF OPTION OR CHANGE

| Line In A.2. Above | Option Code | Date Selected | Description | Qty | Cost | Prepayment |
|---|---|---|---|---|---|---|
| E | STD | 02/15/06 | Standard Cabinets REVERE DOOR | 1 | 0 | 0 |
| E | CAB | 02/15/06 | Cabinet Upgrades        CHERRY WOOD, REVERE DOOR | 1 | 2865 | 0 |
| F | MBC-Clear Glass | 02/15/06 | Master Bath Shower Enclosure - Clear Glass Chrome Trim | 1 | 75 | 0 |
| G | SS Option 1 52 | 02/15/06 | Stainless Steel Appliances Upgrade Plans 52 Kitchen | 1 | 1000 | 0 |
| H | FLR | 02/15/06 | Design Center | 1 | 18625 | 0 |
| Total Optional Items | | | | | $  22,565 | $    0 |

1

BUYER'S Initials  ( _GJB_ )
SELLER'S Initials (          )

18065\733803.1  OptionAddendum.dot 02/22/2005