Community: Tuscany at Monte Bella     Lot: 28-13     Block: 13

# PURCHASE AGREEMENT AND DEPOSIT RECEIPT AND ESCROW INSTRUCTIONS
("Purchase Agreement")

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES AND SHOULD BE READ THOROUGHLY PRIOR TO SIGNING. IF YOU HAVE ANY QUESTIONS ABOUT YOUR RIGHTS OR OBLIGATIONS UNDER THIS DOCUMENT, YOU MAY WISH TO CONSULT AN ATTORNEY.

**J. Guadalupe and Teresa G. Contreras** ("BUYER") agrees to purchase, and VCH-SALINAS I, LLC, a California limited liability company ("SELLER"), agrees to sell, the following described real property in the Monte Bella residential subdivision in Salinas, California (the "Community"), for the purchase price and upon the terms stated below.

1. **BASIC TERMS:**

   A. **"Property"** – The "Property" is Lot **28-13**, Block **13**, Tract **1441**, Address **1536 Spoleto St.**, situated in the City of Salinas, County of Monterey, State of California, together with the Residence located or to be located thereon.

   B. **"Residence"** – The "Residence" is the residence constructed or to be constructed on the Property substantially in accordance with Plan & Elevation **50-3 Siena/C**, and Color Scheme **7**, which plans and specifications are on file with the appropriate governmental agencies. **SELLER retains the right to make non-material modifications to the plans and specifications from time to time in SELLER'S sole discretion and without compensation to BUYER.**

   C. **"Purchase Price"** – The "Purchase Price" for the Property, exclusive of closing costs and BUYER options (other than those identified on Exhibit "A"), shall be as follows:

   | | | | |
   |---|---|---|---|
   | (i) | Base Purchase Price | | $ 707,990 ✓ |
   | (ii) | Options and Upgrades Identified on Exhibit "A" | | $ 800 |
   | (iii) | TOTAL "PURCHASE PRICE" | | $ 708,790 |

   D. **Payment of Purchase Price** – The Purchase Price shall be paid as follows:

   | | | Date | | |
   |---|---|---|---|---|
   | (i) | "Deposits" (each a "Deposit") | | | |
   | | (1) Upon BUYER'S Execution of this Purchase Agreement (the "First Deposit") | 10/22/05 | 1% | $ 7,080 |
   | | (2) Upon Loan Approval or thirty (30) days from the date of BUYER'S execution of this Purchase Agreement, whichever occurs first | 11/22/05 | 1% | $ 7,080 |
   | | (3) Sixty (60) days from BUYER'S execution of this Purchase Agreement | 12/22/05 | 1% | $ 7,080 |
   | (ii) | First trust deed loan proceeds | | | $ 567,032 |
   | (iii) | Balance of the down payment to be deposited in Escrow within three (3) days after Escrow's request for funds | | | $ 120,518 |
   | (iv) | TOTAL PURCHASE PRICE PAYMENTS | | | $ 141,758 |

All payments shall be made by cashiers check or federal wire transfer of funds.

1

BUYER'S Initials ___
SELLER'S Initials ___



**EXHIBIT 1**

18065\713705.7 04/06/05

Community: Tuscany at Monte Bella          Lot: 28-13                    Block: 13

E. **"Title Company" and "Escrow Holder"** – Old Republic Title Company, located at 20 E. Alisal Street, Salinas, CA 93901, Stella Esparza and Marbella Oliveira, escrow officers, telephone number: (831) 757-8051, and facsimile number: (831) 757-8566.

F. **"Estimated Closing Date"** – The "Estimated Closing Date" is **01/19/06**.

2. FINANCING. BUYER and SELLER agree this purchase [X] is contingent [ ] is not contingent upon BUYER obtaining financing secured by the Property. Should this purchase be contingent upon such financing, BUYER immediately, but no later than five (5) days after SELLER'S acceptance, shall make full and complete application to obtain financing of the amount specified in Paragraph 1.C(ii) above. If the purchase is not contingent upon financing, BUYER shall deliver to SELLER together with BUYER'S executed counterpart of this Purchase Agreement written evidence, satisfactory to SELLER in its sole discretion that: (a) Buyer has obtained a written loan commitment, conditioned only upon appraisal of the Property, for BUYER'S loan in the amount of the loan proceeds specified above in 1.C(ii); or (b) BUYER has sufficient funds to close Escrow without any loan proceeds. BUYER may apply for such financing through SELLER'S preferred lender (the "Preferred Lender") by submitting all information necessary for approval by the Preferred Lender within five (5) days after SELLER'S acceptance. If BUYER chooses to obtain financing though a lender other than the Preferred Lender, BUYER agrees to provide SELLER with name, address, and phone number of such lender, the loan officer, and the loan processor, within five (5) days of SELLER'S acceptance. BUYER hereby authorizes such other lender to provide SELLER with a copy of BUYER'S loan application documents and with all information regarding the status of the loan upon SELLER'S request. BUYER agrees in good faith to take all steps required for the processing of the loan application and to promptly sign all documents and do all acts required by the lender. BUYER agrees that after submitting its loan application, BUYER will not take any action to impair BUYER'S credit. The terms and conditions of the loan are a matter of concern solely between BUYER and BUYER'S lender and shall not in any way affect the rights or obligations of BUYER or SELLER hereunder. If BUYER has not yet deposited the Deposit required pursuant to Paragraph 1.D(i)(2), upon approval of the loan, BUYER shall notify SELLER of the loan approval and make such Deposit. Should BUYER receive a loan approval, but thereafter, through no fault of SELLER, but through BUYER'S voluntary or willful actions, fail to timely close this Escrow, BUYER shall be in default of this Purchase Agreement as set forth in Paragraph 13 below. BUYER understands the interest rate for the loan will be at the prevailing rate of the lender when the loan is funded or such other rate as BUYER and lender may jointly determine. BUYER and SELLER understand and acknowledge that if for any reason, other than BUYER'S failure to perform as required under this Paragraph, BUYER'S loan application is rejected, or BUYER has not obtained and delivered to SELLER a loan commitment from a lender and in a form acceptable to SELLER by **11/22/05**, then, upon BUYER'S execution of Escrow Holder's instructions to cancel Escrow and this Purchase Agreement, all sums deposited by BUYER shall be promptly refunded to BUYER less a Five-Hundred Dollar ($500) SELLER processing fee. **If BUYER fails to obtain and deliver to SELLER the loan commitment by the date set forth above, SELLER may, at its option, unilaterally cancel this Purchase Agreement.**

2.1 Contingencies and Cancellation. BUYER and SELLER agree this Purchase Agreement [ ] is contingent [X] is not contingent upon the sale of BUYER'S property. If this Purchase Agreement is contingent upon the sale of Buyer's property, SELLER shall have the right to continue to offer the Property for sale. If SELLER receives another bona fide offer to purchase the Property before BUYER'S sale contingency has been satisfied, which offer SELLER wishes to accept, SELLER shall give written notice of such other offer to BUYER, and BUYER shall have ten (10) days from the delivery of such notice to either (a) satisfy the contingency by presenting SELLER with written evidence acceptable to SELLER of a binding, unconditional sales transaction with a qualified buyer of BUYER'S property; or (b) waive the contingency and deposit in Escrow written evidence satisfactory to SELLER of the availability to BUYER of sufficient funds to close Escrow.

2

BUYER'S Initials
SELLER'S Initials

18065\713705.7  04/06/05

Community: Tuscany at Monte Bella          Lot: 28-13                    Block: 13

3. **DEPOSIT.** BUYER has delivered to SELLER with this Purchase Agreement the First Deposit. In the event SELLER does not accept this offer, SELLER shall immediately return the First Deposit. Escrow Holder is not to be concerned with or responsible for any of the Deposits other than to acknowledge and to credit each sum as paid. With the exception of the Deposits (and any Option Deposit (as defined in Paragraph 22) required, if applicable), the balance of all funds in this transaction shall be held by Escrow Holder. Escrow Holder shall release the Deposits and the Option Deposit, if any, to Seller, as each sum is paid, once SELLER has delivered a surety bond to the California Department of Real Estate pursuant to the provisions of Section 11013.2 of the California Business & Professions Code, in an amount equal to the aggregate of all funds deposited and to be deposited by BUYER. At Close of Escrow, the Deposits shall be credited to BUYER'S account. In the event Escrow fails to close, SELLER shall, within five (5) days after notice by Escrow Holder, transmit to Escrow Holder funds equal to all of the Deposits and any Option Deposits paid by BUYER and released to SELLER.

4. **ESCROW.** By execution of this Purchase Agreement, BUYER authorizes SELLER to open an escrow (the "Escrow") with Escrow Holder immediately upon SELLER'S acceptance, and both parties agree to the general provisions of the Escrow that are not inconsistent with the terms and conditions of this Purchase Agreement. In the event of any inconsistency, the terms of this Purchase Agreement shall control. This Purchase Agreement and the general provisions shall be deemed "Escrow Instructions." The close of Escrow (the "Close of Escrow") shall be within ten (10) days following SELLER'S oral or written notification to BUYER and Escrow Holder that the Residence will be certified for occupancy by the City of Salinas or the County of Monterey, or both, if required, currently estimated to be on or about the Estimated Closing Date. BUYER acknowledges that said date is an estimate only and that the actual date for Close of Escrow may vary from the date stated. SELLER makes no warranty, promise or agreement, express or implied, that the Escrow will close on the Estimated Closing Date. SELLER shall have no liability or obligation to BUYER should there be a delay in completion of the Residence beyond the Estimated Closing Date. Should Escrow fail to close in a timely manner through no fault of BUYER, SELLER shall promptly remit to Escrow all funds received by SELLER and shall order all Deposits remitted by BUYER to SELLER or Escrow, to be refunded to BUYER within fifteen (15) days after the Estimated Closing Date specified in this Purchase Agreement, or any mutually agreed upon extended closing date. Upon request by BUYER, SELLER may in SELLER'S sole discretion, grant BUYER an extension of the Close of Escrow; provided, however, in consideration for such extension, BUYER shall pay SELLER, One Thousand Dollars ($1,000) plus One Hundred Fifty Dollars ($150) per day for each day past the original date for the Close of Escrow until the actual Close of Escrow (the "Late Fees"). The Late Fees shall be deposited with Escrow Holder PRIOR to the original date for the Close of Escrow and shall not be credited to the Purchase Price. If, due to no fault of BUYER, Escrow does not close within one (1) year from the date Escrow opens, BUYER, at BUYER'S sole option, may terminate this Purchase Agreement and demand the refund of all funds deposited by BUYER pursuant to this Purchase Agreement. Within fifteen (15) days after such demand, SELLER shall order all of the money remitted by BUYER under the terms of this Purchase Agreement or the Escrow Instructions for the purchase of the Property to be refunded to BUYER.

5. **CONDITIONS TO CLOSE ESCROW.** This Escrow shall not close, funds shall not be released, and title shall not be conveyed to BUYER until each of the following conditions have been met:

A. A notice of completion as defined in Civil Code Section 3093 (a "Notice of Completion") with respect to the Residence has been recorded and a Certificate of Occupancy (or its equivalent) issued with respect to the Residence by the City of Salinas or the County of Monterey and that all of the terms and conditions to this Purchase Agreement have been satisfied by BUYER and SELLER; and

B. Any and all blanket encumbrances, as defined in California Business and Professions Code Section 11013, affecting the Property have been released and the statutory period for recordation of all mechanic's lien claims has expired, or the Title Policy (as defined in Paragraph 6 below) shall

3

BUYER'S Initials _(illegible signature)_
SELLER'S Initials _(illegible signature)_

include an endorsement or other coverage at SELLER'S expense insuring BUYER against unrecorded mechanic's liens; and

C. Any or all monetary encumbrances of record prior to the recording of the covenants, conditions and restrictions (the "Covenants, Conditions and Restrictions") have been subordinated thereto.

6. **TITLE INSURANCE.** Title to the Property shall be insured by a CLTA policy of title insurance (the "Title Policy") issued by the Title Company upon Close of Escrow. The Title Policy shall insure fee title to the Property vested in BUYER, with a liability limit equal to the Purchase Price, subject only to such matters of title as are described in this Paragraph. SELLER shall not be responsible for the cost of the Title Policy or any additional title policy or endorsements required by the lender. The Property shall be conveyed free of any blanket encumbrances subject only to the lien for current taxes, assessments, covenants, conditions, restrictions, reservations, easements, rights of way and other matters of record. Property vesting shall be as BUYER instructs Escrow Holder.

7. **DELIVERY TO ESCROW.** Not later than three (3) business days prior to Close of Escrow, BUYER shall deliver to Escrow Holder all documents and funds necessary from BUYER and BUYER'S lender (if any) to close Escrow, and SELLER shall deliver to Escrow Holder all documents and funds necessary from SELLER to close Escrow, including a fully executed and acknowledged grant deed for the Property ("Grant Deed"). On the date for Close of Escrow, Escrow Holder shall cause the Grant Deed to be recorded in the Monterey County's Official Records and shall then deliver to SELLER the proceeds of this Escrow to which SELLER is entitled.

8. **PRORATIONS.** Prorations and adjustments shall be made by Escrow Holder as of Close of Escrow on the basis of a 30-day month for the Property's taxes, based on the latest figures available to Escrow Holder, including all items appearing on real property tax bills, except taxes on property not subject to this Escrow.

BUYER understands and hereby acknowledges that the Monterey County Assessor has the right to reassess the Property after Close of Escrow and issue a supplemental real property tax bill to BUYER. In the event SELLER receives a supplemental tax bill applicable only for tax year(s) prior to the tax year in which Close of Escrow occurs, such supplemental tax bill shall be the sole responsibility of SELLER. If any such supplemental tax bill has been issued for the current tax year, said supplemental tax bill will be added to the current tax bill and prorated accordingly at Close of Escrow. ANY TAX BILLS ISSUED AFTER CLOSE OF ESCROW THAT RELATE TO PERIODS BOTH BEFORE AND AFTER CLOSE OF ESCROW SHALL BE PRORATED BETWEEN BUYER AND SELLER. All bonds and assessments that are part of or paid with the property tax bill will be assumed by BUYER. In the event there are other bonds or assessments that have an outstanding principal balance and are a lien upon the Property, the current installment will be prorated between BUYER and SELLER as of the date of Close of Escrow. Future installments will be assumed by BUYER without credit.

9. **COSTS/FEES.** Unless otherwise agreed in writing by BUYER and SELLER, BUYER agrees to pay, in cash, through Escrow, in addition to the Purchase Price of the Property, the following, as applicable:

A. **Lender Fees/Costs.** The cost of credit report(s), loan fees, monthly impound payments (if required or negotiated with BUYER'S lender), owner's and lender's policies of title insurance; and

B. **Title and Escrow Fees/Costs.** All escrow fees; recording fees; inspection fees; and all other closing costs; and

C. **Late Fees.** See Paragraph 4.

4

BUYER'S Initials
SELLER'S Initials

180651713705.7 04/06/05

Community: Tuscany at Monte Bella        Lot: 28-13                Block: 13

All funds to be deposited into Escrow by BUYER, for Close of Escrow, (including those required for prorations) must be in the form of a cashier's check, certified check, wire transfer or similar instrument. Personal checks are not acceptable. SELLER shall pay all county transfer taxes associated with the conveyance of the Property to BUYER.

10. **INSPECTION OF PROPERTY**. BUYER and SELLER shall make a joint walk-through inspection of the Property before Close of Escrow for the purpose of noting any cosmetic issues and to prepare a list of corrective work, if any, which may be necessary ("Walk-Through Inspection Report"). Only SELLER'S representatives and BUYER (those persons actually to be named on the Grant Deed as owners) may attend this walk-through inspection. The only other person or persons permitted to attend are: (a) an interpreter in the event BUYER does not speak English; or (2) an assistant to BUYER required due to any mental or physical disability. At this walk-through inspection BUYER must carefully inspect the Property and note on the Walk-Through Inspection Report any cosmetic or aesthetic concerns or questions (including blemishes, texture/color/finish inconsistencies, scratches, stains, etc.); missing or incorrect items; and anything else needing corrective action ("collectively, "Punch List Items"). All patent (observable) Punch List Items that BUYER desires to be corrected must be listed by BUYER on the Walk-Through Inspection Report. If there are any Punch List Items, SELLER shall schedule a subsequent walk-through inspection at which BUYER shall inspect the corrective work performed on the Punch List Items and on the Walk-Through Inspection Report and BUYER shall sign an acceptance of the completed work. Any corrective work agreed to be performed by SELLER as a result of the inspection and as set forth on the Walk-Through Inspection Report shall not cause a delay of Close of Escrow. SELLER will complete all corrective work as set forth on the Walk-Through Inspection Report in a prompt and workmanlike manner, and BUYER shall cooperate fully with SELLER to enable SELLER and its agents, employees and contractors to complete such corrective work. Neither BUYER'S walk-through nor attendance by BUYER at a scheduled walk-through shall be a condition of Close of Escrow.

11. **ENTRY UPON PROPERTY**. Without the prior written approval of SELLER, BUYER shall not enter, occupy or take possession of the Property, or make any alterations of, or additions to, any interior or exterior improvements thereon, until after Close of Escrow. Any alterations, additions or improvements after Close of Escrow shall be subject to the Covenants, Conditions and Restrictions. BUYER shall not enter the Community or the Property during the construction period unless accompanied by a representative of SELLER. BUYER'S entry onto the Property prior to Close of Escrow to perform any work on or to the Property without SELLER'S express prior written consent shall constitute a default under this Purchase Agreement. BUYER understands and acknowledges that entry upon the Property during construction can be dangerous and that hazards may exist which are not observable. BUYER'S authorized or unauthorized entry shall be solely at BUYER'S own risk. BUYER hereby waives any and all claims against SELLER for injury or loss to person or property arising out of or in connection with, such entry by BUYER or any other person accompanying BUYER or entering at BUYER'S direction, and BUYER hereby indemnifies, and promises to defend and hold SELLER harmless from and against any injury, loss, damage, or expense, (including, without limitation, attorneys' fees) to persons or property arising out of or in connection with, any such entry. BUYER or BUYER'S agents shall not be permitted to show or advertise the Property to prospective purchasers or tenants or place any signs at or near the Property.

12. **DELIVERY OF POSSESSION**. Possession of the Property shall be delivered to BUYER upon Close of Escrow. In the event SELLER fails to complete the Residence and to deliver possession to BUYER within one (1) year from the date of SELLER'S execution of this Purchase Agreement, or for such additional period as the parties may mutually agree, either party shall have the right to terminate this Purchase Agreement. Upon termination for such reason, SELLER shall promptly return BUYER'S Deposits and Option Deposit, if any.

13. **BUYER'S DEFAULT. BUYER SHALL BE IN DEFAULT OF THIS PURCHASE AGREEMENT IF, THROUGH NO FAULT OF SELLER, BUYER FAILS TO PERFORM BUYER'S OBLIGATION TO**

BUYER'S Initials _____
SELLER'S Initials _____

Community: Tuscany at Monte Bella        Lot: 28-13        Block: 13

DEPOSIT THE FUNDS IN THE AMOUNTS AND AT THE TIMES REQUIRED IN PARAGRAPHS 1.D(i) AND 3 ABOVE; BUYER FAILS TO PROMPTLY COMPLETE, EXECUTE AND DELIVER THE FINANCING AND ESCROW DOCUMENTS REFERRED TO HEREIN; OR, BUYER, THROUGH ITS OWN FAULT, FAILS TO CLOSE ESCROW WITHIN THE TIME PROVIDED IN PARAGRAPH 4. THREE (3) DAYS AFTER WRITTEN NOTICE OF BUYER'S DEFAULT WITHOUT BUYER'S CURE OF SUCH DEFAULT, SELLER MAY UNILATERALLY CANCEL THIS PURCHASE AGREEMENT AND THE ESCROW, AND SHALL GIVE BUYER AND ESCROW WRITTEN NOTICE OF SUCH CANCELLATION.

## 14. LIQUIDATED DAMAGES AND DISPUTE RESOLUTION

**14.1 LIQUIDATED DAMAGES FOR BUYER'S DEFAULT.** IF BUYER FAILS TO COMPLETE THE PURCHASE OF THE PROPERTY BECAUSE OF A DEFAULT BY BUYER, SELLER MAY PURSUE ANY REMEDY IN LAW OR EQUITY THAT IT MAY HAVE AGAINST BUYER ON ACCOUNT OF THE DEFAULT; PROVIDED HOWEVER, THAT BY PLACING THEIR INITIALS HERE,

BUYER _JGC ITGC_ AND SELLER _[initials]_

AGREE TO ALL OF THE TERMS SET FORTH BELOW IN THIS SECTION 14.1:

A. IN THE EVENT OF SUCH DEFAULT, IT WOULD BE EXTREMELY DIFFICULT AND IMPRACTICAL TO ASCERTAIN THE ACTUAL DAMAGES SUFFERED BY SELLER.

B. THE AMOUNT EQUAL TO THE SUM OF BUYER'S DEPOSITS ACTUALLY DEPOSITED (THE "PURCHASE MONEY DEPOSIT") SHALL CONSTITUTE LIQUIDATED DAMAGES PAYABLE TO SELLER IF BUYER FAILS TO COMPLETE THE PURCHASE OF THE PROPERTY BECAUSE OF A DEFAULT BY BUYER. THE "PURCHASE MONEY DEPOSIT" SHALL INCLUDE ANY AMOUNT SEPARATELY DEPOSITED BY BUYER AS AN OPTION DEPOSIT (AS DEFINED IN PARAGRAPH 22) IN CONNECTION WITH UPGRADES AND OPTIONAL ITEMS, IF ANY ARE ORDERED BY BUYER. THE VALIDITY AND REASONABLENESS OF THE AMOUNT OF LIQUIDATED DAMAGES SHALL BE DETERMINED IN ACCORDANCE WITH CALIFORNIA CIVIL CODE SECTIONS 1675-1678.

C. THE PAYMENT OF SUCH LIQUIDATED DAMAGES TO SELLER SHALL CONSTITUTE THE EXCLUSIVE REMEDY OF SELLER ON ACCOUNT OF ANY DEFAULT BY BUYER.

D. LIQUIDATED DAMAGES SHALL BE PAYABLE TO SELLER OUT OF BUYER'S PURCHASE MONEY DEPOSIT ACCORDING TO THE FOLLOWING PROCEDURES:

(i) SELLER SHALL GIVE WRITTEN NOTICE ("SELLER'S NOTICE AND DEMAND"), IN THE MANNER PRESCRIBED BY SECTION 116.340 OF THE CODE OF CIVIL PROCEDURE FOR SERVICE IN A SMALL CLAIMS ACTION, TO ESCROW HOLDER AND TO BUYER THAT BUYER IS IN DEFAULT UNDER THIS PURCHASE AGREEMENT AND THAT SELLER IS DEMANDING THAT ESCROW HOLDER REMIT THE PURCHASE MONEY DEPOSIT TO SELLER AS LIQUIDATED DAMAGES UNLESS, WITHIN TWENTY (20) DAYS BUYER GIVES ESCROW HOLDER BUYER'S WRITTEN OBJECTION TO DISBURSEMENT OF THE PURCHASE MONEY DEPOSIT AS LIQUIDATED DAMAGES ("BUYER'S OBJECTION"). BUYER'S OBJECTION MUST ALSO AFFIRMATIVELY STATE THAT BUYER IS READY, WILLING AND ABLE TO CLOSE ESCROW AS PROVIDED FOR IN THIS PURCHASE AGREEMENT. BUYER'S FAILURE TO SO SPECIFICALLY STATE THAT BUYER IS PREPARED TO PROCEED WITH CLOSE

BUYER'S Initials _JGC ITGC_
SELLER'S Initials _[initials]_

Community: Tuscany at Monte Bella        Lot: 28-13                                    Block: 13

OF ESCROW FOR THE PURCHASE OF THE PROPERTY WILL IMMEDIATELY TERMINATE BUYER'S RIGHT TO PURCHASE THE PROPERTY AND ANY SUCH RIGHTS SHALL THEREUPON TERMINATE. SELLER SHALL, IMMEDIATELY UPON GIVING SELLER'S NOTICE AND DEMAND, DELIVER TO ESCROW HOLDER ALL PURCHASE MONEY DEPOSIT OF BUYER HELD BY SELLER OUTSIDE OF ESCROW.

(ii) BUYER SHALL HAVE A PERIOD OF TWENTY (20) DAYS FROM THE DATE OF RECEIPT OF SELLER'S NOTICE AND DEMAND IN WHICH TO GIVE ESCROW HOLDER BUYER'S OBJECTION.

(iii) IF BUYER FAILS TO GIVE ESCROW HOLDER BUYER'S OBJECTION WITHIN TWENTY (20) DAYS FROM THE DATE OF RECEIPT OF SELLER'S NOTICE AND DEMAND: (a) ESCROW HOLDER SHALL PROMPTLY REMIT THE AMOUNT DEMANDED TO SELLER; AND (b) SELLER SHALL BE RELEASED FROM ANY OBLIGATION TO SELL THE PROPERTY TO BUYER.

(iv) IF BUYER GIVES ESCROW HOLDER BUYER'S OBJECTION WITHIN TWENTY (20) DAYS FROM THE DATE OF RECEIPT OF SELLER'S NOTICE AND DEMAND, THEN THE CONTROVERSY SHALL BE DETERMINED BY SUBMISSION TO BINDING ARBITRATION AS PROVIDED IN PARAGRAPH 14.2 BELOW.

(v) IF BUYER FAILS TO STATE IN BUYER'S OBJECTION THAT BUYER INTENDS TO PERFORM ITS OBLIGATIONS UNDER THIS PURCHASE AGREEMENT AND PURCHASE THE PROPERTY, SUCH FAILURE SHALL CONSTITUTE: (a) BUYER'S WAIVER OF ANY RIGHT TO MAINTAIN A LEGAL ACTION TO OBTAIN SPECIFIC PERFORMANCE OF SELLER'S OBLIGATION TO COMPEL SELLER TO CONVEY THE PROPERTY TO BUYER, AND (b) BUYER'S WAIVER OF ANY RIGHT TO RECORD A NOTICE OF LIS PENDENS OR ANY OTHER INSTRUMENT AFFECTING SELLER'S TITLE TO THE PROPERTY.

SHOULD BUYER NOT AGREE TO THE FOREGOING LIQUIDATED DAMAGES PROVISION, THEN THE AMOUNT SPECIFIED ABOVE SHALL NOT BE CONSIDERED A LIMITATION ON THE AMOUNT OF DAMAGES SELLER MIGHT RECOVER AS A RESULT OF BUYER'S DEFAULT. SELLER AGREES TO INDEMNIFY AND HOLD ESCROW HOLDER HARMLESS FROM ANY CLAIM ARISING OUT OF ANY DISTRIBUTIONS MADE BY ESCROW HOLDER IN ACCORDANCE WITH AND PURSUANT TO THE PROVISIONS OF THIS PARAGRAPH 14.

**14.2 ARBITRATION OF DISPUTES.** ALL DISPUTES BETWEEN BUYER AND SELLER THAT ARISE PRIOR TO THE CLOSE OF ESCROW, OR WITH RESPECT TO A DEFAULT BY BUYER OR SELLER THAT RESULTS IN THE TRANSACTION FAILING TO CLOSE, INCLUDING, WITHOUT LIMITATION, ANY DISPUTE PURSUANT TO THE FOREGOING PARAGRAPH 14.1 ABOVE, SHALL BE RESOLVED PURSUANT TO BINDING ARBITRATION AS SET FORTH BELOW ("ARBITRATION"). ANY DISPUTE RELATING TO PARAGRAPH 14.1 ABOVE MAY INCLUDE A DETERMINATION OF THE REASONABLENESS OF THE AMOUNT TO BE PAID AS LIQUIDATED DAMAGES, THE VALIDITY OF THE FOREGOING LIQUIDATED DAMAGES PROVISION, CLAIMS THAT A PARTY IS IN DEFAULT UNDER THIS PURCHASE AGREEMENT, AND THE DISPOSITION OF THE FUNDS DEPOSITED INTO ESCROW BY BUYER, AND SHALL BE CONDUCTED AS PROVIDED HEREIN. THE PARTIES HERETO SHALL INCLUDE ALL CAUSES OF ACTION THAT HAVE ARISEN BETWEEN BUYER AND SELLER PRIOR TO THE CLOSE OF ESCROW OR RELATE TO THE TRANSACTION FAILING TO CLOSE.

BUYER'S Initials _____
SELLER'S Initials _____

18065\713705.7 04/06/05

Community: Tuscany at Monte Bella     Lot: 28-13     Block: 13

A. **PARTIES**: EACH PARTY SHALL HAVE THE RIGHT, IN THEIR RESPECTIVE DISCRETION, TO JOIN ANY PERSON OR ENTITY WHO IS NOT A PARTY TO THE ARBITRATION IF THE PRESENCE OF SUCH PERSON OR ENTITY IS REQUIRED OR IS NECESSARY FOR COMPLETE RELIEF TO BE ACCORDED IN THE ARBITRATION OR IF THE INTEREST OR RESPONSIBILITY OF SUCH PERSON OR ENTITY IN THE DISPUTE IS NOT INSUBSTANTIAL. HOWEVER, IN NO EVENT SHALL DISPUTES INVOLVING THE BUYERS OF MORE THAN ONE PROPERTY BE JOINED IN ANY ARBITRATION. THE PARTIES SHALL COOPERATE IN GOOD FAITH AND SHALL DILIGENTLY PERFORM SUCH ACTS AS MAY BE NECESSARY TO ENSURE THAT ALL NECESSARY AND APPROPRIATE PARTIES ARE INCLUDED IN THE ARBITRATION. NOTWITHSTANDING THE FOREGOING, NEITHER PARTY SHALL BE REQUIRED TO PARTICIPATE IN THE ARBITRATION IF ALL PARTIES AGAINST WHOM SUCH PARTY, RESPECTIVELY, WOULD HAVE NECESSARY OR PERMISSIVE CROSS-CLAIMS ARE NOT OR CANNOT BE JOINED IN THE ARBITRATION. IN SUCH LATTER CASE, THE DISPUTE SHALL BE DECIDED PURSUANT TO PARAGRAPH 14.3 BELOW.

B. **RULES**: THE ARBITRATION SHALL BE CONDUCTED BY AND IN ACCORDANCE WITH THE STREAMLINED ARBITRATION RULES AND PROCEDURES OF THE AMERICAN ARBITRATION ASSOCIATION (OR ANY SUCCESSOR THERETO) THEN CURRENTLY IN EFFECT, AS MODIFIED BY THIS PURCHASE AGREEMENT. SHOULD THE AAA CEASE TO EXIST AS SUCH, THEN ALL REFERENCES TO AAA SHALL BE DEEMED TO REFER TO ITS SUCCESSOR OR, IF THERE IS NO SUCCESSOR, TO SUCH OTHER ALTERNATIVE DISPUTE RESOLUTION FORUM MUTUALLY SELECTED BY THE PARTIES, OR ABSENT SUCH MUTUAL SELECTION, SELECTED BY THE PRESIDING JUDGE OF THE SUPERIOR COURT OF THE COUNTY WHEREIN THE PROPERTY IS LOCATED.

C. **COMMENCEMENT**: THE ARBITRATION SHALL BE COMMENCED UPON DELIVERY BY EITHER PARTY TO THE OTHER AND TO THE ARBITRATION SERVICE (AND, IF ESCROW IS STILL OPEN, TO ESCROW HOLDER) OF A WRITTEN DEMAND FOR ARBITRATION, WHICH SHALL SET FORTH WITH SPECIFICITY THE PARTICULARS OF SUCH PARTY'S CLAIM(S), THE ISSUES TO BE SUBMITTED TO ARBITRATION AND THE RELIEF SOUGHT.

D. **STATUTES OF LIMITATION**: EXCEPT FOR PROCEDURAL ISSUES, AND TO THE EXTENT NOT INCONSISTENT WITH THE FEDERAL ARBITRATION ACT, THE ARBITRATION, THE ULTIMATE DECISIONS OF THE ARBITRATOR, AND THE ARBITRATOR SHALL BE SUBJECT TO AND BOUND BY EXISTING CALIFORNIA CASE AND STATUTORY LAW INCLUDING, BUT NOT LIMITED TO, APPLICABLE STATUTES OF LIMITATION ESTABLISHED BY CALIFORNIA LAW.

E. **SELECTION AND TIMING**: THE ARBITRATION SHALL BE CONDUCTED BY ONE (1) QUALIFIED ARBITRATOR SELECTED IN ACCORDANCE WITH THE RULES OF AAA. THE TERM "QUALIFIED" SHALL MEAN A RETIRED JUDGE WHO HAS EXPERIENCE WITH THE LAWS GOVERNING RESIDENTIAL REAL ESTATE SALES AND DEVELOPMENT OR AN ATTORNEY WHO HAS ACTIVELY PRACTICED LAW IN CALIFORNIA FOR AT LEAST FIFTEEN (15) YEARS AND WHO HAS EXPERIENCE WITH THE LAWS GOVERNING RESIDENTIAL REAL ESTATE SALES AND DEVELOPMENT.

F. **MOTIONS AND REMEDIES**: THE ARBITRATOR SHALL HAVE THE POWER TO HEAR AND DISPOSE OF MOTIONS, INCLUDING MOTIONS RELATING TO PROVISIONAL REMEDIES, DEMURRERS, MOTIONS TO DISMISS, MOTIONS FOR JUDGMENT ON THE PLEADINGS AND SUMMARY JUDGMENT AND/OR ADJUDICATION MOTIONS, IN THE SAME MANNER AS A TRIAL COURT JUDGE. IN ADDITION, THE ARBITRATOR SHALL HAVE THE POWER TO SUMMARILY ADJUDICATE ISSUES OF FACT OR LAW, INCLUDING THE AVAILABILITY OF REMEDIES, EVEN IF THE ISSUE ADJUDICATED COULD DISPOSE OF AN ENTIRE CAUSE OF ACTION OR DEFENSE. THE ARBITRATOR SHALL HAVE THE POWER TO GRANT PROVISIONAL REMEDIES INCLUDING PRELIMINARY INJUNCTIVE RELIEF. PRIOR TO THE SELECTION OF

BUYER'S Initials ___
SELLER'S Initials ___

18065\713705.7 04/06/05

Community: Tuscany at Monte Bella            Lot: 28-13                                Block: 13

THE ARBITRATOR, ANY PARTY SHALL HAVE THE RIGHT TO PETITION THE SUPERIOR COURT OF THE COUNTY WHERE THE PROPERTY IS LOCATED FOR ANY NECESSARY PROVISIONAL REMEDIES. HOWEVER, AFTER OBTAINING ANY PROVISIONAL REMEDIES (PENDING SELECTION OF THE ARBITRATOR) THE ENTIRE MATTER SHALL BE REFERRED TO AAA FOR ALL PURPOSES AND THE SUPERIOR COURT SHALL HAVE NO FURTHER JURISDICTION TO MONITOR OR ENFORCE THE PROVISIONAL REMEDIES OR TO MAKE FURTHER DETERMINATIONS OR AWARDS OR TO ISSUE ADDITIONAL PROVISIONAL REMEDIES. AAA SHALL HAVE THE SOLE POWER TO ENFORCE, EXTEND, MODIFY OR VACATE ANY SUCH PROVISIONAL REMEDIES.

G. DISCOVERY: THE PARTIES SHALL BE ENTITLED TO LIMITED DISCOVERY CONSISTING OF: (I) WITNESS LISTS; (II) EXPERT WITNESS DESIGNATIONS; (III) EXPERT WITNESS REPORTS; (IV) EXHIBITS; (V) REPORTS OF TESTING OR INSPECTIONS, INCLUDING BUT NOT LIMITED TO, DESTRUCTIVE OR INVASIVE TESTING; (VI) ARBITRATION BRIEFS; AND (VII) THE DEPOSITION, UNDER OATH, OF ANY DESIGNATED EXPERTS AND TWO OTHER DEPOSITIONS OF THEIR CHOOSING WITHOUT OBTAINING THE CONSENT OF THE ARBITRATOR. ALL OTHER DISCOVERY SHALL BE PERMITTED BY THE ARBITRATOR AT HIS DISCRETION UPON A SHOWING OF GOOD CAUSE OR BASED ON THE AGREEMENT OF THE PARTIES. THE ARBITRATOR SHALL OVERSEE DISCOVERY AND MAY ENFORCE ALL DISCOVERY ORDERS IN THE SAME MANNER AS ANY TRIAL COURT JUDGE.

H. FULL DISCLOSURE: EACH PARTY SHALL MAKE, IN GOOD FAITH, A FULL DISCLOSURE OF ALL ISSUES AND EVIDENCE TO EACH OTHER PARTY PRIOR TO THE HEARING. ANY EVIDENCE OR INFORMATION THAT THE ARBITRATOR DETERMINES WAS UNREASONABLY WITHHELD SHALL BE INADMISSIBLE BY THE PARTY WHO WITHHELD IT. THE INITIATING PARTY SHALL BE THE FIRST TO DISCLOSE ALL OF THE FOLLOWING, IN WRITING, TO EACH OTHER PARTY AND TO THE ARBITRATOR: (I) AN OUTLINE OF THE ISSUES AND ITS POSITION ON EACH SUCH ISSUE; (II) A LIST OF ALL WITNESSES THE PARTY INTENDS TO CALL; AND (III) COPIES OF ALL WRITTEN REPORTS AND OTHER DOCUMENTARY EVIDENCE, WHETHER WRITTEN OR NOT OR CONTRIBUTED TO BY ITS RETAINED EXPERTS (COLLECTIVELY "OUTLINE"). THE INITIATING PARTY SHALL SUBMIT ITS OUTLINE TO EACH OTHER PARTY AND THE ARBITRATOR WITHIN THIRTY (30) DAYS OF THE FINAL SELECTION OF THE ARBITRATOR. EACH RESPONDING PARTY SHALL SUBMIT ITS WRITTEN RESPONSE AS DIRECTED BY THE ARBITRATOR.

I. HEARING: THE HEARING SHALL BE HELD IN THE COUNTY WHERE THE PROPERTY IS LOCATED. THE ARBITRATOR SHALL PROMPTLY COMMENCE THE HEARING GIVING DUE CONSIDERATION TO THE COMPLEXITY OF THE ISSUES, THE NUMBER OF PARTIES AND NECESSARY DISCOVERY AND OTHER RELEVANT MATTERS. THE ARBITRATION SHALL BE CONDUCTED AS INFORMALLY AS POSSIBLE. CALIFORNIA EVIDENCE CODE SECTION 1152 ET SEQ. SHALL APPLY FOR THE PURPOSE OF EXCLUDING OFFERS, COMPROMISES, AND SETTLEMENT PROPOSALS FROM EVIDENCE, UNLESS THERE IS AGREEMENT BY ALL PARTIES AS TO ADMISSIBILITY. THE ARBITRATOR SHALL BE THE SOLE JUDGE OF THE ADMISSIBILITY OF AND THE PROBATIVE VALUE OF ALL EVIDENCE OFFERED AND IS AUTHORIZED TO PROVIDE ALL LEGALLY RECOGNIZED REMEDIES WHETHER IN LAW OR EQUITY, EXCEPT AS OTHERWISE LIMITED IN THIS PARAGRAPH 14.2. ATTORNEYS ARE NOT REQUIRED AND EITHER PARTY MAY ELECT TO BE REPRESENTED BY SOMEONE OTHER THAN A LICENSED ATTORNEY. THE COST OF AN INTERPRETER SHALL BE BORNE BY THE PARTY REQUIRING THE SERVICES OF THE INTERPRETER IN ORDER TO BE UNDERSTOOD BY THE ARBITRATOR AND THE EXPENSES OF WITNESSES SHALL BE BORNE BY THE PARTY PRODUCING SUCH WITNESSES.

J. DECISION: THE DECISION OF THE ARBITRATOR SHALL BE BINDING ON THE PARTIES AND MAY BE ENTERED AS A JUDGMENT IN ANY COURT OF THE STATE OF CALIFORNIA

BUYER'S Initials
SELLER'S Initials

18065\713705.7  04/06/05

Community: Tuscany at Monte Bella          Lot: 28-13                              Block: 13

THAT HAS JURISDICTION AND VENUE. THE ARBITRATOR SHALL (I) IF AGREED BY THE PARTIES, CAUSE A COMPLETE RECORD OF ALL PROCEEDINGS TO BE PREPARED SIMILAR TO THOSE KEPT IN THE SUPERIOR COURT, (II) TRY ALL ISSUES OF BOTH FACT AND LAW, AND (III) ISSUE A WRITTEN STATEMENT OF DECISION CONSISTENT WITH THAT DESCRIBED IN CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 643 WHICH SHALL SPECIFY THE FACTS AND LAW RELIED UPON IN REACHING THE ARBITRATOR'S DECISION WITHIN TWENTY (20) DAYS AFTER THE CLOSE OF TESTIMONY. A STENOGRAPHIC RECORD OF THE HEARING SHALL BE MADE WHICH SHALL REMAIN CONFIDENTIAL EXCEPT AS MAY BE NECESSARY FOR POST-HEARING MOTIONS AND APPEALS. THE COST OF THE RECORD SHALL BE BORNE ONE-HALF BY BUYER AND ONE-HALF BY SELLER, REGARDLESS OF THE OUTCOME. SHOULD ANY PARTY REFUSE OR FAIL TO PAY ITS PRO-RATA SHARE, THE REMAINING PARTIES MAY PAY SUCH SHARE, AND THE PARTY OR PARTIES WHICH PAY SUCH EXTRA SHARE SHALL BE AWARDED SUCH EXTRA COSTS BY THE ARBITRATOR IN THE ARBITRATOR'S DECISION.

K.  FEES AND COSTS: SELLER SHALL ADVANCE ANY FEE REQUIRED BY AAA TO INITIATE THE ARBITRATION. THE TOTAL COST OF THE ARBITRATION, INCLUDING THE ADVANCED INITIATION FEES AND OTHER FEES OF AAA AND ANY RELATED COSTS AND FEES INCURRED BY AAA (SUCH AS EXPERTS AND CONSULTANTS RETAINED BY IT) SHALL BE BORNE ONE-HALF BY BUYER AND ONE-HALF BY SELLER, REGARDLESS OF THE OUTCOME. THE ARBITRATOR SHALL NOT AWARD ATTORNEYS' FEES TO ANY PARTY. NOTHING HEREIN SHALL BE CONSTRUED TO MODIFY OR ABROGATE ANY DUTY TO DEFEND AND/OR INDEMNIFY A THIRD PARTY PURSUANT TO THE TERMS OF A CONTRACT BETWEEN ANY SUCH PARTIES.

NOTICE: BY INITIALING IN THE SPACE BELOW, SELLER AND BUYER ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THIS ARBITRATION OF DISPUTES PROVISION OR THE ARBITRATION OF DISPUTES PROVISION IN PARAGRAPH 14.3 BE DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND ARE GIVING UP ANY RIGHTS EACH MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED BY A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW EACH ARE GIVING UP THEIR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS SUCH RIGHTS ARE SPECIFICALLY INCLUDED IN THIS ARBITRATION OF DISPUTES PROVISION. IF EACH REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, EACH MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY. WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE ARBITRATION OF DISPUTES PROVISION TO NEUTRAL ARBITRATION.

(PGC)  (TGC)                              (          )  (          )
BUYER'S INITIALS                          SELLER'S INITIALS

**14.3 ALTERNATIVE DISPUTE RESOLUTION.** The provisions in this Paragraph 14.3 shall survive Close of Escrow.

A.  JUDICIAL REFERENCE. If, before Close of Escrow, or if Escrow fails to Close, any claims, disputes or controversies (other than those claims and issues covered by Paragraphs 14.1 or 14.2) arise between the parties with respect to this Purchase Agreement or the Property, and any party commences a legal proceeding based upon such claims, all such matters shall be determined by judicial reference as provided in this Paragraph 14.3A. If either party to this Purchase Agreement commences a legal proceeding for a dispute arising under this Purchase Agreement (other than those claims and issues covered by Paragraphs 14.1 or 14.2), all the issues in such action, whether

10

BUYER'S Initials ( GC ) ( GC )
SELLER'S Initials (     ) (     )

18065\713705 7  04/06/05

of fact or law, shall be resolved by judicial reference pursuant to the provisions of California Code of Civil Procedure Sections 638 through 645.1. BUYER and SELLER shall cooperate in good faith to ensure that all necessary and appropriate parties are included in the judicial reference proceeding, in the event a legal proceeding is initiated based on any such dispute, the following shall apply:

(i) The proceeding shall be brought and held in Monterey County unless the parties agree to a different venue;

(ii) The parties shall use the procedures adopted by JAMS for judicial reference and selection of a referee (or any other entity offering judicial reference dispute resolution procedures as may be mutually acceptable to the parties);

(iii) The referee must be a retired judge or a licensed attorney with substantial experience in relevant real estate matters;

(iv) The parties to the litigation shall agree upon a single referee who shall have the power to try any and all of the issues raised, whether of fact or of law, which may be pertinent to the matters in dispute, and to issue a statement of decision thereon. Any dispute regarding the selection of the referee shall be resolved by JAMS or the entity providing the reference services, or, if no entity is involved, by the court in accordance with California Code of Civil Procedure Sections 638 and 640;

(v) The referee shall be authorized to provide all remedies available in law or equity appropriate under the circumstances of the controversy;

(vi) The referee may require one or more pre-hearing conferences;

(vii) The parties shall be entitled to discovery, and the referee shall oversee discovery and may enforce all discovery orders in the same manner as any trial court judge;

(viii) A stenographic record of the trial shall be made;

(ix) The referee's statement of decision shall contain findings of fact and conclusions of law to the extent applicable;

(x) The referee shall have the authority to rule on all post-hearing motions in the same manner as a trial judge;

(xi) The parties shall promptly and diligently cooperate with each other and the referee and perform such acts, as may be necessary for an expeditious resolution of the dispute;

(xii) Except as otherwise agreed by the parties or as required by applicable law, BUYER shall not be required to pay any fee of the judicial reference proceeding except to the extent of the costs that would be imposed upon the BUYER if the dispute had been resolved as a dispute in court. The referee may not award against BUYER any expenses in excess of those that would be recoverable as costs if the dispute had been litigated to final judgment in court. Each party to the judicial reference proceeding shall bear its own attorneys' fees and costs in connection with such proceeding; and

(xiii) The statement of decision of the referee upon all of the issues considered by the referee shall be binding upon the parties, and upon filing of the statement of decision with the clerk of the court, or with the judge where there is no clerk, judgment may be entered thereon. The decision of the referee shall be appealable as if rendered by the court. This provision shall in no way be construed to limit any valid cause of action, which may

11

BUYER'S Initials
SELLER'S Initials (      )

18065\713705.7  04/06/05

be brought by any of the parties. **The parties acknowledge and accept that they are waiving their right to a jury trial.**

(GC) (TGC)
BUYER'S INITIALS  ( ) ( )
SELLER'S INITIALS

B. **FEDERAL ARBITRATION ACT.** The binding arbitration procedures contained in Paragraphs 14.2 and 14.3 are implemented in accordance with the philosophy and intent of the Federal Arbitration Act (9 U.S.C. Section 1 et seq.) ("FAA"), which is designed to encourage the use of alternative methods of dispute resolution and avoid costly and potentially lengthy traditional court proceedings. The binding arbitration procedures in said Paragraph are to be interpreted and enforced as authorized by the FAA. Parties interpreting this Paragraph 14.3.B. shall follow the federal court rulings, which provide among other things that: (1) the FAA is a congressional declaration of liberal federal policy favoring alternate dispute resolution notwithstanding substantive or procedural state policies or laws to the contrary, (2) alternate dispute resolution agreements are to be rigorously enforced by state courts; and (3) the scope of issues subject to alternate dispute resolution are to be interpreted in favor of alternate dispute resolution. Interpretation and application of the procedures set forth in Paragraphs 14.2 and 14.3 shall conform to any applicable federal court rules and decisions interpreting and applying the FAA. The Arbitration shall be conducted pursuant to the FAA and, to the extent not inconsistent, the procedures set forth in Paragraphs 14.2 and 14.3. In addition, except as set forth herein, and to the extent it is not inconsistent with the FAA, the Arbitration shall be conducted pursuant to Title 9 of the California Code of Civil Procedure (Section 1280 et seq.). References to California procedural law are for guidance only and shall not be construed as a waiver of any rights or duties of the parties under the FAA or the right of the parties to have the procedures set forth in this Purchase Agreement interpreted and enforced under the FAA. If any party seeks review by a court of the enforceability of any of the procedures set forth or referenced herein (notwithstanding the provisions herein making that issue one to be resolved by the arbitrator), the exclusive jurisdiction and venue for any such review shall be the Superior Court for the County in which the Property is located.

## 15. GENERAL.

A. This Purchase Agreement may not be assigned by BUYER.

B. Time is of the essence in respect of all of BUYER'S obligations.

C. Notices to BUYER and SELLER may be served personally, by facsimile, or by certified first-class mail, return receipt requested, at their respective addresses, or, if BUYER has occupied the Property, at the Property, and if service is made personally or by facsimile, notice shall be treated as served and effective on the date such notice is given, provided such service is made during normal business hours. If such service is made by first-class mail, notice shall be treated as served and effective on the date when delivered as indicated on the return receipt. Any notice that is refused by either party shall be deemed to have been served on the date service is first attempted. In the event BUYER or SELLER utilizes facsimile transmitted signed documents, BUYER and SELLER hereby agree to accept, and hereby agree to instruct Escrow Holder to rely upon such documents as if they bore original signatures. BUYER and SELLER hereby acknowledge and agree to use their best efforts to provide the other party prior to Close of Escrow, with such documents bearing the original signatures. BUYER and SELLER further acknowledge and agree that documents with non-original signatures will not be accepted for recording by the Monterey County Recorder.

D. Regardless of the physical characteristics of the Property, no guarantees are made regarding the permanence of all or any portion of the present view, land use or development of this or surrounding real property.

12

BUYER'S Initials (GC/TGC
SELLER'S Initials

18065\713705.7 04/06/05

Community: Tuscany at Monte Bella        Lot: 28-13                                          Block: 13

E.  No modification or amendment shall be effective unless in writing and signed by BUYER and SELLER.

F.  BUYER is prohibited from recording this Purchase Agreement or any memorandum hereof, and upon attempted recordation shall be in default hereunder and this Purchase Agreement, at SELLER'S election, shall terminate and all rights of BUYER hereunder shall thereupon cease.

G.  Waiver of one provision hereof shall not be deemed continuing nor a waiver of any other provision.

H.  All references in this Purchase Agreement to "days" shall mean calendar days unless otherwise indicated.

16. **BUYER ACKNOWLEDGES**. (1) BUYER has read and understands all the terms of this Purchase Agreement, and by execution of this Purchase Agreement, has received, read and understands the General Disclosures and the Specific Disclosures, attached as Exhibit "B" and Exhibit "C" to this Purchase Agreement, respectively, which are incorporated into this Purchase Agreement by this reference; (2) No statements, representations, promises, or assurances have been made to BUYER by SELLER or SELLER'S sales associate(s) regarding this purchase not contained within this Purchase Agreement and other documents supplied by SELLER related directly to this sale, including, but not limited to those relating to the current or future value of the Property or the prices or terms of other sales made by SELLER at any time in this Community. All prices, terms, specifications, product upgrades or any other form of concession or BUYER inducement, whether related to the phase of construction in which the Residence will be constructed (the "Phase"), or any proposed or existing phase(s) of the Community, are subject to change without notice at the sole discretion of SELLER; (3) BUYER understands no sales associate, employee or agent of SELLER has the authority to make any promise or agreement on behalf of SELLER not contained in this Purchase Agreement and other documents supplied by SELLER related directly to this sale, or to modify or alter any of the terms of this Purchase Agreement, and (4) this Purchase Agreement contains the entire agreement between the parties.

17. **INTENT TO OCCUPY**. BUYER WARRANTS AND REPRESENTS TO SELLER THAT: (A) BUYER IS ACQUIRING THE PROPERTY SOLELY AS BUYER'S PERMANENT RESIDENCE; (B) BUYER DOES NOT INTEND TO RENT THE PROPERTY; (C) BUYER DOES NOT INTEND TO SELL THE PROPERTY AT ANYTIME WITHIN TWENTY FOUR (24) MONTHS AFTER CLOSE OF ESCROW; AND (D) BUYER WILL OCCUPY THE PROPERTY AS ITS PRIMARY RESIDENCE PROMPTLY AFTER CLOSE OF ESCROW. BUYER ACKNOWLEDGES AND AGREES THAT THE SUCCESS OF THE COMMUNITY IS DEPENDENT ON HAVING THE HOMES THAT COMPRISE THE COMMUNITY OCCUPIED BY THE OWNERS OF SUCH HOMES. ACCORDINGLY, BUYER SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS SELLER FROM ALL LOSSES, COSTS, CLAIMS, LIABILITIES, DAMAGES AND EXPENSES RESULTING FROM ANY BREACH OF THE FOREGOING REPRESENTATIONS AND WARRANTIES.

**17.1 RIGHT OF NOTICE AND RIGHT TO REPURCHASE**. In further consideration of the covenants and conditions of SELLER, BUYER hereby grants to SELLER a right of notice and a right to repurchase the Property on the following terms and conditions:

A.  **RIGHT OF NOTICE**. If within twenty four (24) months after Close of Escrow, BUYER desires to sell the Property, BUYER shall give notice to SELLER of BUYER'S desire to sell the Property ("BUYER'S Notice"). Before BUYER offers the Property to any third party purchaser or accepts any offer from any third party purchaser, BUYER shall deliver BUYER'S Notice to SELLER.

B.  **RIGHT TO REPURCHASE**. Upon receipt of BUYER'S Notice, SELLER shall thereafter have the right to repurchase the Property (the "Right to Repurchase") for a price equal to one hundred and five

13

BUYER'S Initials _____
SELLER'S Initials _____

percent (105%) of the Purchase Price (the "Repurchase Price"). To exercise the Right to Repurchase, SELLER shall give notice to BUYER of its intent to exercise the Right to Repurchase within fifteen (15) days of receipt of BUYER'S Notice ("SELLER'S Notice").

C. SELLER shall have the right to inspect the Property for a period of fifteen (15) days following delivery of SELLER'S Notice. If the condition of the Property is acceptable to SELLER, in SELLER'S sole discretion, SELLER shall notify BUYER, and the sale of the Property shall close ten (10) days after SELLER'S delivery of said notice; provided, however, that if the date scheduled for closing is a Saturday, Sunday or holiday, closing shall be on the next business day.

D. The closing of a sale to SELLER pursuant to this Paragraph 17.1, shall take place at the offices of an escrow holder selected by SELLER. At such closing, BUYER shall execute and deliver to SELLER a grant deed and such other instruments of conveyance (all in commercially reasonably form, subject to the terms hereof) for the conveyance to SELLER of all BUYER'S right, title and interest in and to the Property upon receipt by BUYER of a immediately available funds in an amount equal to the Repurchase Price. SELLER shall be responsible for all closing and escrow costs. BUYER shall be responsible for all lender fees, lender costs, and liens upon the Property filed after Close of Escrow, except liens for current taxes, assessments, covenants, conditions, restrictions, easements, rights of way, and other matters of record. Taxes shall be prorated at the repurchase on the basis of a 30-day month, based on the latest figures available. SELLER shall have no responsibility for payment of any brokerage commissions with respect to the Property, and BUYER shall indemnify SELLER against any claims (and any losses incurred by SELLER in connection therewith) made by any broker, agent, or finder claiming the right to a fee or compensation on account of dealings with BUYER in connection with the Property.

E. The terms and conditions of this Paragraph 17.1 shall run with the land and buildings that now or hereinafter comprise any portion of the Property and shall bind BUYER and BUYER'S successors and assigns. This Right to Repurchase shall survive the Close of Escrow.

18. **INSULATION DISCLOSURE**. Insulation will be installed in the Residence as follows:

A. Fiberglass batt insulation to a thickness of 3.5 inches in exterior walls of living area, which, according to the manufacturer, will yield a value of 13 exterior foam sheathing.

B. Fiberglass batt insulation to a thickness of 8 inches in ceiling, which, according to the manufacturer, will yield an R/value of R-13.

C. Attic will be insulated with fiberglass blown insulation to a thickness of 8 inches, which will, according to the manufacturer, yield an R/value of R-30.

D. Floor insulation above garage will be insulated with fiberglass batt insulation to a thickness of 5.5 inches, which will, according to the manufacturer, yield an R/value of R-19.

19. **BINDING AGREEMENT**. Execution of this document by BUYER alone shall constitute an offer to purchase. Upon acceptance and execution by an authorized officer of SELLER, the Purchase Agreement shall become binding upon both BUYER and SELLER. BUYER acknowledges SELLER is a real estate broker licensed by the State of California and is entering into this Purchase Agreement on its own behalf as a principal.

20. **DIFFERENCE IN CONDITIONS**. In the event of BUYER'S discovery of different facts during the pendency of this sales transaction than those which BUYER believed to be true at the time of entering into this Purchase Agreement, BUYER'S decision to close Escrow shall be deemed to be BUYER'S decision to accept such facts, and shall constitute a waiver of any claim, cost, demand, or action against SELLER with regard to such facts.

14

BUYER'S Initials
SELLER'S Initials

Community: Tuscany at Monte Bella          Lot: 28-13                              Block: 13

21. **COMMUNITY DOCUMENTS**. BUYER'S signature on this Purchase Agreement constitutes BUYER'S acknowledgment that BUYER has received, read, understood and approved the following documents, which are hereby incorporated by reference into this Purchase Agreement:

    A. The Covenants, Conditions, and Restrictions for the Community;

    B. The other Instruments provided, if any, that define the rights and responsibilities of the owners of interests in the Community;

    C. The Xeriscape guidelines, describing preferred low-water usage landscaping within the Community;

    D. A copy of Notice of SELLER'S Election for Handling of Construction Claims Pursuant to California Civil Code Section 895 et seq.;

    E. A copy of California Civil Code Sections 895 -945.5 (Attached as Exhibit "D") (to be initialed and acknowledged by BUYER and SELLER);

    F. This Purchase Agreement; and

    G. The Natural Hazard Disclosure Statement pursuant to California Civil Code Section 1103, et seq.

22. **UPGRADES AND OPTIONAL ITEMS**. BUYER hereby acknowledges and agrees that options and changes that BUYER orders to be constructed or installed in the Property shall be subject to all of the terms and provisions of this Purchase Agreement. SELLER may condition BUYER'S selection of options and changes, other than those identified on Exhibit "A," on BUYER making an additional deposit toward the Purchase Price of the increase in the Purchase Price due to such options and changes (the "Options and Changes Prepayment"). BUYER acknowledges BUYER'S selection of options and changes and payment of the Options and Changes Prepayment, if any, must be made within fifteen (15) days after the date of this Purchase Agreement unless otherwise agreed by Seller in writing.

23. **CONSTRUCTION DEFECT CLAIMS RESOLUTION PROCEDURE**.

    A. **NOTICE OF TITLE 7 CONSTRUCTION CLAIMS STATUTE**. California Civil Code Section 895 et seq., as hereafter amended ("Title 7"), delineates standards for how various components of the Property should be constructed and function, limits the time frames for bringing various claims against SELLER to anywhere from one year to ten years (as listed in Sections 896 and 897 of Title 7) from the recordation of the Notice of Completion, imposes an obligation on BUYER to follow the SELLER'S maintenance recommendations and schedules, or other applicable maintenance guidelines, and establishes a non-adversarial claims resolution procedure that must be followed by BUYER before BUYER can initiate an adversarial claim and proceed to court or other alternate dispute resolution process. A copy of Title 7 is attached as Exhibit "D" to this Purchase Agreement.

    BY INITIALING BELOW, BUYER ACKNOWLEDGES THAT SELLER HAS PROVIDED BUYER WITH A COPY OF TITLE 7 AND THAT SELLER HAS ADVISED BUYER THAT TITLE 7 AFFECTS BUYER'S LEGAL RIGHTS. BUYER IS ADVISED TO READ THE STATUTE CAREFULLY AND SEEK LEGAL ADVICE IF BUYER HAS ANY QUESTIONS REGARDING ITS EFFECT ON BUYER'S LEGAL RIGHTS.

    (J GC)   (TGG)                          (         ) (         )
    BUYER'S INITIALS                        SELLER'S INITIALS

15

BUYER'S Initials (GC / FC
SELLER'S Initials (

Community: Tuscany at Monte Bella          Lot: 28-13                              Block: 13

B. **TITLE 7 MASTER DECLARATION, INDIVIDUAL AGREEMENT AND RESOLUTION OF CONSTRUCTION CLAIMS.** SELLER has recorded, or intends to record, as an encumbrance against the Property prior to Closing, a document entitled MASTER DECLARATION FOR TITLE 7 AND DISPUTE RESOLUTION FOR THE MONTE BELLA COMMUNITY ("Title 7 Master Declaration"). The Title 7 Master Declaration, among other things, will set forth standards, notices, declarations, maintenance requirements and dispute resolution procedures that must be followed by the owners in the Community with respect to any matter pertaining to construction defects and warranty claims, as well as any other post-Closing claims. In addition, a condition precedent to Closing shall be the execution and delivery by BUYER and SELLER and recording as part of the Closing of a document entitled INDIVIDUAL DECLARATION AND NOTICES FOR TITLE 7 AND DISPUTE RESOLUTION FOR THE MONTE BELLA COMMUNITY ("Title 7 Individual Agreement"). The Title 7 Individual Agreement will be an agreement between SELLER and BUYER, which is intended to be binding upon all successor owners of the Property, providing for the implementation of the standards, notices, declarations, maintenance requirements and dispute resolution procedures set forth in the Title 7 Master Declaration which after the Close of Escrow will be binding upon BUYER and all successor owners of the Property with respect to any matter pertaining to construction defects and warranty claims, as well as any other post-Closing claim, between BUYER and SELLER relating to the Property. By initialing below, BUYER acknowledges that BUYER is aware that (i) a copy of the Title 7 Master Declaration has been delivered to BUYER for review (ii) a copy of a blank Title 7 Individual Agreement has been delivered to BUYER for review, (iii) that upon or prior to the Close of Escrow, the Title 7 Master Declaration will be recorded on the title to the Property, and (iv) as part of the Closing, the Title 7 Individual Agreement, executed and acknowledged by BUYER and SELLER, will be recorded on the title to the Property, the latter two documents intended to impart notice to and bind BUYER and BUYER'S successors in interest to the matters set forth therein.

(SGC)   (TGC)                              (      )   (      )
**BUYER'S INITIALS**                        **SELLER'S INITIALS**

C. **RECEIPT OF PURCHASE DOCUMENTS.** BUYER will be provided with certain documents through Escrow in conjunction with the purchase of the Property, including maintenance recommendations from the SELLER, maintenance recommendations for manufactured products or appliances included with the Property, claim forms, and other documentation relating to Title 7. BUYER is required by Title 7 to retain these documents and provide copies of such documents to BUYER'S successor in interest upon the sale or transfer of the Property.

D. **OBLIGATION TO FOLLOW MAINTENANCE RECOMMENDATIONS.** All Owners are obligated by Section 907 of Title 7 to follow SELLER'S maintenance recommendations and schedules, including the maintenance recommendations and schedules for manufactured products and appliances provided with the Property, as well as all commonly accepted maintenance practices (collectively, "Maintenance Recommendations"). Per Section 945.5 of Title 7, failure to follow the Maintenance Recommendations may reduce or preclude BUYER'S right to recover damages relating to such BUYER'S Property, which could have been prevented or mitigated had the Maintenance Recommendations been followed.

BUYER'S Initials SGC (T)GC

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES AND SHOULD BE READ THOROUGHLY PRIOR TO SIGNING. BUYER AFFIRMS NO SALES ASSOCIATE, EMPLOYEE OR AGENT OF SELLER HAS MADE ANY PROMISE OR REPRESENTATION OF WHATSOEVER NATURE NOT SET FORTH IN THIS PURCHASE AGREEMENT. IF YOU HAVE ANY QUESTIONS ABOUT YOUR RIGHTS OR OBLIGATIONS UNDER THIS DOCUMENT YOU MAY WISH TO CONSULT AN ATTORNEY. IF PRIOR TO CLOSE OF ESCROW, SELLER REASONABLY DETERMINES THAT

BUYER'S Initials SGC TGC
SELLER'S Initials (      )

1806517137057 04/06/05

Community: Tuscany at Monte Bella        Lot: 28-13                                    Block: 13

CERTAIN CHANGES OR REVISIONS MUST BE MADE TO THE COMMUNITY DOCUMENTS OR TO THE SALE DOCUMENTS FOR THE COMMUNITY, OR THAT CHANGES ARE NECESSARY IN THE PLANS FOR DEVELOPMENT OF THE COMMUNITY, SELLER SHALL GIVE BUYER WRITTEN NOTICE OF SUCH CHANGES. UPON RECEIPT OF SUCH NOTICE, BUYER SHALL HAVE TWO (2) CALENDAR DAYS WITHIN WHICH TO REVIEW SUCH CHANGES AND, IF BUYER DISAPPROVES OF SUCH CHANGES, TO GIVE BUYER'S WRITTEN NOTICE THEREOF TO SELLER AND ESCROW HOLDER. BUYER HEREBY AGREES THAT, IN THE EVENT BUYER DISAPPROVES OF SUCH CHANGES, BUYER'S SOLE REMEDY SHALL BE TO TERMINATE THIS PURCHASE AGREEMENT AND TO REQUEST CANCELLATION OF ESCROW, IN WHICH CASE BUYER SHALL RECEIVE A FULL REFUND OF ALL AMOUNTS DEPOSITED BY BUYER FOR THE PURCHASE OF THE PROPERTY. ANY ESCROW CANCELLATION FEES INCURRED PURSUANT TO THIS PARAGRAPH SHALL BE THE EXPENSE OF SELLER.

**[Remainder of page left intentionally blank.]**

BUYER'S Initials
SELLER'S Initials

18065\713705.7 04/06/05

Community: Tuscany at Monte Bella         Lot: 28-13                              Block: 13

UNLESS A COOPERATING BROKER ADDENDUM IS ATTACHED HERETO AND SIGNED BY BOTH SELLER AND BUYER, BUYER REPRESENTS TO SELLER THAT THE ONLY SALES AGENT(S) WITH WHOM THE BUYER HAS DEALT IN CONNECTION HEREWITH ARE THE "ON PREMISES" SALES AGENT(S) LOCATED AT THE SELLER'S SALES OFFICE, AND SELLER AGREES TO PAY THE COMMISSION EARNED BY SUCH SALES AGENT(S), IF ANY, PURSUANT TO SEPARATE AGREEMENT. BUYER AGREES TO INDEMNIFY AND HOLD SELLER HARMLESS FROM AND AGAINST ANY AND ALL LOSS AND LIABILITY RESULTING FROM ANY BREACH OF THE FOREGOING. THIS SECTION SHALL SURVIVE THE CLOSING AND THE DELIVERY OF THE DEED.

| 10.22.05 | J. Guadalupe Contreras | J. Guadalupe and Teresa G. Contreras |
|---|---|---|
| DATE | BUYER | Print Names |
| 10.27.05 | Teresa Gonzalez Contreras | 759 Pino Way |
| DATE | BUYER | Address |

Salinas CA 93905
City                State            Zip

_____
Telephone Number (work)

(831) 757-4817
Telephone Number (home)

_____ / (831) 214-8639
Fax Number / Cell Number

_____
E-mail address

**Monte Bella Realty, Broker**

RECEIPT FOR DEPOSIT ONLY

Date: **10/22/05**

Signature: _____
                    Sales Associate

ACCEPTANCE:

**SELLER/OWNER:**
VCH-SALINAS I, LLC
a California limited liability company

By: _____
Name:
Title:
(Signature is Acceptance of Purchase Agreement)

Date: 10-26-05

18

BUYER'S Initials
SELLER'S Initials

18065\713705.7  04/06/05

Community: Tuscany at Monte Bella        Lot: 28-13                                Block: 13

## EXHIBIT 1

### DESCRIPTION OF OPTION OR CHANGE

| Line In A.2. Above | Option Code | Date Selected | Description | Qty | Cost | Prepayment |
|---|---|---|---|---|---|---|
| A | 50-3-BED2-LOFT2 | 10/22/05 | Bedroom #2 and Loft #2 | 1 | 0 | 0 |
| A | 50-3-BED4 | 10/22/05 | Bedroom #4 | 1 | 0 | 0 |
| A | 50-3-SUPER-FR | 10/22/05 | Super Family Room | 1 | 0 | 0 |
| B | 50-3-Door-Bonus | 10/22/05 | Door on Bonus Room | 1 | 800 | 0 |
| | Total Optional Items | | | | $ 800 | $ 0 |

1

NP4

BUYER'S Initials
SELLER'S Initials

18065\733803.1  OptionAddendum.doc 02/22/2005