

1  MICHAEL J. STEINER (State Bar No. 112079)
   JOSHUA E. WHITEHAIR (State Bar No. 244900)
2  SEVERSON & WERSON
   A Professional Corporation
3  One Embarcadero Center, Suite 2600
   San Francisco, CA 94111
4  Telephone: (415) 398-3344
   Facsimile: (415) 956-0439
5
6  Attorneys for Defendant
   WELLS FARGO BANK, N.A.

7

8                  UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                       (SAN JOSE)

11  BERENICE GONZALEZ AND JOSE URTIZ,       Case No.: C07 05698 JW
    JORGE AGUIRRE, ELEAZAR BECERRA
12  AND ROCIO BECERRA, J. GUADALUPE         MEMORANDUM OF POINTS AND
    CONTRERAS, all individually and on behalf   AUTHORITIES IN SUPPORT OF
13  of the general public,,                 WELLS FARGO BANK'S MOTION TO
                                            STAY OR, ALTERNATIVELY, 12(B)(6)
14            Plaintiffs,                    MOTION TO DISMISS, 12(F) MOTION
                                            TO STRIKE AND 12(E) MOTION FOR
15      vs.                                 A MORE DEFINITE STATEMENT

16  VCH SALINAS 1 LLC dba VALLEY            Date:        March 24, 2008
    COMMUNITY HOMES and as MONTE            Time:        9:00 a.m.
17  BELLAS REALTY, NORM YOP INC.            Dept.:       Courtroom 8, 4th Floor
    REALTORS dba MONTE BELLA REALTY,        Judge:       Hon. James Ware
18  MONICA FARANDA dba as MONTE
    BELLA REALTY, UNIVERSAL                 Trial Date:  Not Set
19  MORTGAGE & SALES INC., IRA
    MORTGAGE & HOME SALES, INC.,
20  AMERICAN PACIFIC MORTGAGE CORP.
    dba as CREATIVE MORTGAGE, OLD           Accompanying Documents:
21  REPUBLIC TITLE CO., COUNTRYWIDE         Notice of Motions and Motions to Stay or,
    HOME LOANS INC. dba AMERICA'S           alternatively, to Dismiss, Strike and for
22  WHOLESALE LENDER, COUNTRYWIDE           More Definite Statement
    FINANCIAL CORP., NEW CENTURY
23  MORTGAGE CORP., HOMEQ SERVICING
    CORP., CAMERON FINANCIAL GROUP
24  INC., WELLS FARGO BANK, and DOES 1
    TO 100, inclusive,
25
              Defendants.
26

27

28

07725/0082/651856.1                        MEMO OF P&A IN SUPPORT OF MOTIONS TO STAY OR,
                                           ALTERNATIVELY, TO DISMISS, STRIKE, ETC.
                                           Case No.: C07 05698 JW

# TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION ...................................................................................................1

II.     STATEMENT OF FACTS ......................................................................................2

III.    THE ACTION SHOULD BE STAYED PENDING JUDICIAL REFERENCE .........4

IV.     ALTERNATIVELY, THE MOTION TO DISMISS SHOULD BE GRATNED ........5

        A.      California Civil Code Section 1632 Is Inapplicable To
                Wells Fargo Bank ..........................................................................................5

        B.      The Unruh Civil Rights Claim Is Time Barred .................................................7

        C.      The Contreras' Breach Of Fiduciary Trust And Concealment
                Claims Fail Since Wells Fargo Was Not Their Fiduciary..................................8

        D.      The Contreras' Negligence Claim Should Be Dismissed Because
                Wells Fargo Did Not Owe Them A Duty Of Care .............................................9

        E.      The Contreras' Fraud Claims Lack Specificity................................................10

V.      THE MOTION TO STRIKE SHOULD BE GRANTED ..........................................11

        A.      The General Public Allegations Should Be Stricken .......................................11

        B.      TILA Rescission Allegation Against Wells Fargo Should Be Stricken ..........11

        C.      Punitive Damages For Negligent Misrepresentation Should Be Stricken......12

VI.     CONCLUSION ........................................................................................................13

07725/0082/651856.1

Memo of Points & Authorities In Support of Motions to Stay or,
Alternatively, to Dismiss, Strike and for More Definite Statement
Case No.:  C07 05698 JW

1

# TABLE OF AUTHORITIES

Page(s)

2 **FEDERAL CASES**

3 Baldwin County Welcome Ctr. v. Brown,
    466 U.S. 147, 104 S. Ct. 1723 (1984)............................................................................9
4

5 Beery v. Hitachi Home Elec. (America), Inc.,
    157 F.R.D. 477 (C.D. Cal. 1993).............................................................................13
6

7 Beneficial Standard Life Ins. Co. v. Madariaga,
    851 F.2d 271 (9th Cir. 1988) ....................................................................................9
8

9 Bureerong v. Uvawas,
    922 F. Supp. 1450 (C.D. Cal. 1996) .......................................................................13
10

11 Fantasy Inc. v. Fogerty,
    984 F.2d 1524 (9th Cir. 1993) ................................................................................12
12

13 Fogerty v. Fantasy, Inc.,
    510 U.S. 517 (1994)................................................................................................12
14

15 Gerritsen v. Consulado Gen. de Mexico,
    989 F.2d 340 (9th Cir. 1993) ....................................................................................9
16

17 Guam Inv. Co. v. Central Bldg, Inc.,
    288 F.2d 19 (9th Cir. 1961) ....................................................................................11
18

19 Hill v. GE Power Sys, Inc.,
    282 F.3d 343 (5th Cir. 2002) ....................................................................................5
20

21 Milne Employees Ass'n v. Sun Carriers,
    960 F.2d 1401 (9th Cir. 1991) ................................................................................10
22

23 Mitchell v. Sung,
    816 F. Supp. 597 (N.D. Cal. 1993)...........................................................................8
24

25 N.C. Freed Co., Inc. v. Bd of Governors of the Fed. Reserve Sys.,
    473 F.2d 1210 (2d Cir. 1973) .................................................................................13
26

27 O'Connor v. Boeing N. Am., Inc.,
    311 F.3d 1139 (9th Cir. 2002) ..................................................................................9
28

- ii -

1
2
Occupational-Urgent Care Healthy Sys., Inc. v. Sutro & Co., Inc.,
    711 F. Supp. 1016 (E.D. Cal. 1989) ...................................................................... 11

3
4
Pincay v. Andrews,
    238 F.3d 1106 (9th Cir. 2001) .............................................................................. 9

5
6
Santa Maria v. Pac. Bell,
    202 F.3d 1170 (9th Cir. 2000) .............................................................................. 8

7
8
Scholar v. Pac. Bell,
    963 F.2d 264 (9th Cir. 1992) ............................................................................... 9

9
10
Scott v. Wells Fargo Home Mortgage Co.,
    326 F. Supp. 2d 709 (E.D. Va. 2003) ................................................................. 13

11
12
Tapley v. Lockwood Green Engineers, Inc.,
    502 F.2d 559 (8th Cir.1974) ................................................................................ 13

13
14
United States ex rel. Newton v. Neumann Carribean Int'l, Ltd.,
    750 F.2d 1422 (9th Cir. 1985) .............................................................................. 6

15
16
Washington v. Baenziger,
    673 F. Supp. 1478 (N.D. Cal. 1987) ................................................................... 11

17
18
Williams v. Homestake Mortgage Co.,
    986 F.2d 1137 (11th Cir. 1992) .......................................................................... 13

19
20
Wilshire Blvd. Bldg. v. W.R. Grace & Co.- Connecticut,
    933 F.2d 1016, 1991 WL. 83931 (9th Cir. 1991) ............................................... 9

21  **STATE CASES**

22
23
Amisil Holdings Ltd. v. Clarium Capital Mgmt,
    2007 WL. 2768995 (N.D. Cal. 2007) ................................................................... 5

24
25
Delos v. Farmers Group, Inc.,
    93 Cal. App. 3d 642, 155 Cal. Rptr. 843 (1979) ................................................. 13

26
27
Fox v. Ethicon Endo-Surgery, Inc.,
    35 Cal. 4th 797 (2005) .......................................................................................... 9

28

- iii -

Gatto v. County of Sonoma,
        98 Cal. App. 4th 744, 120 Cal. Rptr. 2d 550 (2002)..................................8

Karen Kane, Inc. v. Bank of America,
        67 Cal. App. 4th 1192, 79 Cal. Rptr. 2d 712 (1998)..............................11

Kim v. Sumitomo Bank,
        17 Cal. App. 4th 974, 21 Cal. Rptr. 2d 834 (1993) ...............................9

La Jolla Village Homeowners' Ass'n. v. Superior Court,
        212 Cal. App. 3d 1131, 261 Cal. Rptr. 146 (1989)..............................10

Mesmer v. White,
        121 Cal. App. 2d 665 (1953) ...............................................................10

Mktg. W., Inc. v. Sanyo Fisher (USA) Corp.,
        6 Cal. App. 4th 603, 7 Cal. Rptr. 2d 859 (1992) .................................10

Molus v. Swan,
        2007 WL. 2326132 (S.D. Cal. 2007)....................................................9

Nymark v. Heart Fed. Sav. & Loan Ass'n,
        231 Cal. App. 3d 1089, 283 Cal. Rptr. 53 (1991)................................10

Pearce v. Romeo,
        2007 WL. 30596 (N.D. Cal. 2007) ........................................................8

Pickern v. Best W. Timber Cove Lodge Marina Resort,
        2002 WL. 202442 (E.D. Cal. 2002).......................................................8

Price v. Wells Fargo Bank,
        213 Cal. App. 3d 465, 261 Cal. Rptr. 735 (1989)..................................9

Sav-On Drug Stores, Inc. v. Superior Court,
        34 Cal. App. 4th 319 (2004)................................................................12

Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.,
        49 Cal. App. 4th 472, 56 Cal. Rptr. 756 (1996) ..................................11

Turczynski v. Friedman,
        2007 WL. 3125054 (E.D. Cal. 2007).....................................................13

- iv -

MEMO OF P&A IN SUPPORT OF MOTIONS TO STAY
OR, ALTERNATIVELY, TO DISMISS, STRIKE, ETC.
Case No.: C07 05698 JW

Wagner v. Benson,
    101 Cal. App. 3d 27, 161 Cal. Rptr. 516 (1980)...................................................10

West Shield Investigations v. Superior Court,
    82 Cal. App. 4th 935, 98 Cal. Rptr. 2d 612 (2000)..............................................8

Wilson v. Avemco Ins. Co.,
    59 Fed.Appx. 928, 2003 WL. 1473528 (9th Cir. 2003) .......................................8

Wood v. Vista Manor Nursing Ctr.,
    2006 WL. 2850045 (N.D. Cal. 2006) ..................................................................8

Wyatt v. Ralphs Grocery Co.,
    2002 WL. 32985831 (C.D. Cal. 2002) .................................................................8

**STATUTES**

12 Code of Federal Regulation
    section 226.23(f).................................................................................................13
9 United States Code
    section 3 ...............................................................................................................5
15 United States Code
    section 1635(e)(1)...............................................................................................12
Federal Rules of Civil Procedure, 12(e)......................................................................13

Federal Rules of Civil Procedure, 12(f) ......................................................................12

California Business & Professions Code
    section 10131.......................................................................................................7
    section 17204.....................................................................................................12

California Civil Code
    section 1632(b)(2), (4)........................................................................................6
    section 1632(b)(2) ...............................................................................................7
    section 1632..........................................................................................1, 5, 6, 8
    section 382.........................................................................................................12

California Finance Code
    section 18003.......................................................................................................7
    section 18560.......................................................................................................7
    section 18100.......................................................................................................7

**MISCELLANEOUS**

6 Witkin, *Summary of California Law* § 864(10th ed, 2005)......................................11

MEMO OF P&A IN SUPPORT OF MOTIONS TO STAY
OR, ALTERNATIVELY, TO DISMISS, STRIKE, ETC.
Case No.: C07 05698 JW

# I.    INTRODUCTION

Plaintiffs J. Guadalupe Contreras and Tereas Contreras ("the Contreras"), Beatrice Gonzalez and Jose Urtiz, Jorge Aguirre, and Elezar Becerra and Rocio Becerra (collectively "Plaintiffs") bring this action against several defendants asserting various claims related to purchase of their homes in the Tuscany at Monte Bella ("Monte Bella) development in Salinas California.  Among other things, Plaintiffs purport to be Spanish speakers who were fraudulently induced into purchasing their homes and obtaining mortgage loans with unfavorable and discriminatory terms and provisions.

The developer of Monte Bella – defendant VCH Salinas I, LLC ("VCH") – and the real estate agents – defendants Norm Yop, Inc. ("YOP") and Monica Faranda ("Faranda") – have moved to stay this action and compel arbitration.  (Defs' Brief in Support of Motions to Stay & Compel Arbitration, at Docket #13.)  They assert that each of the Plaintiffs signed purchase agreements containing provisions which require their disputes to be resolved through judicial reference.  (*Id.* at 2:16-3:16.)  If the Court compels those parties to judicial reference, this action should be stayed pending the outcome of that proceeding since Plaintiffs' claims against all defendants relate to a shared set of operative facts.

Alternatively, the Court should grant defendant Wells Fargo Bank's ("Wells Fargo") motion to dismiss.  Based on Plaintiffs' own allegations, Wells Fargo has limited involvement in this case – i.e., it merely originated a mortgage loan so that the Contreras could purchase their Monte Bella home.  It had no contact with the other plaintiffs who apparently obtained their loans through different lenders.

As for the Contreras' claims against Wells Fargo, they are fatally defective and without merit.  The crux of the Contreras' claims is that they did not understand the terms of their loan with Wells Fargo because they are Spanish speakers.  Even though they admit that Wells Fargo negotiated the loan with them in Spanish, the Contreras disclaim comprehension of its terms because the loan documents were allegedly written in English.  They contend California law – Civil Code section 1632 – requires Wells Fargo to provide a Spanish translation of these

- 1 -

1  documents. It does not. In fact, just the opposite – section 1632 actually exempts loans secured

2  by real property from any such requirement, unless made by a real estate broker or by certain

3  state licensed lenders neither of which applies to Wells Fargo.

4         The Contreras also accuse Wells Fargo of discriminating against them. Yet they did not

5  bring their civil rights claim under California's Unruh Act until long after the one-year statute of

6  limitations had run. The Contreras again attempt to use their limited English proficiency as an

7  excuse and justification for equitable tolling. But these allegations are disingenuous and legally

8  insufficient since the Contreras were on notice soon after obtaining their loan yet failed to

9  exercise reasonable diligence to uncover their claims.

10         Three of the Contreras' common law claims – breach of fiduciary trust, concealment and

11  negligence – fail as a matter of California law since Wells Fargo did not owe them any fiduciary

12  duty or duty of care. Their other two common law claims – intentional and negligent

13  misrepresentation – are also flawed and not pleaded with the requisite specificity.

14         Wells Fargo's motion to strike portions of the First Amended Complaint ("FAC") should

15  also be granted. Plaintiffs allege that they are bringing their claims "on behalf of the general

16  public" and seek to recover attorney fees on that basis. Following the passage of Proposition 64,

17  however, Plaintiffs lack standing to do so. The Contreras also improperly seek rescission under

18  the Truth in Lending Act ("TILA") and punitive damages for negligent misrepresentation.

19         Accordingly, the Court should stay this action pending the outcome of judicial reference

20  or, in the alternative, grant Wells Fargo's motion to dismiss and to strike.

21         **II.    STATEMENT OF FACTS**

22         For purposes of its motions, the following factual summary is taken from the FAC even

23  though Wells Fargo denies most or all of these allegations.

24         Beginning in or about October, 2005, the Contreras first learned that new homes were

25  being developed in a 200-acre community in east Salinas, California known as Monte Bella.

26  (FAC ¶ 32.) During this time, VCH, YOP and Faranda began to promote Monte Bella through a

27  marketing campaign in English and Spanish advertising on television, in print, on the Internet,

28

-2-

1   through signage and by word of mouth. (*Id.*) The Spanish advertisements invited Spanish-

2   speaking homebuyers to visit their sales offices for more information. (*Id.*)

3        Although advertised as "hoome[sic] for families of all sizes and income levels," the

4   Contreras later discovered the prices of the homes in October, 2005 ranged from $660,000 to

5   $809,000. (*Id.* at ¶ 33.) When the Contreras visited the sales offices that month, VCH, YOP, and

6   Faranda and their sales agents informed them in Spanish that, although the homes were not yet

7   built, they were arranging advanced payments so that the Contrears could be first in line for the

8   new homes. (*Id.* at ¶ 34.) VCH, YOP and Faranda assured the Contrears that this would be a

9   great investment because the home values would increase and promised them a "105% guarantee

10  option." (*Id.* at ¶ 35.)   They explained that, if the Contreras were to become dissatisfied with

11  their home purchase within the first two years, they would buy back the homes for the purchase

12  price plus 5%. (*Id.*)

13       During the Contreras' first and subsequent visits to the sales office, VCH, YOP and

14  Faranda showed them plans, pictures, drawings and other materials written in English so that they

15  could pre-select their preferred model home. (*Id.* at ¶ 36.) After the Contreras had selected their

16  home they were told the final price – $713,825.00. (*Id.* at ¶¶ 37, 55(c).) At that point, VCH,

17  YOP and Faranda assured them they could easily arrange 100% financing through their preferred

18  lenders and that, because the home values would increase, the Contrears could refinance the loan

19  later. (*Id.*) The Contreras were also told that they would be required to make multiple 1%

20  advanced payments to purchase the home due to their high demand. (*Id.*)

21       On or about October 22, 2005, the Contreras arrived at the sales office to review

22  documents and were immediately told to start signing and initial a contract. (*Id.* at ¶ 42.) VCH

23  and YOP misrepresented every clause and page where initials were required. (*Id.*) VCH and

24  YOP mentioned the 105% guarantee option but provided no further explanation. (*Id.*) Although

25  the entire discussion was in Spanish, the Contreras were not given a meaningful translation of the

26  contract. (*Id.*) Thereafter, the Contreras made a series of 1%  payments to VCH, YOP and

27  Faranda totaling $141,758.00. (*Id.* at ¶¶ 43, 56(c).)

28

- 3 -

1    Subsequently, in late 2005, the Contreras sought to get a loan directly with Wells Fargo

2    because they believed it to be a reputable national bank and knew it offered its lending services in

3    Spanish. (*Id.* at ¶¶ 47, 50.) All conversations with Wells Fargo occurred in Spanish. (*Id.* at ¶

4    50.) The Contreras did not receive any meaningful translation of the loan documents written in

5    English nor did Wells Fargo adequately explain the material terms of the loan. (*Id.*) Despite the

6    Contreras' credit history, Wells Fargo placed them into a 5-year adjustable rate mortgage with a

7    possible interest rate doubling on recast. (*Id.*) However, the Contreras did not pay any excessive

8    broker fees, yield spread premiums or other excessive commissions. (*Id.* at ¶ 59.)

9    The Contreras loan closed some time in January, 2006. (*Id.* at ¶¶ 43, 50.) In October,

10   2007, the Contreras tendered a notice of rescission. (*Id.* at ¶ 43.) At the same time, they

11   submitted a request to effectuate the 105% guarantee promised by Valley, YOP and Faranda.

12   (*Id.*) Their request was rejected. (*Id.*)

13   Based on these allegations, the Contreras assert eleven claims against Wells Fargo:

14   (i) violation of the Fair Housing Act, 42 U.S.C. § 3601, et seq.; (ii) violation of the Equal Credit

15   Opportunity Act, 15 U.S.C. § 1691, et seq.; (iii) violation of the Truth in Lending Act ("TILA"),

16   15 U.S.C. § 1601, et seq.; (iv) violation of California Civil Code § 1632, et seq.; (v) violation of

17   California Unruh Civil Rights Act, Cal. Govt. Code § 51, et seq.; (vi) violation of California Fair

18   Employment and Housing Act, Cal. Govt. Code § 12955, et seq.; (vii) violation of California

19   Unfair Business Practices Law, Cal. Bus. & Prof. Code § 17200, et seq.; (viii) Intentional

20   Misrepresentation; (ix) Negligent Misrepresentation; (x) Concealment; (xi) Breach of Fiduciary

21   Trust; and (xii) Negligence.

22   **III.    THE ACTION SHOULD BE STAYED PENDING JUDICIAL REFERENCE**

23   If the Court compels the arbitration or reference of Plaintiffs' claims against VCH, YOP

24   and Faranda pursuant to the purchase agreements, this action should be stayed pending the

25   outcome of that proceeding. 9 U.S.C. § 3.

26   The Court maintains its discretion to stay the litigation where, as here, the remaining

27   defendants are not parties to the arbitration yet the claims against them are "based upon the same

28
                                    - 4 -

1  operative facts and [are] inherently inseparable from the claims against [the] signator[ies]."

2  *Amisil Holdings Ltd. v. Clarium Capital Mgmt*, 2007 WL 2768995, *16 (N.D. Cal. 2007)

3  (quoting *Hill v. GE Power Sys, Inc.*, 282 F.3d 343, 347 (5th Cir. 2002)). Plaintiffs' claims against

4  Wells Fargo are intertwined with those against VCH, YOP and Faranda since each arise from or

5  relate to a shared set of operative facts – the purchasing and financing of the Monte Bellas homes.

6          "Considerations of economy and efficiency" will also "fully support [a] District Court's

7  determination that . . . other matters must await the final determination made in connection with

8  the arbitration." *United States ex rel. Newton v. Neumann Carribean Int'l, Ltd.*, 750 F.2d 1422,

9  1427 (9th Cir. 1985). Here, the Court may conserve judicial resources and limit the parties'

10  expenses in prosecuting and defending this action by not allowing this suit to proceed on two

11  fronts. These considerations have added significance given the federal policy in favor of

12  arbitration.

13          Wells Fargo, therefore, joins defendants VCH, YOP, Faranda and Old Republic Title

14  Company in their request that this action be stayed.

15  **IV.    ALTERNATIVELY, THE MOTION TO DISMISS SHOULD BE GRATNED**

16      **A.    California Civil Code Section 1632 Is Inapplicable To Wells Fargo Bank**

17          The Contreras contend that Wells Fargo violated California Civil Code section 1632 by

18  not supplying a Spanish translation of their loan documents. However, the Contreras' loan with

19  Wells Fargo is actually excluded by section 1632, which provides in relevant part:

20              (b) Any person engaged in a trade or business who negotiates
                primarily in Spanish . . . orally or in writing, in the course of
21              entering into any of the following, shall deliver to the other party to
                the contract or agreement and prior to the execution thereof, a
22              translation of the contract or agreement in the language in which the
                contract or agreement was negotiated, which includes a translation
23              of every term and condition in that contract or agreement.
                                        ***
24              (2) A loan or extension of credit secured ***other than*** by real
                property, or unsecured, for use primarily for personal, family or
25              household purposes.
                                        ***
26              (4) Notwithstanding paragraph (2), a loan or extension of credit for
                use primarily for personal, family or household purposes where the
27              loan or extension of credit is subject to the provisions of Article 7
                (commencing with Section 10240) of Chapter 3 of Part I of

28                                              - 5 -

Division 4 of the Business and Professions Code, or Division 7 (commencing with Section 18000), or Division 9 (commencing with Section 22000) of the Financial Code.

Cal. Civ.Code § 1632(b)(2), (4) (emphasis added).

Section 1632(b)(2), therefore, exempts the Contreras' loan which is secured by real property from any translation requirement. Furthermore, the Contreras' loan does not fall within any of the narrow exceptions enumerated in section 1632(b)(4).

Section 10240 of the Business and Professions Code applies only to loans negotiated by a real estate broker.[1] The Contreras, of course, acknowledge and, in fact, allege that Wells Fargo is a national bank (Compl. ¶ 24.), not a real estate broker within the meaning of section 10240. Indeed, section 10133.1(a)(1) explicitly states that section 10240 does not apply to national banks.

---

[1] For purposes of section 10240, a person is a real estate broker if he or she "does or negotiates to do one or more of the following acts for another or others:"

> (a) Sells or offers to sell, buys or offers to buy, solicits prospective sellers or puchasers of, solicits or obtains listings of, or negotiates the purchase, sale or exchange of real property or a business opportunity.
> (b) Leases or rents or offers to lease or rent, or places for rent, or solicits listings of places for rent, or solicits for prospective tenants, or negotiates the sale, purchase or exchanges of leases on real property, or on a business opportunity, or collects rents from real property, or improvements thereon, or from business opportunities.
> (c) Assists or offers to assist in filing an application for the purchase or lease of, or in locating or entering upon, lands owned by the state or federal government.
> (d) Solicits borrowers or lenders for or negotiates loans or collects payments or performs services for borrowers or lenders or note owners in connection with loans secured directly or collaterally by liens on real property or on a business opportunity.
> (e) Sells or offers to sell, buys or offers to buy, or exchanges or offers to exchange a real property sales contract, or a promissory note secured directly or collaterally by a lien on real property or on a business opportunity, and performs services for the holders thereof.

Cal.Bus.&Prof.Code § 10131.

- 6 -

1   Divisions 7 and 9 of the Financial Code are similarly inapplicable.  Division 7 regulates

2   "industrial loan companies" which are incorporated in California.  Cal.Fin.Code §§ 18003, 18560,

3   18100.[2]  Wells Fargo is not an industrial loan company and is not incorporated under the laws of

4   California; it is a national association chartered in South Dakota.  And, Division 9 also exempts

5   national banks.  *Id.* § 22050; *see also* § 22002.

6   Accordingly, California Civil Code section 1632 does not apply to the Contreras' loan.

7   The claim should be dismissed as a matter of law.

8   **B.    The Unruh Civil Rights Claim Is Time Barred**

9   The Contreras' claim for civil rights violations brought under the Unruh Act is governed

10  by a one year statute of limitations.  *Gatto v. County of Sonoma*, 98 Cal.App. 4th 744, 759, 120

11  Cal.Rptr.2d 550, 560  (2002) (citing *West Shield Investigations v. Superior Court*, 82 Cal.App.4th

12  935, 98 Cal.Rptr.2d 612, 623 (2000); *Mitchell v. Sung*, 816 F.Supp. 597, 602 (N.D. Cal. 1993)).[3]

13  The Contreras allege that Wells Fargo discriminated against them with respect to the

14  provision of services and products related to their mortgage loan transaction.  They negotiated

15  their loan with Wells Fargo "in late 2005" and it closed in January 2006.  (FAC ¶¶ 50-51.)  At

16  most, then, the Contreras had until January 2007 to bring their Unruh Civil Rights claim against

17  Wells Fargo.  However, they did not file their initial complaint in this action until November

18  2007, long after the statute of limitations had expired.  Hence, their claim is time barred.

19  The Contreras' allegations of equitable tolling do not spare them of this result.

20  "Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital

21

22  [2] "'Industrial loan company' . . . means a premium finance agency as defined in Section 18560."
    *Id.* at § 18003.  "'Premium finance agency' means any industrial loan company incorporated
23  under this division which, by the terms of its authority to engage in the industrial loan business, is
    permitted to issue or sell investment certificates subject to the limitations set forth in Section
24  18596 and its business is limited to that set forth in this chapter."  *Id.* at § 18560.  "[A]
    corporation may be organized under the laws of this state, or an existing California corporation
25  may amend its articles of incorporation, to engage in an industrial loan business."  *Id.* at § 18100.

26  [3] *E.g.*, *Wilson v. Avemco Ins. Co.*, 59 Fed.Appx. 928, 929, 2003 WL 1473528, *1 (9th Cir. 2003);
    *Pearce v. Romeo*, 2007 WL 30596, *2 (N.D. Cal. 2007); *Wood v. Vista Manor Nursing Ctr.*, 2006
27  WL 2850045, *5 (N.D. Cal. 2006); *Wyatt v. Ralphs Grocery Co.*, 2002 WL 32985831, *3 (C.D.
    Cal. 2002); *Pickern v. Best W. Timber Cove Lodge Marina Resort*, 2002 WL 202442, *5 (E.D.
28  Cal. 2002).

- 7 -

MEMO OF P&A IN SUPPORT OF MOTIONS TO STAY
OR, ALTERNATIVELY, TO DISMISS, STRIKE, ETC.
Case No.: C07 05698 JW

1   information bearing on the existence of his claim." *Santa Maria v. Pac. Bell*, 202 F.3d 1170,

2   1176 (9th Cir. 2000).  The Contreras, however, did not exercise due diligence.  They allege they

3   could not uncover the basis of their claims because their loan documents were written in English.

4   (FAC ¶ 29.)  However, the Contreras possessed these loan documents as early as January 2006

5   and should have been reasonably diligent in obtaining a Spanish translation of them instead of

6   waiting nearly two years later to learn about the terms of their loan.

7          "The touchstone for determining the commencement of the limitations period is notice."

8   *Gerritsen v. Consulado Gen. de Mexico,* 989 F.2d 340, 344 (9th Cir. 1993).   In other words, once

9   the Contreras had  "sufficient information to have discovered the injury or at the very least to

10  warrant an investigation that would have uncovered the injury" they were on constructive or

11  inquiry notice.  *Molus v. Swan*, 2007 WL 2326132, *7 (S.D. Cal. 2007) (citing *Pincay v.*

12  *Andrews*, 238 F.3d 1106, 1110 (9th Cir. 2001)); *Beneficial Standard Life Ins. Co. v. Madariaga*,

13  851 F.2d 271, 275 (9th Cir. 1988).[4]

14         The loan documents provided to the Contreras in January 2006 were sufficient to put the

15  Contreras on inquiry notice and start the clock.  Their failure to exercise reasonable diligence

16  thereafter cannot excuse their delay.[5]  Therefore, the Unruh civil rights claim is untimely and

17  should be dismissed.

18         **C.     The Contreras' Breach Of Fiduciary Trust And Concealment Claims Fail**
               **Since Wells Fargo Was Not Their Fiduciary**
19

20         The Contreras contend that Wells Fargo owed them fiduciary duties.  Not so.

21         Under California law, "it has long been axiomatic that . . . there is not a fiduciary relation

22  between debtor and creditor" or "between a bank and its loan customers."  *Price v. Wells Fargo*

23  _____

24  [4] This discovery rule applies under both federal and California law.  *O'Connor v. Boeing N. Am., Inc.*,
    311 F.3d 1139, 1147 (9th Cir. 2002).  In fact, California's equivalent equitable tolling doctrine – the
25  discovery rule – is less forgiving causing a plaintiff to be on notice where there is a "reason at least to
    suspect a factual basis for its elements."  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 807-08
26  (2005).

27  [5] "One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence."
    *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151, 104 S.Ct. 1723, 1726 (1984); *Scholar v.*
28  *Pac. Bell*, 963 F.2d 264, 268 (9th Cir. 1992)

                                                    - 8 -

1  *Bank*, 213 Cal.App.3d 465, 476, 261 Cal.Rptr. 735 (1989); *Kim v. Sumitomo Bank*, 17

2  Cal.App.4th 974, 981, 21 Cal.Rptr.2d 834 (1993); *see also Wilshire Blvd. Bldg. v. W.R. Grace &*

3  *Co.- Connecticut*, 933 F.2d 1016, 1991 WL 83931,*3 (9th Cir. 1991).

4      Here, the Contreras allege no more than a borrower-lender relationship with Wells Fargo.

5  It originated a mortgage loan so that the Contreras could purchase their home.  By law, no

6  fiduciary duty arises under these circumstances.  Therefore, the breach of fiduciary trust claim

7  should be dismissed.

8      Similarly, the Contreras' concealment claim fails since, under California law, a fiduciary

9  duty to disclose is an essential element of a cause of action for concealment.  *Mktg. W., Inc. v.*

10 *Sanyo Fisher (USA) Corp.*, 6 Cal.App.4th 603, 612-13, 7 Cal.Rptr.2d 859 (1992).  In other words,

11 "even if material facts [were] known to [Wells Fargo] and not the [Contreras], failure to disclose

12 those facts is not actionable . . . unless there is some fiduciary or confidential relationship giving

13 rise to a duty to disclose." *La Jolla Village Homeowners' Ass'n. v. Superior Court*, 212

14 Cal.App.3d 1131, 1151-52, 261 Cal.Rptr. 146 (1989) (citing *Mesmer v. White*, 121 Cal.App.2d

15 665, 670 (1953)); *Milne Employees Ass'n v. Sun Carriers*, 960 F.2d 1401, 1408 (9th Cir. 1991).

16     Accordingly, the breach of fiduciary trust and concealment claim should be dismissed

17 without leave to amend.

18     **D.      The Contreras' Negligence Claim Should Be Dismissed Because Wells Fargo**
           **Did Not Owe Them A Duty Of Care**
19

20     To state a negligence claim, the Contreras must allege facts to show that the Wells Fargo

21 owed them a duty of care.  *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal.App.3d 1089, 1095,

22 283 Cal.Rptr. 53 (1991).  "The existence of a duty of care . . . is the essential prerequisite to a

23 negligence cause of action, determined as a matter of law by the court." *Id.*

24     California courts have held that, "as a general rule, a financial institution owes no duty of

25 care to a borrower when the institution's involvement in the loan transaction does not exceed the

26 scope of its conventional role as a mere lender of money." *Id.* at 1096; *e.g.*, *Wagner v. Benson*,

27 101 Cal.App.3d 27, 35, 161 Cal.Rptr. 516 (1980) ("Liability to a borrower for negligence arises

28

- 9 -

1  only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the

2  usual money lender'"); 6 Witkin, *Summary of California Law* § 864(10th ed, 2005).

3       Again, the Contreras simply allege that Wells Fargo originated their mortgage loan which

4  they later decided was unfavorable.  There are no allegations that Wells Fargo ever stepped

5  outside its lender role.  Despite the Contreras' contention of negligent supervision and training,

6  Wells Fargo did not owe them any duty of care in processing their loan.  *Software Design &*

7  *Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal.App.4th 472, 479-483, 56 Cal.Rptr. 756 (1996);

8  *see Karen Kane, Inc. v. Bank of America*, 67 Cal.App.4th 1192, 79 Cal.Rptr.2d. 712 (1998).

9       Thus, the negligence claim fails as a matter of law and should be dismissed.

10      **E.    The Contreras' Fraud Claims Lack Specificity**

11      The Contreras' claims for intentional and negligent misrepresentation must satisfy the

12  heightened pleading standards of Rule 9, which requires them to state facts with particularity

13  including what Wells Fargo allegedly did to misrepresent facts as well as the time, place and

14  content of any misrepresentations and the identity of the speaker.  *Occupational-Urgent Care*

15  *Healthy Sys., Inc. v. Sutro & Co., Inc.*, 711 F.Supp. 1016, 1020 (E.D. Cal. 1989) (noting that

16  under Rule 9(b) "the pleader must state the time, place, and specific content of the false

17  representations as well as the identities of the parties to the misrepresentation.")

18      The Contreras' allegations fall woefully short of meeting this standard.  They fail to allege

19  the name of any person at Wells Fargo who made the alleged misrepresentations.  They also do

20  not describe when and where the statements were made.  Therefore, the intentional and negligent

21  misrepresentations claims are not stated with the requisite specificity and should be dismissed.

22      Alternatively, the Court should grant Wells Fargo's motion for a more definite statement

23  and require Plaintiffs to plead their facts with particularity.  *See Washington v. Baenziger*, 673

24  F.Supp. 1478, 1483 (N.D. Cal. 1987) (citing *Guam Inv. Co. v. Central Bldg, Inc.*, 288 F.2d 19, 24

25  (9th Cir. 1961)).

26  ///

27  ///

28
- 10 -

## V.    THE MOTION TO STRIKE SHOULD BE GRANTED

The Court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). A motion to strike can be used where the matter cannot be addressed by a motion to dismiss such as to attack portions of the pleading, including single words or phrases. *Fantasy Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds Fogerty v. Fantasy, Inc.* 510 U.S. 517 (1994).

### A.    The General Public Allegations Should Be Stricken

Plaintiffs purport to bring this action "on behalf of the general public." However, Proposition 64, which amended California's Unfair Competition Laws, deprives Plaintiffs of standing to sue or seek attorney fees on behalf of the general public. Cal.Bus&Prof. Code § 17204. Private litigants may bring a representative action only if they satisfy the class action requirements of California Code of Civil Procedure section 382, i.e., an ascertainable class and a well-defined community of interest. *Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal.4th 319, 326 (2004).[6] In addition to the section 382 requirements, to bring a representative claim in federal court, Plaintiffs must also satisfy the class certification requirements of Rule 23 of the Federal Rule of Civil Procedure – i.e., numerosity, commonality, typicality and adequacy.

Plaintiffs do not make any class allegations or even attempt to fulfill the requirements of section 382 or Rule 23 and, thus, cannot state an unfair competition claim or recover attorney fees on behalf of the general public.

Thus, the general public allegations should be stricken.

### B.    TILA Rescission Allegation Against Wells Fargo Should Be Stricken

Section 1635 of TILA permits a borrower to rescind a loan but expressly exempts a residential mortgage transaction as defined in section 1602(w). 15 U.S.C. § 1635(e)(1). A "residential mortgage transaction" is "a transaction in which a mortgage [or] deed of trust . . . is

---

[6] "The 'community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." *Id.*

1 created or retained against the consumer's dwelling to finance the acquisition of . . . such

2 dwelling." *Id.* at § 1602(w); *see also,* 12 C.F.R. § 226.23(f).

3     Because the Contreras' loan was a residential mortgage transaction, they are not entitled

4 to rescission under TILA. *Turczynski v. Friedman*, 2007 WL 3125054, *4 (E.D. Cal. 2007)

5 (citing, *inter alia, Williams v. Homestake Mortgage Co.*, 986 F.2d 1137, 1139, n. 5 (11th Cir.

6 1992); *N.C. Freed Co., Inc. v. Bd of Governors of the Fed. Reserve Sys.*, 473 F.2d 1210, 1214-15

7 (2d Cir. 1973); *Scott v. Wells Fargo Home Mortgage Co.*, 326 F.Supp.2d 709 (E.D. Va. 2003)).

8 Thus, the Contreras' request for rescission should be stricken.

9     Further, the TILA allegations themselves are vague and contradictory. The Contreras

10 allege that Wells Fargo did not provide "the required material disclosures under the Act" (FAC

11 ¶ 95) but they fail to identify the specific omitted disclosures. The Contreras further allege that

12 Wells Fargo "charged unreasonable fees and/or paid unlawful yield spread premiums." (*Id.*) But

13 this is directly contradicted by the Plaintiffs own allegations that the Contreras did not pay

14 "excessive broker fees, yield spread premiums and other commissions that were excessive and

15 illegal." (*Id.* at ¶ 59.)

16     Because these allegations are so vague and contradictory that they fail to apprise Wells

17 Fargo of the substance of the TILA claim, the Court should grant its motion for a more definite

18 statement. Fed.R.Civ.P. 12(e); *see Beery v. Hitachi Home Elec. (America), Inc.*, 157 F.R.D. 477,

19 480 (C.D. Cal. 1993).

20     **C.   Punitive Damages For Negligent Misrepresentation Should Be Stricken**

21     "[A] motion to strike may be used to strike any part of the prayer for relief when the

22 damages sought are not recoverable as a matter of law." *Bureerong v. Uvawas*, 922 F.Supp.

23 1450, *1479, n. 34 (C.D. Cal. 1996) (citing *Tapley v. Lockwood Green Engineers, Inc.*, 502 F.2d

24 559, 560 (8th Cir.1974)). Under California law, "[p]unitive damages are not recoverable for

25 negligent misrepresentation." *Delos v. Farmers Group, Inc.*, 93 Cal.App.3d 642, 656, 155

26 Cal.Rptr. 843 (1979).

27     Therefore, Plaintiffs' request for punitive damages for negligent misrepresentation should

28 be stricken.

- 12 -

## VI.    CONCLUSION

For the foregoing reasons, the Court should stay the action pending the outcome of judicial reference/arbitration or, in the alternative, grant Wells Fargo's motions to dismiss and strike, or for a more definite statement.

DATED:  January 4, 2008

SEVERSON & WERSON
A Professional Corporation


By:_____/S/_____
                    Michael J. Steiner

Attorneys for Defendant
WELLS FARGO BANK, N.A.

I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/S/) within this efiled document.

- 13 -