NINA M. PATANE, Esq. (SBN 157079)
SERGIO H. PARRA, Esq. (SBN 247682)
PATANE · GUMBERG, LLP
Attorneys at Law
4 Rossi Circle, Suite 231
Salinas, California 93907
Telephone: (831) 755-1461
Facsimile: (831) 755-1477

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN JOSE)

| | |
|---|---|
| **BERENICE GONZALEZ AND JOSE URTIZ, JORGE AGUIRRE, ELEAZAR BECERRA AND ROCIO BECERRA, J. GUADALUPE CONTRERAS AND TERESA CONTRERAS**, all individually and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>**VCH SALINAS I LLC** dba **VALLEY COMMUNITY HOMES** and as **MONTE BELLA REALTY, NORM YOP INC. REALTORS** dba **MONTE BELLA REALTY, MONICA FARANDA** dba as **MONTE BELLA REALTY, UNIVERSAL MORTGAGE & SALES INC., IRA MORTGAGE & HOME SALES, INC., AMERICAN PACIFIC MORTGAGE CORP.** dba as **CREATIVE MORTGAGE, OLD REPUBLIC TITLE CO., WELLS FARGO INC. dba AMERICA'S WHOLESALE LENDER, WELLS FARGO, NEW CENTURY MORTGAGE CORP., HOMEQ SERVICING CORP., CAMERON FINANCIAL GROUP INC., WELLS FARGO BANK,** and **DOES 1 TO 100**, inclusive,<br><br>Defendants. | CASE NO. CV 07 05698 JW<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND IN THE ALTERNATIVE, MOTION TO STRIKE**<br><br><br>Date:      March 24, 2008<br>Time:      9:00 am.<br>Courtroom: 8<br>Judge:     Hon. James Ware |

1

## TABLE OF CONTENTS

I.    INTRODUCTION...............................................................................................1

II.   FACTS............................................................................................................1

      1. Plaintiffs Berenice Gonzalez and Jose Urtiz.............................................1

      2. Plaintiff Jorge Aguirre......................................................................2

      3. Joint Defendants Countrywide Financial Corp. and Countrywide

         Home Loans Inc.............................................................................3

III.  STANDARDS OF ADJUDICATION.....................................................................3

IV.   POINTS AND AUTHORITIES............................................................................4

      A. DEFENDANTS' RULE 12(B)(6) MOTION SHOULD BE DENIED
         BECAUSE PLAINTIFFS' COMPLAINT GIVES THE DEFENDANTS
         SUFFICIENT NOTICE OF THE GROUNDS FOR EACH OF ITS
         CLAIMS...................................................................................................4

         1.  Defendant Countrywide Financial Corporation is liable as the holding
             company for Countrywide Home Loans...........................................4

         2.  Since No Claims Have Been Alleged By the Other Plaintiffs Against
             Defendants, There is No Need to Take Any Further Action....................6

         3.  Plaintiffs' Discrimination Claims Sufficiently Allege How Countrywide
             Was Involved in Making Loans in a Discriminatory Manner.................7

               a.  Defendants' Motion to Dismiss Plaintiffs' Discrimination Claims
                   is Improper When Specific Allegations Are Made Describing the
                   Discriminatory Conduct by Defendant Countrywide...................7

               b.  Plaintiffs' California Unruh Act Claim is Not Barred by the
                   Statute of Limitations.....................................................9

         4.  Plaintiffs' RESPA Claim is Sufficiently Pled because there are
             Allegations    that the YSP and other Charges Were Excessive and/or
             Unearned....................................................................................13

         5.  Plaintiffs' TILA Claim is Equitably Tolled as the Plaintiffs Would
             Not Have Learned of the Actual Terms Until Much After And Only
             After Its Toxic Effects Arose.............................................................15

         6.  Plaintiffs' TILA Claim Should Stand as Plaintiffs Allege that

i

Defendants Failed to Make Certain Statutorily Required Disclosures, Failed to Accurately Disclose Finance Charges and Failing to Provide an Accurate and Timely Truth in Lending Statement...........................13

7. Plaintiffs' Claim Under Civ. Code §1632 Should Not be Dismissed As It is Both Indirectly and Directly Liable for Failing to Supervise It Agents And For Acting as Co-Conspirator to violate Plaintiffs' Civil Rights...............................................................14

8. Plaintiffs' Unfair Competition Claim Should Stand as There Are Numerous Illegal and Unfair Practices that Defendants Countrywide Should Have Taken to Prevent Plaintiffs' Harm............................15

9. Plaintiffs' Fraud Claims Should Not be Dismissed as they Specifically Detail the Misrepresentations, the Speakers, The Timeframe and the Falsity of the Brokers' Statements to the Plaintiffs........................17

    a. Alleged Misrepresentations...................................18

        1. Gonzalez-Urtiz Loans...................................18

        2. Aguirre Loan............................................18

    b. Speaker.........................................................18

        1. Gonzalez-Urtiz Loans..................................18

        2. Aguirre Loan............................................18

    c. When/Where.....................................................18
        1. Gonzalez-Urtiz Loans..................................18

        2. Aguirre Loan............................................19

    d. Oral or Written Statements....................................19

        1. Gonzalez-Urtiz Loans..................................19

            a. Oral Assertions ....................................19

        2. Aguirre Loan- Oral Assertions........................19

    e. Manner Which Statements Where Wrong.......................19

        1. Gonzalez-Urtiz Loans..................................19

        2. Aguirre Loan............................................19

10. Plaintiffs' Negligence Claim Cannot be Dismissed When There is a Duty of Care under Rowland and an It Is Obligated for its Agent's Actions.........................................................................19

a. Countrywide has a direct duty of care to the Plaintiffs...............20

b. Countrywide is liable to Plaintiffs for negligent acts of its agents...22

11. Defendants is liable for Breach of Fiduciary Trust Due to Its Obligations
for its Agent's actions..............................................................................22

B. DEFENDANTS' MOTION UNDER RULE 12(E) SHOULD BE DENIED
SINCE ANY CONFUSION CAN BE STRAIGHETENED OUT WITH A
REASONABLE READING OF THE COMPLAINT.............................22

C. IN THE ALTERNATIVE, PLAINTIFFS REQUEST LEAVE TO
AMEND ...................................................................................22

D. PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' MOTION TO
DISMISS UE TO THE FACT IT WAS FILED WELL AFTER THE
PLEADING DEADLINE...........................................................................22

1. After Multiple Extensions, Plaintiffs Stipulated To Giving Countrywide
Until January 8, 2008 to respond to the Amended Complaint, Which
They Simply Ignored..................................................................22

V.    CONCLUSION................................................................................25

VI.  PROOF OF SERVICE.........................................................................26

iii

# TABLE OF AUTHORITIES

## CASES

*Asis Internet Services v. Global, Inc.* (N.D.Cal. 2006), Page 19, footnote 2.....................15

*Aetna Life Ins. Co. v. Alla Medical Services Inc.* (9th Cir. 1988), 855 F.2d 1470, 1474..........24

*Boxall v. Sequoia Union High School District,* 464 F. Supp. 1104, 1114 (N.D.Cal. 1979.......22

*BUREERONG v. UVAWAS,* (C.D.Cal. 1996) 922 F. Supp. 1450,1461

      [quoting *Sagan v. Apple Computer, Inc.* (C.D.Cal. 1994), 874 F. Supp. 1072, 1077.......23

*Cel-Tech Com. Inc vs. Los Angeles Cellular Tel. Co.* (1999), 20 Cal.4th 163, 180............15, 16

*Conley v. Gibson,* 355 U.S. 41 (1957)...............................................................3

*Conley v. Gibson*, 355 U.S. 45-46 (1957)...........................................................3

*Conley v. Gibson*, 355 U.S. 47-48 (1957)...........................................................4

*Cooper v. Pickett* (9th Cir. 1997), 137 F.3d 616, 627..............................................18

*DeLeon v. Beneficial Constr. Co.* (N.D. Ill. 1998) Case No. 1998 WL 122627, Page 824........11

*Dillon v. Legg* (1968) 68 Cal.2d 728, 734...........................................................20

*Empress LLC v. City And County*, 419 F.3d 1052 (9th Cir. 2005.................................15

*Fiorentino v. Travelers Ins. Co.,* (1978), 448 F. Supp. 1364, 1369-70...........................22

*Gatto v. County Of Sonoma*, (2004), 98 Cal.App.4th 744, 759, 760...............................9

*Gilligan v. Jamco Develop. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997)..........................4, 24

*Guerrero v. Gates*, 357 F.3d 911, 918 and 920......................................................12

*Heighley v. J.C.Penney Life Ins. Co.* (C.D. Cal. 2003), 257 F. Supp. 2d 1241, 1259..............16

*Kay v. Wells Fargo & Co.* N.A. (N.D. Cal. 7-24-2007), Case No. 07-01351 WHA, Page 5-6...13

*King v. State of Cal.* (9th Cir. 1986), 784 F.2d 910, 914-915.......................................12

*Khoury v. Maly's of California, Inc.* (1993), 14 Cal.App.4th 612, 619.............................15

*Kingman Park Civic Assn. v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003).....................4

*Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000)..............................................4

*Lopez v. Smith* (9th Cir. 2000), 203 F.3d 1122, 1130..............................................23

*Macharia v. United States,* 334 F.3d 61, 64, 67 (D.C. Cir. 2003)..................................4

*McMillian v. District of Columbia* (D.C. 2005), U.S. Dist. Ct., D. Columbia. Civil Action No. 04-2036, Page 7.................................................................................24

*Munoz v. Int'l. Home Capital* (N.D. Cal 2004) Case No. C03-01099 RS.............................5

*Munoz v. Int'l. Home Capital* (N.D. Cal 2004), Case No. C03-01099 RS, Page 8, 12..........7, 14

*Nymark v. Heart Fed. Savings & Loan Assn.* (1991), 231 Cal.App.3d 1089, 1098
  [quoting Connor v. Great Western Sav. & Loan Assn. (1968) 69 Cal.2d 850, 865...........20

*Plata v. Long Beach Mortgage Co.* (N.D. Cal. 2005), Case No. C05-02746 JF,
  Page 7, 8, 9, 11, 12, 13...........................................................10,11,14,18

*Progressive West Ins. Co. vs. Super. Ct.* (2005), 135 Cal.App.4th 263, 285, 286...................16

*Prudential Ins. Co. of Am. Sales Prac.* (N.J. 1996), 975 F. Supp. 584, 620 and 621.............21

*Qarbon.Com Inc. v. Ehelp Corp.*, (N.D.Cal. 2004), Case No. NO. C03-04319 JW, 315 F.
  Supp.2d 1046, 1051 and 1052......................................................................16

*Richards v. CH2M Hill Inc.* (2001), 26 Cal.4th 798, 823................................................9

*River Colony Estates v. Bayview Financial Trading Group* (S.D. Cal. 2003) Case No. 01-1420-
  IEG(LSP), Page 11..............................................................................10

*Rowland v. Christian* (1968), 69 Cal.2d 108, 113......................................................21

*Ruiz v. Decision One Mortgage Co.* (N.D. Cal. 2006), Case No. 03-01099 RS,
  Page 4-7....................................................................................6,7,14,20,22

Sagan v. Apple Computer, Inc. (C.D.Cal. 1994), 874 F. Supp. 1072, 1077.......................23

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002)...........................................4

*Vance v. Bakas* (N.D. 2006), Case No. C05-3385PVT, Page 6. ....................................9

*Western Reserve Oil & Gas Co. v. New,* 765 F.2d 1428, 1430 (9th Cir. 1985)...................4

## STATUTES

Cal. Civ. Code §1632, ...............................................................................9

Cal. Civ. Code §1632(a)(1)........................................................................14, 15

Cal. Civ. Code §1632(b)..............................................................................14

TABLE OF CONTENTS AND TABLE OF AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT COUNTRYWIDE FINANCIAL CORP, MOTION TO DISMISS OR MOTION TO STRIKE

Cal. Civ. Code §1714(a)..................................................................................20

Cal Bus. and Prof. §17200.............................................................................15

Fed.R.Civ.P. 8(a)...........................................................................................8

Federal Rule of Civil Procedure 12(e)..........................................................22

RESPA, 12 USC §2607(b)..............................................................................11

Rule 9(b)........................................................................................................19

Rule 12(b)(6)....................................................................................................3

15 U.S.C. §1601(a).........................................................................................12

TABLE OF CONTENTS AND TABLE OF AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANT COUNTRYWIDE FINANCIAL CORP, MOTION TO DISMISS OR MOTION TO STRIKE

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND
IN THE ALTERNATIVE, MOTION TO STRIKE**

## I.
## INTRODUCTION

Instead of mocking the current predicament of Plaintiff Berenice Gonzalez and Jose Urtiz and Plaintiff Jorge Aguirre's and their families as merely "paper losses", Defendants Countrywide Financial Corp. and Countrywide Home Loans Inc. should focus on defending its legal obligations and its role in placing these families in such a sever financial predicament. Defendants Countrywide Financial Corp. and Countrywide Home Loans Inc. (hereafter referred to as "Countrywide") would like to convince the Court and perhaps, to all of their customers which are victims of their high-tech predatory lending schemes that, as one of America's largest mortgage lenders, it has no legal responsibility in making and/or acquiring predatory loans. Unfortunately for them, Plaintiffs' First Amended Complaint clearly alleges otherwise.

In fact, Plaintiffs' First Amended Complaint clearly details Countrywide's role in using mortgage brokers as its agents to commit widespread predatory lending fraud on the general public, including Plaintiffs. Furthermore, the Complaint goes even further, identifying the specific business practices taken by Countrywide that resulted in violations of multiple federal and state laws regulating its conduct.   Quite simply, Countrywide is at the core of the problems that the Plaintiffs face because without their actions, the harms suffered never would have occurred. Rather than making empty accusations and ignoring the specific allegations in Plaintiffs' Complaint, Defendants should focus on litigating the claims that they already have more than sufficient notice to defend.  For these reasons, Plaintiffs respectfully request that the Court deny Defendants' motion in its entirety and allow this case to proceed to discovery.

## II.
## FACTS

### 1. Plaintiffs Berenice Gonzalez and Jose Urtiz

1

Plaintiffs Berenice Gonzalez and Jose Urtiz are a married couple residing in Salinas, California with their two young children. In the fall of 2005, Plaintiffs Berenice Gonzalez and Jose Urtiz (hereafter "Gonzalez-Urtiz") became interested in the homes being advertised by Defendants VCH Salinas, Norm Yop and Monica Faranda in east Salinas [Attached as Exhibit 1 to the Declaration of Sergio H. Parra is a true and correct copy of Plaintiffs' First Amended Complaint (hereafter referred to as Plaintiffs' Complaint")]. [Plaintiffs' Complaint ¶ 13.]

When seeking financing, Plaintiffs were initially hesitant about purchasing a home for $755,000 but became convinced that they could afford the home after Defendant mortgage broker Universal Mortgage & Sales promised to place them in the best loan possible. [Plaintiffs' Complaint ¶ 48.]. Defendants Countywide is a principal and a co-conspirator of Defendant Universal Mortgage & Sales. [Plaintiffs' Complaint ¶¶ 31, 48]. Empowered by to its relationship with Defendant Countrywide, Defendant Universal Mortgage & Sales actually placed Plaintiffs Gonzalez-Urtiz into two predatory loans with a 1-year high interest adjustable rate mortgage. [Plaintiffs' Complaint ¶ 48.] Furthermore, Defendant Universal Mortgage failed to disclose and/or accurately describe in Spanish the material terms of the loans including the commissions received from Defendants Countrywide. [Plaintiffs' Complaint ¶ 48.].

**2. Plaintiff Jorge Aguirre**

Plaintiff Jorge Aguirre is a married man residing in Salinas, California with his family. In the fall of 2005, Plaintiff Jorge Aguirre (hereafter "Aguirre") also purchased a home that was advertised by Defendants VCH Salinas, Norm Yop and Monica Faranda [Plaintiffs' Complaint ¶ 14.]

Plaintiff Aguirre sought the services of Defendant American Pacific Mortgage Corp. (doing business as "Creative Mortgage") whom promised to place in the best loan as soon as possible. [Plaintiffs' Complaint ¶51.]. At all relevant times, Defendant American Pacific Mortgage Corp. was a principal and a co-conspirator of Defendants New Century and Countrywide [Plaintiffs' Complaint ¶¶ 31, 51]. Subsequently, Defendant New Century sold the second-lien loan to

Defendant Countrywide of which, had notice was illegally procured from Plaintiff Aguirre. [Plaintiffs' Complaint ¶25.]

### 3. Joint Defendants Countrywide Financial Corp. and Countrywide Home Loans Inc.

Defendant Countrywide Financial Corp. is the shell company for several companies using the Countrywide brand including Defendant Countrywide Home Loans Inc. See *Plaintiffs' Request For Judicial Notice*, hereafter referred to as "Judicial Notice Request" Exhibit A, page 1 and Exhibit B, document page 1. As evident by Defendant Countrywide's own website, Countrywide Home Loans is a part of the Consumer Markets Division and is described as part of the Countrywide "family of companies". Judicial Notice Request, Exhibit B, page 1. This fact is also confirmed by Defendant Countrywide Financial Corp.'s own filings with the SEC as demonstrated by its latest filing of a 10-K Annual report where it describes itself as a "holding company" that uses Defendant Countrywide Home Loans Inc. not only as part of its mortgage business but also a part of its banking segment, among other divisions. Judicial Notice Request, Exhibit C, pages 3 and 12.

Plaintiff has properly named Defendant Countrywide Financial Corp. as the alter ego, successor, and financial sponsor etc. of Countrywide Home Loans and alleges that Defendant Countrywide Home Loans Inc. is the agent of Defendant Countrywide Financial Corp. [Plaintiffs' Complaint ¶¶ 23 and 51.]. Recently, Defendant Countrywide Financial Corp and non-party Bank of America recently announced that Defendant Countrywide Financial Corp. would be purchased. Judicial Notice Request, Exhibit D. Notably absent from the entire announcement is any indication that Defendant Countrywide Homes Loans Inc. would be separately purchased or not purchased at all by Bank of America in this transaction.

### III.
### STANDARDS OF ADJUDICATION

In the landmark decision of Conley v. Gibson, 355 U.S. 41 (1957), the U.S. Supreme Court held that a Rule 12(b)(6) motion must not be granted "unless it appears beyond doubt that the

3

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND IN THE ALTERNATIVE, MOTION TO STRIKE**

plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 45-46. In considering a motion to dismiss, this Court must accept all allegations of material fact as true and must construe said allegations in the light most favorable to the non-moving party. Western Reserve Oil & Gas Co. v. New (9th Cir. 1985), 765 F.2d 1428, 1430.

As the Ninth Circuit has remarked, "The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." Gilligan v. Jamco Develop. Corp. (9th Cir. 1997), 108 F.3d 246, 249. That is because the Complaint need only provide a short and plain statement of the claim, giving the defendant *fair notice* of the claim and the grounds upon which it rests. Kingman Park Civic Assn. v. Williams (D.C. Cir. 2003), 348 F.3d 1033, 1040. "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." Conley, 355 U.S. at 47-48.

As such, it is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, Swierkiewicz v. Sorema N.A. (2002), 534 U.S. 506, 511-14 or "plead law or match facts to every element of a legal theory," Krieger v. Fadely (D.C. Cir. 2000), 211 F.3d 134, 136. In fact, in hearing a Rule 12(b)(6) motion, the Court must treat the complaint's factual allegations, including mixed questions of law and fact — as true and draw all reasonable inferences therefrom in the plaintiff's favor. Macharia v. United States (D.C. Cir. 2003), 334 F.3d 61, 64, 67. Since the defendant's motion should be granted only when fair notice is lacking at to the claim(s) it faces, as this is not the case in the instant Complaint, the motion to dismiss should be denied.

## IV.
## POINTS AND AUTHORITIES

**A. DEFENDANTS' RULE 12(B)(6) MOTION SHOULD BE DENIED BECAUSE PLAINTIFFS' COMPLAINT GIVES THE DEFENDANTS SUFFICIENT NOTICE OF THE GROUNDS FOR EACH OF ITS CLAIMS.**

**1. Defendant Countrywide Financial Corporation is liable as the Agent - Holding Company for Countrywide Home Loans Inc.**

4

1  Defendant Countrywide Financial Corp. is liable because it has sponsored, financed and
2  sanctioned the business activities of Defendant Countrywide Homes Loans Inc. [Plaintiffs'
3  Complaint ¶ 23]. Absent from Defendants' motion to dismiss is any denial of the fact that
4  Defendant Countrywide Home Loans is a division of Defendant Countrywide Financial
5  Corporation. In fact, Defendants' own website states the fact that Countrywide Home Loans is a
6  part of the Consumer Markets Division and describes it as a part of the Countrywide "family of
7  companies." Judicial Notice Request, Exhibit B, page 1. This fact is also confirmed by Defendant
8  Countrywide Financial Corp.'s own filings with the SEC such as the most recent 10-K Annual
9  report where it describes itself as a "holding company" that uses Defendant Countrywide Home
10  Loans Inc. not only as part of its mortgage business but also a part of its banking segment, among
11  other divisions. Judicial Notice Request, Exhibit C, pages 3 and 12. Surely, the Defendants knew
12  of this publicly disseminated information before filing this motion.

13  The arguments made by Defendants are similar to those made by defendants and rejected
14  by the Court in Munoz v. Int'l. Home Capital (N.D. Cal 2004), Case No. C03-01099 RS. In
15  Munoz, the lender-defendants moved to dismiss Plaintiffs' Complaint on the basis that "plaintiffs
16  fail to separate out particular defendants or any specific wrongs committed by them." Id. at 4. The
17  Court, citing well-established 9th Circuit law, rejected this argument stating that plaintiffs'
18  pleading were sufficient because "averments of agency are not required in a complaint" and that "
19  a person legally responsible for an act may be alleged to have committed it without going into the
20  theories which support that ultimate fact." Id.

21  In other words, what is most important at this stage, is not the factual question of how
22  much Defendants Countrywide Financial Corp. and Countrywide Home Loans Inc. are
23  intertwined, but whether Plaintiffs have placed the Defendants on fair notice as to their liability in
24  this matter. In this respect, Plaintiffs have gone much farther than the plaintiffs in Munoz in its
25  own Complaint. First, by alleging that Defendant Countrywide Financial Corp. is the "alter ego" of
26  Countrywide Home Loans' business activities, Plaintiffs have alleged that in essence, both entities
27  are the same company. Secondly, as the "financer and/or sponsor" of Countrywide Home Loans'

28

5

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND IN THE ALTERNATIVE, MOTION TO STRIKE**

business activities, clearly Countrywide Financial has been alleged to have a role in supporting Countrywide Home Loan's activities against the Plaintiffs. Thirdly, both Defendants cannot escape the allegation that Defendant Countrywide Home Loans Inc. is the agent of Defendant Countrywide Financial Corp. [Plaintiffs' Complaint ¶ 51].

Of course, there are an infinite number of ways that Plaintiffs may amend and re-amend their Complaint to detail the corporate and legal nuances that Defendants would like to concentrate on. The bottom line, however, is that it is clear in Plaintiffs' Complaint that Defendant Countrywide Financial Corp. is liable to the extent that Countrywide Home Loan's activities caused harm to Plaintiffs. Instead of focusing on whether the larger world of financial information has been sufficiently incorporated into Plaintiff's Complaint, the only question that matters is whether Defendants have fair notice of this legal question. As they do, Plaintiffs respectfully request that the Court allow it the opportunity to proceed with proving the substance of this question in the discovery process.

**2. Since No Claims Have Been Alleged By the Other Plaintiffs Against Defendants, There is No Need to Take Any Further Action.**

Defendant Countrywide Financial Corp and Defendant Countrywide Home Loans Inc. are correct in asserting that the *other* Plaintiffs have not made any allegations against Countrywide. It is clear in Plaintiffs' Complaint that Plaintiffs Becerras alleges claims against Cameron Financial and Plaintiffs Contreras bring claims against Wells Fargo. [Plaintiffs' Complaint ¶49,50]. It is also clear that in each of the respective causes of action that Plaintiffs limit its allegations against to each respective Defendant that it held a relationship with its respective client. For example, in its First Claim of Violation of the Fair Housing Act, Plaintiffs asserts its claim "against each Respective Defendant…" and again, alleges that the Defendants "discriminated against each of its respective clients…." [Plaintiffs' Complaint, pages 16:21-22 and 17:8-11].

It is clear that each Plaintiff in the Complaint only makes those allegations against those entities it allegedly formed a legal relationship with. In the interest in proceeding with discovery, Plaintiff will agree to stipulate, if necessary, as to having the Complaint be read to only assert

6

those claims by each Plaintiff against each respective lender and broker as already alleged in the Complaint and described in this section.

### 3. Plaintiffs' Discrimination Claims Sufficiently Alleges How Countrywide Was Involved in Making Loans in a Discriminatory Manner.

#### a. Defendants' Motion to Dismiss Plaintiffs' Discrimination Claims is Improper When Specific Allegations Are Made Describing the Discriminatory Conduct by Defendant Countrywide.

As noted in various places in Plaintiffs' Complaint, the business practices of national lenders such as Countrywide have led to widespread devastation in certain populations including Hispanics nationwide. [Plaintiffs' Complaint ¶¶3 and 4]. These discriminatory business practices have been intentionally directed to historically vulnerable communities and have resulted in Hispanics at every income level receiving much higher cost loans than *similar-income* white customers. [Plaintiffs' Complaint ¶4]. In Salinas, for instance, Latinos are much more likely to have higher cost loans than their white counterparts. [Plaintiffs' Complaint ¶4]. These studies are mentioned because they provide a useful summary of the situation that Plaintiffs now find themselves.

In support of its position concerning the instant issue, Plaintiffs only have to cite the following:

> As to defendants' contention that plaintiffs fail to provide evidence demonstrating discrimination, the standards for pleading discrimination claims are no higher than the relaxed notice pleading standard requiring a "short and plain statement of the claim showing that the pleader is entitled to relief." See Fed.R.Civ.P. 8(a); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).
>
> "Rather than adduce a prima facie claim in the complaint itself — before discovery, often necessary to uncover a trail of evidence regarding the defendants' intent in undertaking allegedly discriminatory action, has taken place — a plaintiff need only give the defendant fair notice of what the plaintiffs' claim is and the grounds upon which it rests . . . [t]he prima facie case is an evidentiary standard, not a pleading requirement." Id. at 510.

Munoz v. Int'l. Home Capital (N.D. Cal 2004), Case No. C03-01099 RS, Page 8.

In Munoz, the Court excused the Plaintiffs from having to specifically list "any wrongs committed by [the Defendants]"in its discrimination claims. Id. at 7.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND IN THE ALTERNATIVE, MOTION TO STRIKE**

Plaintiffs went beyond the standard by specifically describing in its Complaint the specific discriminatory acts that are the basis of its federal and state discrimination claims. First, Plaintiffs' allege that Defendants targeted Plaintiffs for "higher-cost subprime mortgages while other homebuyers, not member[s] of the protected classes, …received loans on more preferable terms." [Plaintiffs' Complaint ¶65]. In addition, Defendants "intentionally targeted Plaintiffs for home purchases and/or loans so that transactions could be made with Plaintiffs on grossly unfavorable terms and without having to make the necessary disclosures." [Plaintiffs' Complaint ¶67]. Although it is not necessary to include factual detail of the *specific terms* and/or the *specific failed disclosures* at the pleading stage, Plaintiffs also provided a factual description of the types of terms and disclosures that were discriminatory.

Specifically, Plaintiffs allege that despite their wishes to get the loan possible, Plaintiffs received an adjustable rate mortgage with high interest rates. [Plaintiffs' Complaint ¶48]. Furthermore, Plaintiffs describe how Defendant's broker-agent (Defendant Universal Mortgage) "failed to adequately disclose the loan, costs, commissions and fees being charged to close the loans…" [Plaintiffs' Complaint ¶48]. "Plaintiffs are now stuck in subprime adjustable rate mortgages, with interest-only and/or negative amortization terms that are vastly higher in cost than originally understood." [Plaintiffs' Complaint ¶54]. "Each of the Plaintiffs paid lender fees, settlement charges, title charges and other closing costs" along with "broker fees, yield spread premiums and other commissions that were excessive and illegal." [Plaintiffs' Complaint ¶¶58-59]. Since these loan features were generally pleaded in Plaintiffs' Complaint, they were meant to apply to each of the discrimination claims as subsequently discussed. To require that these specific facts to be recopied within each of the fourteen claims would result in an unwieldy pleading and counter plaintiffs' duty to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed Rules of Civ. Proc. 8(a).

Therefore, since Plaintiffs have shown that the information sought by Defendants are discussed in sufficient detail in the Complaint, Plaintiffs ask the Court that the discrimination claims to proceed to discovery. Accordingly, since the Plaintiffs have sufficiently alleged all the

8

necessary elements of its federal discrimination claims and the similar state discrimination laws, Defendants' motion should be dismissed as to all discriminations claims. Vance v. Bakas (N.D. 2006), Case No. C05-3385PVT, Page 6.

### b. Plaintiffs' California Unruh Act Claim is Not Barred by the Statute of Limitations

Defendants' argument that the California Unruh Act Claim is barred by a 1-year statute of limitations erroneously and inaccurately describes the actual statute of limitation mentioned in Defendants' own cited authority. In Gatto, the Court held that "[t]he one-year statute will apply to causes of action under provisions that evolved from the common law, the three-year statute will apply to others." Gatto v. County Of Sonoma, (2004), 98 Cal.App.4th 744, 759. The Court went on to hold that a one-year statute of limitations applies since "Gatto's complaint *relies entirely* on allegations of the denial of full and equal access to public accommodations guaranteed under section 51 [of the state constitution]" Id. at 760 [*Emphasis* added]. In other words, the three-year statute of limitations applies to any section 51 claim that did not evolve from the common law. Id.

Since the primary factual basis for Plaintiffs' Unruh claims is grounded in statutory rights regulating the real estate industry (e.g. TILA, RESPA, RICO, Cal. Civ. Code §1632, Cal Bus. and Prof. §17200), the three-year statute of limitation should apply.

Even under the "course of conduct" continuing violation theory employed by the Ninth Circuit, the statute of limitations only begins to run "not necessarily when the [plaintiff] first believes that his or her rights may have been violated, but rather, either when the course of conduct is brought to an end... or when the [plaintiff] is on notice that further efforts to end the unlawful conduct will be in vain." Richards v. CH2M Hill Inc. (2001), 26 Cal.4th 798, 823. In our case, Plaintiffs unknowingly purchased predatory adjustable rate mortgages with features that presented new surprise rate hikes and terms as time passed long after the initial loan closing in 2006. [Plaintiffs' Complaint ¶¶29, 48, 54, 58-59].

9

1   Lastly, Plaintiffs' claims have been *Equitably tolled* so as to allow the filing of its claims

2   beyond the strict on-year statute of limitations for common-law Unruh claims. The equitable

3   tolling doctrine begins to apply when the plaintiffs uncover the concealed facts. River Colony

4   Estates v. Bayview Financial Trading Group (S.D. Cal. 2003) Case No. 01-1420-IEG(LSP), Page

5   11. [Court held that in a loan transaction, plaintiff's claim may be equitably tolled until it learned

6   of defendant's concealed identity.]. In the instant case, there was no way that Plaintiffs would

7   have learned of the actual meaning of the loan documents executed in English when the Spanish

8   translations were so inadequate and they only learned of those issues in September 2007.

9   [Plaintiffs' Complaint ¶¶29, 48, 54, 58-59]. Since Plaintiffs have specifically alleged that

10  "Defendants made various material misrepresentations in Spanish that differed than the English

11  documents – which could not be discovered until the effects of the toxic transactions arose to

12  cause them to seek help," the equitable tolling doctrine should apply in Plaintiffs' favor.

13  [Plaintiffs' Complaint ¶29].

14  **4. Plaintiffs' RESPA Claim is Sufficiently Pled Because there are Allegations that the YSP**
15  **and other Charges Were Excessive and/or Unearned.**

16      Rather than address the specific allegations made in Plaintiff's complaint, Defendants

17  blindly assert that it lacks "notice as to the particulars of how it purportedly violated RESPA."

18  While it is correct that the YSP and other commissions are not illegal per se, it equally true that the

19  YSP and other charges can be found (or at least alleged) to be illegal in various circumstances.

20  There are four theories as to how Countrywide violated RESPA identified in Plaintiff's Complaint.

21  [Plaintiffs' Complaint ¶88]

22      First, HUD has created a two-part test that has been adopted for the determination of the

23  legality of a yield-spread premium. The second prong of the HUD test states that a charge is illegal

24  to the extent that the payments are not "reasonably related to the value of the goods or facilities

25  that were actually furnished or services that were actually performed." Plata v. Long Beach

26  Mortgage Co. (N.D. Cal. 2005), Case No. C05-02746 JF, Page 7. The Court held that the value of

27

28

10

the services may not comply with HUD's two-part test when the lender fails to follow industry standards; reviewed the loan application and ensure that the loan broker offered the borrower to pay fees upfront in lieu of a yield spread. Id. at 8-9. To wit, Plaintiffs make the same allegations in its own Complaint. [Plaintiffs' Complaint ¶85].

In addition, Countrywide is "liable as lenders because each should not have encouraged the brokers to violate the law by paying a grossly excessive yield spread premium kickback and/or should not have trained the brokers to make such loans under the circumstances. [Plaintiffs' Complaint ¶88]. The allegation that the payment of an unearned commission is sufficient to find a violation of RESPA when the plaintiffs are seeking the best loan possible and instead are provided a sham service. DeLeon v. Beneficial Constr. Co. (N.D. Ill. 1998) Case No. 1998 WL 122627, Page 824. As alleged in Plaintiffs' Complaint the service provided by Countrywide and its agents had no value and where not earned. [Plaintiffs' Complaint ¶85]. This is line with Section 8(b) of RESPA, 12 USC §2607(b) that provides that "[n]o person shall give and no person shall accept …any charge…other than for services actually performed."

Thirdly, Countrywide is "liable for the collection of additional, excessive and illegal lender fees." [Plaintiffs' Complaint ¶88]. As discussed above the same prohibition against the acceptance of an excessive charge for services that either had no value or that were not actually performed, equally applies to those illegally monies received by Countrywide in both the Urtiz-Gonzalez and Aguirre loans.

Lastly, Countrywide is "otherwise liable for the acts of their respective agents. [Plaintiffs' Complaint ¶88 and 85]. In Plata, the lender also attempted to escape liability for the wrongdoings of its agent mortgage brokers by claiming it held no direct relationship with the Plaintiffs. Id. at 11. In accordance with long established agency law, the Court, however held that Plaintiffs' "boilerplate allegations among the defendants" was sufficient to meet the liberal pleading standard for secondary liability. Id. at 11 and 12. Plaintiffs in this case have not only alleged in general language that Countrywide is liable as a principal for Universal Mortgage (Gonzalez-Urtiz loans) and New Century (Aguirre loans) [Plaintiffs' Complaint ¶31], but also that they owed a direct duty

11

not to supervise and to not pay these charges under RESPA [Plaintiffs' Complaint ¶88]; and to not conspire with other defendants to s avoid its legal obligations. [Plaintiffs' Complaint ¶89].

As such, sufficient allegations exist as to defeat Defendants' dismissal request of Plaintiffs' RESPA claims.

**5. Plaintiffs' TILA Claim is Equitably Tolled as the Plaintiffs Would Not Have Learned of the Actual Terms Until Much After And Only After Its Toxic Effects Arose.**

It is true that the Plaintiffs have alleged a Truth in Lending Act ("TILA") violation after one year of the date of the loan closing of the respective transactions. In fact, Plaintiffs Gonzalez-Urtiz allege that they entered into the loan transaction in March 2006 and Plaintiff Aguirre in May 2006. [Plaintiffs' Complaint ¶48 and 51]. However, Plaintiffs respectfully request that the court apply the equitable tolling doctrine to prevent the Defendants from escaping liability under the narrow circumstances where it is alleged that the Defendants employed a foreign-language switch and bait technique, that was so deficient in actual disclosure; that Plaintiffs were not reasonably able to discover the nondisclosure forming its TILA claim until much later.

It has long been established in the Ninth Circuit that the doctrine of equitable tolling applies to Truth in Lending claims brought by mortgage borrowers. King v. State of Cal. (9th Cir. 1986), 784 F.2d 910, 914-915. The Court reasoned that equitable tolling has been liberally applied to protect the consumer and "to prevent unjust results or to maintain the integrity of a statute." Id. at 915. In looking at the intent of the TILA statute embodied in 15 U.S.C. §1601(a), the Court noted that the statute fits perfectly with TILA's intent to enhance "economic stabilization ...[and] to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair ...practices." Id. [quoting 15 U.S.C. §1601(a)].

In contrast, Defendants' emphasis on the different *Equitable Estoppel* theory depends on the statute that it is being against (as in this case, TILA). That is why Defendants' use of dicta in Guerrero v. Gates, 357 F.3d 911, 918 and 920, a federal criminal narcotics case involving the

12

1   application of equitable estoppel is therefore is not very much help here. There is absolutely no

2   basis to the claim that the equitable estoppel doctrine can only be applied only after a fraudulent

3   concealment claim is proven because there are two distinct methods to achieve a tolling of the

4   statute of limitations. Kay v. Wells Fargo & Co. N.A. (N.D. Cal. 7-24-2007), Case No. 07-01351

5   WHA, Page 5-6. Defendants seems to rearguing the Kay case without referring to it at all and not

6   fully disclosing its detail.

7           Under the first method urged by Plaintiffs, Plaintiffs have specifically alleged why the

8   *equitable tolling doctrine* should be applied. First and foremost, the Defendants prevented

9   Plaintiffs of becoming aware of Defendants' tortuous conduct by employing a language 'switch

10  and bait' where Spanish-speaking mortgage brokers would grossly misrepresent the terms and loan

11  process in Spanish and then handoff the English language contract documents to knowing

12  principals (lenders) to fund.  [Plaintiffs' Complaint ¶29 or page 7:21-24 ] Of course, Plaintiffs

13  were not be able to learn of the actual language of the documents until they were translated for

14  them much later. [Plaintiffs' Complaint ¶29 or page 7:24-26 ]. Secondly, the Defendants' loan

15  products themselves were sitting time bombs that were waiting to explode long after the loans

16  were made. [Plaintiffs' Complaint ¶29 page 7:24-26 and ¶54 or page 15:13-19].  For these reasons,

17  equitable tolling would be appropriate considering that Plaintiffs acted within two months in

18  November 2007 after learning of material facts as to their potential claims against Defendants.

19  [Plaintiffs' Complaint ¶29 or page7:18-21 ]

20          Even under the alternative theory proposed by Defendants, Plaintiffs have sufficiently

21  alleged a fraudulent concealment claim.[See discussion below].

22          Since Plaintiffs have alleged those facts constituting the need for Equitable Tolling,

23  Defendants' claim is defective on this point and should be rejected.

24  **6. Plaintiffs' TILA Claim Should Stand as Plaintiffs Allege that Defendants Failed to Make Certain Statutorily Required Disclosures, Failed to Accurately Disclose Finance Charges and Failing to Provide an Accurate and Timely Truth in Lending Statement.**

25

26          Despite Defendants contentions, Plaintiffs does allege how Countrywide is liable under

27  TILA.

28

13

First, Defendant Countrywide is alleged to be directly liable as creditors for the following specific violations: (1) Defendants Failed to Make Certain Statutorily Required Disclosures, [Plaintiffs' Complaint ¶95]; (2) Failed to Accurately Disclose the Amounts Financed and the Finance Charges [Plaintiffs' Complaint ¶95]; (3) Failing to Provide an Accurate and Timely Truth in Lending Statement [Plaintiffs' Complaint ¶96].

Secondly, Countrywide is liable as a principal for the actions taken by the respective companies in both Gonzalez-Urtiz and Aguirre Loans. [Plaintiffs' Complaint ¶31].

Thirdly, Countrywide is liable as a co-conspirator with New Century in purchasing the Aguirre Loans having notice they were illegal and/or unfair. [Plaintiffs' Complaint ¶96].

For these reasons, Plaintiffs' TILA claim is sufficiently stated.

**7. Plaintiffs' Claim Under Civ. Code §1632 Should Not be Dismissed As It is Both Indirectly and Directly Liable for Failing to Supervise It Agents And For Acting as Co-Conspirator to violate Plaintiffs' Civil Rights.**

First, a lender is liable for failing to abide by §1632 for the acts of its broker-agents under the general rules of agency. Munoz v. Int'l. Home Capital (N.D. Cal 2004), Case No. C03-01099 RS, Page 12. It makes sense that a lender may be liable under §1632 under agency rules considering both federal liberal pleading standards and the statute's policy goal "to increase consumer information and protections for the state's sizeable and growing Spanish-speaking population." Ruiz v. Decision One Mortgage Co. (N.D. Cal. 2006), Case No. 03-01099 RS, Page 6 and 7, [quoting Cal. Civ. Code §1632(a)(1).

Secondly, Plaintiffs argue that Defendants as lenders can also held *directly* liable under Cal. Civ. Code 1632(b) for employing the use of broker-agent to conduct direct negotiations in Spanish with potential clients without providing Spanish language contracts. Plata v. Long Beach Mortgage Co. (N.D. Cal. 2005), Case No. C05-02746 JF, Page 13. Although the Plata Court pointed to the lack of that plaintiff's allegations in this regard, Plaintiffs in the instant matter have done otherwise.

Plaintiffs maintain that under a close reading of §1632(b) that all that is required that: (1) "a business who negotiates primarily in Spanish,"; (2)"in the course of entering into any of the

14

1   following [contract];" and (3) "shall deliver to the other party to the contract or agreement in the

2   language in which the contract or agreement was negotiated." Direct liability under this statute is

3   logical considering the loan documents are written on Countrywide's letterhead and forms, not the

4   broker's, and that the lender collects fees and interest starting before and for years after the loan is

5   executed. The problem is that Defendants Countrywide seem to be grafting a 'physical contact'

6   element to §1632 that does not exist in that statute. Since Plaintiffs' have raised allegations along

7   with other material elements of §1632, Plaintiffs ask the Court to allow this separate direct theory

8   of liability to stand against Countrywide.

9       Lastly, Countrywide is liable as a co-conspirator with New Century in purchasing the

10  Aguirre Loans having notice they were illegal and/or unfair. [Plaintiffs' Complaint ¶103].

11      For these reasons, Plaintiffs' §1632 claim is sufficiently stated.

12  **8. Plaintiffs' Unfair Competition Claim Should Stand as There Are Numerous Illegal and
13  Unfair Practices that Defendants Countrywide Should Have Taken to Prevent Plaintiffs'
    Harm.**

14      There are 'three types' of unfair competition set forth in California's Unfair Competition

15  Law (UCL) at Bus. and Prof. Code §17200: "acts or practices which are unlawful, or unfair, or

16  fraudulent." Cel-Tech Com. Inc vs. Los Angeles Cellular Tel. Co. (1999), 20 Cal.4th 163, 180. In

17  this case, Plaintiff asserts that Defendants violated the state Unfair Competition Law on the basis

18  of these three theories.

19      As such, Khoury is not specifically applicable to every type of unfair competition claim as

20  the Court only found that the Khoury plaintiff's failed to allege the *fraudulent practice* claim after

21  being given three attempts to do so. Khoury v. Maly's of California, Inc. (1993), 14 Cal.App.4th

22  612,  619. Furthermore, it is not conclusive that the Khoury heightened pleading standard even

23  applies to state law claims after the Ninth Circuit recent decision in *Empress LLC v. City And*

24  *County*, 419 F.3d 1052 (9th Cir. 2005). [1]

25

26

27  ───────────────────
    [1] Asis Internet Services v. Global, Inc. (N.D.Cal. 2006), Page 19, footnote 2.

28                                              15

1    Regardless, the California Supreme Court defines an unlawful activity under the UCL as

2    "sweeping, embracing anything that can properly be called a business practice and that at the same

3    time is forbidden by law." Cel-Tech Com. Inc vs. Los Angeles Cellular Tel. Co. (1999), 20 Cal.4th

4    163, 180. By prohibiting any *unlawful* business practice, the UCL "borrows violations of other

5    laws and treats them as unlawful practices that the unfair competition law makes independently

6    actionable." Id.  Plaintiffs have referred to the various laws that have been independently

7    incorporated into this section. [Plaintiffs' Complaint ¶115]. Since no law requires as such, for a

8    plaintiff to have to restate these allegations under this claim, Plaintiff's incorporation by reference

9    to other portions of the Complaint should be sufficient to Defendants on notice of their claims.

10    Plaintiffs have specifically alleged five unfair business practices by Defendant

11    Countrywide. [Plaintiffs' Complaint ¶120].  Currently, there are two Appellate tests used to

12    determine when an "unfair" business practice exists under the UCL. Progressive West Ins. Co. vs.

13    Super. Ct. (2005), 135 Cal.App.4th 263, 286. The first 'Balancing Test' approach determines an

14    unfair business practice by examining the "impact of the practice or act on its victim, balanced

15    against the reasons, justifications, and motives of the alleged wrongdoer." Id. at 285. The second

16    'Tether' approach, determines that a business practice is 'unfair' if it is tethered to some

17    "legislative declared policy." Id. at 286. As discussed below, Plaintiff's have specifically alleged

18    that Defendant's policies and business practices are clearly "unfair" under both approaches.

19    [Plaintiffs' Complaint ¶116].

20    Third, in regards to fraudulent business practices, Plaintiffs have already referred to and

21    incorporated the specific fraudulent allegations raised elsewhere in Plaintiffs' complaint.

22    This is true considering that fraudulent practices under the UCL are those practices that are likely

23    to deceive the public and do not refer to the tort of fraud. Heighley v. J.C.Penney Life Ins. Co.

24    (C.D. Cal. 2003), 257 F. Supp. 2d 1241, 1259.  Assuming that any heightened standard survives

25    after the aforementioned *Empress* case, a plaintiff only has to provide some factual basis for its

26    claim and not plead fraud with Rule 9(b) specificity to assert an unfair competition claim based

27    upon a fraudulent business practice. Qarbon.Com Inc. v. Ehelp Corp., (N.D.Cal. 2004), Case No.

28

16

NO. C03-04319 JW, 315 F. Supp.2d 1046, 1051 and 1052. Since Plaintiffs have alleged facts describing the timeframe, persons, places and representations composing the fraudulent business practice with reasonable particularity, its claim should survive Defendants' motion to dismiss. [Complaint ¶¶48 and 51].

Lastly, the Plaintiffs allege that Defendants Countrywide are secondarily liable for the unfair competition law violation as its' agents for the acts of the broker on the Gonzalez-Urtiz loan [Complaint ¶¶31 and 121] and for the acts New Century and its broker on the Aguirre second loan [Complaint ¶121].

**9. Plaintiffs' Fraud Claims Should Not be Dismissed as they Specifically Detail the Misrepresentations, the Speakers, The Timeframe and the Falsity of the Brokers' Statements to the Plaintiffs**

Despite Defendants' contentions, Plaintiffs already allege its fraud claims with "heightened particularity" as required by Rule 9(b).

There are two ways that Plaintiffs claim that Defendant Countrywide is liable for fraud claims. Under the *direct liability* theory, Defendants Countrywide are liable for drafting and sending fraudulent loan documents for Plaintiffs Urtiz-Gonzalez to execute. Defendants attempt to graft a 'physical contact' requirement for fraud by arguing that its hands are clean because it did not speak with the borrowers. However, Rule 9(b) states that a fraudulent statement can be "written" and contained in "documents" given to the plaintiff. For these reasons, the "loan package" of documents that Universal and Countrywide jointly utilized documents that contained fraudulent statements and concealed material information from Plaintiffs Gonzalez-Urtiz creates Countrywide's direct liability. [Plaintiffs' Complaint ¶48]

Under the *agency* theory, Defendants Countrywide are liable for the fraudulent oral and written representations made by its agents against Plaintiffs Urtiz-Gonzalez. [Plaintiffs' Complaint ¶31, 48 and 130]. Plaintiffs have also alleged that Defendant Countrywide is liable as an agent for New Century in purchasing the Aguirre loans that it should have known were fraudulent. [Plaintiffs' Complaint ¶25, 31, 51 and 130]. Under the liberal rules of pleadings, when it is alleged

17

that the lender is liable for the acts of its respective mortgage broker; this is sufficient to survive a motion to dismiss. Plata v. Long Beach Mortgage Co. (N.D. Cal. 2005), Case No. C05-02746 JF, Page 11-12.

Meeting the heightened particularity requirement of Rule 9(b) does not require that every detail be stated in specific numbers or precise time frames because the goal of Rule 9(b) is only that "[o]verall, the complaint …[identify] the circumstances of the alleged fraud so that defendants can prepare an adequate answer." Cooper v. Pickett (9th Cir. 1997), 137 F.3d 616, 627. In fact, below is the following is a description of the various facts that have been alleged.

**a.  Alleged Misrepresentations:**

*1. Gonzalez-Urtiz Loans: Factual Misrepresentations:*

- "Failed to adequately disclose the terms etc." [Plaintiffs' Complaint ¶48]

- "Assured them that this loan package was the best they could get."[Complaint ¶48]

- In addition, numerous other misrepresentations are specifically alleged. [Complaint ¶129]

*2. Aguirre Loan: Factual Misrepresentations*

- "Assured him that the arranged loans were the best loans he could afford based upon his credit and income." [Complaint ¶51]

- "Failed to adequately disclose the terms etc." [Plaintiffs' Complaint ¶51]

- In addition, numerous other misrepresentations are alleged. [Complaint ¶129]

**b.  Speaker**

*1. Gonzalez-Urtiz Loans:* "Spanish Speaking Agent at Universal"; Countrywide "loan package" and "loan documents"; also see "no "meaningful translation given by … COUNTRWYIDE" [Plaintiffs' Complaint ¶48]

*2. Aguirre Loan:* "CREATIVE MORTGAGE's…advertised ability to offer services in Spanish"; "CREATIVE assured Plaintiff AGUIRRE" [Plaintiffs' Complaint ¶51]

**c.  When/Where**

*1. Gonzalez-Urtiz Loans:*

*a. When:* "On or about February 2006" "Loan documents signed in "March 2006"

18

[Plaintiffs' Complaint ¶48]

    *b. Where:* "Monterey County" [Plaintiffs' Complaint ¶22, 48]

    *2. Aguirre Loan:*

*a. When:* "In January 2006" [Plaintiffs' Complaint ¶51]

*b. Where:* "Monterey County" [Plaintiffs' Complaint ¶24]

**d.  Oral or Written Statements**

*1. Gonzalez-Urtiz Loans:*

*a. Oral Assertions*

- *"*All conversations were in Spanish…at no point was any meaningful translation given";

- "Failed to adequately disclose the terms etc." [Plaintiffs' Complaint ¶48]

- "Assured them that this loan package was the best they could get."[Complaint ¶48]

*a. Written Assertions*

- "Loan package" and "loan documents were not in Spanish" [Complaint ¶48]

*2. Aguirre Loan- Oral Assertions*

- "CREATIVE MORTGAGE's…advertised ability to offer services in Spanish";

- "CREATIVE assured Plaintiff AGUIRRE" [Plaintiffs' Complaint ¶51]

**e.  Manner Which Statements Where Wrong**

*1. Gonzalez-Urtiz Loans:*  Plaintiffs are now stuck in subprime adjustable rate mortgages with…terms that are vastly higher in costs than originally understood." etc. [Plaintiffs' Complaint ¶¶54, 57, 90, 96, 129, 131]

*2. Aguirre Loan:*  Plaintiffs are now stuck in subprime adjustable rate mortgages with…terms that are vastly higher in costs than originally understood." etc. [Plaintiffs' Complaint ¶¶54, 57, 90, 96, 129, 131]

    For these reasons, the Plaintiffs' fraud claims should survive as they constitutes a short and plan statement of the various factual points required by Rule 9(b).

**10. Plaintiffs' Negligence Claim Cannot be Dismissed When There is a Direct Duty of Care as a Lender under the Rowland Factors and an It Is Obligated for its Agent's Actions.**

19

a. Countrywide has a direct duty of care to the Plaintiffs

Long have the days passed where lenders could easily escape liability by claiming that it did not owe a duty of care to its mortgage customers. Inherit in the today's mortgage consumer protection laws are durable statements such as the Truth in Lending Act [15 USC 1601 et seq. ], the Real Estate and Settlement" Procedures Act [12 USC 2601 et seq.], and the California Civil Code § 1632 to prevent harm to mortgage borrowers in its various forms.

This close issue was examined by the Court in Ruiz v. Decision One Mortgage Co. (N.D. Cal. 2006), Case No. 03-01099 RS, Page 6 and 7. In that case, the plaintiff argued that Wagner was distinguishable as it involves a commercial transaction where the lender played a passive role in the commercial loan agreements. Id. at 4. Although the Court entertained the distinction, it concluded the plaintiff's complaint failed to contain allegations indicating that the lender acted beyond the scope of its conventional activities as a lender of money. Id. at 4-5.

In the instant matter, however, Plaintiffs have clearly outlined the following duties of care owed by Countrywide as a lender:

(1) Duty to act reasonably as reasonably prudent lender. [Plaintiffs' Complaint ¶¶158].

(2) Duty to oversee its agents who arranged its loan products. [Plaintiffs' Complaint ¶¶158]

In California, "Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself." Cal. Civ. Code §1714(a). "D]uty," is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.'" Dillon v. Legg (1968) 68 Cal.2d 728, 734.

A financial institution may owe a borrower a duty of care depending on "various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.'" Nymark

20

v. Heart Fed. Savings & Loan Assn. (1991), 231 Cal.App.3d 1089, 1098 [quoting Connor v. Great Western Sav. & Loan Assn. (1968) 69 Cal.2d 850, 865.]. The *Rowland* factors also additional considerations: " the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." Rowland v. Christian (1968), 69 Cal.2d 108, 113.

As a matter of law, duty should be found to exist under the circumstances where Plaintiffs allege that were placed in unreasonably drafted and constructed loan products that were so harmful as to defy the duty of reasonableness. In respective order, the Rowland factors all favor the finding of duty by Defendants:

*Factors 1 and 2*:  Unlike Plaintiffs, Defendants created the loan products and should have known of the dangers of placing any borrowers in toxic mortgages. [Plaintiffs' Complaint ¶¶48, 54, 57, 158 and 159].

*Factor 3*: The injuries that were caused only became possible through the actions to support and enable and provide resources others to sell its toxic products. [Plaintiffs' Complaint ¶¶48, 54, 57, 158 and 159].

*Factors 4 and 5*: Since the Defendants as lenders are already subject to numerable statutory regulations its business, no extra burden will be placed on it considering that the financial stability of borrowers and the nation will be strengthened. [Plaintiffs' Complaint ¶¶3, 7, and 8].

*Factor 6*: Finally, the cost of insurance should be readily available to these companies in due course of their business activities.

Furthermore, Courts have already long held that a financial services company can be directly liable for negligence duty to act with reasonable skill and diligence. In Re Prudential Ins. Co. of Am. Sales Prac. (N.J. 1996), 975 F. Supp. 584, 620 and 621. In this case, the plaintiff specifically argued that a financial company owed a duty of care for " in training and supervising Prudential's sales agents, to ensure that the company conducted its sales transactions legally and properly, and to ensure that its agents fully disclosed all material facts and did not misrepresent or omit such facts to customers." Id. at 621. The Court stated that "it certainly cannot determine as a

21

matter of law dismiss the Complaint" "when Plaintiffs have properly alleged that this conduct caused reasonably foreseeable injury to themselves…and that they suffered damages as a result thereof." For instance, even insurance agents owe a duty of care to an insured is "to obtain the coverage that a reasonable and prudent professional insurance agent would have obtained under the circumstances." Fiorentino v. Travelers Ins. Co., (1978), 448 F. Supp. 1364, 1369-70.

b. Countrywide is liable to Plaintiffs for negligent acts of its agents

As alleged in this Complaint at ¶¶ 31, 158 and 159, Defendants are otherwise liable for Plaintiffs' negligence claim by virtue of Plaintiffs' general agency allegations made. Ruiz v. Decision One Mortgage Co. (N.D. Cal. 2006), Case No. 03-01099 RS, Page 6-7.

**11. Defendants Are liable for Breach of Fiduciary Trust Due To its Agent's Actions.**

Defendants are otherwise liable for breaches of fiduciary trust committed by other defendants by virtue of Plaintiffs' general agency allegations made in Plaintiffs' Complaint at ¶¶ 31, 152 and 153. Ruiz v. Decision One Mortgage Co. (N.D. Cal. 2006), Case No. 03-01099 RS, Page 6-7.

**B. DEFENDANTS' MOTION UNDER RULE 12(E) SHOULD BE DENIED SINCE ANY CONFUSION CAN BE STRAIGHETENED OUT WITH A REASONABLE READING OF THE COMPLAINT.**

Motions for a more definite statement are viewed with disfavor and are rarely granted because of the minimal pleading requirements of the Federal Rules." Bureerong v. Uvawas (C.D.Cal. 1996), 922 F. Supp. 1450, 1461. "A motion for a more definite statement attacks unintelligibility in a pleading, not simply mere lack of detail." Id. The Court goes further stating that "a motion for a more definite statement should not be granted unless the defendant literally cannot frame a responsive pleading. Id. [quoting Boxall v. Sequoia Union High School District (N.D.Cal. 1979), 464 F. Supp. 1104, 1114].

Federal Rule of Civil Procedure 12(e) provides that a Rule 12(e)motion should only be granted "when it is so vague and ambiguous that a party cannot reasonably be required to frame a

22

responsive pleading." This is because a motion for a more definite statement must be considered "in light of the liberal pleading standards" as a Complaint need only be a "short and plain statement of the claim showing that the pleader is entitled to relief." Bureerong v. Uvawas (C.D.Cal. 1996), 922 F. Supp. 1450, 1461 [quoting Sagan v. Apple Computer, Inc. (C.D.Cal. 1994), 874 F. Supp. 1072, 1077.]

While Plaintiffs' First Amended Complaint does not elaborate the in detail the intricacies of the relationship between Countrywide Financial Corp. and Countrywide Home loans Inc., it does state its claims. Defendants' argument that it is uncertain as to how Countrywide Financial Corp. is not confusing being that Countrywide Financial Corp. is named as liable for Countrywide Homes Inc.'s liabilities to the extent that it is the "alter ego," If Plaintiffs would have wanted to refer to both Countrywide Financial Corp. and Countrywide Home Loans. Inc collectively, it would have stated so. But it didn't.  Since more detail will not shed light on this simple proposition, then the Complaint should be simply read, as it is written, to mean that both Countrywide companies are not be read collectively in the remaining portions of the Complaint.

## C. IN THE ALTERNATIVE, PLAINTIFFS REQUEST LEAVE TO AMEND

To the extent that the Court finds it necessary for Plaintiffs to amend its complaint, the Plaintiffs ask for leave to amend in order to cure any such deficiencies. Lopez v. Smith (9th Cir. 2000), 203 F.3d 1122, 1130.

## D. PLAINTIFFS' MOVES TO STRIKE DEFENDANTS' MOTION TO DISMISS BECAUSE IT WAS FILED WELL AFTER THE STIPULATED DEADLINE

### 1. After Multiple Extensions, Plaintiffs Stipulated To Giving Countrywide Until January 8, 2008 to respond to the Amended Complaint, Which They Simply Ignored.

On November 27, 2007, Plaintiffs served it First Amended Complaint on Defendants Countywide Financial Corp. and Countrywide Home Loans Inc. As a matter of professional courtesy, Plaintiffs granted the joint defendants four extensions to file responsive pleadings to the First Amended Complaint. [Declaration of Sergio H. Parra in support of this motion, Page 2.].

23

1   The last extension given to both Defendants gave them an extension until *Tuesday, January 8,*

2   *2008* to respond to the first Amended Complaint.

3   Instead of filing a timely response or seeking another extension, Defendants Countywide

4   Financial Corp. and Countrywide Home Loans Inc. completely ignored the deadline and

5   proceeding to filing and serving the instant motion to dismiss Plaintiffs' First Amended Complaint

6   on **Friday, January 18, 2008.** In fact, when the Defendants' paralegal called to ask for hearing

7   dates to calendar such its motion, she admitted that they would file the motion late anyways

8   despite the fact that they knew it was late. At no point before filing the motion to dismiss, did

9   Defendants pursue either another extension or leave from the Court to file its untimely motion.

10  Since Defendants' motion is clearly untimely and Plaintiffs have acted responsibly in pursuing this

11  matter, Plaintiffs respectfully request the Court strike Defendants Countywide Financial Corp. and

12  Countrywide Home Loans Inc.'s untimely motion and deny its motion to dismiss in its entirety.

13  Generally speaking, a Rule 12 motion must be filed and served within twenty days of

14  service of the complaint or any other time that is stipulated to by the parties. Aetna Life Ins. Co. v.

15  Alla Medical Services Inc. (9th Cir. 1988), 855 F.2d 1470, 1474.   Courts have held that the failure

16  to file a timely responsive pleading is sufficient grounds to strike that party's motion and to "refuse

17  to entertain the substance of the improperly-filed motion." McMillian v. District of Columbia

18  (D.C. 2005), U.S. Dist. Ct., D. Columbia. Civil Action No. 04-2036, Page 7. Such action is

19  appropriate when the party, after not filing its motion on a timely basis, fails to seek leave of the

20  court to proceed with its late filing before filing its' motion to dismiss. Id. Inherit in the Court's

21  decision is the strong notion that "[t]he motion to dismiss for failure to state a claim is viewed with

22  disfavor and is rarely granted." Gilligan v. Jamco Develop. Corp. (9th Cir. 1997), 108 F.3d 246,

23  249.

24  Plaintiffs acted with utmost courtesy in granting extension after extension to Defendants so

25  as to allow them more than sufficient time to prepare a timely responsive pleading in this matter.

26  It is plainly not right that after granting almost two months in extensions to Defendants, that they

27  should be allowed to file this responsive pleading late anyways. Even then, at the very least,

28

24

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MEMORANDUM<br>IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND IN THE ALTERNATIVE, MOTION<br>TO STRIKE

1  Defendants should have followed standard procedure in either requesting another extension of

2  time or seeking leave of the Court before filing its motion to dismiss. Striking Defendants' motion

3  to dismiss for lack of timeliness is even more appropriate if the Court were to respectfully consider

4  that, as a matter of law, Defendants' motion is generally disfavored even on its merits. Since

5  Defendants knew that its motion was untimely before filing it, and still choose to improperly file it

6  after having about two months to do so, the motion should be denied in its entirety. For these

7  reasons, Plaintiffs respectfully request that Defendants' motion be denied in its entirety.

8

9                                **V. CONCLUSION**

10        Plaintiffs want and deserve their day in Court. Instead of focusing on the merits of

11  Plaintiffs' claims, Defendants Countrywide Financial and Countrywide Home Loans Inc. pretend

12  to have no what idea they are going to do when we get there. Pleading is a form of art that can go

13  on forever, with endless reiteration and changes. However, for the purpose of litigation it must

14  end when a sufficient picture is painted so as to give the parties a roadmap to proceed. Since

15  Defendants' cannot claim to not have a clear enough picture of each of Plaintiff's claims, Plaintiffs

16  respectfully ask the Court to deny Defendants' motion in its entirety and/or that it strike

17  Defendants' motion under Rule 12(e).

18

19  Dated: February 2́1, 2008            PATANE • GUMBERG, LLP

20

21                          By: _____

22                               SERGIO H. PARRA
                                 NINA M. PATANE
23                               Attorneys for Plaintiffs

24

25

26

27

28                                       25

<u>PROOF OF SERVICE</u>

STATE OF CALIFORNIA -- COUNTY OF MONTEREY

I declare that I am employed in the County of Monterey, State of California.  I am over the age of eighteen years and not a party to the within cause; my business address is Patane & Gumberg, LLP, 4 Rossi Circle, Suite 231, Salinas, California 93907.

On March 1, 2008, I served the foregoing document(s) described as:
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND IN THE ALTERNATIVE, MOTION TO STRIKE; DECLARATION OF SERGIO PARRA IN OPPOSITION OF DEFENDANT COUNTRYWIDE HOME LOANS, INC. AND COUNTRYWIDE FINANCIAL CORP.'S  MOTION TO DISMISS OR ALTERNATIVELY, IN SUPPORT OF MOTION TO STRIKE; PLATNIFFS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFFS' MOTION IN OPPOSITION TO COUNTRYWIDE'S MOTION TO DISMISS;**

( )      BY E-FILE - By transmitting via efiling the document(s) listed above set forth below on this date from 4 Rossi Circle, Suite 231, Salinas, California 93907.

( )      BY MAIL - By placing the documents listed above in a sealed envelope, addressed as set forth below.  I am readily familiar with the firm's practice for the collection and processing of correspondence.  Under that practice it would be deposited with U.S. POSTAL SERVICE on that same day with postage thereon fully prepaid at Salinas, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

( )      BY PERSONAL SERVICE - By personally delivering the document(s) listed above to the person(s) or other proper person(s) at the address(es) set forth below.

**SEE E-FILING LIST ATTACHED**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 1, 2008, at Salinas, California.

PAM KIMBALL

1

Elizabeth C. Gianola, Esq.
Horan, Lloyd Law Offices
499 Van Buren Street
Monterey, CA, 93940

Mark D. Peterson, Esq.
Frank J. Riebli, Esq.
Farella Braun-Martel, LLP
Russ Building-235 Montgomery St.
San Francisco, CA 94104

John S. Blackman, Esq.
Farbstein & Blackman, APC
411 Borel Avenue, Suite 425
San Mateo, CA 94402

Michael J Steiner
Severson & Werson
One Embarcadero Center, Suite 2600
San Francisco, CA  94111

Michael Smith
Manning & Marder, Kass, Ellrod, Ramirez LLP
One California Street Suite 1100
San Francisco, CA  94111

Countrywide Homes Loans, Inc.
Sandy Shatz, Esq.
SVP, Asst. General Counsel
5220 Las Virgenes Rd. Mail Stop AC-11
Calabasas, CA 91302

Steyer, Lowenthal, Boodrookas,
Alvarez & Smith, LLP
Carlos Alvarez, Esq.
One California Street, Third Floor
San Francisco, CA 94111

Nicolas Dauiso, Esq.
Robinson Tait, PS
616 First Ave., Suite 550
Seattle, WA 98104

Mark D. Peterson, Esq.
Frank J. Riebli, Esq.
Farella Braun-Martel, LLP

Russ Building-235 Montgomery St.
San Francisco, CA 94104

Mark D. Peterson, Esq.
Frank J. Riebli, Esq.
Farella Braun-Martel, LLP
Russ Building-235 Montgomery St.
San Francisco, CA 94104