NINA M. PATANE, Esq. (SBN 157079)
SERGIO H. PARRA, Esq. (SBN 247682)
PATANE · GUMBERG, LLP
Attorneys at Law
4 Rossi Circle, Suite 231
Salinas, California 93907
Telephone: (831) 755-1461
Facsimile: (831) 755-1477

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN JOSE)

| | |
|---|---|
| **BERENICE GONZALEZ AND JOSE URTIZ, JORGE AGUIRRE, ELEAZAR BECERRA AND ROCIO BECERRA, J. GUADALUPE CONTRERAS AND TERESA CONTRERAS**, all individually and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>**VCH SALINAS I LLC** dba **VALLEY COMMUNITY HOMES** and as **MONTE BELLA REALTY, NORM YOP INC. REALTORS** dba **MONTE BELLA REALTY, MONICA FARANDA** dba as **MONTE BELLA REALTY, UNIVERSAL MORTGAGE & SALES INC., IRA MORTGAGE & HOME SALES, INC., AMERICAN PACIFIC MORTGAGE CORP.** dba as **CREATIVE MORTGAGE, OLD REPUBLIC TITLE CO., COUNTRYWIDE HOME LOANS INC. dba AMERICA'S WHOLESALE LENDER, COUNTRYWIDE FINANCIAL CORP., NEW CENTURY MORTGAGE CORP., HOMEQ SERVICING CORP., CAMERON FINANCIAL GROUP INC., WELLS FARGO BANK**, and **DOES 1 TO 100**, inclusive,<br><br>Defendants. | CASE NO. CV 07 05698 JW<br><br><br>**DECLARATION OF SERGIO PARRA IN OPPOSITION OF DEFENDANT COUNTRYWIDE HOME LOANS, INC. AND COUNTRYWIDE FINANCIAL CORP.'S MOTION TO DISMISS OR ALTERNATIVELY, IN SUPPORT OF MOTION TO STRIKE** |

1

I, SERGIO H. PARRA declare as follows:

1.   I am an attorney licensed to practice before all the courts of the State of California, and a associate with the law firm of Patane · Gumberg, LLP, attorneys of record for plaintiffs BERENICE GONZALEZ AND JOSE URTIZ, JORGE AGUIRRE, ELEAZAR BECERRA AND ROCIO BECERRA, J. GUADALUPE CONTRERAS AND TERESA CONTRERAS, in this action.

2.   I make this declaration in support of Plaintiff's Opposition to Defendant COUNRTYWIDE HOME LOANS, INC., COUNTRYWIDE FINANCIAL CORP.'S (hereinafter referred to as (Countrywide") Motion To Dismiss And In The Alternative, Motion To Strike.

3.   Attached hereto as Exhibit 1 is a true and correct copy of the Plaintiffs' First Amended Complaint.

4.   From my understanding, Defendant Countrywide's Response to Plaintiffs' complaint was due on January 8, 2008. I am unsure what Defendant Countrywide believes that the due date was. However, when this office contacted Countrywide's office for a response on January 16, 2008, we were subsequently informed that Countrywide knew it was late and they would be filing a motion to dismiss regardless.  Defendant's responsive pleading was received late on January 18, 2008.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: February 2̲9̲, 2007        PATANE • GUMBERG, LLP

By:   _____
       SERGIO H. PARRA
       NINA M. PATANE
       Attorneys for Plaintiffs

2

# EXHIBIT 1

EXHIBIT ____

NINA M. PATANE, Esq. (SBN 157079)
SERGIO H. PARRA, Esq. (SBN 247682)
PATANE · GUMBERG, LLP
Attorneys at Law
4 Rossi Circle, Suite 231
Salinas, California 93907
Telephone:  (831) 755-1461
Facsimile:  (831) 755-1477

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN JOSE)

| | |
|---|---|
| BERENICE GONZALEZ AND JOSE URTIZ, JORGE AGUIRRE, ELEAZAR BECERRA AND ROCIO BECERRA, J. GUADALUPE CONTRERAS AND TERESA CONTRERAS, all individually and on behalf of the general public,<br><br>        Plaintiffs,<br><br>v.<br><br>VCH SALINAS I LLC dba VALLEY COMMUNITY HOMES and as MONTE BELLA REALTY, NORM YOP INC. REALTORS dba MONTE BELLA REALTY, MONICA FARANDA dba as MONTE BELLA REALTY, UNIVERSAL MORTGAGE & SALES INC.,  IRA MORTGAGE & HOME SALES, INC., AMERICAN PACIFIC MORTGAGE CORP.  dba as CREATIVE MORTGAGE, OLD REPUBLIC TITLE CO., COUNTRYWIDE HOME LOANS INC. dba AMERICA'S WHOLESALE LENDER, COUNTRYWIDE FINANCIAL CORP., NEW CENTURY MORTGAGE CORP.,  HOMEQ SERVICING CORP., CAMERON FINANCIAL GROUP INC., WELLS FARGO BANK, and DOES 1 TO 100, inclusive,<br><br>        Defendants. | CASE NO. C07 05698 PVT<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY RELIEF; DEMAND FOR JURY TRIAL** |

I. INTRODUCTION

1

1.    The consequences of abusive and predatory real estate practices the past few years is now hitting California's families with financial devastation and their communities with impunity. The developing consensus is that the historically targeted groups of minorities, women and the elderly are now disproportionately facing the brutal effects of today's developing housing recession. Curbing Predatory Home Mortgage Lending (June 2000), U.S. Dept. of Housing and Urban Development and Treasury Task Force on Predatory Lending (referred to as "HUD report"), pg. 4.

2.    In 2000, a seminal report released by the U.S. Department of Housing and Urban Development warned of the very same contemporary manifestations of predatory lending and abusive sales practices that is now hitting these same groups. In this report, HUD released a new definition of 'predatory lending' as the "deception or fraud, manipulation of borrowers through aggressive sales tactics, or taking unfair advantage of a borrower's lack of understanding of the terms." HUD report, page 1. Often, the report stated, "these practices are most often coupled with the deceptive or high-pressure sales tactics of unscrupulous *mortgage brokers*, home improvement contractors, *realtors/developers* or lenders themselves." Id. at 24, *Emphasis* added.

3.    Creating a definitive list of predatory lending is "problematic" because "any list of predatory practices is destined to be incomplete because bad actors are constantly developing new abusive practices, sometimes to evade new government regulation." HUD report, page 17. Indeed, predatory sales practices are made far worse by "brokers and lenders that negotiate in the borrower's primary language, but then press borrowers to sign English only documents that borrowers cannot read." Who Really gets Higher-Cost Loans? Home Loan Disparities by Income, Race, Ethnicity of Borrowers and Neighborhoods in 14 California Communities in 2005. (December 2006), California Reinvestment Coalition (hereafter "CRC Report") Page 29.

4.    In particular, Latinos as the largest ethnic group in California, representing approximately 35% of the population, are now facing the brunt of the effects of the growing housing turmoil in the state. When adjusted for income, upper income Latinos were three times more likely than upper income whites to be issued a high-cost loan when purchasing a home. Foreclosure Exposure: A study of racial and income disparities in home mortgage lending in 172 cities by ACORN Fair Housing, September 5, 2007. Statewide, Latinos were three times more likely than

2

whites to be issued a high-cost home purchase loan. CRC Report, Page 11. In California, an astonishing 50.8% of home purchase loans to Latinos borrowers were higher cost compared to 16.8% for white borrowers. CRC Report, Page 11. The numbers in Salinas are not much better with a 46.4% of home purchase loans to Latinos being higher cost purchase loans. Id. at 18.

5. Another relevant fact is that "cities that are located in rural areas [of California] had the greatest incidence of higher-cost lending." CRC Report, Page 4. For all borrowers, 29.2% of all first-lien loans in Salinas were higher-cost loans compared to urban areas such as San Francisco where 9.7% of loans were higher-cost. Id. at 15.

6. It is then no surprise that Salinas, CA, with a 64% Hispanic population, now ranks as the 22nd most overinflated housing market out of the largest 330 cities in the entire United States. House Prices in America (September 2007) A Global Insight / National City Corporation Joint Venture, page B-1.

7. It is also no wonder why residential foreclosure in California has surged to its highest level in many years with rural areas with large Latino populations now facing over 100% increases in notices of default. CRC Report, Page 4. For Monterey County (including Salinas), there has been an approx. 270% increase in notices of default in the second quarter of 2007 over last year. California Foreclosure Activity Continues to Rise (July 24, 2007) DataQuick Information Systems.

8. Due to the abusive tactics jointly employed by Defendants in creating this unprecedented quagmire, it is clear how Plaintiffs, as Spanish-speaking Latino borrowers in Salinas, have ended up next in line to face foreclosure.

## II. JURISDICTION AND VENUE

9. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §1331 in that the claims alleged herein arise under the laws of the United States. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 to hear and determine Plaintiffs' state law claims because those claims are related to Plaintiffs' federal claims and arise out of a common nucleus of related facts and form part of the same case or controversy under Article III of the United States Constitution.

10. The Court has jurisdiction over plaintiffs' action for declaratory relief pursuant to 28 U.S.C. §2201 and Rule 57 of the Federal Rules of Civil Procedure and is authorized to order

3

1   injunctive relief by 28 U.S.C. §2203 and Rule 65 of the Federal Rules of Civil Procedure.

2      11.  Venue is proper in the Northern District of California pursuant to 28 U.S.C. §1391(b)(2)

3   because the unlawful conduct that gave rise to these claims occurred within the Northern District

4   of California.

5                            **III. INTRADISTRICT ASSIGNMENT**

6      12.  Intradistrict assignment in San Jose, California is proper because the unlawful conduct that

7   gave rise to these claims occurred in Monterey County.

8                                 **IV. PARTIES**

9                                 **Plaintiffs**

10      13.  Plaintiffs BERENICE GONZALEZ and JOSE URTIZ are married Hispanic individuals

11   tracing their national origin to Mexico (hereafter referred to as "GONZALEZ-URTIZ."). At all

12   relevant times alleged herein, BERENICE GONZALEZ and JOSE URTIZ are both over the age of

13   18 and residents of Monterey County.

14      14.  Plaintiff JORGE AGUIRRE is a Hispanic individual tracing his national origin to Mexico

15   (hereafter referred to as "AGUIRRE.") At all relevant times alleged herein, JORGE AGUIRRE

16   was over the age of 18 and a resident of Monterey County.

17      15.  Plaintiffs ELEAZAR BECERRA and ROCIO BECERRA are married Hispanic

18   individuals tracing their national origin to Mexico (hereafter referred to as "BECERRA."). At all

19   relevant times alleged herein, ELEAZAR BECERRA and ROCIO BECERRA are both over the

20   age of 18 and residents of Monterey County.

21      16.  Plaintiffs J. GUADALUPE CONTRERAS and TERESA CONTRERAS are married

22   Hispanic individuals tracing their national origin to Mexico (hereafter referred to as the

23   "CONTRERAS."). At all relevant times alleged herein, J. GUADALUPE CONTRERAS and

24   TERESA CONTRERAS are both over the age of 18 and residents of Monterey County.

25      17.  At all relevant times alleged in the Complaint, Plaintiffs spoke a nominal amount of

26   English and cannot competently read or write in the English language. Accordingly, all

27   communications alleged in this complaint occurred in the Spanish language, except where noted

28   otherwise.

FIRST AMENDED COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF & DECLARATORY RELIEF; DEMAND FOR
JURY TRIAL

## Home Developer and Agents

18.  Plaintiffs are informed and believe that at all relevant times that Defendant VCH SALINAS I LLC is a California limited liability company qualified to do business in the State of California and that regularly conducts business with Monterey County residents (hereafter jointly referred to as "VALLEY"). VALLEY also does business as Valley Community Homes and Monte Bella Realty. VALLEY's business involves the marketing, developing, constructing and selling of residential homes in east Salinas, CA including the homes sold to Plaintiffs.

19.  Plaintiffs are informed and believe that at all relevant times that Defendant NORM YOP INC. REALTORS is a California corporation qualified to do business in the State of California and regularly does such business as Monte Bella Realty with Monterey County residents (hereafter referred to as "YOP"). YOP's business involves the marketing, developing, constructing and selling of residential homes in east Salinas, CA including the homes sold to Plaintiffs.

20.  Plaintiffs are informed and believe that at all relevant times that Defendant MONICA FARANDA is a licensed California broker doing business as Monte Bella Realty with Monterey County residents (hereafter referred to as "FARANDA"). Plaintiffs are informed and believe that FARANDA's business activities includes marketing, developing, constructing and selling of residential homes in east Salinas, CA and that such services were provided to all Plaintiffs.

21.  Plaintiffs are informed and believe that at all relevant times that Defendant OLD REPUBLIC TITLE CO. is a licensed California corporation doing business with Monterey County residents (hereafter referred to as "OLD REPUBLIC"). Plaintiffs are informed and believe that OLD REPUBLIC's business activities involves providing settlement services for Monterey County residents and that such services were provided to Plaintiffs.

## Individual Brokers and Lenders

22.  Plaintiffs are informed and believe that at all relevant times mentioned in this complaint, Defendant UNIVERSAL MORTGAGE & SALES INC. is a licensed California corporation doing business with Monterey County residents (hereafter referred to as "UNIVERSAL"). UNIVERSAL's business activities includes the brokerage of residential real estate mortgage loans and representation of borrowers in residential real estate transactions. UNIVERSAL provided

5

1   these services to Plaintiffs GONZALEZ-URTIZ.

2        23.   Plaintiffs are informed and believe that at all relevant times, Defendant

3   COUNTRYWIDE HOME LOANS INC. is a New York corporation that is licensed to business in

4   California. COUNTRYWIDE HOME LOANS INC. does such business with Monterey County

5   residents as 'America's Wholesale Lender' (hereafter referred to as "COUNTRYWIDE").

6   COUNTRYWIDE's business activities includes the origination, acquisition and/or servicing of

7   loans to borrowers in residential real estate transactions and such services were provided to

8   Plaintiffs GONZALEZ-URTIZ. On information and belief, COUNTRYWIDE FINANCIAL

9   CORP. is the alter ego, successor, trustee, financer and/or sponsor of COUNTRYWIDE HOME

10  LOANS INC.'s business activities.

11       24.   Plaintiffs are informed and believe that at all relevant times, Defendant AMERICAN

12  PACIFIC MORTGAGE CORP. is a licensed California corporation doing business as

13  CREATIVE MORTGAGE with Monterey County residents (hereafter referred to as

14  "CREATIVE"). CREATIVE's business activities include the brokerage of residential real estate

15  mortgage loans and representation of borrowers in residential real estate transactions. These

16  services were provided to Plaintiff AGUIRRE by CREATIVE.

17       25.   Plaintiffs are informed and believe that at all relevant times, Defendant NEW CENTURY

18  MORTGAGE CORP. is a licensed California corporation doing business with Monterey County

19  residents (hereafter referred to as "NEW CENTURY"). Plaintiffs are informed and believe that

20  NEW CENTURY's business activities included the origination, acquisition and/or servicing of

21  loans to borrowers in residential real estate transactions. NEW CENTURY provided these

22  services to Plaintiff AGUIRRE. Plaintiffs are informed and believe that New Century sold the

23  AGUIRRE first loan to Defendant HOMEQ SERVICING CORP. (hereafter referred to as

24  "HOMEQ") and the second lien loan to COUNTRYWIDE.    On information and belief,

25  HOMEQ's business activities includes the origination, acquisition and/or servicing of loans to

26  borrowers in residential real estate transactions. Both COUNTRYWIDE and HOMEQ

27  SERVICING are liable to the extent that they acquired, conspired to acquire and/or service

28  AGUIRRE's loans with terms and disclosures that they had notice were illegal and/or unfair as

6

1  specifically alleged herein.

2      26.  Plaintiffs are informed and believe that at all relevant times, Defendant IRA MORTGAGE

3  & HOME SALES, INC. is a licensed California corporation doing business with Monterey County

4  residents (hereafter referred to as "IRA").  IRA's business activities included the brokerage of

5  residential real estate mortgage loans and representation of borrowers in residential real estate

6  transactions and that such services were provided to Plaintiffs BECERRA.

7      27.  Plaintiffs are informed and believe that at all relevant times, Defendant CAMERON

8  FINANCIAL GROUP INC. is a licensed California corporation doing business with Monterey

9  County residents (hereafter referred to as "CAMERON").  CAMERON's business activities

10  includes the origination, acquisition and/or servicing of loans to borrowers in residential real estate

11  transactions and such services were provided to Plaintiffs BECERRA.

12      28.  Plaintiffs are informed and believe that at all relevant times, Defendant WELLS FARGO

13  BANK is a national bank that is licensed as a California corporation to do business with Monterey

14  County residents (hereafter referred to as "WELLS").  Plaintiffs are informed and believe that

15  WELLS' business activities origination, acquisition and/or servicing of loans to borrowers in

16  residential real estate transactions and that such services were provided to Plaintiffs

17  CONTRERAS.

18      29.  For all purposes, any and all statute of limitations period were equitably tolled or

19  otherwise delayed, until Plaintiffs first became aware of facts constituting the tortuous and illegal

20  conduct of Defendants after being informed of such issues by their attorneys in September 2007.

21  Furthermore, each Defendant prevented Plaintiffs from becoming aware of Defendants' tortuous

22  and illegal conduct when it provided English documents knowing that Plaintiffs did not

23  competently read in English and failing to otherwise adequately disclose the material facts

24  underlying their home purchases and loans. In addition, Defendants made various material

25  misrepresentations in Spanish that differed than the English documents – which could not be

26  discovered until the effects of the toxic transactions arose to cause them to seek help.

27      30.  The true names and capacities of DOES 1 through 100 are currently unknown to Plaintiffs

28  who allege DOES 1 through 100 are responsible in some manner for the injuries sustained by all

7

FIRST AMENDED COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF & DECLARATORY RELIEF; DEMAND FOR
JURY TRIAL

plaintiffs as hereinafter alleged. Plaintiffs request leave to file amendments to this complaint in order to allege the true names and capacities of DOES 1 through 100 when the same has been ascertained.

31.   At all relevant times alleged herein, all of the Defendants were agents, servants and employees of each other and were acting within the scope of such agency or employments while engaged in the acts, omissions and other conduct alleged in the complaint, or the alleged acts, omissions and other conduct of each defendants were subsequently ratified or adopted by the other defendants. Moreover, each defendant was and is the subsidiary, joint venturer, partner, member, associate, co-conspirator, and/or representative of each other defendant, and all of the things alleged to have been done by the partnership, membership, association, conspiracy, or representative relationship was with the knowledge and consent of their respective principals, employers, parent corporations, partners, members, associates, co-conspirators or representatives. On information and belief, Defendants, and each of them, committed acts in furtherance of a scheme to defraud Plaintiffs and the general public.

## V. FACTS

### Initial Contact with Developer and Agents

32.   Starting in and about October 2005, Plaintiffs first became aware of new homes being developed at the "Tuscany at Monte Bella" development in Salinas. The Tuscany at Monte Bella community is part of a 200-acre development located in east Salinas, CA that is jointly developed and marketed by VALLEY, YOP and FARANDA. Around this time, Defendants VALLEY, YOP and FARANDA embarked on a massive local area marketing campaign in English and Spanish including television, print advertising, Internet, signage, 'word of mouth' marketing to local real estate professionals and other advertising. In its Spanish advertising, VALLEY, YOP and FARANDA invited Spanish-speaking homebuyers to visit their sales offices for more information.

33.   In its advertising, Defendants VALLEY, YOP and FARANDA describe Tuscany at Monte Bella as "a master-planned community of uncompromising quality" and used the marketing slogan of " A Lifestyle You Deserve." The Tuscany at Monte Bella development includes home models ranging from approx. 1800 square feet to appox. 3000 square feet. Although not disclosed as part

8

of its public advertising, Plaintiffs would later find out that the prices of the homes in October 2005 ranged from $660,000 to $809,000. Despite this pricing, however, Defendants also described the Monte Bella community as a "hoome[sic] for families of all sizes and income levels."

34.   Starting in and about October 2005, Plaintiffs were enticed enough to visit the sales offices set up at the Tuscany at Monte Bella Development to get more information. Plaintiffs describe a party-like atmosphere with balloons, prizes, raffles and sales people with nice flashy marketing materials showing the model homes. At all times, Defendants VALLEY, YOP and FARANDA and its sales agents spoke only Spanish with each of the Plaintiffs. It was at that point, however, that Plaintiffs discovered that Defendants VALLEY, YOP and FARANDA did not have the advertised homes built yet and were only arranging advanced payments that would allow the buyers to be first in line as the homes became built.

35.   Each of the Plaintiffs were told by Defendants VALLEY, YOP and FARANDA's agents that "the homes were great investments" that "would only go up in pricing and value." When asked why, Defendants VALLEY, YOP and FARANDA expressed the notion that since the general market did not set their prices, but that they did, that therefore there was no risk.   On several occasions, Defendants VALLEY, YOP and FARANDA promised that they were so confident of that the prices would only go up that they offered a '105% guarantee-option.' Defendants VALLEY, YOP and FARANDA explained that if Plaintiffs were ever to become unhappy for any reason with their purchases within the first two years, Plaintiffs had the option of informing Defendants of their wishes to sell in writing and VALLEY, YOP and FARANDA would buy the homes back for the purchase price plus 5%.

36.   Although the homes were not ready,  Defendants VALLEY, YOP and FARANDA showed prospective buyers plans, pictures, drawings and  other materials in order to allow them pre-select their preferred model along with its various upgrades and its location. Interestingly enough, all of the documents or brochures shown to Plaintiffs were in English despite the fact that its outside advertising such as its professional television ads were in Spanish.  At their first visits and subsequently, Plaintiffs started to select their 'dream homes' at Tuscany at Monte Bella.

37.   It was until the end of the home selection process, that Plaintiffs were given their final

pricing quote. Although surprised at the final pricing of their homes, Plaintiffs were told that they could easily arrange 100% financing for them through their preferred lenders. Defendants VALLEY, YOP and FARANDA also told Plaintiffs that it didn't matter what loan they chose because the homes would go up and "they could always refinance later." Plaintiffs were told by VALLEY, YOP and FARANDA that since the demand was so great, that they would be required to make multiple 1% advanced payments to purchase one of their homes.

38.    On or about October 21, 2005, Plaintiffs GONZALEZ and URTIZ, returned to the sales office in order to finalize their pricing and to leave their first 1% payment. Plaintiffs GONZALEZ and URTIZ arrived to the sales office late in the day after getting out of work that day. Plaintiffs GONZALEZ and URTIZ were told by FARANDA that they needed to just sign a contract before they left in order to ensure their home could be built as soon as possible. At that point, FARANDA told GONZALEZ and URTIZ that despite the fact that the lengthy contracts were in English, that she would translate what they "needed to know" in a few minutes as it was already late that day and she had people waiting. After explaining the pricing on the first page and the payment plan, FARANDA continued to go through the sales contract at a quick pace to point out where GONZALEZ and URTIZ should place their initials. Feeling pressured, Plaintiffs made sure to ask where the 105% guarantee was written and FARANDA pointed out the clauses supposedly providing the option. On information and belief, Defendants VALLEY and YOP grossly misrepresented in Spanish every material clause and page where any initials were required. Relying once again on VALLEY, YOP and FARANDA's representations, GONZALEZ and URTIZ quickly signed the contracts and left.

39.    Defendant VALLEY, YOP and FARANDA's fraudulent conduct continued as Plaintiffs GONZALEZ and URTIZ made a series of payments to VALLEY, YOP and FARANDA until the selected closing date occurred sometime after March 2006. Plaintiffs tendered a notice of rescission and request to effectuate the 105 % guarantee as promised by Defendants in October 2007 which was rejected.

40.    In the fall of 2005, Plaintiffs ROCIO and ELEAZAR BECERRA arrived to Monte Bella sales office to also finalize their purchase. Immediately, Plaintiffs ROCIO and ELEAZAR

10

BECERRA were sat down and told to start signing a pre-prepared contract and initial the contract on the bottom of each page and wherever else indicated. When arriving to page 13, a sales agent for VALLEY, YOP and FARANDA highlighted the clause where the supposed 105% term existed and further described that it would become effective upon Plaintiff's written request. On information and belief, Defendants VALLEY and YOP also grossly misrepresented in Spanish every clause and page where initials were required. Instead, Plaintiffs were told that they should feel happy because of the wise investment they had made in buying one of their homes.

41. Defendant VALLEY, YOP and FARANDA's fraudulent conduct continued as Plaintiffs BECERRA made a series of payments to VALLEY, YOP and FARANDA until the closing date occurred sometime after January 2006. Furthermore, Plaintiffs tendered a notice of rescission and request to effectuate the 105 % guarantee as promised by Defendants in October 2007 which was also rejected.

42. On or about October 22, 2005, Plaintiffs TERESA and J. GUADALUPE CONTRERAS also arrived to Monte Bella sales office to review documents. Immediately, Plaintiffs TERESA and J. GUADALUPE CONTRERAS were told to start signing a pre-prepared contract and initial the contract on the bottom of each page and wherever else indicated. On information and belief, Defendants VALLEY and YOP grossly misrepresented every clause and page where any non-footer initials were required. Plaintiffs remember that the '105%' guarantee was discussed, but not expanded beyond than their initial time(s) the term was explained by VALLEY and YOP. The entire discussion was in Spanish and at no point, was any meaningful translation ever given.

43. Defendant VALLEY, YOP and FARANDA's fraudulent conduct continued as Plaintiffs CONTRERAS made a series of payments to VALLEY, YOP and FARANDA until the closing date occurred sometime after January 2006. Plaintiffs also tendered a notice of rescission and request to effectuate the 105 % guarantee as promised by Defendants in October 2007 that was rejected.

44. On or about February 11, 2006, Plaintiff JORGE AGUIRRE executed the purchase agreement. This time without any explanation, Plaintiffs JORGE AGUIRRE sat and waited until FARANDA arrived with a pre-prepared contract. FARANDA quickly told Plaintiff where to sign

11

and initial the contract as each page was turned with the entire process lasting less than ten minutes. On information and belief, Defendants VALLEY and YOP grossly misrepresented every clause and page where any initials were required. VALLEY and YOPs' sales agent just robotically pointed to the places where his signature was required including the location of the '105% guarantee.' Again, the entire conversation was in Spanish and at no point, was any meaningful translation provided.

45. Defendant VALLEY, YOP and FARANDA's fraudulent conduct continued as Plaintiff AGUIRRE made a series of payments to VALLEY, YOP and FARANDA until the closing date occurred sometime after April 2006. Furthermore, Plaintiffs tendered a notice of rescission and request to effectuate the 105 % guarantee as promised by Defendants in October 2007 which was rejected.

46. On information and belief, when all Plaintiffs asked to sign the Real Estate Disclosure form, each of them were told by VALLEY, YOP and FARANDA that the disclosure form only confirmed to them that there was "no need" for a buyers agent. In addition, VALLEY, YOP, FARANDA and OLD REPUBLIC never adequately explained the financial relationships between the various parties or their right to seek another settlement agent. Rather, VALLEY, YOP and FARANDA simply told them that 'all buyers were required' to use Defendant OLD REPUBLIC TITLE CO. as the escrow agent. Furthermore, OLD REPUBLIC hid the material terms of the transaction undertaken; charged excessive fees and costs for its services and failed to otherwise act competently as a settlement agent. Upon information and belief, OLD REPUBLIC failed to disclose the things of value exchanged with VALLEY, YOP and FARANDA for its repeat business.

47. Subsequently to signing the purchase contracts and leaving a 1% payment, each of the Plaintiffs sought financing.

### Plaintiffs Seek Financing

48. On or about February 2006, Plaintiffs GONZALEZ and URTIZ contacted Defendant UNIVERSAL MORTGAGE to arrange financing of their new home. Not being able to read and/or fully understand English, Plaintiffs GONZALEZ and URTIZ were pleased to find a

12

1  Spanish-speaking agent at UNIVERSAL to find them a loan. On information and belief,

2  UNIVERSAL advertised its services in Spanish in Monterey County. All of the conversations

3  were in Spanish and at no point, was any meaningful translation given by UNIVERSAL or

4  COUNTRYWIDE. Despite their credit history and wishes to get the best loan possible,

5  UNIVERSAL placed them in two COUNTRYWIDE loans with a 1-year adjustable rate mortgage

6  as their first loan and an additional high interest rate loan as the second. On information and belief,

7  Plaintiffs thought COUNTRYWIDE would be a good match because it was also recommended by

8  VALLEY, YOP and FARANDA. Moreover, UNIVERSAL failed to adequately disclose the loan

9  terms, costs, commissions and fees being charged to close the loans and instead assured them that

10  this loan package was the best they could get. None of the loan documents subsequently signed in

11  March 2006 were in Spanish.

12    49.  In late fall 2005, Plaintiffs ROCIO and ELEAZAR BECERRA first contacted Defendant

13  IRA MORTGAGE which they learned about through its Spanish language advertising. Plaintiffs

14  ROCIO and ELEAZAR BECERRA also spoke with a Spanish speaking broker who subsequently

15  placed them in loans with CAMERON FINANCIAL. All of the conversations were in Spanish

16  and at no point, was any meaningful translation given by IRA or CAMERON. Despite their credit

17  history and need for a good loan, IRA arranged two CAMERON loans with the first loan a 1-year

18  adjustable rate mortgage and the second loan, a high interest rate loan. IRA's agents never

19  explained any material loan terms, commissions and costs associated with the loans except the

20  'points' to be charged. None of the loan documents subsequently signed in April 2006 were in

21  Spanish.

22    50.  In late 2005, Plaintiffs TERESA and J. GUADALUPE CONTRERAS sought to get a loan

23  directly with WELLS FARGO because they felt it was a reputable national bank that they were

24  familiar with and knew offered its lending services in Spanish. As such, Plaintiffs TERESA and J.

25  GUADALUPE CONTRERAS inquired with WELLS FARGO about getting a loan for their Monte

26  Bella purchase. All of the conversations were in Spanish and at no point, was any meaningful

27  translation given by WELLS FARGO. Despite their credit history and need for a good loan,

28  WELLS FARGO placed them into a 5-year adjustable rate mortgage with a possibility of the

interest-rate doubling on recast. WELLS FARGO's agents never adequately explained any material terms of the loan. Moreover, none of the loan documents subsequently signed in January 2006 were in Spanish.

51. In January 2006, Plaintiff JORGE AGUIRRE pursued a loan with CREATIVE MORTGAGE partially because of their advertised ability to offer services in Spanish. All of the conversations were in Spanish and at no point, was any meaningful translation given by WELLS FARGO. Initially impressed with CREATIVE's speed in getting him approved for a loan, CREATIVE assured Plaintiff AGUIRRE that the first and second loan combination from NEW CENTURY were the best loans he could afford based upon his credit and income history. Specifically, the first loan from NEW CENTURY was a 2-year adjustable rate mortgage with a high interest cap and a second loan with a high interest rate. CREATIVE failed to adequately disclose the costs, commissions and fees being charged to close the loans along the key aspects of the loan terms. Moreover, none of the loan documents subsequently signed in May 2006 were in Spanish.

### Closing of Purchases

52. On the day of each of their respective closing dates, each of the Plaintiffs were sent to the same person at OLD REPUBLIC by Defendants VALLEY, YOP and FARANDA to close their respective transactions. At all times, OLD REPUBLIC advertised its Spanish services and conducted its communications with Plaintiffs in Spanish. On information and belief, OLD REPUBLIC failed to disclose its relationship with Defendants VALLEY, YOP and FARANDA and/or inform Plaintiffs of their right to seek an independent settlement agent. Taking advantage of its position, OLD REPUBLIC failed to provide an adequate disclosure of Plaintiff's rights in their respective purchases from Defendants VALLEY, YOP and FARANDA. Moreover, OLD REPUBLIC also failed to disclose the fees and charged excessive fees and costs for its services. Lastly, OLD REPUBLIC knew and failed to report and correct the tortuous conduct of other actors and furthermore, failed to discharge its obligations to Plaintiffs under the law. Up to the time of closing, Defendants VALLEY, YOP and FARANDA continued to fraudulently conceal these material facts from Plaintiffs.

53.  Subsequently to completing the purchases of its homes, Plaintiffs continued to experience additional discriminatory treatment by Defendants VALLEY, YOP and FARANDA. For example, Plaintiffs' concerns regarding the quality of workmanship, safety and other material concerns were often met with sarcastic and discriminatory responses by VALLEY, YOP and FARANDA's staff. In addition, on information and belief, VALLEY, YOP and FARANDA and their agents on multiple occasions in 2007 attempted to intimidate and prevent Plaintiffs from exercising its rights under the law.

54.  As the result of aforementioned treatment and violations of the law, each of the Plaintiffs are now unable to afford the homes they worked so hard to purchase. With homes now being dumped onto the market at basement prices by VALLEY, YOP and FARANDA, Plaintiffs are now unable to sell their homes even at the prices they paid for them. VALLEY, YOP and FARANDA also have refused to purchase the homes for 105%  as promised in Spanish on the basis of the actual, written meaning of this clause in English. Making things worse, Plaintiff are now stuck in subprime adjustable rate mortgages, with interest only and/or negative amortization terms that are vastly higher in cost than originally understood. Indeed, each of the Plaintiffs is now considering foreclosure and possible bankruptcy to forestall complete devastation of their financial livelihood. The stress and emotional harm caused by the Defendants has taken a toll on these Plaintiffs and their children. Having no other options to salvage what remains of their financial livelihood, Plaintiffs are now forced to bring this suit.

## VI. INJURIES

55.  Each of the Plaintiffs purchased their homes from VALLEY, YOP and FARANDA for the following amounts constituting a portion of their damages:

    a.  Jorge G. Aguirre        $718,117.00

    b.  Eleazar Becerra & Rocio Becerra,  $786,498.00

    c.  J. Guadalupe and Teresa Contreras  $713,815.00

    d.  Jose Urtiz & Berenice Gonzalez    $755,490.00

56.  Each of the Plaintiffs made a series of 1% advance payments and one lump-sum payment

to Defendants VALLEY, YOP and FARANDA. Specifically, the total amount of these payments total as follows:

    a. Jorge G. Aguirre                 $71,812.00

    b. Eleazar Becerra & Rocio Becerra,   $86,001.65

    c. J. Guadalupe and Teresa Contreras  $141,758.00

    d. Jose Urtiz & Berenice Gonzalez     $74,429.00

57.  Each Plaintiff took out harmful first-lien adjustable rate mortgages. With exception to the CONTRERAS, Plaintiffs were also given predatory second loans with high interest rates. Each of the loans taken by Plaintiffs has caused serious financial harm to each of them in an amount to be ascertained at trial.

58.  Each of the Plaintiffs paid lender fees, settlement charges, title charges and other closing costs that were excessive and illegal.

59.  With the exception of Plaintiffs TERESA and J. GUADALUPE CONTRERAS, each of the remaining Plaintiffs paid excessive broker fees, yield spread premiums and other commissions that were excessive and illegal.

60.  On information and belief, each of the Plaintiffs has suffered ongoing emotional stress with physical manifestations.

61.  Each of the Plaintiffs now faces a negative credit report, foreclosure and possibly bankruptcy due to their inability to pay their loans.

## VII. CLAIMS

### CLAIM ONE
**Fair Housing Act – 42 U.S.C. §3601 Et Seq.**
**(Plaintiffs against each Respective Defendant except HOMEQ)**

62.  Plaintiffs incorporate each and every preceding paragraph stated above, inclusive, as though the same were fully set herein.

63.  The Fair Housing Act, 42 U.S.C. §3601 et seq. was first enacted in 1968 to prohibit discrimination in connection with real estate transactions, including home purchases and financing. The Act prohibits businesses related to residential real estate from discriminating against any person in the terms and conditions, including the lack of disclosure thereof, because of

16

race, color and/or national origin. Defendants targeted Plaintiffs as Hispanics and because of their national origin in Mexico and/or Latin America. Although Plaintiffs were qualified to get better terms and deserved the receipt of full disclosures of those terms from Defendants, no such treatment was given. Additionally, and in the alternative, Defendants' discrimination against Plaintiffs as non-English speakers was a neutral means to discriminate against Hispanics and persons of national origin in Mexico and/or Latin America.

64. Specifically, Defendants VALLEY, YOP, and FARANDA discriminated against all Plaintiffs in their business practices, extension of credit and the sale of homes. Defendants UNIVERSAL, IRA, CREATIVE, OLD REPUBLIC, COUNTRYWIDE, NEW CENTURY, CAMERON and WELLS discriminated against each of its respective clients in its provision of its services and products related to real estate transactions. Defendants COUNTRYWIDE, NEW CENTURY, CAMERON and WELLS are also otherwise liable for the discriminatory acts of their respective agents.

65. Defendants targeted Plaintiffs for the purchase of overvalued new homes and/or higher cost subprime mortgage loans while other homebuyers, not member of the protected classes, purchased homes and/or received loans on more preferable terms. Defendants' discriminatory treatment of Plaintiffs had a discriminatory and segregative effect and these actions, individually and jointly, were unreasonably harmful under the circumstances.

66. In addition, under the guise of supposedly facially-neutral business practices, Defendants' conduct had a significant discriminatory effect and harsher statistical impact on Plaintiffs compared to other non-protected classes, which was so significant as to amount to intentional discrimination.

67. In addition, Defendants utilized techniques amounting to "reverse-redlining," in that Defendants intentionally targeted Plaintiffs for home purchases and/or loans so that transactions could be made with Plaintiffs on grossly unfavorable terms and without having to make the necessary disclosures.   In the alternative, Defendants continue to sell homes and/or provide loans to other homebuyers on more favorable terms and with full disclosure of those terms.

68. By the actions described above, Defendants have violated 42 U.S.C. §§ 3601, 3604 and

17

3605. Therefore, as a proximate result of Defendants' discriminatory conduct and systematic

violation of this Act, Plaintiffs have suffered damages and now are entitled to the requested relief

requested herein this Complaint.

CLAIM TWO
**Equal Credit Opportunity Act – 15 U.S.C. §1691 et seq.**
**(Plaintiffs against each Respective Defendants except OLD REPUBLIC & HOMEQ)**

69.  Plaintiffs incorporate each and every preceding paragraph stated above, inclusive, as

though the same were fully set herein.

70.  The Equal Credit opportunity Act was first enacted in 1974 as a consumer protection

statute prohibiting discrimination on the issuance of credit. All Defendants, except OLD

REPUBLIC, is a creditor under the definition of 15 U.S.C. §1691(e). Specifically, Defendants

VALLEY, YOP, and FARANDA extended credit to Plaintiffs in the form of a prepayment plan

and in the provision of its homes. Defendants UNIVERSAL, IRA, CREATIVE,

COUNTRYWIDE, NEW CENTURY, CAMERON and WELLS extended credit to its respective

Plaintiffs in the form of home mortgage loans.

71.  Defendants discriminated against each of its respective Plaintiffs on the basis of their

race, color and/or national origin in the terms and conditions, and the lack of disclosure thereof, of

the home purchase and/or mortgage loan contracts.

72.  As a proximate result of Defendants' discriminatory conduct and systematic violation of

this Act, Plaintiffs have suffered damages and are entitled to the requested relief requested herein

this Complaint.

CLAIM THREE
**Racketeer Influenced Corrupt Organizations Act - 18 U.S.C. §1962 et seq.**
**(Plaintiffs Against VALLEY, YOP, FARANDA and OLD REPUBLIC)**

73.  Plaintiffs incorporate each and every preceding paragraph stated above, inclusive, as

though the same were fully set herein.

74.  The purpose of the Racketeer Influenced Corrupt Organizations Act (hereafter "RICO

Act") at 18 U.S.C. §1962 is to prevent racketeers from infiltrating and operating in legitimate

businesses. Upon information and belief, Defendants' conduct constitutes a 'pattern of

18

'racketeering activity' that has caused injury to Plaintiffs in the following manner.

75.   Specifically in civil violation of §1962(c), Defendants engaged in a scheme of fraudulent representations in order to induce Spanish speaking consumers to enter into these transactions without an understanding of their rights for the purpose gaining profits, excessive commissions and fees therefrom.   Moreover, Defendants engaged in a scheme of fraudulent misrepresentations in order to unlawful obtain Plaintiffs' approval of home purchase documents and the approval of other entities such as lenders. This fraudulent scheme employed deceitful advertising, fraudulent misrepresentations and/or the preparation of fraudulent documents against Plaintiffs' rights.

76.   In violating RICO, Defendants committed the predicate offenses of mail fraud under 18 U.S.C. §1341 and of wire, radio, and television fraud under §1343. In pursuing its fraudulent scheme, Defendants utilized U.S. mail and interstate carriers along with interstate telephone lines to discuss and transfer fraudulent documents and marketing materials.

77.   Defendants constitute a coordinated group of entities and/or an enterprise with ongoing operations to defraud unsuspecting homebuyers. First, YOP and FARANDA acted jointly with VALLEY to target unsuspecting Spanish speaking individuals with fraudulent misrepresentations to purchase VALLEY homes. YOP and FARANDA operated its separate real estate businesses to funnel potential customers and business to VALLEY and OLD REPUBLIC in exchange for undisclosed profits and business. After these homebuyers would sign the contracts, VALLEY, YOP and FARANDA would send the fraudulent contracts and documents to OLD REPUBLIC and instruct them to ensure the closing of fraudulent transactions.   At closing, OLD REPUBLIC failed to provide an adequate disclosure of its conflicted role; failed to disclose the fees charged by other entities; charged its own excessive fees and costs for its services and otherwise, failed to report and/or assisted in the tortuous conduct of others.

78.   Defendants continue to engage in the same racketeering business practices and make the same alleged misrepresentations to unsuspecting Spanish speaking individuals in order to operate their ongoing businesses.

79.   In civil violation of §1962(d), Defendants have conspired and agreed to act as partners in a racketeering enterprise in violation of §1962(c).  On information and belief, VALLEY, YOP and

19

FARANDA have agreed in writing and orally to act as joint venturers and partners between themselves and to otherwise, enter into an undisclosed relationship with OLD REPUBLIC to achieve its common purpose of defrauding homebuyers.

80.   As a proximate result of Defendants' violation of this Act, Plaintiffs have suffered damages and now are entitled to the requested relief requested herein this Complaint along with including treble damages and attorneys' fees.

## CLAIM FOUR
### Violation of Real Estate And Settlement Proc. Act, 12 U.S.C. §2601 et seq.
### (Plaintiffs Against Each Respective Defendant, except WELLS)

81.   Plaintiffs incorporate each and every preceding paragraph stated above, inclusive, as though the same were fully set herein.

82.   The Real Estate and Settlement Procedures Act, 12 U.S.C. §2601, as further defined under Regulation X at 24 C.F.R. §3500 et seq., prohibits the receipt of unearned fees and requires the making of certain disclosures in home mortgages. On information and belief, the loans taken out by Plaintiffs are federally-related loans as defined under this law.

83.   As outlined in HUD's *Real Estate Settlement Procedures Act Statement of Policy 2001-1, 66 F.R. 53052,* the yield spread premium is a fee that a broker must be earned before it is collected from the lender for originating a loan. In determining whether such fees were legally earned, a two-part test looks at whether the services charged were actually furnished and whether the charges were related to the value of the services performed.

84.   Specifically Defendant UNIVERSAL received a yield spread premium of approximately $9,065.88 for its work on behalf of Plaintiffs GONZALEZ AND URTIZ. In addition, Defendant IRA received a yield spread premium of approximately $18,089.44 for the BECERRA loans.

85.   Each of these yield spread premiums were excessive, unearned and had a value of zero because UNIVERSAL and IRA:    failed to disclose material terms of the contract; to find the best loan possible for the Plaintiffs; failed to provide Plaintiffs translated documents and/or because they placed Plaintiffs in a loan that they could not afford. The yield spread premiums were also excessive because UNIVERSAL and IRA also received broker fees for its work. Furthermore, the

20

1    yield spread premiums to UNIVERSAL and IRA violated the law because each failed to offer the

2    respective plaintiffs the option of paying a lower amount upfront.

3        86.   In addition, excessive and unearned broker fees were also paid by Plaintiffs. Plaintiffs

4    GONZALEZ-URTIZ paid Defendant UNIVERSAL approximately $3,939.96 in excessive broker

5    fees. For its work on behalf of Plaintiffs BECERRA, Defendant IRA received excessive broker

6    fees of approximately of $1,045. Plaintiff AGUIRRE also paid Defendant CREATIVE an amount

7    of excessive broker fees totaling approximately of $7,736.05.

8        87.   The broker fees had a value of zero because UNIVERSAL, IRA, and CREATIVE:   failed

9    to disclose material terms of the contract; failed to find the best loan possible for the Plaintiffs;

10   failed to provide Plaintiffs translated documents and/or placed Plaintiffs in a loan that each could

11   not afford.  Furthermore, the fees were excessive collected by UNIVERSAL and IRA were

12   excessive because a yield spread premium was collected for the same work performed.

13       88.   Defendants COUNTRYWIDE, CAMERON and NEW CENTURY are also liable as

14   lenders because each should have followed its underwriting and quality assurance standards in

15   reviewing the brokers' actions and documents and furthermore, should have prevented the loans

16   from taking effect when it reviewed the loans. In addition, Defendants COUNTRYWIDE,

17   CAMERON and NEW CENTURY are liable as lenders because each should not have encouraged

18   the brokers to violate the law by paying a grossly excessive yield spread premium kickback and/or

19   should not have trained the brokers to make such loans under the circumstances. On information

20   and belief, COUNTRYWIDE, CAMERON and NEW CENTURY are liable for the collection of

21   additional, excessive and illegal lender fees. Lastly, COUNTRYWIDE, CAMERON and NEW

22   CENTURY are also otherwise liable for the acts of their respective agents.

23       89.   Both COUNTRYWIDE and HOMEQ SERVICING are liable to the extent that they

24   acquired, conspired to acquire and/or service AGUIRRE's loans with terms and disclosures that

25   they had notice were illegal and/or unfair as specifically alleged herein.

26       90.   On information and belief, UNIVERSAL, IRA, CREATIVE, COUNTRYWIDE,

27   CAMERON and NEW CENTURY also violated the law by failing to provide a timely and good

28   faith estimate of costs; to provide a timely and/or accurate HUD-1 Statement and/or for failing to

21

disclose any of its business relationships between each other and other defendants in the lawsuit.

91.  On information and belief, OLD REPUBLIC collected unearned fees and failed to charge reasonable costs to each of the Plaintiffs. In particular, OLD REPUBLIC charged excessive settlement costs that totaled approximately $5,034.00 to Plaintiffs GONZALEZ-URTIZ; approximately $1,087.04 to Plaintiffs BECERRA; approximately $579.57 to Plaintiff AGUIRRE and approximately $479.67 to Plaintiffs CONTRERAS. On information and belief, OLD REPUBLIC also failed to disclose any things of value and/or kickbacks received from other civil conspirators such as VALLEY, FARANDA and YOP in violation of this Act.

92.  As a proximate result of Defendants' violations of this Act, Plaintiffs have suffered damages and now are entitled to damages in an unascertained amount to be proven at trial. Furthermore, under 12 U.S.C. §2607(d), Plaintiffs are entitled to recover from each respective Defendant the amount equal to three times the amount of any and all charges for "settlement services" paid directly or indirectly by plaintiffs, along with any actual damages, costs, attorneys' fees and any other damages allowed under this Act.

**CLAIM FIVE**
**Violation of The Truth In Lending Act, 15 U.S.C §1601 et seq.**
**(Plaintiffs Against Each Respective Defendant**
**except VALLEY, YOP, FARANDA & OLD REPUBLIC)**

93.  Plaintiffs incorporate each and every preceding paragraph stated above, inclusive, as though the same were fully set herein.

94.  The Truth in Lending Act, 15 U.S.C §1601, as further defined under Regulation Z at 12 C.F.R. §226 et seq., require the making of certain disclosures in home mortgages. On information and belief, the loans taken out by Plaintiffs are federally-related loans as defined under this law. Furthermore, Defendants COUNTRYWIDE, CAMERON, NEW CENTURY and WELLS are creditors as defined under the Act.

95.  Defendants COUNTRYWIDE, CAMERON, NEW CENTURY and WELLS violated the Act by failing to provide each of its respective plaintiffs with the required material disclosures under the Act. On information and belief, COUNTRYWIDE, CAMERON, NEW CENTURY and WELLS charged unreasonable fees and/or paid unlawful yield spread premiums to each of the

22

respective Plaintiffs and misallocated these charges to amounts financed instead as disclosed finance charges.

96.  Moreover, Defendants COUNTRYWIDE, CAMERON, NEW CENTURY and WELLS are liable for failing to provide an accurate and timely truth-in-lending statement to each of its respective clients. COUNTRYWIDE, CAMERON and NEW CENTURY and WELLS are also otherwise liable for the acts of their respective agents. Both COUNTRYWIDE and HOMEQ SERVICING are liable to the extent that they acquired, conspired to acquire and/or service AGUIRRE's loans with terms and disclosures that they had notice were illegal and/or unfair as specifically alleged herein.

97.  Furthermore, Defendants UNIVERSAL, IRA and CREATIVE are also liable for the lenders' actions, and its own, in preparing such disclosures and documents in violation of this Act. In addition, Defendants UNIVERSAL, IRA and CREATIVE are liable for collecting grossly excessive commissions and/or kickbacks under the circumstances.

98.  As a proximate result of Defendants' violations of this Act, Plaintiffs are entitled to rescission of the loan contracts of which, on information and belief, Defendants deny this right.

99.  As a proximate result of Defendants' violations of this Act, Plaintiffs have suffered damages and now are entitled to damages in an unascertained amount to be proven at trial. Such damages may include actual damages, statutory damages, disgorgement of profits and principal payments, costs, attorneys' fees and any other damages allowed under this Act.

**CLAIM SIX**
**Violation of the Cal. Civ. Code §1632 et seq.**
**(Plaintiffs Against Each Respective Defendant, except OLD REPUBLIC)**

100. Plaintiffs incorporate each and every preceding paragraph stated above, inclusive, as though the same were fully set herein.

101. Cal. Civ. Code §1632 requires that businesses that negotiate primarily in Spanish with another party deliver documents translated in that language to that party. The purchase contracts made by VALLEY, YOP and FARANDA extended credit to each respective Plaintiff as each were required to make a series of payments over an extended period of time to pay off their homes. The

23

loan contracts entered into by each Plaintiff with each remaining respective Defendant are also subject to this Act.

102. Each Defendant negotiated the loans primarily in Spanish with their respective clients-Plaintiffs without providing any loan documentation in the Spanish language.

103. In addition, COUNTRYWIDE, CAMERON and NEW CENTURY are also liable for their respective agent/broker's actions because as lenders, each should have instructed, trained and/or prevented it agents from making such loans under the circumstances. Both COUNTRYWIDE and HOMEQ SERVICING are liable to the extent that they acquired, conspired to acquire and/or service AGUIRRE's loans with terms and disclosures that they had notice were illegal and/or unfair as specifically alleged herein.

104. By virtue of Cal. Civ. Code §1632(k), Plaintiffs are entitled to rescission of the home purchase contracts and the loan contracts along with equitable restitution from all Defendants. To the extent applicable, this Complaint hereby serves as notice of rescission.

**CLAIM SEVEN**
California Unruh Civil Rights Act – Cal. Govt. Code §51 et seq.
(Plaintiffs against each Respective Defendant except HOMEQ)

105. Plaintiffs incorporate each and every preceding paragraph stated above, inclusive, as though the same were fully set herein.

106. The California Unruh Civil Rights Act also entitles all persons to full and equal accommodations and services from all business establishments regardless of that person's race, color and/or national origin.

107. Defendants VALLEY, YOP, and FARANDA discriminated against all Plaintiffs in their business practices, extension of credit and in the sale of its homes. Defendants UNIVERSAL, IRA, CREATIVE, OLD REPUBLIC, COUNTRYWIDE, NEW CENTURY, CAMERON and WELLS discriminated against each of its respective clients in its provision of its services and products related to real estate transactions. COUNTRYWIDE, CAMERON and NEW CENTURY and WELLS are also liable for the acts of their respective agents. The conduct of Defendants' constitutes a denial of civil rights to housing accommodations and services under Cal. Govt. Code §51 et seq.

24

108.   By the actions described above and herein, and as a proximate result of Defendants' conduct, Plaintiffs have suffered damages and now are entitled to statutory damages under this Act along with the requested relief requested herein this Complaint.

~~CLAIM EIGHT~~
**California Fair Employment and Housing Act – Cal. Govt. Code §12955 et seq.**
**(Plaintiffs against each Respective Defendant except HOMEQ)**

109.   Plaintiffs incorporate each and every preceding paragraph stated above, inclusive, as though the same were fully set herein.

110.   The California Fair Employment and Housing Act at Cal. Govt. Code §12955 also prohibits discrimination in connection with financing assistance, real estate transactions and housing accommodations on the basis of race, color and/or national origin.

111.   Specifically, Defendants VALLEY, YOP, and FARANDA discriminated against all Plaintiffs in their business practices, extension of credit and in the sale of its homes. Defendants UNIVERSAL, IRA, CREATIVE, OLD REPUBLIC, COUNTRYWIDE, NEW CENTURY, CAMERON and WELLS discriminated against each of its respective clients in its provision of its services and products related to real estate transactions. COUNTRYWIDE, CAMERON and NEW CENTURY and WELLS are also otherwise liable for the acts of their respective agents.  The conduct of Defendants' constitutes discrimination under Cal. Govt. Code §12955 et seq.

112.   By the actions described above and herein, and as a proximate result of Defendants' conduct, Plaintiffs have suffered damages and now are entitled to the requested relief requested herein this Complaint.

**CLAIM NINE**
**California Unfair Business Practices Law – Cal. Bus. and Prof. Code §17200 et seq.**
**(Plaintiffs against each Respective Defendant)**

113.   Plaintiffs incorporate each and every preceding paragraph stated above, inclusive, as though the same were fully set herein.

114.   The California Unfair Business Practices Law at Cal. Bus. and Prof. Code §17200 et seq. also prohibits unlawful, unfair or fraudulent business practices along with any unfair, deceptive, untrue or misleading advertising. Plaintiffs allege that Defendants have committed unlawful and

25

unfair business practices along with fraudulent and misleading advertising, which caused them to suffer direct injuries. Moreover, Defendants have engaged in, and continue to engage in, a pattern and practice of unfair business practices prohibited by this law. Such conduct also presents an ongoing harm and threat of harm to the public.

115.    Plaintiffs hereby incorporate by reference all other violations in this complaint that constitute unlawful business practices in this Complaint and which are independently actionable under this law.

116.    Plaintiffs allege that Defendants have committed unfair business practices that violate established legislative policies against discrimination, fraud, and predatory actions in the housing industry and that resulted in unreasonable harmful impacts against Plaintiffs.

117.    Specifically, Plaintiffs allege that VALLEY, YOP, and FARANDA discriminated against all Plaintiffs in their business practices, extension of credit and in the sale of its homes. Furthermore, VALLEY, YOP and FARANDA's unfair business practices against all Plaintiffs include, but are not limited to, the following:

      a. Advertising to Spanish speakers but failing to provide Spanish language documents after solicited;

      b. Failing to accurately explain its 105% guarantee-option term along with other terms;

      c. Artificially inflating its prices;

      d. Failing to accurately describe its control over future pricing and its intentions regarding its pricing strategy;

      e. Inadequately disclosing its relationships with other parties and/or role as a seller's agent;

      f. Unfairly requiring buyers to use OLD REPUBLIC;

      g. Assisting in the misrepresentation of costs and charges;

      h. Failing to verify the acts of others and/or performing overt acts in furtherance of a scheme to defraud in a manner violative of the law, regulations and/or state professional standards.

118. Upon information and belief, Defendant OLD REPUBLIC's unfair business practices

26

1    against all Plaintiffs include, but are not limited to, the following:

2         a.  Conducting its communications with Plaintiffs in Spanish but failing to provide and/or

3    advise plaintiffs' of their rights to Spanish language documents;

4         b. Failing to disclose its relationship with Defendants VALLEY, YOP and FARANDA or

5    any things of value received from other parties;

6         c. Failing to inform Plaintiffs of their right to seek an independent settlement agent;

7         d. Failing to provide an adequate disclosure of Plaintiff's rights;

8         e. Failing to disclose the fees and charged excessive fees and costs for its services;

9         f. Failing to report and correct the tortuous conduct of other actors and;

10        g. Failing to discharge its obligations to Plaintiffs under the law.

11        119. UNIVERSAL, IRA and CREATIVE's unfair business practices against each of its

12   respective Plaintiff-client include, but are not limited to, the following:

13        a. Failing to adequately disclose material terms of the contract including its terms, fees

14   charged, yield spread premium or the possibility of much higher-mortgage payments;

15        b. Failing to find the best loan possible for the Plaintiffs at that time;

16        c. Failing to provide Plaintiffs documents translated in Spanish;

17        d. Placing Plaintiffs in loan(s) which were not affordable;

18        e. Collecting excessive fees and charges;

19        f.  Collecting an excessive yield spread premium and/or failing to provide Plaintiffs the

20   opportunity to avoid this cost;

21        g. Advising their clients to sign documents with false information prepared by defendants

22   and failing to disclose its relationship with other parties;

23        h. Failing to verify the acts of others and/or performing overt acts in furtherance of a

24   scheme to defraud in a manner violative of the law, regulations and/or state professional

25   standards.

26        120. In addition to assisting in the above unfair business practices, COUNTRYWIDE, NEW

27   CENTURY, CAMERON and WELLS' unfair business practices against each of its respective

28   Plaintiff-client include, but are not limited to, the following:

27

a. Failing to supervise its agents and/or employees that arranged loans for Plaintiffs;

b. Failing to follow and/or to establish rigorous underwriting and quality assurance standards in reviewing the agents' actions and documents;

c. Relying on and failing to verify the making of disclosures under the law;

d. Failing to prevent the loans from taking effect; encouraging the agents to arrange predatory loans through its training, programs, and payment of excessive yield spread premiums and/or kickbacks;

e. Encouraging the agents to arrange predatory loans over prime loans through its training, programs, and payment of excessive yield spread premiums and/or kickbacks.

121.    COUNTRYWIDE, CAMERON and NEW CENTURY and WELLS are also otherwise liable for the acts of their respective agents. Furthermore, COUNTRYWIDE and HOMEQ SERVICING are liable to the extent that they acquired, conspired to acquire and/or service AGUIRRE's loans with terms and disclosures that they had notice were illegal and/or unfair as specifically alleged herein.

122.    Plaintiffs hereby incorporate all fraudulent and/or misleading business practices made in this Complaint, which are independently actionable under this law.

123.    By the actions described above and herein, and as a proximate result of Defendants' conduct, Plaintiffs have suffered damages and now are entitled to the requested relief requested herein this Complaint including rescission, civil penalties, restitution, disgorgement and attorneys' fees for violation of this law.

124.    Since Plaintiffs bring this action on their behalf, on behalf of each other as members of the public and on behalf of the general public, they are entitled to attorneys' fees pursuant to Cal. Civ. Code §1021.5.

<u>CLAIM TEN</u>
Intentional Misrepresentation
(Plaintiffs against each Respective Defendant except HOMEQ)

125.    Plaintiffs incorporate each and every preceding paragraph stated above, inclusive, as though the same were fully set herein.

126.    Each of the Defendants owed a duty to not make false misrepresentations to Plaintiffs. In

28

1    addition, UNIVERSAL, IRA, CREATIVE, COUNTRYWIDE, NEW CENTURY, CAMERON

2    and WELLS also owed certain fiduciary duties to each respective Plaintiff. Moreover, Defendants

3    COUNTRYWIDE, NEW CENTURY, CAMERON and WELLS also owed a duty to prevent its

4    agents and/or employees from making fraudulent statements towards Plaintiffs.

5    127.    Defendants VALLEY, YOP and FARANDA breached its duties by falsely representing

6    to all Plaintiffs the following:

7    a. The true meaning of its 105% guarantee term and other contract terms;

8    b. That it would and/or could control future home pricing;

9    c. Its intentions regarding its pricing strategy;

10    d. Its relationship with other parties;

11    e. The right and/or need for Plaintiffs to seek independent real estate representation;

12    f. That buyers were required to use OLD REPUBLIC;

13    g. The true costs and charges related to the purchase of Monte Bella homes;

14    h. That the prices of Monte Bella homes were appropriate.

15    128.    Upon information and belief, Defendant OLD REPUBLIC breached its duties by falsely

16    representing to all Plaintiffs the following:

17    a. The nature of Plaintiffs' rights such as the right to have Spanish language documents;

18    b. The right to seek an independent settlement agent;

19    c. That buyers were required to use OLD REPUBLIC;

20    d. Its relationship with other parties;

21    e. The unlawful conduct of other parties;

22    f. The true costs and charges for its services.

23    129.    Defendants UNIVERSAL, IRA, CREATIVE, COUNTRYWIDE, NEW CENTURY,

24    CAMERON and WELLS breached its duties by falsely representing to each respective Plaintiff the

25    following:

26    a. The material terms of the loans including its terms such as the fees charged, yield

27    spread premium and/or the likelihood of much higher mortgage payments;

28    b. That it would find the best loan possible for Plaintiffs at that time;

29

c. That Plaintiffs' loans would remain affordable despite the adjustable interest rates and/or negative amortization features of the loans;

d. The true nature of excessive fees and charges that would be charged;

e. The true nature of fees and commissions taken such as the yield spread premium;

f. The need and/or common practice of signing documents with false information;

g. The true nature of its relationship with other parties including monies paid to other parties;

h. That the prices of Monte Bella homes were appropriate.

130.   Furthermore, COUNTRYWIDE, NEW CENTURY, and CAMERON are liable for its role in assisting, supervising, requiring and/or otherwise allowing its brokers to make that aforementioned fraudulent statements to each of its respective Plaintiffs. COUNTRYWIDE, CAMERON and NEW CENTURY and WELLS are also otherwise liable for the acts of their respective agents.

131.   Defendants knew that that these representations were false and/or misleading at the time they were made and/or made the representation in reckless disregard of the truth.

132.   Defendants intended that each of the respective Plaintiffs rely on the misrepresentations.

133.   Plaintiffs reasonably relied on Defendants' misrepresentations.

134.   As a proximate result of Defendants' conduct, Plaintiffs sustained damages in amount not yet ascertained but to be proven at trial. Furthermore, Plaintiffs' reliance on Defendants' misrepresentations were a substantial factor in causing their respective damages.

135.   As Defendants' conduct was fraudulent, malicious and/or oppressive as defined under Cal. Civ. Code. §3294, Plaintiffs should recover exemplary and punitive damages in addition to the damages sought herein such as disgorgement and equitable rescission.

## CLAIM ELEVEN
### Negligent Misrepresentation
### (Plaintiffs against each Respective Defendant except HOMEQ)

136.   Plaintiffs incorporate each and every preceding paragraph stated above, inclusive, as though the same were fully set herein.

137.   Defendants had no reasonable basis for believing that the representations were true when

30

they were made.

138. Defendants intended that each of the respective Plaintiffs rely on the misrepresentations.

139. Plaintiffs reasonably relied on Defendants' misrepresentations.

140. As a proximate result of Defendants' conduct, Plaintiffs sustained damages in amount to be proven at trial. Furthermore, Plaintiffs' reliance on Defendants' misrepresentations were a substantial factor in causing their respective damages.

141. As Defendants' conduct was fraudulent, malicious and/or oppressive as defined under Cal. Civ. Code. §3294, Plaintiffs should recover exemplary and punitive damages in addition to the damages sought herein such as disgorgement and equitable rescission.

## CLAIM TWELVE
### Concealment
### (Plaintiffs against each Respective Defendant except HOMEQ)

142. Plaintiffs incorporate each and every preceding paragraph stated above, inclusive, as though the same were fully set herein.

143. Each of the Defendants had a duty to disclose those material facts not accessible to each respective Plaintiff that existed in defendants' realm of knowledge. In addition, UNIVERSAL, IRA, CREATIVE, COUNTRYWIDE, NEW CENTURY, CAMERON and WELLS also owed certain fiduciary duties to each respective Plaintiff requiring the disclosure of certain material facts. Moreover, Defendants COUNTRYWIDE, NEW CENTURY, CAMERON and WELLS also owed a duty to prevent its agents and/or employees from concealing material facts from each respective Plaintiff.

144. Defendants VALLEY, YOP and FARANDA breached its duties by concealing certain material facts from plaintiffs not accessible to them including, but not limited to, the following:

    a. The true meaning of its 105% guarantee term and other contract terms;

    b. That it did not control home prices;

    c. That it would set home prices much lower, if necessary;

    d. The prices being charged were artificially high;

    e. The true nature of its relationships with other parties;

31

1    f. The right of Plaintiffs to seek another settlement agent;

2    g. The need and/or right of Plaintiffs to seek independent real estate representation;

3    h. The true costs and charges related to the purchase of Monte Bella homes.

4    145.  Upon information and belief, Defendant OLD REPUBLIC breached its duties by

5    concealing the following material facts from plaintiffs including, but not limited to, the following:

6    a. That Plaintiffs' had certain rights such as the right to Spanish language documents;

7    b. The right to seek an independent settlement agent;

8    c. That buyers were not required to use its services;

9    d. The true nature of its relationships with other parties;

10    e. The unlawful conduct of other parties;

11    f. The true costs and charges for its services.

12    146.  Defendants UNIVERSAL, IRA, CREATIVE, COUNTRYWIDE, NEW CENTURY,

13    CAMERON and WELLS breached its duties by concealing certain material facts from each

14    respective plaintiff including, but not limited to, the following:

15    a. The material terms of the loans including its terms such as the fees charged, yield

16    spread premium and/or the likelihood of much higher-mortgage payments;

17    b. That it would not find the best loans possible for Plaintiffs at that time;

18    c. That Plaintiffs' loans would not remain affordable;

19    d. The risks of adjustable interest rate and/or negative amortization loan terms;

20    e. The true nature of excessive fees and charges that would be charged;

21    f. The prices being charged were artificially high;

22    g. The true nature of fees and commissions received such as the yield spread premium;

23    h. The opportunity to save costs by prepaying, selecting different loans or avoid certain

24    charges such as the yield spread premium.

25    i. That certain documents it prepared contained false information;

26    j. The true nature of its relationship with other parties including monies paid to other

27    parties.

28    147.  Furthermore, COUNTRYWIDE, NEW CENTURY, and CAMERON are liable for its

32

role in assisting, supervising, requiring and/or otherwise allowing its brokers to conceal material facts from each of its respective Plaintiffs.

148.    Defendants concealed, suppressed and failed to disclose the facts with an intent to defraud Plaintiffs despite their respective duties.

149.    Plaintiffs were unaware of the facts and reasonably relied on Defendants' deception to proceed to enter into the various real estate transactions. As a proximate result of Defendants' conduct, Plaintiffs sustained damages in an amount not yet ascertained but to be proven at trial. Furthermore, Plaintiffs' reliance on Defendants' misrepresentations were a substantial factor in causing their respective damages.

150.    Since Defendants' conduct was fraudulent, malicious and/or oppressive as defined under Cal. Civ. Code. §3294, Plaintiffs should recover exemplary and punitive damages in addition to the damages sought herein such as disgorgement and equitable rescission.

**CLAIM THIRTEEN**
Breach of Fiduciary Trust
**(Plaintiffs against each Respective Defendant except HOMEQ)**

151. Plaintiffs incorporate each and every preceding paragraph stated above, inclusive, as though the same were fully set herein.

152. Defendants OLD REPUBLIC, UNIVERSAL, IRA, and CREATIVE owed fiduciary duties to each of the respective Plaintiffs as clients. Furthermore, COUNTRYWIDE, NEW CENTURY, CAMERON and WELLS also owed certain fiduciary duties to each respective Plaintiff both as a creditor and as principals hiring, training, supervising and otherwise assisting agents working on their behalf.

153. All Defendants, except VALLEY, YOP, and FARANDA, breached its fiduciary duties of good faith, loyalty and diligence to each respective Plaintiff by placing and advising Plaintiffs to enter into their respective real estate transactions to their detriment. Furthermore, these same Defendants breached its fiduciary duties by misrepresenting and failing to disclose facts such as, but not limited to, the following:

a. The material terms of the loans including its terms such as the fees charged, yield spread premium and/or the likelihood of much higher-mortgage payments;

33

b. That it would not find the best loans possible for Plaintiffs at that time;

c. That Plaintiffs' loans would not remain affordable;

d. The risks of adjustable interest rate and/or negative amortization loan terms;

e. The true nature of excessive fees and charges that would be charged;

f. The prices being charged were artificially high;

g. The true nature of fees and commissions received such as the yield spread premium;

h. The opportunity to save costs by prepaying, selecting different loans or avoid certain charges such as the yield spread premium;

i. That certain documents it prepared contained false information;

j. The true nature of its relationship with other parties including monies paid to other parties.

154.    Furthermore, Defendants VALLEY, YOP, and FARANDA are liable to Plaintiffs on the basis of their acts in furtherance of these other fiduciaries' fraudulent conduct towards Plaintiffs.

155.    Defendants engaged in the conduct alleged herein for the purpose of advancing their own financial interest and in wanton disregard of the foreseeable consequences to Plaintiffs and their families.

156.    As a proximate result of Defendants' conduct, Plaintiffs sustained damages in an amount not yet ascertained but to be proven at trial. Furthermore, Plaintiffs' reliance on Defendants' misrepresentations were a substantial factor in causing their respective damages.

## CLAIM FOURTEEN
### Negligence
### (Plaintiffs against each Respective Defendant)

157.    Plaintiffs incorporate each and every preceding paragraph stated above, inclusive, as though the same were fully set herein.

158.    Each Defendant owed each respective Plaintiff the duty to act as a reasonably prudent person or entity in the same profession or industry. In addition, COUNTRYWIDE, NEW CENTURY, CAMERON and WELLS also owed a duty to act reasonably not only as a creditor but as a principal that trained, supervised and otherwise assisted those agents working on their behalf.

34

159.   Each Defendant breached the duty owed to each respective Plaintiff by placing and advising each of the respective Plaintiffs to enter into real estate transactions with detrimental and harmful terms. In addition, COUNTRYWIDE and HOMEQ SERVICING are liable to the extent that they acquired, conspired to acquire and/or service AGUIRRE's loans with terms and disclosures that they had notice were illegal and/or unfair as specifically alleged herein.

160.   Moreover, Defendants VALLEY, YOP, FARANDA, OLD REPUBLIC, UNIVERSAL, IRA and CREATIVE also violated statutes and/or regulations regulating their conduct such as Cal. Bus. and Prof. Code §10176 et seq. in addition to the other laws mentioned herein.  Furthermore, OLD REPUBLIC also violated the statute and/or regulations constituting the escrow law in Cal. Fin. Code, §17000 et seq.  The violation of these statutes and/or regulations caused Plaintiffs' injuries which are the kind that the statutes and/or regulations were designed to prevent. Furthermore, Plaintiffs are in the class of persons the statutes or regulations were intended to protect.

161.   As a proximate result of Defendants' conduct, Plaintiffs sustained damages in an amount not yet ascertained but to be proven at trial. Furthermore, Defendants' conduct was a substantial factor in causing Plaintiffs' damages.

## VIII. RELIEF

Wherefore, Plaintiffs pray for the following relief:

162. That the Court assume supplemental jurisdiction over all state claims under 28 U.S.C §1367.

163. That the Court declare that Defendants violated federal and state laws;

164. That the Court order th e rescission and/or cancellation of the purchase contracts and/or the loans entered into by Plaintiffs;

165. That the Court exercise its equitable and injunctive authority to rescind the purchase contracts and/or the loans entered into by Plaintiffs;

166. That the C ourt order specific performance of, and reform where necessary, any contractual agreement so that defendants take back the homes and/or the loans entered into by Plaintiffs with restitution;

35

167. That the Court enjoin all unlawful practices complained of in this action and impose injunctive relief requiring defendants to comply with the law as it applies to its customers and the public;

168. That the Court award compensatory and statutory damages, where appropriate, to Plaintiffs in amount to ascertained at trial;

169. Th at the Court order Defendants to disgorge all profits, monies and things of value received from Plaintiffs;

170. That the Court award punitive damages;

171. That the Court award Plaintiff's costs of the suit including reasonable attorneys' fee and;

172. The Court award P laintiffs all other relief it deems just and necessary.

Dated: November 2 1 , 2007            PATANE • GUMBERG

By: _____

SERGIO H. PARRA
NINA M. PATANE
Attorneys for Plaintiffs

36

FIRST AMENDED COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF & DECLARATORY RELIEF; DEMAND FOR JURY TRIAL

## IX. DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiffs hereby request a trial by jury as to each and every claim for which they are so entitled.

Dated: November 21, 2007         PATANE • GUMBERG

                        By:  _____
                             SERGIO H. PARRA
                             NINA M. PATANE
                             Attorneys for Plaintiffs

37

Defendants should have followed standard procedure in either requesting another extension of time or seeking leave of the Court before filing its motion to dismiss. Striking Defendants' motion to dismiss for lack of timeliness is even more appropriate if the Court were to respectfully consider that, as a matter of law, Defendants' motion is generally disfavored even on its merits. Since Defendants knew that its motion was untimely before filing it, and still choose to improperly file it after having about two months to do so, the motion should be denied in its entirety. For these reasons, Plaintiffs respectfully request that Defendants' motion be denied in its entirety.

## V. CONCLUSION

Plaintiffs want and deserve their day in Court. Instead of focusing on the merits of Plaintiffs' claims, Defendants Countrywide Financial and Countrywide Home Loans Inc. pretend to have no what idea they are going to do when we get there. Pleading is a form of art that can go on forever, with endless reiteration and changes. However, for the purpose of litigation it must end when a sufficient picture is painted so as to give the parties a roadmap to proceed. Since Defendants' cannot claim to not have a clear enough picture of each of Plaintiff's claims, Plaintiffs respectfully ask the Court to deny Defendants' motion in its entirety and/or that it strike Defendants' motion under Rule 12(f).

Dated: February ___, 2008            PATANE • GUMBERG, LLP

By: _____
    SERGIO H. PARRA
    NINA M. PATANE
    Attorneys for Plaintiffs

25