NINA M. PATANE, Esq. (SBN 157079)
SERGIO H. PARRA, Esq. (SBN 247682)
PATANE · GUMBERG, LLP
Attorneys at Law
4 Rossi Circle, Suite 231
Salinas, California 93907
Telephone: (831) 755-1461
Facsimile: (831) 755-1477

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### (SAN JOSE)

|  |  |
|---|---|
| **BERENICE GONZALEZ AND JOSE URTIZ, JORGE AGUIRRE, ELEAZAR BECERRA AND ROCIO BECERRA, J. GUADALUPE CONTRERAS AND TERESA CONTRERAS**, all individually and on behalf of the general public, | CASE NO.  CV 07 05698 JW |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| v. |  |
| **VCH SALINAS I LLC dba VALLEY COMMUNITY HOMES and as MONTE BELLA REALTY, NORM YOP INC. REALTORS dba MONTE BELLA REALTY, MONICA FARANDA** dba as **MONTE BELLA REALTY,  UNIVERSAL MORTGAGE & SALES INC.,  IRA MORTGAGE & HOME SALES, INC., AMERICAN PACIFIC MORTGAGE CORP.**  dba as **CREATIVE MORTGAGE, OLD REPUBLIC TITLE CO., COUNTRYWIDE HOME LOANS INC. dba AMERICA'S WHOLESALE LENDER, COUNTRYWIDE FINANCIAL CORP., NEW CENTURY MORTGAGE CORP.,  HOMEQ SERVICING CORP., CAMERON FINANCIAL GROUP INC., WELLS FARGO BANK**, and **DOES 1 TO 100**, inclusive, |  |
| | Date:       March 24, 2008 |
| | Time:       9:00 am. |
| | Courtroom: 8 |
| | Judge:     Hon. James Ware |
| Defendants. |  |

<u>TABLE OF CONTENTS</u>

I.    INTRODUCTION...........................................................................................1

II.   FACTS.......................................................................................................2

      1.    The Parties...............................................................................2

            a. Plaintiffs..........................................................................2

            b. Developer-Defendants ......................................................2

      2. Plaintiffs Bought Tuscany at Monte Bella Homes in Salinas.....................2

      3. Developer-Defendants Campaigned of Fraud to Sells Its Homes
         to Plaintiffs in Salinas...........................................................3

      4. Developer Defendants Now Attempt to Enforce a Judicial Reference Clause
         that Was A Key Component of its Fraudulent Campaign to Sells Homes to
         Spanish Speaking Buyers........................................................3

      5. Developer Defendants' Judicial Reference Clause Does Not Apply..............4

III.   STANDARDS OF ADJUDICATION...........................................................5

IV.   POINTS AND AUTHORITIES....................................................................6

    A.  DEFENDANTS' MOTION TO COMPEL ARBITRATION
       SHOULD BE DENIED BECAUSE THE JUDICIAL REFERENCE CLAUSE IS
       NOT SUBJECT TO THE FEDERAL ARBITRATION ACT AND
       UNCONSCIONABLE UNDER CALIFORNIA LAW...................................6

      1.   Defendants' Motion to Compel Arbitration Should Not be Granted Because
        the Standard California Judicial Reference Clause Is Not Arbitration As
        Defined by The Agreement Itself..............................................7

      2.   Defendants' Motion to Compel Arbitration Should Not be Granted Because
        the California Judicial Reference Clause Is Not Arbitration As A Matter of
        Law...............................................................................8

      3. The California Judicial Reference Clause Is Not Enforceable As A Matter of
        Law Because it is An Adhesive Contract That Is Procedurally and
        Substantively Unconscionable..................................................9

        a.   The Developers' Judicial Reference contract was an Adhesion
          Contract that Plaintiffs had No Choice but to Sign the English
          Contact in Order to Buy their Homes..........................................9

i

      b.  The Developers' Judicial Reference contract was Procedurally Unconscionable because the Defendants' Intentionally Misrepresented the Contract in Spanish and Plaintiffs Never Had an Opportunity to Negotiate the Clause with the Developer........................................10

      c.  The Developers' Judicial Reference contract was Substantively Unconscionable because the Defendants' Terms Were Harsh and Oppressive...........................................................................................12

B. DEFENDANTS' MOTION TO DISMISS ON SUBSTANCE IS EQUALLY LACKING IN MERIT AND SHOULD BE DISMISSED...............................12

   1.  The Federal Definition of an "Credit" Encompasses the Developers' four installment payment plan where Three 1% Payments and a Two Balloon payments Were Required to Be Made In Order to Purchase its Home......13

   2.  Plaintiffs Carefully Allege In Their Complaint That Defendants' Home Sales Are Connected to Interstate Commerce and Constitute a Pattern of Discriminatory and Fraudulent Predicate Acts over Two Years...............14

      a.  Plaintiffs' Have Sufficiently Alleged That the Racketeering Activities by Defendants Were Not Possible Without Affecting Interstate Commerce and Have Devastating Impacts on Both Plaintiffs And Interstate Commerce.............................................15

      b.  Plaintiffs' Allege That Defendants Committed Mail and Wire Fraud By Using Both U.S. Mail, Telephone Lines and the Internet to Achieve its Racketeering Objectives........................................16

   3.  Plaintiffs specifically allege that in several dates after October 2005 that Developer Defendants Made Various False Representations in a Sales Office located in East Salinas to each of the Plaintiffs.........................16

   4.  Plaintiffs Specifically Allege That Developer Defendants Committed Mail and Wire Fraud Upon the Plaintiffs................................................17

   5.  Plaintiffs Allege a 'Pattern Of Racketeering Activity'............................18

   6.  Plaintiffs have Sufficiently Alleged That Developers Defendants are Liable both Under Secondary Liability and As Co-Conspirators for RESPA and Breach of Fiduciary Trust.................................................19

      a. Developer Defendants are liable for the RESPA Violation that it committed with Old Republic as its agent and co-conspirator............20

      b. Defendants is liable for Breach of Fiduciary Trust Due to Its Obligations for its Agent's actions...............................................20

   7.  Plaintiffs Have Sufficiently Alleged That Developers Defendants are Not

Only Directly Liable for Negligence and Negligence Per Se, But Also
Liable On an Agency Theory.................................................................21

    a. **Developer Defendants are Liable For Negligently Translating The
Purchase Contract**.................................................................21

    b. **As Holders of Real Estate Licenses, Developer Defendants are Liable
on a Negligence Per Se Theory for Violation of Cal. Bus.
& Prof. Code 10176**.........................................................22

    c. **Developer Defendants are Also Liable For Negligence on an Agency
Theory**..................................................................................23

  8. **Developer Defendants Were Required to Provide Spanish Language
Contracts as the Contracts to Purchase Homes Was a Contract that
Extended Credit for a Personal. Family and Household Purpose**.............23

C. **DEFENDANTS' MOTION TO STRIKE SHOULD BE DENIED ON ALL
MATTERS**.................................................................................24

  1. **No Case Law Is Cited by Defendants that Shows That Intentional
Misrepresentation and Concealment are Mutually Exclusive**.................24

  2. **Defendants Stipulate to Not Pursue Punitive Damages for Negligent
Misrepresentation**...................................................................24

  3. **Plaintiffs Waiver of Jury Trial Is An Unconscionable Feature of the
Judicial Reference Clause**.........................................................25

**V. CONCLUSION**...........................................................................25

**VI. PROOF OF SERVICE**...............................................................26

iii

## TABLE OF AUTHORITIES

### CASES

Beard v. Worldwide Mortgage Corp. (W.D. Tenn 2005), Case No. 04-2183-D/An.

Page 1, 8, 10, 11, 15, 17,................................................................................16, 17, 18

Brothers v. First Leasing  (9th Cir. 1984), 724 F.2d 789, 794.........................14

California Service Station Assn. v. American Home Assurance Co. (1998), 62 Cal.App.4th

1166, 1177-9..............................................................................................22

Conley v. Gibson, 355 U.S. 41, 45-46, 47-48 (1957).....................................5,6

Connor v. Great Western Sav. & Loan Assn. (1968) 69 Cal.2d 850, 865.........................21

Day Management Corp. v. Mobex Communications, Inc., (D.Or. 2004), Civ. Case No. 03-

1399-JE, Pages 5-6...........................................................................................8

De Guere V. Universal City Studios, Inc. (1997), 56 Cal.App.4th 482, 505.......................25

Dillon v. Legg (1968) 68 Cal.2d 728, 734...................................................21

Edwards v. Marin Park, Inc. (9th Cir. 2004), 356 F.3d 1058, 1066................................16

Elsner v. Uveges (2004), 34 Cal.4th 915, 941 [footnote 8]...............................22

Flag Co. v. Maynard (Or. 2006), Case No. CV-05-1194-HU Page 1, 10.................19

Grigson v. Creative Artists Agency, L.L.C. (5th Cir. 2000), 210 F.3d 524, 527.....................8

Gilligan v. Jamco Develop. Corp., 108 F.3d 246, 249 (9th Cir. 1997)..............................6

Hy Cite Corp. v. Badbusinessbureau.Com, L.L.C., (Ariz. 2005) Case No. 04-2856-PHX-EHC,

Page 1, 11..............................................................................................18

Karoutas v. Homefed Bank (1991), 232 Cal.App.3d 767, 775..........................22

Kingman Park Civic Assn. v. Williams, 348 F.3d 1033, 1040 (D.C. Cir. 2003)...................6

Krieger v. Fadely (D.C. Cir. 2000), 211 F.3d 134, 136..................................6

Lopez v. Smith  (9th Cir. 2000), 203 F.3d 1122, 1130....................................25

Macharia v. United States, 334 F.3d 61, 64, 67 (D.C. Cir. 2003)......................6

Musick v. Burke (9th Cir. 1990), 913 F.2d 1390, 1398....................................15

Munoz v. Int'l. Home Capital (N.D. Cal 2004), Case No. C03-01099 RS, Page 1, 4..............19

Nymark v. Heart Fed. Savings & Loan Assn. (1991), 231 Cal.App.3d 1089, 1098................21

Odom v. Microsoft Corp. (9th Cir. 2007) 486 F.3d 541, 547................................14

Pardee Const. v .San Diego Super. Court (2002), 100 Cal..App. 4th 1081, 1085, 1086, 1087, 1088, 1089-1090, 1092-1093................................................9, 10, 12

Rowland v. Christian (1968), 69 Cal.2d 108, 113........................................21

Ruiz v. Decision One Mortgage Co. (N.D. Cal. 2006), Case No. 03-01099 RS, Page 6-7........23

Ruiz v. Decision One Mortgage Co. (N.D. Cal. 2006), Case No. 03-01099 RS, Page 6 and 7........................................................21, 23, 24

Sebastian Intern. Inc. v. Russolillo (C.D. Cal. 2001), 128 F. Supp.2d 630, 635...............18, 19

Superior Bank F.S.B. v. Tandem Nat. Mortgage Inc. (Md. 2000), 197 F. Supp.2d 298, 324.............................................................19

Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511-14 (2002)...............................6

Taylor v. Quall (C.D. Cal. 2007),, 471 F.Supp.2d 1053, 1059-60..........................24

Trend Homes Inc. v. Super. Court (2005), 131 Cal.App.4[th] 950, 958-959........................11

United States v. Juvenile Male (9th Cir. 1997), 118 F.3d 1344, 1349.......................15

U.S. v. Atcheson (9th Cir. 1996, 94 F.3d 1237, 1243......................................15

U.S. v. State of Ohio (S.D. Ohio 1995), 885 F. Supp. 1055, 1061...........................17

Western Reserve Oil & Gas Co. v. New, 765 F.2d 1428, 1430 (9th Cir. 1985)....................6

<u>STATUTES</u>

Cal.  Bus. & Prof. Code 10176............................................................22

California Code of Civil Procedure Sections 638 and 645.1.................................5

Cal. Civ. Proc. Code 638..............................................................7,8

Rule 9(b)...........................................................................16

Rule 12(b)(6)......................................................................5, 6

15 U.S.C §1691a(d)...................................................................13

12 C.F.R. § 202.3(c).................................................................13

12 C.F.R. § 202.3(c)(iii)............................................................14

18 U.S.C. §1341-1343.................................................................17

TABLE OF CONTENTS AND TABLE OF AUTHORITIES IN SUPPORT OF PLAINTIFFS OPPOSITION TO
DEFENDANTS' MOTIONS TO STAY AND TO DISMISS

355 U.S. 41 (1957)........................................................................................................5

Cal. Civ. Code §1714(a)..............................................................................................21

Cal. Civ. Code §1632(b)(2)..........................................................................................23

Cal. Civ. Code §1789.12..............................................................................................23

Cal. Civ. Code §1632(a)(1)..........................................................................................26

18 U.S.C. 1961 ...........................................................................................................14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TABLE OF CONTENTS AND TABLE OF AUTHORITIES IN SUPPORT OF PLAINTIFFS OPPOSITION TO
DEFENDANTS' MOTIONS TO STAY AND TO DISMISS

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## I.
## INTRODUCTION

Indeed, Plaintiffs are four hardworking families who happened to purchase $700,000 homes in Salinas. Granted, they are not doctors or lawyers or educated; or much less, even fluent in English. However, like many immigrants, they are hardworking, skilled and able to make a living to support their families as they attempt to mold themselves into the American dream.

The crux of Developer Defendants' argument is that these families had no business purchasing these homes (going as far to mock their upgrades). How dare these people buy homes at $700,000? How dare these people buy homes, if they are going to complain about it later. To the sellers of these homes, it is better to wage a battle invoking every prejudicial flame rather than to accept its own responsibility in its own failed scheme to sell homes - at all costs.

The undisputed truth is that although Developer Defendants question the veracity of Plaintiffs' claims, they do not deny the fact they invested in a widespread advertising campaign in Spanish including regular Spanish television ads and only utilized Spanish language agents to sell its homes along with those upgrades in Spanish. But when it came time to invest a few dollars in translating the "FORM CONTRACT" (as Defendants state in its *Memorandum of Points of Authority in Support of its Motion to Dismiss*, page 3:22) that was too costly. Once their Spanish-speaking clients rolled in, Developer Defendants conveniently decided that the same sales agents that were aggressively selling these homes in Spanish could competently translate the forty-plus contract pages from English into Spanish and do so, without any conflicts of interests. In the same spirit of responsibility, the Developer Defendants now ask the Court to dismiss the Complaint despite these facts and despite the fact that they have sufficient notice of Plaintiffs' claims. For these reasons, Plaintiffs respectfully ask the Court to deny this motion in its entirety and allow the Plaintiffs to redeem themselves in federal court.

1

**II.**
**FACTS**

## 1. The Parties

*a. Plaintiffs*

The Complaint has been filed by four families in Salinas, California. Plaintiffs Berenice Gonzalez and Jose Urtiz are a married couple residing in Salinas, California with their two young children. [Attached as Exhibit 1 to the Declaration of Sergio H. Parra is a true and correct copy of Plaintiffs' Complaint, hereafter referred to as "Complaint"] [Plaintiffs' Complaint ¶13].   Plaintiff Jorge Aguirre is a married man residing in Salinas, California with his family [Complaint ¶14]. Plaintiffs Eleazar Becerra and Rocio Becerra are also married and residing in Salinas. [Complaint ¶15]. Lastly, Plaintiffs J. Guadalupe Contreras and Teresa Contreras are married individuals in Salinas California with young children too. [Complaint ¶16]. All four couples are Hispanic individuals. [Complaint ¶¶13-16]. Despite Defendants' contention in its motion, all four couples allege that they cannot competently read or write in the English language. [Complaint ¶17].

*b. Developer-Defendants*

Defendant VCH Salinas I LLC is a builder-developer in Monterey County that does business as Valley Community Homes and as Monte Bella Realty. [Complaint ¶18]. Defendant Norm Yop Realtors is a California corporation that does business as Monte Bella Realty and who was in a joint venture with Defendant VCH to marketing, develop and sell residential homes. [Complaint ¶19]. Defendant Monica Faranda is a licensed California broker that was employed by Defendant VCH Salinas and Norm Yop Realtors to sell the homes in question. [Complaint ¶20]. Collectively, the three defendants are hereafter referred to as the "Developer Defendants."

## 2. Plaintiffs Bought Tuscany at Monte Bella Homes in Salinas

In October 2005, Plaintiffs first became aware of the "Tuscany at Monte Bella" development in Salinas through a massive local area marketing campaign in Spanish including television, print advertising, Internet, signage, 'word of mouth' marketing to local real estate professionals and other advertising. [Complaint ¶32]. In its Spanish advertising, Developer Defendants invited Spanish-speaking homebuyers to visit their sales offices for more information

2

1  in Spanish. [Complaint ¶32 and ¶17]. It is interesting that Defendants now belatedly assert these

2  homes are "high-end" and that Plaintiffs had no business buying them, when the Developer

3  Defendants' advertising describes 'Tuscany at Monte Bella' as offering "hoome[sic] for families

4  of all sizes and income levels." [Complaint ¶33].

5  **3. Developer Defendants' Campaign of Fraud to Sells Its Homes to Plaintiffs in Salinas.**

6        Each of the Plaintiffs were told by Developer Defendants that "the homes were great

7  investments" that "would only go up in pricing and value" because the general market did not set

8  their prices, but that they did. [Complaint ¶35]. On several occasions, Developer Defendants

9  promised that they were so confident of that the prices would only go up that they offered a '105%

10  guarantee-option.' [Complaint ¶35]. Developer Defendants explained that if Plaintiffs were ever to

11  become unhappy for any reason with their purchases within the first two years, Plaintiffs had the

12  option of informing Defendants of their wishes to sell in writing and Developer Defendants would

13  buy the homes back for the purchase price plus 5%. [Complaint ¶35].

14        Due to the supposed demand of the houses, Defendants extended credit to Plaintiffs in

15  form of 10% pre-payment plan that involved making three monthly payments of 1% of the

16  purchase price, a fourth payment with loan proceeds and fifth payment of 7% within three days of

17  closing. [Complaint ¶35, Also *see* page 1 of Sample Contract submitted by Developer

18  Defendants' as Exhibit C to Declaration of Frank Riebli].

19  **4. Developer Defendants Now Attempt to Enforce a Judicial Reference Clause that Was A**
   **Key Component of its Fraudulent Campaign to Sells Homes to Spanish Speaking Buyers.**

20

21        Starting in October 2005, Plaintiffs entered into contracts with the Developer Defendants.

22  [Complaint ¶38].

23        On their day of signing, Plaintiffs Gonzalez-Urtiz arrived to the sales office late in the day

24  after a long day at work and were told by the Developer Defendants not to worry because they

25  would translate what they "needed to know" in a few minutes. [Complaint ¶38]. After explaining

26  the pricing on the first page and the payment plan, Developer Defendants continued to go through

27  the sales contract at a quick pace to point out where Plaintiffs Gonzalez-Urtiz should place their

28

3

1  initials. [Complaint ¶38]. Feeling pressured, Plaintiffs made sure to ask where the 105% guarantee

2  was written and Plaintiffs Gonzalez-Urtiz pointed out the clauses supposedly providing the option.

3  [Complaint ¶38]. It turns out that Developer Defendants grossly misrepresented in Spanish every

4  material clause and page where any initials were required. [Complaint ¶38].

5      In the fall of 2005, Plaintiffs Becerra, without much explanation by Defendants, were

6  simply told to start signing a pre-prepared contract and initial the contract on the bottom of each

7  page and wherever else it was indicated. [Complaint ¶40]. Defendants Developers also grossly

8  misrepresented in Spanish every clause and page where initials were required including the

9  supposed 105% option. [Complaint ¶40].

10     On October 22, 2005, Plaintiffs Contreras also arrived to Monte Bella sales office and were

11  told to start signing a pre-prepared contract and initial the contract on the bottom of each page and

12  wherever else indicated. [Complaint ¶42]. Again, Defendants Developers grossly misrepresented

13  in Spanish every clause and page where initials were located. [Complaint ¶42].

14     On February 11, 2006, Plaintiff Aguirre executed the purchase agreement and Defendant

15  Developers quickly told Plaintiff where to sign and initial the contract as each page with the entire

16  process lasting less than ten minutes. [Complaint ¶44]. Defendants Developers grossly

17  misrepresented every clause and page where any initials were required as the sales agent just

18  robotically pointed to the places where his signature was required including the location of the

19  '105% guarantee.' [Complaint ¶44].

20     In October 2007, Defendants Developers refused to purchase the homes for 105% as

21  promised in Spanish on the basis of the actual, written meaning of this clause in English.

22  [Complaint ¶41, 43, and 45].

23  **5. Developer Defendants' Judicial Reference Clause Does Not Apply.**

24     Now Developer Defendants assert that a supposed arbitration clause exists (one that

25  actually is a judicial reference clause) that should be compelled against Plaintiffs. Specifically, the

26  Judicial Reference clause is specifically described as follows:

27          If either party to this Purchase agreement commences a legal proceeding
            for a dispute arising under the Purchase Agreement....all issues in such

28

4

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**PLAINTIFFS' MOTION IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

action, whether fact or law, shall be resolved pursuant to judicial
reference pursuant to the provisions of *California Code of Civil
Procedure Sections 638 and 645.1.*

Purchase Contract, Defendant Developers' Exhibit C, 14.3A, pages 10-11. [*Emphasis* added].

The Judicial Reference clause itself is not an arbitration clause. [Defendant Developers' Exhibit C, 14.3A, page 10]. The actual Arbitration clause in the Agreements is located as part of paragraph 14.2 and is not a basis for Developers' motion to compel against Plaintiffs. That is because it only applies to disputes arising before the close of escrow such as those to defaults by the buyer for not closing the deal and/or not meeting the 1% payment plan. [Defendant Developers' Exhibit C, 14.2, page 7]. There is absolutely no reference in the Judicial Reference clause (14.3A) to arbitration at all. In fact, the Judicial Reference clause section in 14.3A only states that the Judicial Reference should be subject to California Code of Civil Procedure Sections 638 and 645.1. [Defendant Developers' Exhibit C, 14.3A, page 7]. Despite Defendants' contentions, the Judicial Reference Clause, as written, is also not subject to arbitration because the Federal Arbitration Act clause in the Agreement refers to "binding arbitration procedures" - which happens to be the language used in section 14.2 and not 14.3A. [Defendant Developers' Exhibit C, 14.3B, page 12]. Lastly, since the Judicial Reference clause is a California procedure, it falls outside both state and federal law on arbitrations.

Regardless of its designation, and most importantly, the Judicial Reference clause is unenforceable because it both procedurally and/or substantively unconscionable. Since Plaintiffs have alleged the fact that the contract was not translated in Spanish and therefore, they could be no effective assent to the clause. Furthermore, Plaintiffs set forth extensive allegations describing the unconscionable nature of the sales process and the clause itself utilized by the Developer Defendants. As such, Plaintiffs respectfully request that the motion to compel arbitration be denied.

## III.
## STANDARDS OF ADJUDICATION

In Conley v. Gibson, 355 U.S. 41 (1957), the U.S. Supreme Court held that a Rule 12(b)(6)

5

1    motion must not be granted "unless it appears beyond doubt that the plaintiff can prove no set of

2    facts in support of his claim which would entitle him to relief." Id. at 45-46. In considering a

3    motion to dismiss, this Court must accept all allegations of material fact as true and must construe

4    said allegations in the light most favorable to the non-moving party. Western Reserve Oil & Gas

5    Co. v. New (9th Cir. 1985), 765 F.2d 1428, 1430.

6         The Ninth Circuit holds that "[t]he motion to dismiss for failure to state a claim is viewed

7    with disfavor and is rarely granted." Gilligan v. Jamco Develop. Corp. (9th Cir. 1997), 108 F.3d

8    246, 249. That is because the Complaint need only provide a short and plain statement of the

9    claim, giving the defendant *fair notice* of the claim and the grounds upon which it rests. Kingman

10   Park Civic Assn. v. Williams, 348 F.3d 1033, 1040 (D.C. Cir. 2003). "Such simplified notice

11   pleading is made possible by the liberal opportunity for discovery and the other pre-trial

12   procedures established by the Rules to disclose more precisely the basis of both claim and defense

13   to define more narrowly the disputed facts and issues." Conley, 355 U.S. at 47-48.

14        Therefore, it is not necessary for the plaintiff to plead all elements of his prima facie case

15   in the complaint, Swierkiewicz v. Sorema N.A. (2002), 534 U.S. 506, 511-14, or "plead law or

16   match facts to every element of a legal theory," Krieger v. Fadely (D.C. Cir. 2000), 211 F.3d 134,

17   136. In fact, in hearing a Rule 12(b)(6) motion, the Court must treat the complaint's factual

18   allegations, including mixed questions of law and fact — as true and draw all reasonable

19   inferences therefrom in the plaintiff's favor. Macharia v. United States (D.C. Cir. 2003), 334 F.3d

20   61, 64 and 67.  Since the defendants' motion should be granted only when fair notice is lacking at

21   to the claim(s) it faces, as this is not the case here, the motion to dismiss should be denied.

22

23   ### IV.
     ### POINTS AND AUTHORITIES

24   **A. DEFENDANTS' MOTION TO COMPEL ARBITRATION SHOULD BE DENIED
25   BECAUSE THE JUDICIAL REFERENCE CLAUSE IS NOT SUBJECT TO THE
     FEDERAL ARBITRATION ACT AND UNCONSCIONABLE UNDER CALIFORNIA
26   LAW.**

27   **1. Defendants' Motion to Compel Arbitration Should Not be Granted Because the Standard**

28                                          6

**California Judicial Reference Clause Is Not Arbitration As Defined by The Agreement Itself.**

It is not enough that Defendant Developers already failed to translate and fairly depict the arbitration clause (once with Plaintiffs); that they now are attempting to recast the Judicial Reference clause as an arbitration clause (this time in Court).

The Judicial Reference clause (14.3A) itself is not an arbitration clause and does not contain words referring to arbitration at all. [Defendant Developers' Exhibit C, 14.3A, page 10]. That is because the actual Arbitration clause in the Purchase Agreement is the preceding paragraph "14.2" and is not applicable to the instant matter because it only applies to disputes arising before the close of escrow (such as those to defaults by the buyer for not closing the deal and/or not meeting the 1% payment plan). [Defendant Developers' Exhibit C, 14.2, page 7]. In fact, the only law that the Judicial Reference clause (at 14.3A) refers to is Cal. Code of Civ. Proc. § 638 and 645.1. [Defendant Developers' Exhibit C, 14.3A, page 7].

As written, the Judicial Reference Clause is also not subject to arbitration. The Federal Arbitration Act clause (14.3B) in the Agreement refers to being applicable to "binding arbitration procedures" - which happens to be the language used in section 14.2 and not in the Judicial Reference clause at 14.3A. [Defendant Developers' Exhibit C, 14.3B, page 12]. Conversely, nowhere in the Federal Arbitration Act clause (14.3B) does it expressly state that the Judicial Reference clause is subject to the Federal Arbitration Act. [Defendant Developers' Exhibit C, 14.3B, page 12]. Thirdly, the Federal Arbitration Act clause's language stating that the "binding arbitration procedures in Paragraphs 14.2 and 14.3 are implemented in accordance with the…intent of the FAA…" does not automatically mean that it applies to section 14.2. [Defendant Developers' Exhibit C, 14.3B, page 12]. That is because it a reasonable reading of that sentence may mean that, in effect, the FAA applies to the binding procedures mentioned in 14.2A and 14.3B but not to 14.2B where no such arbitration procedures are "set forth.". [Defendant Developers' Exhibit C, 14.3B, page 12].

As such, the Judicial Reference clause is expressly not an arbitration clause and a not a proper basis for binding arbitration.

7

**2. Defendants' Motion to Compel Arbitration Also Should Not be Granted Because the California Judicial Reference Clause Is Not Arbitration As A Matter of Law.**

~~Defendants' attempt to covert the Judicial Reference clause to an Arbitration clause is not~~ appropriate because the two procedures have always been treated as two distinct procedures. In fact, a Court recently held that the Judicial Reference clause described in Cal. Civ. Proc. Code 638 is not arbitration subject to the Federal Arbitration Act or the California arbitration statute equivalent. Day Management Corp. v. Mobex Communications, Inc., (D.Or. 2004), Civ. Case No. 03-1399-JE, Pages 5-6. Specifically, the Court stated that:

> The procedure set out in Section 638 cannot be fairly characterized as "arbitration,".... California law provides for two kinds of arbitrations — nonbinding judicial arbitration under the Judicial Arbitration Act ... and binding contractual arbitration under the California Arbitration Act (CAA). ... The "reference" method of dispute resolution specified in the parties' Agreements is clearly distinct from either a judicial arbitration, or the kind of "contractual arbitration" addressed in the FAA and the parallel California Arbitration Act.

Id. The Court went on to describe that the very differences between the Judicial Reference and Arbitration procedures (e.g. right to appeal in judicial reference that also can be found in the instant Agreements with Plaintiffs). Id. Although the defendant in Day argued that the judicial reference clause was "equivalent" to the arbitration, it held that no legal authority exists to support that position. Id.[1]

Under the circumstances, it would be fundamentally unfair to compel arbitration where the parties did not agree to one. Plaintiffs request that the Court not compel arbitration, as the Federal Arbitration Act is not meant to implement California alternative dispute resolution procedures. The parties, including Defendants, never likely intended to have this suit resolved by judicial reference because the judicial reference clause is commonly used by superior court in highly complicated matters (such as homebuilders to protect themselves in construction defect matters).

---

[1] The Day Court further distinguished *Grigson v. Creative Artists Agency, L.L.C.* (5th Cir. 2000), 210 F.3d 524, 527 on the basis that the *Grigson* court did not address the difference between the two procedures because the parties in *Grigson* stipulated that the two procedures were 'equivalent' and went on to decide the matter based on other issues. Id. at 7.

8

6 Witkin, California Procedure § 59 (4th Ed. 1997). As was the case in Day, the fact that the actual judicial reference clause at 14.3A is replete with material differences with the standard arbitration clause shows it was never intended to be an arbitration clause. Therefore, since it clear that there is no legal basis for holding that a Judicial Reference clause is subject to the Federal Arbitration Act, then Defendants' motion to compel should be denied as a matter of law.

**3. The California Judicial Reference Clause Is Not Enforceable As A Matter of Law Because it is An Adhesive Contract That Is Procedurally and Substantively Unconscionable.**

a. The Developers' Judicial Reference contract was an Adhesion Contract that Plaintiffs had No Choice but to Sign the English Contact in Order to Buy their Homes.

The Judicial Reference clause in this action states that all "issues in such action, whether fact or law, shall be resolved pursuant to judicial reference pursuant to the provisions of California Code of Civil Procedure Sections 638 and 645.1." Therefore, California law regarding this statute should apply.

In California, the Judicial Reference clause is unenforceable when it is a standardized adhesion contract. Pardee Const. v .San Diego Super. Court (2002), 100 Cal..App. 4th 1081, 1088. Specifically, the judicial reference procedure is an unenforceable adhesion contract when a homebuyer is presented with a standardized contract that they had no choice but to sign and the clause itself is difficult to read and misleading. Id. at 1090. In Pardee a class action was alleged by multiple plaintiffs against a builder for construction defects. Id. at 1085. The builder argued that even though the contract contained the judicial reference clause, the buyers were free to reject the contract and look elsewhere to buy a home from some other development. Id. at 1086. The Court rejected the argument stating that since the purchase of a home is a unique purchase, plaintiffs "had little choice other than to sign those agreements as presented by [the builder]." Id. at 1087.

Since Plaintiffs have alleged that the judicial reference clause was not adequately translated in Spanish and the judicial reference clause was itself adhesive, no "meeting of the minds" occurred. In this case, Plaintiffs were told such things as:   that they would translate what "they needed to know in a few minutes [Complaint ¶38]; they were simply immediately sat down and

9

1    told to sign the English contract [Complaint ¶40]; with a complete hurried execution of the

2    contract in less than ten minutes [Complaint ¶44]. What makes matters worse that the Pardee

3    plaintiffs, Plaintiffs' judicial reference clauses is even more adhesive considering the fact that the

4    Plaintiffs allege that Defendant Developers embarked on a language 'switch and bait' advertising

5    campaign to attract Spanish speakers only to deceive them later with differing English contracts.

6    [Complaint ¶32 and 38-40]. Furthermore, the Developer Defendants have essentially admitted that

7    the contracts are "FORM" contracts. [Defendants' *Memorandum of Points of Authority in Support*

8    *of its Motion to Dismiss*, page 3:22]. It is also important to note that none of the Plaintiffs'

9    contracts contained any striking out of the judicial reference clause. As such, the judicial reference

10   had all the hallmarks of an adhesive contract and thus, should be dismissed as an adhesion

11   contract.

12        In California, the Judicial Reference clause is also unenforceable when it is either

13   procedurally and/or substantively unconscionable. Pardee Const. v .San Diego Super. Court

14   (2002), 100 Cal..App. 4th 1081, 1088.

15   b. The Developers' Judicial Reference contract was Procedurally Unconscionable because the
     Defendants' Intentionally Misrepresented the Contract in Spanish and Plaintiffs Never Had an
16   Opportunity to Negotiate the Clause with the Developer.

17        A judicial reference clause is procedurally unconscionable when there is an "absence of

18   real negotiation or a meaningful choice on the part of the weaker party... [or when there is] an

19   aspect of surprise." Pardee Const. v .San Diego Super. Court (2002), 100 Cal..App. 4th 1081,

20   1089.The Court found procedural unconscionability on the basis that that the class plaintiffs in

21   Pardee stood in an economic position well below Pardee as a builder; the judicial reference clauses

22   where contained in all agreements and the fact that none of the plaintiffs had struck out the judicial

23   reference provision. Id. The Court held that the contract was also procedural unconscionable by the

24   fact that the "parties' agreements were physically difficult to read" and that the caption

25   "JUDICIAL REFENENCE" did not explain the essence of the judicial reference to the buyers. Id.

26   at 1089-90.

27        As in Pardee, the judicial reference clause was procedural unconscionable because the

28

10

Plaintiffs as uneducated, Spanish speaking homebuyers were in an economic position below that of the Spanish speaking and English writing Developers. This point is strengthened by the facts of Plaintiffs' own Complaint and by the fact that none of the plaintiffs struck out the judicial reference provision. Even as written, the instant reference clause contained the same type of impediments as the Pardee contract:   non-descriptive captions such as "JUDICIAL REFERENCE" and "ALTERNATIVE DISPUTE RESOLUTION"; long lists of small type judicial reference rules with roman numerals to fourteen; the fact that the clause was over three pages long; that initials were required on the top of the third page of the judicial clause itself; and no indication as to its continuation from the previous pages is given. [Purchase Contracts, Exhibit C to Declaration of Frank Riebli, pages 10-12] These facts operate in addition to the permeating fact that the selling agent routinely hurriedly translated the contract in Spanish to the Plaintiffs, whom did not speak English, thereby making it "physically difficult to read."   Since Plaintiffs set forth more than sufficient allegations describing the procedurally unconscionable nature of the sales process utilized by the Developer Defendants, the motion to compel arbitration should be denied.

Granted, a Court has held that the judicial reference is not procedurally unconscionable when the plaintiffs *do not offer evidence* that the offending provision was *included in every agreement*; or that they *lacked the sophistication or education* to understand the contracts and when the provision is on *less than one page* in a nine-page contract. Trend Homes Inc. v. Super. Court (2005), 131 Cal.App.4[th] 950, 958-959. The Court in Trend held that it could not find procedural unconscionability when there is "no evidence the provision was included in every purchase agreement." Id. The Court also determined that it regardless of whether the parties were first-time homebuyers, they offered no evidence "that they lacked the education, experience or sophistication to understand the contracts." Id. at 959. Finally, the Court held that is was important to note that the judicial reference clause was entirely "on the eighth page of the nine-page agreement" and the buyer and seller placed their initial immediately below the provision." Id. at 959.

The Trend is easily distinguishable considering that all four contracts in this case spanning

11

1   two calendar years did not have the judicial reference provision stricken. [Purchase Contracts,

2   Exhibit C to Declaration of Frank Riebli]. Furthermore, Defendants have not brought any evidence

3   to the contrary. In addition, unlike the Trend case, the Plaintiffs do allege that they "cannot

4   competently read or write in the English language." [Complaint ¶17]. Lastly, Plaintiffs have

5   already shown that the clause was "physically difficult" to read because it contained: non-

6   descriptive captions such as "JUDICIAL REFERENCE" and "ALTERNATIVE DISPUTE

7   RESOLUTION"; the clause was over *three* pages long; that the buyers' initials were required on

8   the top of the *third page* of the judicial clause itself; there was no indication as to its continuation

9   from the previous pages is given and the fact that each contract was at least over forty pages long!

10  [Purchase Contracts, Exhibit C to Declaration of Frank Riebli, pages 10-12].

11      For these reasons, the Plaintiffs request that the judicial reference clause be found

12  procedurally unconscionable and that the motion to compel arbitration should be denied.

13  c. The Developers' Judicial Reference contract was Substantively Unconscionable because the
    Defendants' Terms Were Harsh and Oppressive.

14

15      A waiver of a jury trial in a judicial reference clause is so one-sided when the clause itself

16  gives "buyers nothing in return for such waiver" and it is *not* shown that "a judicial reference

17  procedure would result in a significant savings of time or costs." Pardee Const. v .San Diego

18  Super. Court (2002), 100 Cal..App. 4th 1081, 1092-93.

19      In the instant matter, since the judicial reference clause is commonly employed for

20  construction defect cases, then the inclusion of such a procedure for this federal civil litigation

21  matter, is both procedurally unfit and unnecessarily time-consuming. Since the Developers are

22  asking that the Plaintiffs forfeit their constitutional right of a right of jury when the judicial

23  reference procedure is not clearly to any advantage to them, it should be held as substantively

24  unconscionable. As such, the judicial reference clause is also substantively unconscionable and not

25  a proper basis for arbitration under the circumstances.

26  **B. DEFENDANTS' MOTION TO DISMISS ON SUBSTANCE IS EQUALLY LACKING
    IN MERIT AND SHOULD BE DISMISSED.**

27

28

12

1 | **1. The Federal Definition of an "Credit" Encompasses the Developers' five installment payment plan where Three 1% Payments and a Two Balloon payments Were Required to Be Made In Order to Purchase its Home.**

2

3    Defendants' employment of a narrow description of "credit," resembling a laymen's

4    definition of 'credit cards,' is not applicable to the actual legal definition defined by federal law.

5    Under the Equal Credit Opportunity Act, "credit" is defined as the "the right granted by a

6    creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase

7    property or services and defer payment therefor." 15 U.S.C §1691a(d). A reasonable reading of the

8    above statute indicates that there are three types of credit: (1) the right of the debtor to defer

9    payment of debt; (2) the right of the debtor to incur debts and defer its payment; (3) the right of the

10   debtor to purchase property or services and defer payment.

11   In this matter, there was a schedule of successive payments by the Plaintiffs to the

12   Developer Defendants which created a *right* of Plaintiffs: (1) to defer payment of the homes until

13   the date of closing; (2) to incur a debt for the cost of the home and to defer payment of the

14   remaining balance until the close of escrow; and (3) to purchase the respective homes and defer

15   payments of the remaining balance until close of escrow.  [Purchase Contracts, Exhibit C to

16   Declaration of Frank Riebli, pages 1-2].

17   Defendants' argues against the finding of "credit" in this matter because no hallmarks of a

18   "credit transaction" are found. The issue with this argument is that the term "credit transaction" is

19   not defined or utilized as a definition under the ECOA. Secondly, there is absolutely no authority

20   cited by Defendants that state that "credit," as defined under the ECOA, can only be extended after

21   the creditor runs credit checks, obtains FICO scores and charges interest.

22   Likewise, Defendants' arguments that the Plaintiffs did not attain possession until the

23   installments were complete and that they were "contingent debts" are also not requirements found

24   under the statute. The statute speaks for itself.

25   Finally, even the Code of Federal Regulations holds that the subject transaction is not

26   entitled exemption from the statute under the "incidental credit" exception. 12 C.F.R. § 202.3(c).

27   The "incidental credit" exception would have only saved Defendants had they required four or less

28

13

installments. 12 C.F.R. § 202.3(c)(iii). Here, each of the Plaintiffs made five payments in the Agreement: (a) Three 1% Payments prior to Closing; (b)a Fourth Payment of First Loan Proceeds; and (c) a Fifth Payment of the Down Payment Balance. [Purchase Contracts, Exhibit C to Declaration of Frank Riebli, page 1]. Developers cannot argue that Plaintiffs did not make the payment of First Loan Proceeds unless it also stipulates that it reached a direct contract with the lender itself so that the Plaintiffs are not responsible for the mortgage proceeds. Although Defendants might attempt to chop the total number installment payments to less than five, the Ninth Circuit has already held that ECOA should be liberally applied for the protection of consumers. Brothers v. First Leasing (9th Cir. 1984), 724 F.2d 789, 794.

As such, since Plaintiffs' claim should be liberally interpreted to include the instant transaction, their ECOA claim should survive the motion to dismiss.

**2. Plaintiffs Carefully Allege In Their Complaint That Defendants' Home Sales Are Connected to Interstate Commerce and Constitute a Pattern of Discriminatory and Fraudulent Predicate Acts over Two Years.**

The Federal Racketeer Influenced and Corrupt Organizations Act [hereafter "RICO"] may be pled in cases such as this one where it group of entities jointly acted to derive income from illegal "racketeering activity." Under RICO, any entity is civilly liable when it:

(1) Uses or invests income derived `from a pattern of racketeering activity' to operate an enterprise engaged in interstate commerce  [§ 1962(a)];

(2) Maintains an interest in or control of such an enterprise `through a pattern of racketeering activity' [§1962(b)];

(3) Being employed by or associated with such an enterprise, conducts or participates in the conduct of its affairs `through a pattern of racketeering activity'  [§ 1962(c)]; or,

(4) Conspires to violate the first three subsections of §1962.  [§1962(d)].

In order to state a claim under RICO, plaintiffs must allege that defendants engaged in : "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Odom v. Microsoft Corp. (9th Cir. 2007) 486 F.3d 541, 547. At issue, however, is whether the Plaintiffs allege that the racketeering activity is connected with interstate commerce.

14

a. Plaintiffs' Have Sufficiently Alleged That the Racketeering Activities by Defendants Were Not Possible Without Affecting Interstate Commerce and Have Devastating Impacts on Both Plaintiffs And Interstate Commerce.

The jurisdictional nexus of interstate commerce can be easily met by a showing either that the enterprise's activities has a minimal effect on interstate commerce or that the enterprise's impact on the victim has an effect on interstate commerce. United States v. Juvenile Male (9th Cir. 1997), 118 F.3d 1344, 1349. The Court held that a minimal showing of an effect on interstate commerce was shown when a Subway restaurant was robbed that purchased goods from out of state suppliers. Id. The Court also found that it was also sufficient that to show that the victim was harmed by a weapon brought in through interstate commerce. Id.

Although the case of Musick v. Burke (9th Cir. 1990), 913 F.2d 1390, 1398 is relevant, it should be distinguished based upon the fact that it relates to sufficiency of evidence on summary judgment and not the decision of whether RICO jurisdiction should be established. Making all reasonable inferences from Plaintiffs' allegations, it is clear that Plaintiffs have alleged both an effect on interstate commerce by the Defendants' racketeering activities based upon the enterprise's activities and plaintiffs' resulting effect on interstate commerce.

In regards to the enterprise's activities, Plaintiffs have alleged that Defendants "utilized U.S. Mail and interstate carriers along with interstate telephone lines to discuss and transfer fraudulent documents and marketing materials." [Complaint ¶76]. Just like the weapon in Juvenile Male, Plaintiffs also allege that Defendants utilized the telephone and Internet, a form of interstate commerce, to fraudulently sell its homes. [Complaint ¶32]. Plaintiffs have also alleged that the Defendants engage in this RICO scheme to obtain " approval of home purchase documents...of other entities such as lenders." [Complaint ¶75]. These other entities span nationwide and include corporations such as Countrywide Home Loans Inc. from New York [Complaint ¶23] and banks with nationwide offices such as Wells Fargo [Complaint ¶28]. Please see U.S. v. Atcheson (9th Cir. 1996, 94 F.3d 1237, 1243 [Court holds that taking monies from victim's bank account from a bank headquartered out of state is a minimal effect on interstate commerce].

1    The effect of this racketeering activity also had an effect on the victim that will not be

2  confined locally. Due to the devastating affect of this racketeering activity, Plaintiffs are now

3  unable to sell their homes, stuck in subprime mortgages and facing both foreclosure and possibly,

4  bankruptcy. [Complaint ¶54]. Just like a robbed Subway has to order more chips from out of state

5  in Juvenile Male, Plaintiffs will have to engage with their lenders with national offices and with

6  offices located outside the State to turn over their homes in foreclosure. All one has to do is turn

7  the news on their TV to see the effect that local actors such as Defendants Developers are having

8  on interstate commerce as "historically targeted groups of minorities and the elderly are now

9  disproportionately facing the brutal effects of today's developing housing recession." [Complaint

10  ¶1].

11

12    b. Plaintiffs' Allege That Defendants Committed Mail and Wire Fraud By Using U.S.
      Mail, Carriers, Telephone Lines and the Internet to Achieve its Racketeering Objectives.

13

14    In a consumer fraud case, the elements of wire and mail fraud satisfying Rule 9(b) are:  (1)

15  A scheme to defraud including the specific misrepresentations made and, (2) Use of Interstate

16  Commerce In Furtherance of the Scheme.  Beard v. Worldwide Mortgage Corp. (W.D. Tenn

17  2005), Case No. 04-2183-D/An. Page 1, 11.

18    **3. Plaintiffs specifically allege that in several dates after October 2005 that Developer
      Defendants Made Various False Representations in a Sales Office located in East**
19    **Salinas to each of the Plaintiffs.**

20    It is true that Plaintiffs are required to plead the time, place, and content of the alleged

21  misrepresentation underlying its RICO fraud claims. Edwards v. Marin Park, Inc. (9th Cir. 2004),

22  356 F.3d 1058, 1066.  Accordingly, Plaintiffs submit the following breakdown of these specific

23  facts that meet the Rule 9(b) particularity requirement:

24    **Time**:
      * Urtiz-Gonzalez:  "Starting in…October 2005;" "On or about October 21, 2005;" "late in
25    the day;" "March 2006"  [Plaintiffs' Complaint ¶¶32, 38 and 39]

26    * Becerras:  "Starting in…October 2005;" "fall of 2005;" "January 2006" [Complaint
      ¶¶32, 40 and 41]
27
      * Contreras:  "Starting in…October 2005;" "On or about October 22, 2005;" "January
28
                                          16

2006" [Complaint ¶¶32, 42 and 43]

* Aguirre: "Starting in…October 2005;" "On or about February, 2006;" "April 2006" [Complaint ¶¶32, 44 and 45]

**Place: For all Plaintiffs:**
"Monterey County;" "East Salinas," "Sales Offices set up at Tuscany at Monte Bella Development;" the "Monte Bella Sales Office." [Complaint ¶¶18-21, 32, 34, 38-44, respect.]

**Content – For all Plaintiffs:** Please see [Complaint ¶¶32-44, 46, 75].

### 4. Plaintiffs Specifically Allege That Developer Defendants Committed Mail and Wire Fraud Upon the Plaintiffs.

Predicate offenses for RICO are defined under 18 U.S.C. §1341-1343. The most common offense invoked in RICO claims involving mortgage fraud are based on the predicate offenses of mail, wire, radio or television fraud as defined under these statutes.

The use of interstate commerce can be shown by, at a minimum, "that a mailing or an interstate electronic communication occurred." Beard v. Worldwide Mortgage Corp. (W.D. Tenn 2005), Case No. 04-2183-D/A, Page 1, 17. Such showing can be made by the allegation that documents were sent or received either by U.S. Mail, private or commercial interstate carriers, or by use of the telephone, Internet in furtherance of the scheme to defraud. Id. at 15. Furthermore, an exception exists to the Rule 9(b) particularity requirement "when the relevant facts lie exclusively within the knowledge and control of the opposing party." Id. at 10-11. [quoting U.S. v. State of Ohio (S.D. Ohio 1995), 885 F. Supp. 1055, 1061. The Court rejected the defendants' argument that the Complaint was insufficient because it did not name the specific individuals or the exact date of every interstate communication, because this information would only "likely would be in the excusive possession of Defendants." Id. at 16-17.

Plaintiffs have gone well beyond the standards required in the Ninth Circuit, as "in a mailing case, the mailings only need to be in furtherance of a scheme to defraud and do not themselves need to be fraudulent or untrue." Sebastian Intern. Inc. v. Russolillo (C.D. Cal. 2001), 128 F. Supp.2d 630, 635.

1    Plaintiffs not only have exhaustively detailed the various fraudulent misrepresentations

2 made by Developer Defendants, they have also specifically alleged that Defendants "utilized U.S.

3 Mail and interstate carriers along with interstate telephone lines to discuss and transfer fraudulent

4 documents and marketing materials." [Complaint ¶76]. Plaintiffs have also alleged that

5 Defendants schemed to obtain " approval of home purchase documents…of other entities such as

6 lenders." [Complaint ¶75] . These other entities span nationwide and include corporations such as

7 Countrywide Home Loans Inc. from New York [Complaint ¶23] and banks with nationwide

8 offices such as Wells Fargo [Complaint ¶28]. Furthermore, since the use of a website and the

9 sending e-mails to further a scheme are types of transmissions are done by wire, then wire fraud is

10 shown. Hy Cite Corp. v. Badbusinessbureau.Com, L.L.C., (Ariz. 2005) Case No. 04-2856-PHX-

11 EHC, Page 1, 11. Plaintiffs have already alleged Defendants uses the Internet was used to market

12 the Tuscany at Monte Bella homes. [Complaint ¶32]. Although the Developer Defendants request

13 that exact details be provided at the pleading stage, this would be an impossible standard

14 considering only that Defendants know the dates, times and minute details concerning its own

15 interstate communications.  Therefore, its motion to dismiss should be denied on this point.

16    **5. Plaintiffs Allege a 'Pattern Of Racketeering Activity'**

17    *a. Plaintiffs Allege a Sufficient Number of Four Predicate Crimes*

18    To show a "pattern of racketeering activity", a plaintiff must establish that a group of

19 related (1) defendants committed two or more predicate offenses causing plaintiffs to suffer an

20 injury as a result. Beard v. Worldwide Mortgage Corp. (W.D. Tenn 2005), Case No. 04-2183-D/A,

21 Page 8.

22    It is clear that because there since there are four sets of Plaintiffs involved, that at least four

23 separate predicate offenses occurred. Furthermore, since the Plaintiffs have alleged that fraudulent

24 marketing begin in October 2005 and the last loan closed in May 2006 that activities over at least

25 seven months. [Complaint ¶32, 45 and 51] In addition, it should be noted that Plaintiffs also have

26 also alleged that Defendants rejected their joint tender requesting the 105% guarantee in October

27 2007 which was summarily rejected [Complaint ¶39, 41, 43, 45].

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

*b. Plaintiffs Both Allege Close-Ended Continuity and an Open-Ended Continuity*

The "standard for showing open-ended continuity is extremely low." Flag Co. v. Maynard (Or. 2006), Case No. CV-05-1194-HU, Page 1, 10. [quoting Sebastian Intern. Inc. v. Russolillo (C.D. Cal. 2001), 128 F. Supp.2d 630, 635.] As long as the plaintiff alleges that the fraudulent conduct is a regular way of doing business, this requirement is met. Id. at 11.

To that end, Plaintiffs allege, "Defendants continue to engage in the same racketeering business practices and make the same alleged misrepresentation to unsuspecting Spanish speaking individuals in order to operate their ongoing businesses." [Complaint ¶78].

Defendants' argument that the Defendants' scheme will end when all the homes are sold in the *200-acre* development is not sufficient considering the fact that this event may be many years away from now. The simple fact is that the threat of repetition is not naturally limited by how much land the Developer Defendants currently holds, as they can just as easily acquire more land, build more homes and continue to engage in its fraudulent business practices. The key consideration is not whether the Defendants have the resources to engage in the same fraud in the future, but whether there is "*conduct* by which by its nature projects into the future with a threat of repetition." Superior Bank F.S.B. v. Tandem Nat. Mortgage Inc. (Md. 2000), 197 F. Supp.2d 298, 324.

Finally, even applying Developers' standards for Closed-Ended continuity, the Plaintiffs have alleged four predicate offenses over at least the span of seven months. No law is cited by Plaintiff that show that seven months extended by continuing acts of denial in October 2007 is insufficient. As such, both open-ended and closed ended continuity has been shown.

Accordingly, since the Plaintiffs have sufficiently alleged the requisite facts to demonstrate that Defendants have used devices of interstate commerce to engaged in a fraudulent scheme to sell homes in manner both injurious to Plaintiffs and to the nation, Plaintiffs' RICO claim should stand.

**6. Plaintiffs have Sufficiently Alleged That Developers Defendants are Liable both Under Secondary Liability and As Co-Conspirators for RESPA and Breach of Fiduciary Trust.**

**a. Developer Defendants are liable for the RESPA Violation that it committed with Old Republic as its agent and co-conspirator**

Under the general rules of agency, a party may be held liable for the conduct of other as long as the plaintiff alleges that the agent committed the act.  Munoz v. Int'l. Home Capital (N.D. Cal 2004), Case No. C03-01099 RS, Page 1, 4.  The Court held that since "averments of agency are not required in a complaint,... a person legally responsible for an act may be alleged to have committed it without going into the theories which support that ultimate fact." Id.

Plaintiffs have alleged generally that the Developer Defendants are the agents and/or principals of Defendant Old Republic. [Plaintiffs' Complaint ¶ 31]. Defendant Old Republic has been alleged to have directly violated RESPA. [Plaintiffs' Complaint ¶ 91].

In the instant matter, Plaintiffs have gone much farther than the plaintiffs in Munoz in its own Complaint because, here, it is alleged how the parties coordinated their actions on an agency relationship. Complaint ¶46 and 52]. For example, "OLD REPUBLIC also failed to disclose any things of value and/or kickbacks received from other civil conspirators such as VALLEY, FARANDA and YOP in violation of this Act."   [Plaintiffs' Complaint ¶91].

Furthermore, Plaintiffs have also alleged that a specific conspiracy between Developer Defendants and Old Republic.  Plaintiffs allege that Developer Defendants are co-conspirators with Defendant Old Republic and that Defendants committed these acts in furtherance of scheme to defraud Plaintiffs. [Plaintiffs' Complaint ¶ 31 and 91]. In addition, Plaintiffs have also provided specific facts alleging that the conspiracy between the Developer Defendants and Old Republic. [Plaintiffs' Complaint ¶46 and 52].

As such, Plaintiffs respectfully request that the Court allow it the opportunity to proceed litigating the substance of RESPA in the discovery process.

**b. Defendants is liable for Breach of Fiduciary Trust Due to Its Obligations for its Agent's actions.**

Again, Plaintiffs do not allege that the Developer Defendants owed direct fiduciary duties to Plaintiffs. [Plaintiffs' Complaint ¶153, "All Defendants except VALLEY, YOP, and FARANDA")].

20

1     However, Defendants are alleged to be liable for breaches of fiduciary trust committed by

2   Old Republic by virtue of Plaintiffs' general agency allegations made in its' Complaint at ¶¶ 31,

3   154. Ruiz v. Decision One Mortgage Co. (N.D. Cal. 2006), Case No. 03-01099 RS, Page 6-7.

4   Specifically, as agents, Developer Defendants are liable "to Plaintiffs on the basis of their acts in

5   furtherance of these other fiduciaries' fraudulent conduct towards Plaintiffs." [Plaintiffs'

6   Complaint ¶[154].

7

8   **7. Plaintiffs Have Sufficiently Alleged That Developers Defendants are Not Only Directly Liable for Negligence and Negligence Per Se, But Also Liable On an Agency Theory.**

9       *a. Developer Defendants are Liable For Negligently Translating The Purchase Contract*

10      "Every one is responsible, not only for the result of his willful acts, but also for an injury

11  occasioned to another by his want of ordinary care or skill in the management of his property or

12  person, except so far as the latter has, willfully or by want of ordinary care, brought the injury

13  upon himself." Cal. Civ. Code §1714(a).  "D]uty," is not sacrosanct in itself, but only an

14  expression of the sum total of those considerations of policy which lead the law to say that the

15  particular plaintiff is entitled to protection.'" Dillon v. Legg (1968) 68 Cal.2d 728, 734.

16      In California, any business may owe a borrower a duty of care depending on "various

17  factors, among which are [1] the extent to which the transaction was intended to affect the

18  plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered

19  injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered,

20  [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future

21  harm.'" Nymark v. Heart Fed. Savings & Loan Assn. (1991), 231 Cal.App.3d 1089, 1098 [quoting

22  Connor v. Great Western Sav. & Loan Assn. (1968) 69 Cal.2d 850, 865.]. The *Rowland* factors

23  also additional considerations: " the extent of the burden to the defendant and consequences to the

24  community of imposing a duty to exercise care with resulting liability for breach, and the

25  availability, cost, and prevalence of insurance for the risk involved." Rowland v. Christian (1968),

26  69 Cal.2d 108, 113.

27      A seller owes a duty to act as a reasonable seller or builder and disclose material facts

28                                              21

related to a sale of property. Karoutas v. Homefed Bank (1991), 232 Cal.App.3d 767, 775.

In addition, duty should be found to exist under the circumstances where Defendants attempted to provide translation services to Plaintiffs and miserably failed. [Plaintiffs' Complaint ¶¶17 and 29]. In respective order, the Rowland factors all favor the finding of duty by Defendants:

[1] Defendants intended to provide a translation service to Plaintiffs in order to sell them homes. [Plaintiffs' Complaint ¶¶17 and 29];

[2] Harm was foreseeable considering that the contracts were over forty pages long and sometimes, were translated in less than ten minutes; [Complaint ¶¶38-46] ;

[3] The injuries are evident now that Plaintiffs' tender of the 105% buyback was rejected [Complaint ¶¶38-46];

[4] Plaintiffs allege that Defendants caused its injuries. [Complaint ¶¶38-46];

[5] Defendants acted negligently in order to serve their own financial interest.

[6] No extra burden will be placed on it considering that the financial stability of borrowers and the nation will be strengthened. [Complaint ¶¶1, 29];

*b. As Holders of Real Estate Licenses, Developer Defendants are Liable on a Negligence Per Se Theory for Violation of Cal. Bus. & Prof. Code 10176.*

Plaintiffs allege that Defendants are also liable under a Negligence Per Se theory for violation of Cal. Bus. & Prof. § 10176 [Complaint ¶160]. This statute is important as it establishes a duty of care by licensed real estate professional to all persons. "Statutes may be borrowed in the negligence context for one of two purposes: (1) to establish a duty of care, or (2) to establish a standard of care." Elsner v. Uveges (2004), 34 Cal.4th 915, 941 [footnote 8], [quoting California Service Station Assn. v. American Home Assurance Co. (1998), 62 Cal.App.4th 1166, 1177-9].

This statute delineates specific standards of conduct for real estate licensees in California licenses such as those held by Developer Defendants [Complaint ¶¶19, 20]. Under the statute, a licensee may be liable for such things as: (a) Making any substantial misrepresentation; (b) Making any false promises of a character likely to influence, persuade or induce. (d) Acting for

22

1    more than one party in a transaction; without the knowledge or consent of all parties thereto.  (i)

2    Any other conduct, whether of the same or a different character than specified in this section,

3    which constitutes fraud or dishonest dealing. Id.

4    ~~As such, Developer Defendants are directly liable for negligence as real estate agents.~~

5            *c. Developer Defendants are Also Liable For Negligence on an Agency Theory*

6            As alleged in the Complaint at ¶31, Defendants are otherwise liable for Plaintiffs'

7    negligence claim by virtue of Plaintiffs' general agency allegations. Ruiz v. Decision One

8    Mortgage Co. (N.D. Cal. 2006), Case No. 03-01099 RS, Page 6-7.

9    **8. Developer Defendants Were Required to Provide Spanish Language Contracts as the**

10   **Contracts to Purchase Homes Was a Contract that Extended Credit for a Personal, Family**
     **and Household Purpose.**

11

12           Despite Defendant Developers' convenient paraphrasing, the purchase contract falls

13   squarely within the parameters of Cal. Civ. Code §1632(b)(2) which states that the law applies to:

14

15                   "A loan or *extension of credit* secured other than by real
                     property, or unsecured, for use primarily for personal, family
16                   or household purposes."

17    [*Emphasis* added].

18           Plaintiffs have specifically alleged that the Developer Defendants "***extended credit*** to each

19   respective Plaintiff as each required to make a series of payments over an extended period of time

20   to pay of their homes." [Complaint ¶¶101].

21           This makes sense because California law defines an "extension of credit" as "the right to

22   defer payment of debt or to incur debt and defer its payment, offered or granted primarily for

23   personal, family, or household purposes." Cal. Civ. Code §1789.12.  There can be no doubt that

24   Developer Defendants 'deferred payment of the homes' in five payments and over several months

25   on a specific schedule: (a) Three 1% Payments prior to Closing; (b) a Fourth Payment of First

26   Loan Proceeds; and (c) a Fifth Payment of the Down Payment Balance. [*Purchase Contracts*,

27   Exhibit C to Declaration of Frank Riebli, page 1].

28                                              23

The statute should be interpreted in light of its goal is "to increase consumer information and protections for the state's sizeable and growing Spanish-speaking population." Ruiz v. Decision One Mortgage Co. (N.D. Cal. 2006), Case No. 03-01099 RS, Page 6 and 7, [quoting Cal. Civ. Code §1632(a)(1). Therefore, since the Plaintiffs have placed Defendants on notice of this liability, Plaintiffs' allegation is treated as true and all inferences are reasonably made in its favor - the motion to dismiss on this issue should be denied.

## C. DEFENDANTS' MOTION TO STRIKE SHOULD BE DENIED ON ALL MATTERS

The purpose of a motion to strike should be to "avoid the expenditure of time and money that will arise from litigating "spurious issues" by eliminating those issues prior to trial." Taylor v. Quall (C.D. Cal. 2007), 471 F.Supp.2d 1053, 1059-60. "Generally, motions to strike are regarded with disfavor because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice. " Id. at 1059. Such motions are not granted "unless it is clear that the matter at issues could have no possible bearing on the subject matter of the case." Id.

### 1. No Case Law Is Cited by Defendants that Shows That Intentional Misrepresentation and Concealment are Mutually Exclusive.

No law is cited for the proposition that an Intentional Misrepresentation Claim and Concealment Claim are mutually exclusive. Just because certain statements made by Developer Defendants triggers liability under different theories does not mean that Plaintiffs must only choose one now to litigate. At the pleading stage, this would defy the purpose of discovery to allow the facts to be found before final decisions are made to determine what claims will be finally adjudicated. Simply put, as there are *no redundant* allegations to be struck, the motion to strike is inappropriate and should be denied.

### 2. Defendants Stipulate to Not Pursue Punitive Damages for Negligent Misrepresentation

Plaintiffs agree to have the claims read as to not implicate punitive damages for negligent misrepresentation.

### 3. Plaintiffs Waiver of Jury Trial Is An Unconscionable Feature of the Judicial

24

Reference Clause.

Since the waiver of jury trial was included as part of a Judicial Procedure clause that was an Adhesion Contract, Procedurally and Substantively Unconscionable, then it should also be disregarded.

Moreover, if the substance of Plaintiffs' claims involve any "credibility issues" with the facts of the case, a jury trial still must be given in a judicial reference case. De Guere V. Universal City Studios, Inc. (1997), 56 Cal.App.4th 482, 505.[2] There can be no doubt that this case centers on Plaintiffs' allegations upon which California law requires to be heard by a jury.

## D. IN THE ALTERNATIVE, PLAINTIFFS REQUEST LEAVE TO AMEND

To the extent that the Court finds it necessary for Plaintiffs to amend its complaint, the Plaintiffs ask for leave to amend in order to cure any such deficiencies. Lopez v. Smith (9th Cir. 2000), 203 F.3d 1122, 1130.

## V. CONCLUSION

Plaintiffs have carefully outlined many facts demonstrating what, when and how Defendants are liable. Although more facts could always be added, the crucial question should be whether Defendants understand the liability they face so as to be able to litigate the matter. Since Defendants' cannot reasonably claim to have a clear enough picture of each of Plaintiff's claims, Plaintiffs respectfully ask the Court to deny Defendants' motion in its entirety.

Dated: February 29, 2008          PATANE • GUMBERG, LLP

By: _____
SERGIO H. PARRA
NINA M. PATANE
Attorneys for Plaintiffs

---

[2] Unlike this case, the Court in De Guere held that a professional accounting referee could decide specific issues concerning accounting without need of a jury. Id. at 489-499.

25

**PROOF OF SERVICE**

STATE OF CALIFORNIA -- COUNTY OF MONTEREY

I declare that I am employed in the County of Monterey, State of California. I am over the age of eighteen years and not a party to the within cause; my business address is Patane · Gumberg, LLP, 4 Rossi Circle, Suite 231, Salinas, California 93907.

On March 1, 2008, I served the foregoing document(s) described as:
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND IN THE ALTERNATIVE, MOTION TO STRIKE; DECLARATION OF SERGIO PARRA IN OPPOSITION OF DEFENDANT VCH'S MOTION TO DISMISS OR ALTERNATIVELY, IN SUPPORT OF MOTION TO STRIKE; PLATNIFFS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFFS' MOTION IN OPPOSITION TO VCH'S MOTION TO DISMISS;**

( )     BY E-FILE - By transmitting via efiling the document(s) listed above set forth below on this date from 4 Rossi Circle, Suite 231, Salinas, California 93907.

( )     BY MAIL - By placing the documents listed above in a sealed envelope, addressed as set forth below. I am readily familiar with the firm's practice for the collection and processing of correspondence. Under that practice it would be deposited with U.S. POSTAL SERVICE on that same day with postage thereon fully prepaid at Salinas, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

( )     BY PERSONAL SERVICE - By personally delivering the document(s) listed above to the person(s) or other proper person(s) at the address(es) set forth below.

**SEE E-FILING LIST ATTACHED**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 1, 2008,.at Salinas, California.

PAM KIMBALL

1

Elizabeth C. Gianola, Esq.
Horan, Lloyd Law Offices
499 Van Buren Street
Monterey, CA, 93940

Mark D. Peterson, Esq.
Frank J. Riebli, Esq.
Farella Braun-Martel, LLP
Russ Building-235 Montgomery St.
San Francisco, CA 94104

John S. Blackman, Esq.
Farbstein & Blackman, APC
411 Borel Avenue, Suite 425
San Mateo, CA 94402

Michael J Steiner
Severson & Werson
One Embarcadero Center, Suite 2600
San Francisco, CA  94111

Michael Smith
Manning & Marder, Kass, Ellrod, Ramirez LLP
One California Street Suite 1100
San Francisco, CA  94111

Countrywide Homes Loans, Inc.
Sandy Shatz, Esq.
SVP, Asst. General Counsel
5220 Las Virgenes Rd. Mail Stop AC-11
Calabasas, CA 91302

Steyer, Lowenthal, Boodrookas,
Alvarez & Smith, LLP
Carlos Alvarez, Esq.
One California Street, Third Floor
San Francisco, CA 94111

Nicolas Dauiso, Esq.
Robinson Tait, PS
616 First Ave., Suite 550
Seattle, WA 98104

Mark D. Peterson, Esq.
Frank J. Riebli, Esq.
Farella Braun-Martel, LLP

Russ Building-235 Montgomery St.
San Francisco, CA 94104

Mark D. Peterson, Esq.
Frank J. Riebli, Esq.
Farella Braun-Martel, LLP
Russ Building-235 Montgomery St.
San Francisco, CA 94104