MICHAEL J. STEINER (State Bar No. 112079)
JOSHUA E. WHITEHAIR (State Bar No. 244900)
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant
WELLS FARGO BANK, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN JOSE)

| | |
|---|---|
| BERENICE GONZALEZ AND JOSE URTIZ, JORGE AGUIRRE, ELEAZAR BECERRA AND ROCIO BECERRA, J. GUADALUPE CONTRERAS, all individually and on behalf of the general public,,<br><br>Plaintiffs,<br><br>vs.<br><br>VCH SALINAS 1 LLC dba VALLEY COMMUNITY HOMES and as MONTE BELLAS REALTY, NORM YOP INC. REALTORS dba MONTE BELLA REALTY, MONICA FARANDA dba as MONTE BELLA REALTY, UNIVERSAL MORTGAGE & SALES INC., IRA MORTGAGE & HOME SALES, INC., AMERICAN PACIFIC MORTGAGE CORP. dba as CREATIVE MORTGAGE, OLD REPUBLIC TITLE CO., COUNTRYWIDE HOME LOANS INC. dba AMERICA'S WHOLESALE LENDER, COUNTRYWIDE FINANCIAL CORP., NEW CENTURY MORTGAGE CORP., HOMEQ SERVICING CORP., CAMERON FINANCIAL GROUP INC., WELLS FARGO BANK, and DOES 1 TO 100, inclusive,<br><br>Defendants. | Case No.: C07 05698 JW<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WELLS FARGO BANK'S MOTION TO STAY OR, ALTERNATIVELY, 12(B)(6) MOTION TO DISMISS, 12(F) MOTION TO STRIKE AND 12(E) MOTION FOR A MORE DEFINITE STATEMENT**<br><br>Date:      March 24, 2008<br>Time:     9:00 a.m.<br>Dept.:    Courtroom 8, 4th Floor<br>Judge:   Hon. James Ware<br><br>Trial Date:    Not Set<br><br>**Accompanying Documents:**<br>Objection to Request for Judicial Notice |

07725/0082/661582.1

Reply In Support of Wells Fargo's Motions to Stay or,
Alternatively, to Dismiss, Strike and for More Definite Statement
Case No.: C07 05698 JW

## I. INTRODUCTION

In their First Amended Complaint ("FAC"), Plaintiffs J. Guadalupe Contreras and Tereas Contreras ("the Contreras") allege that they went directly to defendant Wells Fargo Bank ("Wells Fargo"), a national bank and retail lender, to obtain a mortgage loan so that they could purchase their Monte Bella home. (*Id.* at ¶¶ 28, 50.) The loan was negotiated in Spanish, their native language. (*Id.* at ¶ 50.) They did *not* pay Wells Fargo any excessive broker fees, yield spread premiums or other excessive commissions. (*Id.* at ¶¶ 50, 59.) The loan closed in January, 2006. (*Id.* at ¶¶ 43, 50.)

A year and nine months later, in September, 2007, the Contreras discovered that they did not like the terms of their 5-year adjustable rate mortgage.[1] (*Id.* at ¶¶ 29, 50.) They allege that they could not have made this discovery sooner because the loan documents they possessed for a year and nine months were written in English. (*Id.*)

Yet now, in opposition to Wells Fargo's motion to dismiss, the Contreras tell a different story. Wells Fargo is not a retail lender but a mortgage broker or, more precisely (and paradoxically), it employs mortgage broker agents in-house. (Pts' Memo In Opp'n, 4:20-21, 5:4-5.) Wells Fargo placed the Contreras into a "toxic" mortgage. (*Id.* at 9:2, 12.) The Spanish negotiations were somehow inadequate. (*Id.* at 7:13-14.) And, the loan that the Contreras presumably paid for a year and nine months was incomprehensible to them because the terms were written in English on documents they possessed for those seventeen months but could not get translated, for some reason. (*Id.* at 7:2, 12-14.)

Clearly, the Contreras are willing to go to great lengths to salvage their claims against Wells Fargo. But raising new facts in their opposition brief which contradict those alleged in their FAC is impermissible,[2] not to mention disingenuous.

The Contreras' claims against Wells Fargo should be stayed if the court compels Plaintiffs and the developer and real estate broker defendants to judicial reference. Otherwise, Wells

---

[1] More accurately, it is a 30-year mortgage loan with an adjustable rate after five years.

[2] *Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 (9th Cir. 1998); *Miller v. Continental Airlines*, 260 F.Supp.2d 931, 939 (N.D. Cal. 2003).

- 1 -

Fargo's motion to dismiss and strike should be granted, without leave to amend.

## II. THE ACTION SHOULD BE STAYED PENDING JUDICIAL REFERENCE

The Contreras cite *Comedy Club*[3] for the proposition that an action against a non-signatory cannot be stayed pending arbitration unless there is an alleged agency relationship between the non-signatory and the signatory. This is not the holding in *Comedy Club*. Nor does it even resemble the rule in the Ninth Circuit.

That rule, simply stated, is this: where a case includes both arbitrable and non-arbitrable claims, a district court has discretion to stay all claims pending the outcome of the arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 n. 23, 103 S.Ct. 927, 939 n. 23 (1983); *accord United States for the Use and Benefit of Newton v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1426-27 (9th Cir. 1985).

A court should exercise its discretion to stay where there are similar issues of law and fact between the claims and where "a failure to stay the action may lead to inconsistent findings which will hinder the pursuit of judicial efficiency." *Bischoff v. DirecTV, Inc.*, 180 F.Supp.2d 1097, 1114-15 (C.D. Cal. 2002) (citing *Contracting NW, Inc. v. City of Fredericksburg, Iowa*, 713 F.2d 382, 386 (8th Cir. 1983) ("[w]hile it is true that the arbitrator's findings will not be binding as to those not parties to the arbitration, considerations of judicial economy and avoidance of confusion and possible inconsistent results nonetheless militate in favor of staying the entire action.")).

Here, the Contreras' claims against Wells Fargo and the other defendants raise similar issues of law but not because they all share an agency relationship. Indeed, the Contreras readily admit that "Wells Fargo faces no agency liability for any other parties in this matter." (Pts' Memo In Opp'n, 4:6.) Rather, there are similar issues of law because the claims arise from and relate to a shared set of operative facts – the purchasing and financing of the Monte Bellas homes. Consequently, should this action proceed simultaneously on two fronts, as the Contreras propose, there is a significant risk of inconsistent or conflicting adjudications of these shared facts. For instance, a finding by the arbitrator that the Contreras could comprehend English sufficiently

---

[3] *Comedy Club, Inc. v. Improv W. Assocs.*, 514 F.3d 833, 844 (9th Cir. 2007).

enough to understand the material terms of their loan would most certainly bear on the merit of their claims against Wells Fargo in this action.

Moreover, as the Ninth Circuit noted, parallel actions would be terribly inefficient:

> It would waste judicial resources and be burdensome upon the parties if the district court in a case such as this were mandated to permit discovery, and upon completion of pretrial proceedings, to take evidence and determine the merits of the case at the same time as the arbitrator is going through a substantially parallel process.

*Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979).

The Contreras raise the specter of foreclosure and bankruptcy to sway the Court to proceed with the action. However, a stay would not elevate these threats; indeed, it may well induce the parties to resolve the matter informally sooner rather than later. Regardless, the Court can provide the Contreras appropriate relief at such time as it is necessary even if it stays the action.

Accordingly, in the interest of sound and consistent adjudication and judicial efficiency, this action should be stayed pending arbitration.

**III.   ALTERNATIVELY, THE MOTION TO DISMISS SHOULD BE GRANTED**

While the Court is well aware of the legal standards for considering a Rule 12(b)(6) motion to dismiss, it is necessary to supplement the Contreras' dated citations in light of the Supreme Court's recent decision in *Bell Atlantic Co. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955 (2007) ("*Twombly*") where the Court tightened the pleading standards under Rule 8(a)(2).

The Supreme Court now requires a plaintiff to proffer "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S.Ct. at 1974. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (citation omitted).

Further, a complaint cannot simply "le[ave] open the possibility that a plaintiff might later establish some 'set of undisclosed facts' to support recovery." *Id.* at 1968 (citation omitted). Consequently, a Rule 12(b)(6) motion should be granted where the plaintiffs have failed to "nudge[ ] their claims across the line from conceivable to plausible." *Id.*

- 3 -

Because the Contreras allege new and inconsistent facts in their opposition papers, it must also be noted that "[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider*, 151 F.3d at 1197 (emphasis in original). Nor may a court "consider allegations or theories that are inconsistent with those pleaded in the complaint." *Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001) (citing, *inter alia*, *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994)).

### A. California Civil Code § 1632 Does Not Apply To Wells Fargo Bank

The Contreras do not dispute that their loan, which is secured by real property, is exempt from the translation requirement. Cal. Civ. Code § 1632(b)(2). Thus, the only issue is whether the loan falls within any of the narrow exceptions enumerated in section 1632(b)(4). It does not.

The first exception applies section 1632 to loans negotiated by a real estate broker. Cal. Bus. & Prof. Code § 10240. Again, the Contreras acknowledge that their loan does not directly fall within this exception because, as they allege in their FAC, Wells Fargo is not a real estate broker but a national bank (¶ 28) and section 10240 does not apply to national banks. *Id.* at 10133.1(a)(1). Yet, relying on two unpublished decisions, the Contreras argue that their loan may still benefit from this exception. *Ruiz v. Decision One Mortg. Co., LLC*, 2006 WL 2067072 (N.D. Cal. 2006); *Munoz v. Int'l Home Capital Corp.*, 2004 WL 3086907 (N.D. Cal. 2004).

In *Ruiz* and *Munoz*, the courts denied the lenders' motions to dismiss, reasoning that there were sufficient facts to support secondarily liability since the plaintiffs alleged that the real estate brokers who negotiated their loans were agents of the lender. 2006 WL 2067072 *5; 2004 WL 3086907 *9. But, *Ruiz* and *Munoz* are distinguishable from this action in two important ways.

First, unlike Wells Fargo, neither lender in *Ruiz* nor *Munoz* were national banks. Had they been national banks it is highly doubtful the courts would have reached the same conclusion particularly since section 10133.1(a)(1) explicitly precludes the application of section 10240 to national banks.

Second, there are no allegations in the FAC that Wells Fargo employed or made use of any mortgage brokers when it originated the Contreras' loan. In fact, just the opposite is alleged

- 4 -

1  – i.e., that the Contreras "sought to get a loan directly with" Wells Fargo and "inquired with"
2  Wells Fargo "about getting a loan." (FAC ¶ 50.) Unlike the experiences of the other Plaintiffs in
3  this action, no real estate brokers were involved in the Contreras' loan.
4        In order to take advantage of *Ruiz* and *Munoz*, however, the Contreras state in their
5  opposition that Wells Fargo "utilizes mortgage brokers in-house to arrange mortgage loans at the
6  local retail level." (Pts' Memo In Opp'n, 5: 4-5.) These assertions do not appear anywhere in the
7  FAC and, therefore, the Court may not consider them for purposes of this motion. *Schneider*, 151
8  F.3d at 1197. Furthermore, they directly contradict the actual allegations in the FAC, i.e., that
9  Wells Fargo is a retail lender whose activities include "originate, acquisition and/or servicing of
10 loans to borrowers in residential real estate transactions." (FAC ¶ 28.) Again, the FAC alleges
11 that no brokers were involved and that the Contreras obtained their loan directly through Wells
12 Fargo. (FAC ¶ 50.)
13       The Contreras newfound assertions that Wells Fargo employed mortgage broker agents
14 not only contradict the FAC but their own opposition. The Contreras admit that "Wells Fargo
15 faces no agency liability for any other parties in this matter." (Pts' Memo In Opp'n 4:6.)
16 Moreover, in light of *Twombly*, the Court need not accept such assertions which are not plausible
17 on their face. 127 S.Ct. at 1974. The Contreras allege they obtained their loan directly from
18 Wells Fargo. (FAC ¶ 50.) The incredible assertion that an "in-house" mortgage broker may have
19 been involved, made first in the Contreras' opposition papers only after they read Wells Fargo's
20 motion to dismiss, is implausible to say the least.
21       In short, the Contreras simply "cannot rescue [their] state law claim[] against [Wells
22 Fargo] by raising, for the first time in her opposition to dismissal, allegations that are inconsistent
23 with those contained in her complaint." *Miller*, 260 F.Supp.2d at 939. Nor should they be
24 granted leave to amend to plead such inconsistent and farfetched allegations. *See In re Wet Seal,*
25 *Inc. Sec. Litig.*, 518 F.Supp.2d 1148, 1170 (C.D. Cal. 2007) (citing *Reddy v. Litton Indus.*, 912
26 F.2d 291, 296-97 (9th Cir. 1990)).
27       The second and third exceptions enumerated in section 1632(b)(4) – Divisions 7 and 9 of
28 the Financial Code – are similarly inapplicable. Division 7 does not apply because Wells Fargo is

- 5 -

a national bank, not an industrial loan company incorporated in California.[4]  And, Division 9 exempts national banks.  Cal. Fin. Code § 22050.  Still, the Contreras contend in their opposition that Wells Fargo should still be held subject to section 1632 because it holds a California finance lender license.  Once again, this a new allegation which may not be considered for purposes of this motion.  *Schneider*, 151 F.3d at 1197.

Nor should the Contreras be allowed to make such an allegation in an amended pleading.  The license they reference, and ask the Court to take judicial notice of, is actually held by Wells Fargo Financial California, Inc., which is, of course, another corporation, and not the defendant in this action – Wells Fargo Bank, N.A.  (*See* Wells Fargo's Obj. to RJN.)  But, even if Wells Fargo Bank had such an license (it does not), section 22050 would still exempt it as a national bank.

Accordingly, California Civil Code section 1632 just does not apply to the Contreras' loan.  There is no claim against Wells Fargo.

### B. The Unruh Civil Rights Claim Is Time Barred

The Contreras contend that, because their Unruh Civil Rights Act claim "evolved from certain statutes regulating the real estate industry,"[5] they had three years, instead of one, in which to file their claim.  Not so.

Once more it is necessary to distinguish what the Contreras actually allege as opposed to what they assert in their opposition.  The FAC plainly alleges that Wells Fargo violated the Unruh Act by denying the Contreras "full and equal accommodations and services."  (FAC ¶¶ 106-07.)  This is unmistakably a claim under section 51(b) of the Unruh Act, which the *Gatto* court found "clearly derives from common law principles and is for that reason subject to the one-year statute."  98 Cal.App.4th at 760.  Accordingly, because it took the Contreras nearly two years to file their Unruh Civil Rights Act claim, it is time barred.

To avoid this result, the Contreras again resort to raising new allegations in their opposition.  They now suggest that Wells Fargo's alleged discriminatory conduct is a continuing

---

[4] Indeed, the Contreras do not even allege that Wells Fargo is an industrial loan company.

[5] (Pts' Memo In Opp'n, 6:8.)

violation because their loan is an adjustable rate mortgage. (Pts' Memo In Opp'n, 6:10-16.) Aside from the fact that there is nothing discriminatory *per se* about an adjustable rate mortgage, the fatal flaw with this theory is that the continuing violation doctrine has limited application and does not generally apply to the type of discrete discriminatory acts alleged against Wells Fargo. *Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1136 (9th Cir. 2006). Rather, it is most often employed in hostile work environment claims, *Id.*, or, as the case the Contreras cite involved, reasonable accommodations claims, *Richards v. CH2M Hill, Inc.*, 26 Cal.4th 798, 823 (2001).

Continuing violation was just another way for the Contreras to spin their equally flawed equitable tolling allegations. The trouble with those allegations is that the Contreras possessed the loan terms in black and white from the start, soon after the loan closed in January, 2006. That is when Wells Fargo gave them a copy of the loan documentation which detailed the terms of their loan. So, instead of actively concealing the terms, Wells Fargo disclosed them fully. Still, it took the Contreras a full year and nine months to discover them. To be sure, the documents were in English but the Contreras could have (and should have) obtained a Spanish translation. They did not, at least not for another seventeen months. In other words, the Contreras failed to exercise due diligence and, therefore, they are not entitled to equitable tolling.[6]

Accordingly, the Unruh Civil Rights Act claim is untimely and should be dismissed.

### C.    Breach Of Fiduciary Trust And Concealment Claims Should Be Dismissed

The Contreras concede that Wells Fargo did not owe them a fiduciary duty and, therefore, they cannot state claims for breach of fiduciary trust and concealment.[7] (Pts' Memo In Opp'n 7:22-25.) Yet, despite this concession and their prior admission that "Wells Fargo faces no agency liability for any other parties in this matter,"[8] the Contreras ironically ask the Court to

---

[6] *See Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000).

[7] *Price v. Wells Fargo Bank*, 213 Cal.App.3d 465, 476, 261 Cal.Rptr. 735 (1989); *Mktg. W., Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal.App.4th 603, 612-13, 7 Cal.Rptr.2d 859 (1992); *La Jolla Village Homeowners' Ass'n. v. Superior Court*, 212 Cal.App.3d 1131, 1151-52, 261 Cal.Rptr. 146 (1989)

[8] (Pts' Memo In Opp'n 4:6.)

deny the motion to dismiss in hopes that discovery will later prove that there *was* an agency relationship and, consequently, a fiduciary duty. Needless to say, such a request should be denied.

As the Supreme Court aptly stated, a complaint cannot simply "le[ave] open the possibility that a plaintiff might later establish some 'set of undisclosed facts' to support recovery." *Twombly,* 127 S.Ct. at 1968 (citation omitted). The claims for which relief may be granted must be pleaded on the face of the complaint itself. They cannot be left suspended on the chance that someday facts, which the Contreras already admit, will be disproved.

The breach of fiduciary trust and concealment claims fail as a matter of law and should be dismissed.

### D. Wells Fargo Did Not Owe A Duty Of Care Under California Law

In California a lender does not owe a duty of care to a borrower unless it exceeds its conventional role as mere money lender. *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal.App.3d 1089, 1096, 283 Cal.Rptr. 53 (1991). "Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'" *Wagner v. Benson*, 101 Cal.App.3d 27, 35, 161 Cal.Rptr. 516 (1980) (citing *Conner v. Great W. Sav. & Loan Ass'n*, 69 Cal.2d 850, 73 Cal.Rptr. 369 (1968); *Bradler v. Craig*, 274 Cal.App.2d 466, 473, 476, 79 Cal.Rptr. 401 (1969); *Kinner v. World Sav. & Loan Ass'n*, 57 Cal.App.3d 724, 129 Cal.Rptr. 400 (1976)).

The Contreras conveniently omit this rule from their analysis and for good reason – the FAC merely alleges that Wells Fargo originated a mortgage loan which the Contreras later decided was unfavorable to them. There are no allegations that Wells Fargo ever stepped outside its role as lender. Therefore, the general rule applies and Wells Fargo did not owe the Contreras a duty of care.

Of course, the Contreras would rather the Court disregard this rule along with the prior and subsequent California State and federal decisions which have applied it.[9] They want the

---

[9] *Sierra-Bay Fed. Land Bank Ass'n v. Superior Court*, 227 Cal.App.3d 318, 334, 277 Cal.Rptr. 753 (1991); *Fox & Carskadon Fin. Corp. v. San Francisco Fed. Sav. & Loan Ass'n*, 52 Cal.App.3d 484,

Court instead to work its way through a seven factor test and find that Wells Fargo owed them a duty of care regardless. But that analysis need not be repeated here or by the Court. On this, the *Ruiz* case, previously cited by the Contreras, is instructive. There, as here, plaintiffs alleged that they were "victims of defendants' 'abusive and predatory' lending practices" that the lender "misrepresented essential loan terms" and "failed to translate loan documents from English into Spanish." 2006 WL 2067072 * 1. Nevertheless, the court, without considering the seven factor test, concluded that the lender did not owe a duty of care since there were no allegations that it "acted beyond the scope of its conventional activities as a lender of money." *Id.* at *3.

The Contreras' reliance on a New Jersey federal court decision which did not apply California law and a case discussing the duty of care an insurance agent owes an insured is neither dispositive nor persuasive.

The negligence claim fails as a matter of law and should be dismissed.

### E. The Contreras' Fraud Claims Lack Specificity

Allegations of fraud must meet the heightened pleading standards of Rule 9(b), which requires "particular facts going to the circumstances of the fraud, including time, place, persons, statements made and an explanation of how or why such statements are false or misleading." *Morris v. BMW of N. Am., LLC*, 2007 WL 3342612 at *3 (N.D. Cal. 2007) (citing *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 n. 7 (9th Cir.1994) (en banc)).

The Contreras do not satisfy this standard by copying disjointed allegations from the FAC and pasting them under the appropriate headings. "WELLS FARGO agents," for instance, does not identify the speaker. "In late 2005" and "Monterey County" specifies neither the time nor place of the alleged fraud. Most notably, "never adequately explained any material terms of the loan" does not describe a misrepresentation. i.e., it does not state a deliberate falsehood. Or, to put it another way, it is not the same as saying that Wells Fargo purposely told the Contreras the wrong loan terms.

---

488, 489, 125 Cal.Rptr. 549 (1975); *Marks v. Ocwen Loan Serv.*, 2008 WL 344210, *6 (N.D. Cal. 2008); *Plata v. Long Beach Mortg. Co.*, 2005 WL 3417375, *7 (N.D. Cal. 2005); *Borel Bank & Trust Co. v. Aubain*, 1995 WL 743724, *2 (N.D. Cal. 1995).

The fraud allegations are not stated with the requisite specificity. The claim should either be dismissed or the Court should grant the motion for a more definite statement and require the Contreras to plead their facts with particularity.

## IV. THE MOTION TO STRIKE SHOULD BE GRANTED

### A. The General Public Allegations Should Be Stricken

The Contreras purport to bring this action on behalf of the general public. (FAC ¶¶ 31, 114, 124.) However, Proposition 64 amended the UCL to disallow such representative claims or relief unless the plaintiff pleads a class under California Code of Civil Procedure section 382. Bus. & Prof. Code § 17203; *Cal. Consumer Health Care Council v. Kaiser Found. Health Plan, Inc.*, 142 Cal.App.4th 21, 33 (2006).

The Contreras do not make any class allegations or even attempt to fulfill the requirements of section 382 or Rule 23 of the Federal Rules of Civil Procedure. Therefore, they cannot pursue this action or recover attorney fees on behalf of the general public.

Accordingly, the general public allegations should be stricken.

### B. TILA Rescission And Punitive Damages Allegations Should Be Stricken

The Contreras concede that they are not entitled to rescission under TILA or punitive damages under their negligent misrepresentation claim. (Pts' Memo In Opp'n 13:10-11, 13-14.) Therefore, the motion to strike these allegations should be granted.

## V. CONCLUSION

For the foregoing reasons, the Court should stay the action pending the outcome of judicial reference or, in the alternative, grant Wells Fargo's motions to dismiss and strike, or for a more definite statement.

DATED: March 10, 2008

SEVERSON & WERSON
A Professional Corporation

By: _____/S/_____
Michael J. Steiner
Attorneys for Defendant
WELLS FARGO BANK, N.A.

I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/S/) within this efiled document.

- 10 -