1   Mark D. Petersen (State Bar No. 111956)
    Frank J. Riebli (State Bar No. 221152)
2   Farella Braun & Martel LLP
    235 Montgomery Street, 17th Floor
3   San Francisco, CA 94104
    Telephone: (415) 954-4400
4   Facsimile: (415) 954-4480
    mpetersen@fbm.com
5   friebli@fbm.com

6   Attorneys for Defendants
    VCH Salinas I LLC, Norm Yop Inc. and Monica
7   Faranda

8                  UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                      SAN JOSE DIVISION

11  BERENICE GONZALEZ AND JOSE            Case No. C07 05698 JW
    URTIZ, JORGE AGUIRRE, ELEAZAR
12  BECERRA AND ROCIO BECERRA, J.
    GUADALUPE CONTRERAS AND
13  TERESA CONTRERAS, all individually    **REPLY IN SUPPORT OF DEFENDANTS
    and on behalf of the general public,  VCH SALINAS I LLC, NORM YOP INC.
14                                         AND MONICA FARANDA'S MOTIONS
                    Plaintiffs,            TO STAY AND COMPEL ARBITRATION,
15                                         OR IN THE ALTERNATIVE, TO DISMISS
            vs.                            AND STRIKE**
16
    VCH SALINAS I LLC dba VALLEY
17  COMMUNITY HOMES and as MONTE
    BELLA REALTY, NORM YOP INC.            Date:    Monday, March 24, 2008
18  REALTORS dba MONTE BELLA               Time:    9:00 a.m.
    REALTY, MONICA FARANDA dba as          Judge:   Hon. James Ware
19  MONTE BELLA REALTY,                    Dept.:   Courtroom 8, Fourth Floor
    UNIVERSAL MORTGAGE & SALES
20  INC., IRA MORTGAGE & HOME
    SALES, INC., AMERICAN PACIFIC
21  MORTGAGE CORP. dba as
    CREATIVE MORTGAGE, OLD                 **Accompanying Documents:**
22  REPUBLIC TITLE CO.,                    Appendix of Cases Cited in Plaintiffs' Opposi-
    COUNTRYWIDE FINANCIAL CORP.            tion by Docket Number Only
23  dba AMERICA'S WHOLESALE
    LENDER, NEW CENTURY
24  MORTGAGE CORP., HOMEQ
    SERVICING CORP., CAMERON
25  FINANCIAL GROUP INC., WELLS
    FARGO BANK, and DOES 1 TO 100,
26  inclusive,

27                  Defendants.

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY ISO MOTIONS TO STAY AND COMPEL
ARBITRATION OR TO DISMISS AND STRIKE

22757\1466348.1

## **TABLE OF CONTENTS**

I.  MOTIONS TO STAY LITIGATION AND COMPEL ARBITRATION .......................... 1

   A.  Plaintiffs Concede They Signed Contracts With ADR Provisions, And The Federal Arbitration Act Treats Those Provisions As Arbitration Provisions. ........ 1

      1.  Plaintiffs Signed Contracts With An ADR Provision Covering This Dispute ............................................................................................ 1

      2.  The ADR Provision Functions As An Arbitration Provision For Purposes Of The Federal Arbitration Act .................................................. 1

   B.  Plaintiffs' Unconscionability Defense Is Misdirected And Meritless .................... 3

      1.  This Court Does Not Decide Unconscionability; The Arbitrator Does ................................................................................................. 3

      2.  The ADR Provision Is Not Unconscionable In Any Case ....................... 5

II.  MOTIONS TO DISMISS AND STRIKE ............................................................ 7

   A.  Plaintiffs' Equal Credit Opportunity Act Claim Must Be Dismissed Because Developer Defendants Are Not Creditors And Did Not Extend Credit ............................................................................................................ 7

   B.  Plaintiffs Fail Adequately To Plead Their RICO Claim ................................... 9

      1.  Plaintiffs Fail To Articulate A Connection With Interstate Commerce ........................................................................................... 9

      2.  Plaintiffs' Own Authorities Show That Their Mail And Wire Fraud Allegations Are Deficient ...................................................... 10

      3.  Plaintiffs Implicitly Concede They Have Not Sufficiently Alleged A Pattern ........................................................................................ 11

   C.  Plaintiffs Affirmatively Undermine Their RESPA And Breach Of Fiduciary Duty Claims As To The Developer Defendants. ............................................. 12

      1.  Plaintiffs Allege No Basis For RESPA Liability ................................... 12

      2.  Plaintiffs Concede Developer Defendants Owed Them No Fiduciary Duties .............................................................................. 13

   D.  Plaintiffs' Complaint Fails To Allege Facts Showing A Breach Of The Duty Of Care. ...................................................................................... 13

   E.  Plaintiffs' Civil Code § 1632 Claim Fails Because The Home Purchase Agreements Were Not Credit Agreements. ................................................... 14

   F.  Plaintiffs Concede That At Least Part Of The Motion To Strike Should Be Granted ....................................................................................... 15

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

1          1.    Plaintiffs Concede That They May Not Pursue Punitive Damages
                 For Negligent Misrepresentation ................................................................. 15
2
           2.    Plaintiffs Articulate No Differences Between Their Two Fraud
3                Claims ......................................................................................................... 15

4          3.    Plaintiffs Waived Their Rights To Jury Trial ........................................... 15

5    III.    CONCLUSION .............................................................................................................. 16

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY ISO MOTION TO STAY AND COMPEL
ARBITRATION OR TO DISMISS AND STRIKE

- ii -

22757\1466348.1

# TABLE OF AUTHORITIES

## FEDERAL CASES

AMF Inc. v. Brunswick Corp.,
    621 F. Supp. 456 (S.D.N.Y. 1985)..................................................................... 2

Am. Tech. Serv., Inc. v. Universal Travel Plan, Inc.,
    2005 WL 2218437 (E.D. Va. Aug. 8, 2005) ......................................................... 2

Allwaste, Inc. v. Hecht,
    65 F.3d 1523 (9th Cir. 1995).......................................................................... 12

Azam v. City of Pleasanton,
    2008 WL. 111221 (N.D. Cal. Jan. 9, 2008) ......................................................... 5

Beard v. Worldwide Mortgage Co.,
    354 F. Supp. 2d 789 (W.D. Tenn. 2005) ........................................................... 10

Bensusan Rest. Corp. v. King,
    937 F. Supp. 295 (S.D.N.Y. 1996).................................................................. 11

Brothers v. First Leasing,
    724 F.2d 789 (9th Cir. 1984) ......................................................................... 8

Buckeye Check Cashing, Inc. v. Cardegna,
    546 U.S. 440 (2006) .................................................................................... 4

Carias v. Lenox Fin. Mortgage Corp.,
    2008 WL. 397339 (N.D. Cal. Feb. 8, 2008)....................................................... 13

Day Mgmt. Corp. v. Mobex Communications, Inc.,
    2004 WL. 906366 (D. Or. April 28, 2004) ......................................................... 3

Dielsi v. Falk,
    916 F. Supp. 985 (C.D. Cal. 1996) ................................................................. 14

Fit Tech, Inc. v. Bally Total Fitness Holding Corp.,
    374 F.3d 1 (1st Cir. 2004) ............................................................................. 2

Hy Cite Corp. v. Badbusinessbureau.com, LLC,
    418 F. Supp. 2d 1142 (D. Ariz. 2005).............................................................. 11

Laramore v. Ritchie Realty Mgmt. Co.,
    397 F.3d 544 (7th Cir. 2005)....................................................................... 7, 8

Major League Baseball Players Ass'n v. Garvey,
    532 U.S. 504 (2001) ................................................................................... 15

Nagrampa v. Mailcoups, Inc.,
    469 F.3d 1257 (9th Cir. 2006)..................................................................... 4, 5

Otsuka v. Polo Ralph Lauren Corp.,
    2007 WL. 3342721 (N.D. Cal. Nov. 9, 2007)..................................................... 13

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY ISO MOTION TO STAY AND COMPEL
ARBITRATION OR TO DISMISS AND STRIKE                - iii -                22757\1466348.1

Portis v. River House Assoc. L.P.,
  498 F. Supp. 2d 746 (M.D. Pa. 2007) ............................................................ 7, 8

Prima Paint Corp. v. Flood & Conklin Mfg. Co.,
  388 U.S. 395 (1967) ............................................................................................ 4

Ruiz v. Decision One Mortgage,
  2006 WL. 2067072 (N.D. Cal. July 25, 2006) .............................................. 14

Salt Lake Tribune Pub. Co., LLC v. Mgmt. Planning, Inc.,
  390 F.3d 684 (10th Cir. 2004) ....................................................................... 2, 3

Sebastian Intern., Inc. v. Russolillo,
  128 F. Supp. 2d 630 (C.D. Cal. 2001) ............................................................ 10

Snider v. Roadway Packaging Sys.,
  2000 WL. 375234 (N.D. Cal.) ........................................................................ 14

Three Valleys Munm Water Dist. v. E.F. Hutton & Co., Inc.,
  925 F.2d 1136 (9th Cir. 1991) ........................................................................... 4

United States v. Atcheson,
  94 F.3d 1237 (9th Cir. 1996) ......................................................................... 9, 10

United States v. Juvenile Male,
  118 F.3d 1344 (9th Cir. 1997) ......................................................................... 10

Wolsey v. Foodmaker, Inc.,
  144 F.3d 1205 (9th Cir. 1998) ...................................................................... 2, 3

## STATE CASES

De Guere v. Universal City Studios, Inc.,
  56 Cal. App. 4th 482 (2d Dist. 1997) ............................................................. 15

Greenbriar Homes Communities, Inc. v. Superior Court,
  117 Cal. App. 4th 337 (3d Dist. 2004) ............................................................. 6

Karoutas v. Homefed Bank,
  232 Cal. App. 3d 767 (1st Dist. 1991) ............................................................ 13

Pardee Construction v. Superior Court,
  100 Cal. App. 4th 1081 (4th Dist. 2002) ......................................................... 6

Tarmann v. State Farm Mut. Auto. Ins. Co.,
  2 Cal. App. 4th 153 (1991) .............................................................................. 14

Trend Homes, Inc. v. Superior Court,
  131 Cal. App. 4th 950 (5th Dist. 2005) ........................................................... 6

Woodside Homes of Cal., Inc. v. Superior Court,
  107 Cal. App. 4th 723 (4th Dist. 2003) ........................................................ 5, 6

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY ISO MOTION TO STAY AND COMPEL
ARBITRATION OR TO DISMISS AND STRIKE

- iv -

22757\1466348.1

1

# FEDERAL STATUTES

2  Fed. R. Civ. P. 9(b) .................................................................................... 10, 13

3  Civ. L.R. 3-4(d) ............................................................................................ 3

4  12 C.F.R.  § 202.2(j)...................................................................................... 7
5            § 202.3(c) ...................................................................................... 8
           § 226.2(a)(16) ................................................................................ 8

6  9 U.S.C. § 1 ................................................................................................. 2
7          § 4 ............................................................................................... 1

8  15 U.S.C. § 1691a(d) .................................................................................... 7

9  18 U.S.C. § 1341 .......................................................................................... 10
          § 1343 ........................................................................................... 10
          § 1961(5) ....................................................................................... 11
10         § 1962(c) ....................................................................................... 9, 11

11  50 Fed. Reg. 48,018 (Nov. 25, 1985)............................................................ 8

12

13

# STATE STATUTES

14  Cal. Civ. Code  § 1632 .................................................................................. 14

15

# OTHER AUTHORITY

16  Restatement (Third) of Agency § 7.01 cmt. d (2006)...................................... 12

17

18

19

20

21

22

23

24

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ISO MOTION TO STAY AND COMPEL
ARBITRATION OR TO DISMISS AND STRIKE

- v -

22757\1466348.1

# I.
## MOTIONS TO STAY LITIGATION AND COMPEL ARBITRATION

**A.    Plaintiffs Concede They Signed Contracts With ADR Provisions, And The Federal Arbitration Act Treats Those Provisions As Arbitration Provisions.**

The principal question before the Court is whether it should order Plaintiffs to use the alternative dispute resolution procedures set forth in their contracts. Plaintiffs argue that the Court should not because the ADR provision is not an arbitration provision and because it is unconscionable and thus unenforceable. Under federal law, which governs, the provision constitutes an "arbitration" provision because it requires that this dispute be submitted to a private third party for binding decision. This makes it an arbitration provision under the Federal Arbitration Act ("FAA"). And not only do Plaintiffs' own cases undercut a finding of unconscionability here, unconscionability is a decision for the arbitrator/referee to make, not this Court.

**1.    Plaintiffs Signed Contracts With An ADR Provision Covering This Dispute.**

Plaintiffs do not dispute that they signed contracts, or that those contracts contain ADR provisions, or that one of those ADR provisions – see Riebli Decl. Ex. C at 10, (¶ 14.3) – applies to the instant dispute. Nor do Plaintiffs contest that the FAA governs the interpretation of the contract's ADR provisions, or that the FAA authorizes the Court to stay litigation and compel a recalcitrant party to arbitrate. See 9 U.S.C. § 4. These undisputed facts are sufficient to warrant the Court's sending Plaintiffs' claims against Developer Defendants to ADR.

**2.    The ADR Provision Functions As An Arbitration Provision For Purposes Of The Federal Arbitration Act.**

Plaintiffs' principal argument is that the FAA should not apply because the ADR provision in their Purchase Agreements is not an arbitration provision. Opp'n at 7-8. Plaintiffs' argument is based on semantics: since the Purchase Agreement does not call the ADR process "arbitration," they say, it is not arbitration under the FAA. This is factually and legally incorrect.[1]

---

[1] For this analysis, it does not matter that Plaintiffs' argument is factually incorrect. Still, their misrepresentation of the contract's language compels a response. Paragraph 14.3A is captioned "Judicial Reference." It sets forth an ADR procedure consistent with the one set out in California's Code of Civil Procedure. Yet Paragraph 14.3B – whose express purpose is to ensure that Paragraphs 14.2 and 14.3 are implemented "in accordance with the philosophy and intent of the Federal Arbitration Act" and interpreted according to the federal jurisprudence surrounding the FAA – refers to the "binding <u>arbitration</u> procedures contained in Paragraphs 14.2 and <u>14.3</u>." Riebli Decl. Ex. C at 12 (¶ 14.3B) (emphasis added). Paragraph 14.3B refers to Paragraph 14.3A

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

1    It is immaterial to the Court's analysis that the Purchase Agreement labels the dispute

2   resolution process set forth in Paragraph 14.3A "Judicial Reference," instead of "arbitration."

3   The word "arbitration" is not talismanic.  It is not even defined in the FAA.  See 9 U.S.C. § 1.

4   Under federal law (which governs, see Salt Lake Tribune Pub. Co., LLC v. Mgmt. Planning, Inc.,

5   390 F.3d 684, 688-89 (10th Cir. 2004)), the question is "how closely the specified procedure re-

6   sembles classic arbitration."  Fit Tech, Inc. v. Bally Total Fitness Holding Corp., 374 F.3d 1, 7

7   (1st Cir. 2004); AMF Inc. v. Brunswick Corp., 621 F. Supp. 456, 460 (S.D.N.Y. 1985) ("At no

8   time have the courts insisted on a rigid or formalistic approach to a definition of arbitration.").

9   "Central to any conception of classic arbitration is that the disputants empowered a third party to

10  render a decision settling their dispute."  Salt Lake Tribune, 390 F.3d at 689.  In the Ninth Circuit,

11  any agreement to (1) submit a dispute to a private third party, and (2) not pursue litigation until

12  that process is completed is an arbitration agreement under the FAA, even if the agreement does

13  not use that term.  See Wolsey v. Foodmaker, Inc., 144 F. 3d 1205, 1208 (9th Cir. 1998) ("[n]o

14  magic words such as 'arbitrate' or 'binding arbitration' or 'final dispute resolution' are needed to

15  obtain the benefits of the [Federal Arbitration] Act").  Thus, even an agreement that nowhere used

16  the term "arbitration," and which instead provided for mediation followed by litigation (if the

17  mediation was unsuccessful), was an "arbitration" provision for purposes of the FAA because it

18  manifested the parties' intent to submit their dispute to a private third party prior to litigation.

19  Am. Tech. Serv., Inc. v. Universal Travel Plan, Inc., 2005 WL 2218437 at *2 (E.D. Va.).

20    Paragraph 14.3A is an "arbitration" provision under the FAA.  It requires the parties to

21  submit their dispute to a private third party, specifically, a "retired judge or a licensed attorney

22  with substantial experience in relevant real estate matters."  Riebli Decl. Ex. C at 11 (¶

23  14.3A(iii)).  That private third party – whether s/he is an "arbitrator" or a "referee" – "shall have

24  the power to try any and all of the issues raised, whether of fact or of law, which may be pertinent

25  to the matters in dispute, and to issue a statement of decision thereon."  Id. ¶ 14.3A(iv).  And

26  "[t]he statement of decision of the referee upon all of the issues considered by the referee shall be

27

28  two more times as an "arbitration" provision.  Id.  This is 14.3B's acknowledgement that the type
    of ADR procedure set forth in 14.3A is an "arbitration" under the FAA.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ISO MOTION TO STAY AND COMPEL
ARBITRATION OR TO DISMISS AND STRIKE                    - 2 -                    22757\1466348.1

1  binding upon the parties, and upon filing of the statement of decision with the clerk of the court

2  . . . judgment may be entered thereon." Id. ¶ 14.3A(xiii). That is arbitration under the FAA.

3  Plaintiffs' argument to the contrary rests on a formalistic state-law distinction between

4  "arbitration" and "judicial reference." Thus, they argue that the FAA "is not meant to implement

5  California alternative dispute resolution procedures." Opp'n at 8. Plaintiffs miss the point. De-

6  veloper Defendants are not seeking to enforce a California procedural rule through the FAA.

7  They are seeking to enforce a contractual agreement through the FAA. That agreement sets forth

8  a complete procedure for submitting disputes to a private third party for binding resolution.

9  Plaintiffs' reliance on Day Mgmt. Corp. v. Mobex Communications, Inc., 2004 WL 906366 at

10  *2-3 (D. Or. April 28, 2004),[2] illustrates their attachment to labels. The principal differences the

11  Day Management court identified between "arbitration" and "judicial reference," namely that the

12  referee must follow the law and his decisions are appealable, see 2004 WL 906366 at *2-3, do not

13  touch on the fundamental criteria defining an "arbitration" under federal law. Moreover, like

14  Plaintiffs, the Day Management court – which does not deal with Wolsey or any of the other fed-

15  eral cases cited above – makes the outcome of an analysis under the FAA turn on how each

16  state's law describes "arbitration," if at all. That is inimical to Congress's purpose in enacting the

17  FAA. See Salt Lake Tribune, 390 F.3d at 689 ("Were we to hold that state law guides our deter-

18  mination, we would empower states to define arbitration as they choose, thus limiting the FAA's

19  utility. This we decline to do. Congress passed the FAA to ensure that state law would not un-

20  dermine arbitration agreements.").[3]

21  The Court therefore should find that the FAA applies here and that Plaintiffs must submit

22  this dispute to ADR.

23

24

25  [2] Plaintiffs inexplicably (and despite Civil Local Rule 3-4(d)) cite this case only by its docket
    number and an unexplained pagination system, and fail to attach copies of this unpublished deci-
26  sion to their brief. For the Court's convenience, Developer Defendants have submitted a copy of
    this case and other similarly mis-cited cases along with this Reply.
27  [3] In any case, it does not appear that the contract in Day Management, in contrast to the contract
28  here, expressly stated that it was to be interpreted and enforced according to the FAA.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY ISO MOTION TO STAY AND COMPEL                      - 3 -                                    22757\1466348.1
ARBITRATION OR TO DISMISS AND STRIKE

**B.** **Plaintiffs' Unconscionability Defense Is Misdirected And Meritless.**

    **1.** **This Court Does Not Decide Unconscionability; The Arbitrator Does.**

        Plaintiffs' fallback argument is that the Court should not enforce the ADR provision because it is unconscionable. That question is for the arbitrator/referee, not this Court. And Plaintiffs are wrong in any case. Under the FAA, the Court has a limited role in addressing disputes about the validity of a contract containing an ADR provision, and its role depends on the type of challenge the party refusing to arbitrate raises.

> Challenges to the validity of arbitration agreements . . . can be divided into two types. One type challenges specifically the validity of the agreement to arbitrate. The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced) or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.

_Buckeye Check Cashing, Inc. v. Cardegna_, 546 U.S. 440, 444 (2006) (internal citations omitted). Where, as here, the "crux of the complaint is that the contract as a whole (including its arbitration provision) is rendered invalid," the challenge is of the second type, and the court's role is straightforward: it sends the case to arbitration and the arbitrator decides the contract's validity. _Id._ This rule applies even when the recalcitrant party claims it was fraudulently induced to enter the contract, or that the contract as a whole is unconscionable. _See_ _Prima Paint Corp. v. Flood & Conklin Mfg. Co._, 388 U.S. 395, 403-04 (1967) ("[I]f the claim is fraud in the inducement of the arbitration clause itself – an issue which goes to the 'making' of the agreement to arbitrate – the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally."); _Nagrampa v. Mailcoups, Inc._, 469 F.3d 1257, 1263-64 (9th Cir. 2006) ("[W]hen the crux of the complaint challenges the validity or enforceability of the agreement containing the arbitration provision, then the question whether the agreement, as a whole, is unconscionable must be referred to the arbitrator."); _Three Valleys Mun. Water Dist. V. E.F. Hutton & Co., Inc._, 925 F.2d 1136, 1140 (9th Cir. 1991) ("Under this analysis, a federal court may consider a defense of fraud in the inducement of a contract only if the fraud relates specifically to the arbitration clause itself and not to the contract generally.").

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY ISO MOTION TO STAY AND COMPEL
ARBITRATION OR TO DISMISS AND STRIKE

- 4 -

22757\1466348.1

1    Here, Plaintiffs' complaint challenges the Purchase Agreement generally, not the arbitra-

2    tion provision specifically. Thus, the FAC alleges Plaintiffs were fraudulently induced into sign-

3    ing their home purchase agreements by the promise that they could sell their homes back at any

4    time in the first two years and receive 105% of the purchase price. See, e.g., FAC ¶ 40. The

5    FAC attacks the contract generally, see FAC ¶¶ 38, 40, 42 and 44, and prays for rescission of the

6    contract in its entirety, id. ¶ 164. The FAC does not challenge the "arbitration" provision specifi-

7    cally or seek to rescind it specifically. Indeed, the FAC nowhere mentions the Purchase Agree-

8    ments' ADR provision.[4]

9    In contrast, in Nagrampa the plaintiff's complaint "specifically and exclusively chal-

10   lenge[d] the validity of the arbitration provision," arguing that it was unconscionable. 469 F.3d at

11   1264. The plaintiff there "d[id] not assert that the entire agreement is unconscionable or invalid;

12   nor d[id] she seek any form of relief from the agreement as a whole. To the contrary, the other

13   four causes of action provide relief only if the franchise agreement is valid and binding on the

14   parties." Id. Under those circumstances, the Ninth Circuit held, the trial court could consider de-

15   fenses to the arbitration provision. Id. at 1271.

16   Exactly the opposite is true here. Under these circumstances, this Court may not decide

17   the ADR provision's validity or invalidity. That decision is for the arbitrator/referee. Plaintiffs'

18   argument that the provision is unconscionable is thus misdirected and irrelevant.

19       **2.    The ADR Provision Is Not Unconscionable In Any Case.**

20   In any case, Plaintiffs' argument for unconscionability rests solely on the unverified alle-

21   gations of their complaint and an overreaching interpretation of one California decision that has

22   been marginalized by every subsequent decision that cites it. It is Plaintiffs' burden to prove the

23   ADR provision here is unconscionable. See Woodside Homes of Cal., Inc. v. Superior Court, 107

24

25   _____
     [4] In their opposition, Plaintiffs attempt to extend their arguments about the contract generally to
     the ADR provision specifically. See Opp'n at 9-12. They even go so far as to misrepresent their

26   own complaint, asserting that "[s]ince Plaintiffs have alleged that the judicial reference clause
     was not adequately translated in Spanish and the judicial reference clause was itself adhesive

27   [sic], no 'meeting of the minds' occurred." Opp'n at 9:24-26. The Court will search in vain for
     any such allegations in the FAC. And it is only the FAC's allegations, not Plaintiffs' arguments

28   in their opposition brief, that matter. See Nagrampa, 469 F.3d at 1266.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY ISO MOTION TO STAY AND COMPEL
ARBITRATION OR TO DISMISS AND STRIKE                    - 5 -                    22757\1466348.1

1   Cal. App. 4th 723, 728 (4th Dist. 2003). This requires adducing evidence of oppression and sur-

2   prise in the making of the ADR provision (procedural unconscionability), and evidence that the

3   provision is so unfair as to shock the conscience (substantive unconscionability). Id. at 727.

4   Plaintiffs have not even attempted to adduce evidence. See Azam v. City of Pleasanton, 2008

5   WL 111221 at *9 (N.D. Cal. Jan. 9, 2008) (unverified amended complaint is not evidence). The

6   Court thus has no factual basis to find the ADR provision unconscionable.

7       And Plaintiffs' apparent legal claim, that "[i]n California, the Judicial Reference clause is

8   unenforceable when it is a standardized adhesion contract," Opp'n at 9 (citing Pardee Constr. v.

9   Superior Court, 100 Cal. App. 4th 1081, 1088 (4th Dist. 2002)), is simply wrong. First, the case

10  they rely on, Pardee, makes no such sweeping statements. Its conclusion that the judicial refer-

11  ence provision there was unenforceable was "narrowly tailored to this record, in particular to the

12  parties' agreements," and "[did] not decide any issue as a matter of law." 100 Cal. App. 4th at

13  1086. And the record before the Pardee court was easily distinguishable from this case. The

14  homebuyers there were purchased "entry-level homes," id. at 1087, and the judicial reference pro-

15  vision was confusingly labeled "Judicial Reference – Trial By Judge In Court Of Competent Ju-

16  risdiction – Waiver Of Trial By Jury," thereby leading to "surprise," id. at 1089-90 (unnecessary

17  capitalizations removed), and limited the plaintiffs' remedies, id. at 1084. Here, in contrast,

18  Plaintiffs purchased homes exceeding $700,000, see FAC ¶ 55, the ADR provision is simply la-

19  beled "Judicial Reference," see Riebli Decl. Ex. C at 10 (¶ 14.3A), and it does not limit Plaintiffs'

20  remedies, id. Finally, "a significant element" of the Pardee court's conclusion was that the ADR

21  provision there did not mention the referee's fees, leaving open the possibility that the "entry

22  level buyers" might get stuck paying for the referee. 100 Cal. App. 4th at 1090. Here, the ADR

23  provision expressly limits Plaintiffs' exposure "to the extent of the costs that would be imposed . .

24  . if the dispute had been resolved as a dispute in court." Riebli Decl. Ex. C at 11 (¶ 14.3A(xii)).

25  Thus, since Pardee was limited to its unique facts, it has no application here.

26      The ADR provision at issue here is almost identical, however, to the judicial reference

27  provisions in three cases post-dating Pardee, each of which found the provisions to be enforceable

28  and each of which issued a writ directing the lower court to vacate a decision to the contrary. See

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY ISO MOTION TO STAY AND COMPEL
ARBITRATION OR TO DISMISS AND STRIKE

- 6 -

22757\1466348.1

1   Trend Homes, Inc. v. Superior Court, 131 Cal. App. 4th 950, 964 (5th Dist. 2005); Greenbriar

2   Homes Communities, Inc. v. Superior Court, 117 Cal. App. 4th 337, 345 (3d Dist. 2004); Wood-

3   side Homes, 107 Cal. App. 4th at 729-30.[5]

4           Plaintiffs' arguments for unconscionability are thus misdirected and unsupported.

## II.
## MOTIONS TO DISMISS AND STRIKE

6

7   **A.    Plaintiffs' Equal Credit Opportunity Act Claim Must Be Dismissed Because
        Developer Defendants Are Not Creditors And Did Not Extend Credit.**

8           The Court should dismiss Plaintiffs' ECOA claim, because their home purchase contracts

9   were not credit transactions. "Credit" is the deferred payment of a debt. See 15 U.S.C.

10  § 1691a(d); 12 C.F.R. 202.2(j) (Regulation B, implementing the ECOA). Paying obligations as

11  they arise – even if they arise serially under a contract – is not credit because there is no deferred

12  payment of a debt: the debt is discharged when it arises. See Laramore v. Ritchie Realty Mgmt.

13  Co., 397 F.3d 544, 547 (7th Cir. 2005) ("the typical residential lease involves a contemporaneous

14  exchange of consideration – the tenant pays the rent to the landlord on the first of each month for

15  the right to continue to occupy the premises for the coming month"); Portis v. River House

16  Assoc. L.P., 498 F. Supp. 2d 746, 750-51 (M.D. Pa. 2007) (same).

17          The Purchase Agreement itself demonstrates that the deposits do not represent deferred

18  payments of a debt. The Purchase Agreements here allow buyers to make three 1% deposits –

19  one at the time the contract is signed, one 30 days later and one 60 days later – prior to paying the

20  balance of the home purchase price. See Riebli Decl. Ex. C at 1 (¶ 1D). According to Plaintiffs,

21  this represents the deferred payment of a debt. Opp'n at 13. To the contrary, the obligation to

22

23  [5] Plaintiffs' factual story is also riven with inconsistencies and inaccuracies, none of which is par-
    ticularly important to this analysis, but all of which beg for a response. Plaintiffs argue they are
24  "uneducated, Spanish speaking homebuyers" of limited economic means. Opp'n at 11. Yet they
    purchased homes ranging in value from $713,815 to $786,498. See FAC ¶ 55. They claim only
    that initials were required at the top of the third page Paragraph 14.3A spans, that there was no
25  indication that the text on the third page carried over from the preceding pages, and that this
    three-page provision was buried in a 40-page contract. Opp'n at 11-12. Plaintiffs' initials were
26  required at the bottom of each of the three pages, and at the top of the third page, right beneath
    the (bolded) jury trial waiver. See Riebli Decl. Ex. C at 10-12 (¶ 14.3A). This three-page provi-
27  sion was in an 18-page contract, not a 40-page contract. See id. (the remaining pages related in
    part to the add-ons Plaintiffs purchased). And the text on the third page carries over mid-sentence
28  from the second page. Id. The same is true of the text on the second page. Id.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY ISO MOTION TO STAY AND COMPEL
ARBITRATION OR TO DISMISS AND STRIKE          - 7 -                    22757\1466348.1

1   make each successive deposit does not arise until 30 and 60 days after the Purchase Agreement is

2   accepted. See Riebli Decl. Ex. C at 1 (¶ 1D). According to the Purchase Agreement, the entire

3   debt ($786,498, in the Becerras' case) is not due at the contract's signing. At that time, only 1%

4   of that amount is due, and Plaintiffs paid it then. Id. When Plaintiffs paid further deposits 30 and

5   60 days later, they were discharging obligations as they arose. The contract thus is analogous to

6   the residential leases in Laramore and Portis. It is not credit.[6]

7       The Purchase Agreement's remedy provisions confirm this. If the buyer defaults, the

8   seller's "exclusive remedy" is to keep as liquidated damages any deposits made prior to the de-

9   fault. Id. at 6-7 (¶ 14.1). The contract does not even entitle the seller to recover unpaid deposits.

10   Id. ("The amount equal to the sum of Buyer's deposits actually deposited . . . shall constitute liq-

11   uidated damages") (emphasis added). If, as Plaintiffs claim, the deposits were instead payments

12   towards the deferred debt of the entire purchase price, then the Purchase Agreement would not so

13   limit the seller's remedies.

14       As a fallback, Plaintiffs ask the Court to read the ECOA "liberally," Opp'n at 14, which is

15   to say, 'more broadly than Congress intended.'[7] The Court should reject this invitation. The

16   ECOA "was enacted to protect consumers from discrimination by financial institutions" with re-

17   gard to credit transactions. Portis, 498 F. Supp. 2d at 750 (emphasis in original). None of the

18   Developer Defendants is a financial institution. Plaintiffs do not contend otherwise. Nor do

19   [6] Plaintiffs cite 12 C.F.R. section 202.3(c)(iii), but it is not clear why. That regulation defines
20   "incidental credit," a type of credit to which the ECOA applies. Section 202.3(c) goes on to de-
    scribe which provisions of the ECOA do not apply to extensions of "incidental credit." In other
    words, it tailors the ECOA's provisions to a specific type of credit. If Plaintiffs' home purchase
21   contracts had qualified as "incidental credit," then this regulation would have set forth the specific
    ECOA provisions that applied. But as Plaintiffs correctly argue, their transactions were not "in-
22   cidental credit." Opp'n at 13-14. If Plaintiffs mean anything further, it is not apparent.

23   [7] In support of this request, Plaintiffs cite Brothers v. First Leasing, 724 F.2d 789, 793 (9th Cir.
    1984). The year after Brothers was decided, the Federal Reserve Board specifically addressed
24   Brothers in its revision of Regulation B. The Board concluded that "the Ninth Circuit interpreted
    the ECOA's definition of credit too broadly when it concluded in the Brothers case that the grant-
25   ing of a[n] [auto] lease is an extension of credit. The Congress has consistently viewed lease and
    credit transactions as distinct and mutually exclusive financial transactions and has treated them
26   separately under the Consumer Credit Protection Act. The Board believes that the Congress did
    not intend the ECOA, which on its face applies only to credit transactions, to cover lease transac-
27   tions unless the transaction results in a 'credit sale' as defined in the Truth in Lending Act and
    Regulation Z." 50 Fed. Reg. 48,018, 48,020 (Nov. 25, 1985). Plaintiffs' home purchase con-
28   tracts are not "credit sales" under Regulation Z either. See 12 C.F.R. § 226.2(a)(16).

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY ISO MOTION TO STAY AND COMPEL
ARBITRATION OR TO DISMISS AND STRIKE

- 8 -

22757\1466348.1

1   Plaintiffs contest that their home purchases lack most of the usual indicia of a credit transaction.

2   The Purchase Agreement nowhere refers to credit or the extension of credit.  And Developer De-

3   fendants did not run credit checks, obtain FICO scores, charge interest on any deferred payments,

4   or transfer property on a promise to pay later.  Indeed, the only allegations in Plaintiffs' complaint

5   that deal with credit checks or credit histories have nothing to do with Developer Defendants.

6   FAC ¶¶ 48-51.

7   **B.   Plaintiffs Fail Adequately To Plead Their RICO Claim.**

8          The Court should also dismiss Plaintiff's RICO claim.  Developer Defendants are not or-

9   ganized crime; they sell homes to willing buyers.  Plaintiffs received exactly the homes they

10  wanted at exactly the agreed prices.  Their only complaint is that Developer Defendants have re-

11  fused to buy back their homes at 105% of the purchase price.  This is a simple contract dispute.

12         **1.   Plaintiffs Fail To Articulate A Connection With Interstate Commerce.**

13         The RICO statute only applies to activities that affect interstate commerce.  See 18 U.S.C.

14  § 1962(c).  Plaintiffs do not contest that they are Salinas residents or that they bought homes in

15  Salinas from a Salinas builder and Salinas real estate agents.  Instead, Plaintiffs argue a connec-

16  tion to interstate commerce through Developer Defendants' use of the mail, telephone and inter-

17  net.  Opp'n at 15:16-20.  For the reasons set forth in Developer Defendants' motion, and as ar-

18  gued below, Plaintiffs' allegations related to the use of mail or interstate wires are insufficient.[8]

19         Plaintiffs also argue that Developer Defendants engaged in this alleged scheme in order to

20  "obtain home purchase documents . . . of other entities such as [out of state] lenders."  Id. at

21  15:20-22.  It is not clear what that even means, since Plaintiffs obtained their own financing, see

22  FAC ¶¶ 48, 49, 50, 51, and the FAC does not allege that Developer Defendants had anything to

23  do with Plaintiffs' loans.  Nor does the FAC allege Developer Defendants received anything from

24  Plaintiffs' lenders.  Usually the seller receives only the purchase money from the escrow agent.[9]

---

[8] The ADR provision discussed above is governed by the FAA because the agreement says it is
governed by the FAA.  But if Plaintiffs are right that the Purchase Agreements involve interstate
commerce, that is an additional reason the FAA governs the arbitration issue.

[9] Plaintiffs argue, relying on United States v. Atcheson, 94 F.3d 1237, 1243 (9th Cir. 1996), that
"taking monies from victim's bank account from a bank headquartered out of state is a minimal
effect on interstate commerce."  In Atcheson, three men traveled from Utah to Idaho, took several

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY ISO MOTION TO STAY AND COMPEL
ARBITRATION OR TO DISMISS AND STRIKE                    - 9 -                    22757\1466348.1

1  Here, that escrow agent was a California corporation operating in Salinas. FAC ¶ 21.

2          Plaintiffs' final argument is that they may have to "engage with their [out of state] lenders

3  . . . to turn over their homes in foreclosure." Id. at 16:4-6. If this is true, it is undoubtedly sad.

4  But it is too attenuated – both temporally and logically – to create a nexus between Plaintiffs'

5  home purchase contracts and interstate commerce.[10]

6          **2.    Plaintiffs' Own Authorities Show That Their Mail And Wire Fraud Allega-
                   tions Are Deficient.**

7

8          Plaintiffs fail adequately to plead mail and wire fraud. Plaintiffs' principal case, Beard v.

9  Worldwide Mortgage Co., 354 F. Supp. 2d 789, 802 (W.D. Tenn. 2005), succinctly states why:

10  "Loose references to mailings and telephone calls in furtherance of a purported scheme to defraud

11  will not do. Instead, the plaintiff must, within reason, describe the time, place, and content of the

12  mail and wire communications, and it must identify the parties to these communications." Plain-

13  tiffs' other authority confirms that where, as here, the complaint alleges that the mailings were

14  themselves fraudulent, see, e.g., FAC ¶ 76 (use of mail and wires to "transfer fraudulent docu-

15  ments"), the complaint must allege the communications with particularity, see Sebastian Intern.,

16  Inc. v. Russolillo, 128 F. Supp. 2d 630, 635 (C.D. Cal. 2001). Plaintiffs do not do that.

17          These requirements are not empty formalities. Rule 9(b)'s heightened pleading require-

18  ments are intended to protect defendants' reputations from reckless allegations of fraud or similar

19  misconduct. Russolillo, 128 F. Supp. 2d at 635. That rationale is especially important here,

20  where Plaintiffs glibly accuse Developer Defendants of federal crimes carrying punishments up to

21

22  hostages in Idaho, forced those hostages to turn over their credit cards and ATM cards with PINs,
    called the victims' out of state banks to get account balances, and then attempted to withdraw

23  money from the victims' banks using the stolen cards. And they brought with them and used
    guns that had traveled in interstate commerce. Id. at 1240. Developer Defendants cannot find

24  any parallel between Atcheson and the instant case.

    [10] Plaintiffs argue that this alleged affect is "[j]ust like a robbed Subway [that] has to order more

25  chips from out of state in Juvenile Male." Opp'n at 16. In United States v. Juvenile Male, 118
    F.3d 1344, 1346 (9th Cir. 1997), at least three members of the "Rolling 30s" Crips gang robbed a

26  Subway sandwich store and murdered the clerk. To commit their crimes, they used guns that had
    traveled in interstate commerce, and the purpose of their crimes was to get money to buy more

27  guns (that presumably also would travel through interstate commerce). Id. Moreover, during the
    course of the robbery they took goods that had traveled in interstate commerce, and Subway was

28  an out-of-state company. Id. Once again, there is no analogy to this case.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY ISO MOTION TO STAY AND COMPEL          - 10 -          22757\1466348.1
ARBITRATION OR TO DISMISS AND STRIKE

1   30 years imprisonment. See 18 U.S.C. §§ 1341, 1343. And without specific allegations, it is im-

2   possible to know whether Plaintiffs have alleged a sufficient number of predicate criminal acts

3   within the statutory period to state a RICO claim. See 18 U.S.C. § 1962(c) (requiring a "pattern

4   of racketeering activity"); id. § 1961(5) (defining a "pattern of racketeering activity" as at least

5   two acts of "racketeering activity" within 10 years).

6          Plaintiffs do not allege a single instance when the Developer Defendants used the mail or

7   interstate wires in furtherance of the purported scheme. While they allege that "Defendants" –

8   without specifying who that term includes – "utilized U.S. mail and interstate carriers along with

9   interstate telephone lines to discuss and transfer fraudulent documents and materials," FAC ¶ 76,

10  they do not allege any specific occurrences of fraudulent communications.[11]

11         In their Opposition, Plaintiffs argue that the Developer Defendants' use of email and a

12  website constitutes use of the interstate wires as a matter of law. Opp'n at 18. First, the FAC

13  does not allege Developer Defendants emailed anyone. Second, Plaintiffs' authority, Hy Cite

14  Corp. v. Badbusinessbureau.com, LLC, 418 F. Supp. 2d 1142, 1150 (D. Ariz. 2005), did not dis-

15  cuss whether maintaining a non-interactive website constituted interstate use of the wires for

16  RICO purposes.[12] 418 F. Supp. 2d at 1150. To the contrary, it was the defendant's use of a series

17  of emails to an out-of-state plaintiff in an attempt to extort money that mattered. Id. at 1146.

18         Plaintiffs' allegations thus amount to nothing more than the assertion that Developer De-

19  fendants are businesses that use mail and telephones. That is not sufficient to turn an ordinary

20  civil dispute into a RICO case.

21  **3.     Plaintiffs Implicitly Concede They Have Not Sufficiently Alleged A Pattern.**

22         To sustain a RICO claim, Plaintiffs must allege at least two predicate crimes within a 10-

23  year period. 18 U.S.C. § 1961(5). Plaintiffs have alleged none. In their opposition brief, they

24  argue that "[i]t is clear . . . that at least four separate predicate offenses occurred." Opp'n at 18.

---

25  [11] At most, Plaintiffs allege that the Developer Defendants sent "fraudulent contracts and docu-
26  ments" to Old Republic. Id. ¶ 77. But even here they do not allege how those contracts were sent – whether by post or by U.S. mail.

27  [12] In a related context, courts have found that non-interactive websites like the one at issue here
28  do not constitute a purposeful attempt to reach into another state, even if the site may be viewed there. See Bensusan Rest. Corp. v. King, 937 F. Supp. 295, 301 (S.D.N.Y. 1996).

Parella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ISO MOTION TO STAY AND COMPEL
ARBITRATION OR TO DISMISS AND STRIKE

- 11 -

22757\1466348.1

1   This is not good enough. If Plaintiffs are going to accuse the Developer Defendants of multiple

2   federal crimes, they ought at least be put to the trouble of specifying those crimes. While they

3   wave a hand at "at least four separate predicate offenses," they do not indicate whether that means

4   four acts of mail fraud, four acts of wire fraud, or some combination thereof. Nor do they articu-

5   late which facts in their complaint support each type of claim.

6           Nor do Plaintiffs challenge Developer Defendants' authorities suggesting that a twelve-

7   month scheme is minimally sufficient to show a closed-ended continuous criminal enterprise, and

8   finding that a six-month scheme was insufficient. Opp'n at 19:18-21. They concede that this al-

9   leged scheme lasted at most seven months. Opp'n at 18:23-25. That is not sufficient. See All-

10  waste, Inc. v. Hecht, 65 F.3d 1523, 1528 (9th Cir. 1995).

11          Finally, Plaintiffs mistake what they must allege to show open-ended continuity. It is not

12  enough to show that Developer Defendants will continue to sell homes to willing buyers. There

13  is no dispute that Plaintiffs got the homes they requested at the agreed prices. To show open-

14  ended continuity, Plaintiffs must allege that the purported misrepresentations about the terms of

15  the Purchase Agreement were a regular way of doing business. And here, Plaintiffs own com-

16  plaint and arguments undermine any such finding: though Developer Defendants allegedly have

17  sold hundreds of homes in this development, only four people have come forward claiming they

18  were fraudulently induced into entering the Purchase Agreements.

19  **C.      Plaintiffs Affirmatively Undermine Their RESPA And Breach Of Fiduciary Duty
            Claims As To The Developer Defendants.**

20
            **1.      Plaintiffs Allege No Basis For RESPA Liability.**
21
            Plaintiffs' RESPA claim against the Developer Defendants rests on the notion that Devel-
22
    oper Defendants are vicariously liable, as "the agents and/or principals," for Old Republic's ac-
23
    tions, see FAC ¶ 31 and Opp'n at 20, or directly liable as civil conspirators, see FAC ¶ 91 and
24
    Opp'n at 20. Not only are the FAC's allegations boilerplate (¶ 31) and conclusory (¶ 91), Plain-
25
    tiffs have argued themselves out of a claim. Developer Defendants can only be vicariously liable
26
    for Old Republic's actions if Old Republic is Developer Defendants' agent: there is no principle
27
    of respondeat inferior. See Restatement (Third) of Agency § 7.01 cmt. d (2006) (agent not liable
28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY ISO MOTION TO STAY AND COMPEL                    - 12 -                    22757\1466348.1
ARBITRATION OR TO DISMISS AND STRIKE

for principal's misconduct). But Plaintiffs argue the reverse: "as <u>agents</u>," Plaintiffs say, "Developer Defendants are liable" for Old Republic's alleged misconduct. Opp'n at 21:4-5 (emphasis added). To the contrary, the assertion that Developer Defendants are Old Republic's agents exonerates Developer Defendants under an agency theory.

Nor do Plaintiffs adequately allege co-conspirator liability. Where, as here, the alleged conspiracy sounds in fraud, the plaintiff must plead the conspiracy with particularity. <u>See Otsuka v. Polo Ralph Lauren Corp.</u>, 2007 WL 3342721 at *4 (N.D. Cal. Nov. 9, 2007) (holding that Rule 9(b) applies). That means Plaintiffs must plead with particularity the formation and operation of the alleged conspiracy, including the persons who agreed to act in concert and the purpose or object of their conspiracy. <u>Carias v. Lenox Fin. Mortgage Corp.</u>, 2008 WL 397339 at *2 (N.D. Cal. Feb. 8, 2008). Plaintiffs' sole allegation is that "Old Republic also failed to disclose any things of value and/or kickbacks received from other civil conspirators such as [Developer Defendants] in violation of this Act." FAC ¶ 91. That doesn't even come close to meeting Rule 9(b)'s pleading requirements.

**2.    Plaintiffs Concede Developer Defendants Owed Them No Fiduciary Duties.**

Plaintiffs concede that Developer Defendants did not owe them fiduciary duties. Opp'n at 20 ("Again, Plaintiffs do not allege that the Developer Defendants owed direct fiduciary duties to Plaintiffs."). The only asserted basis for liability is that, "as <u>agents</u>," Opp'n at 21 (emphasis added), Developer Defendants are liable for other defendants' breaches of duty. For the reasons stated immediately above, this is not the law.

**D.    <u>Plaintiffs' Complaint Fails To Allege Facts Showing A Breach Of The Duty Of Care.</u>**

As Developer Defendants argued in their motion, Plaintiffs' FAC fails to articulate what duty Developer Defendants allegedly owe them. Mot. at 17. Plaintiffs' Opposition fares no better. There, they argue that "[a] seller owes a duty to act as a reasonable seller or builder and disclose material facts related to a sale of property." Opp'n at 21-22 (citing <u>Karoutas v. Homefed Bank</u>, 232 Cal. App. 3d 767, 775 (1st Dist. 1991)). The duty of which <u>Karoutas</u> speaks is the duty to disclose material facts <u>about the property</u> that only the seller knows or could know. 232 Cal. App. 3d at 771 (seller had duty to disclose "substantial, permanent and progressive soil

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY ISO MOTION TO STAY AND COMPEL
ARBITRATION OR TO DISMISS AND STRIKE

- 13 -

22757\1466348.1

1    movement" affecting property). That duty has no application here, where Plaintiffs do not allege

2    any material defects – or indeed any defects – with the properties they purchased.

3        In their Opposition, Plaintiffs also attempt to state a "negligent translation" claim. This

4    theory has two problems. First, the FAC does not state this claim. Second, this claim is funda-

5    mentally inconsistent with the FAC's allegations of fraud, i.e., intentional misrepresentation. See

6    Snider v. Roadway Packaging Systems, 2000 WL 375234 at *7 (N.D. Cal.) ("Under California

7    law, a plaintiff cannot base a negligent misrepresentation claim on allegations of a defendant's

8    false promises.") (emphasis in original); Tarmann v. State Farm Mutual Automobile Ins. Co., 2

9    Cal. App. 4th 153, 159 (1991); Dielsi v. Falk, 916 F. Supp. 985, 995 n.13 (C.D. Cal. 1996). This

10   is because "an action based on a false promise is simply a type of intentional misrepresentation,

11   i.e., actual fraud. The specific intent requirement also precludes pleading a false promise claim as

12   a negligent misrepresentation . . . ." Tarmann, 2 Cal. App. at 159 (emphasis in original).

13       . Nor, finally, are Developer Defendants potentially liable for any other defendant's alleged

14   negligence. Plaintiffs' boilerplate allegation that everybody is everybody's agent does not suf-

15   fice. Indeed, in Ruiz v. Decision One Mortgage, 2006 WL 2067072 at *4 (N.D. Cal. July 25,

16   2006), which Plaintiffs cite for this proposition, the plaintiff cited to the court legal authority sup-

17   porting his claim that a mortgage broker could be an agent to both the lender and the borrower.

18   Here, Plaintiffs cite no authorities showing Developer Defendants can be, for example, a title

19   company's or a lender's agent.

20   **E.    Plaintiffs' Civil Code § 1632 Claim Fails Because The Home Purchase Agreements**
21   **Were Not Credit Agreements.**

22       As Developer Defendants argued in their Motion, California Civil Code section 1632 ap-

23   plies only to certain enumerated contracts. Mot. at 17-18. Plaintiffs do not contest this: instead,

24   they claim section 1632 applies to their home purchase contracts because those contracts are "ex-

25   tension[s] of credit." Opp'n at 23 (citing Cal. Civ. Code § 1632(b)(2)). This argument fails for

26   the same reasons their ECOA claim fails: their home purchase agreements were not loans or ex-

27   tensions of credit. See supra III.A. As a fallback, Plaintiffs once again ask the Court to expand

28   the statute's reach beyond its language. It is not the Court's role to rewrite a state statute, particu-

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ISO MOTION TO STAY AND COMPEL
ARBITRATION OR TO DISMISS AND STRIKE                    - 14 -                    22757\1466348.1

1    larly where, as here, the California legislature has amended this statute at least four times since it

2    was enacted in 1974, but never included home purchase contracts within its scope.

3    **F.    Plaintiffs Concede That At Least Part Of The Motion To Strike Should Be Granted.**

4           **1.    Plaintiffs Concede That They May Not Pursue Punitive Damages For
                    Negligent Misrepresentation.**

5

6           Plaintiffs concede that they may not seek punitive damages for negligent misrepresenta-

7    tion. Accordingly, the Court must strike Paragraph 141.

8           **2.    Plaintiffs Articulate No Differences Between Their Two Fraud Claims.**

9           In their Motion, Developer Defendants demonstrated that Plaintiffs' Intentional Misrepre-

10   sentation and Concealment claims allege exactly the same wrongs: whereas one claim alleges

11   Developer Defendants intentionally misrepresented certain facts, the other alleges Developer De-

12   fendants concealed the <u>true</u> facts.  Whether there is in general a difference between intentional

13   misrepresentation and concealment is not at issue.  The issue is whether there is any difference

14   between the two claims alleged here.  Plaintiffs are unable to articulate any difference.  Accord-

15   ingly, the Concealment claim should be stricken as redundant.

16          **3.    Plaintiffs Waived Their Rights To Jury Trial.**

17          Finally, Plaintiffs argue that California law requires a jury trial whenever there is a "credi-

18   bility issue."  That is simply not true.  <u>Major League Baseball Players Ass'n v. Garvey</u>, 532 U.S.

19   504, 510 (2001) (improper for court to overturn arbitrator's determination of credibility); <u>De</u>

20   <u>Guere v. Universal City Studios, Inc.</u>, 56 Cal. App. 4th 482, 505 (2d Dist. 1997) (error for court

21   to enter judgment without deciding credibility issues first, where those issues were beyond the

22   scope of the parties' agreement referring some issues for decision by private third party).  Since

23   Plaintiffs agreed to waive their right to a jury trial, their demand for a jury trial must be stricken.

24   ///

25   ///

26   ///

27   ///

28   ///

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ISO MOTION TO STAY AND COMPEL
ARBITRATION OR TO DISMISS AND STRIKE                    - 15 -                    22757\1466348.1

1

## III.
## CONCLUSION

2

3    For the foregoing reasons, the Court should stay the litigation and order Plaintiffs to "arbi-

4    trate" their disputes against Developer Defendants.  In the alternative, the Court should grant De-

5    veloper Defendants' motions to dismiss and strike.

6    Dated:  March 10, 2008                    FARELLA BRAUN & MARTEL LLP

7

8                                              By:  /s/ Frank J. Riebli
                                                     Frank J. Riebli
9
                                              Attorneys for Defendants
10                                            VCH Salinas I LLC, Norm Yop Inc. and
                                              Monica Faranda
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY ISO MOTION TO STAY AND COMPEL
ARBITRATION OR TO DISMISS AND STRIKE                    - 16 -                    22757\1466348.1